IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**DYLAN BRANDT, ET AL**                                                             **PLAINTIFFS**

**V.**                                         **4:21CV00450 JM**

**LESLIE RUTLEDGE, ET AL**                                                      **DEFENDANTS**

## SUPPLEMENTAL ORDER

After further consideration, the Court supplements the ruling made at the conclusion of the July 21, 2021 hearing to include the following findings:

On April 6, 2021, the Arkansas Legislature passed House Bill 1570, Act 626 of the 93rd General Assembly of Arkansas, to be codified at Ark. Code Ann. §§ 20-9-1501 to 20-9-1504 and 23-79-164 ("Act 626"). Act 626 prohibits a physician or other healthcare provider from providing or referring any individual under the age of 18 for "gender transition procedures."

> "Gender transition procedures" means the process in which a person goes from identifying with and living as a gender that corresponds to his or her biological sex to identifying with and living as a gender different from his or her biological sex, and may involve social, legal, or physical changes;
>
> (6)(A) "Gender transition procedures" means any medical or surgical service, including without limitation physician's services, inpatient and outpatient hospital services, or prescribed drugs related to gender transition that seeks to:
>
> (i)  Alter or remove physical or anatomical characteristics or features that are typical for the individual's biological sex; or
>
> (ii)  Instill or create physiological or anatomical characteristics that resemble a sex different from the individual's biological sex, including without limitation medical services that provide puberty-blocking drugs, cross-sex hormones, or other mechanisms to promote the development of feminizing or masculinizing features in the opposite biological sex, or genital or nongenital gender reassignment surgery performed for the purpose of assisting an individual with a gender transition.

AR LEGIS 626 (2021), 2021 Arkansas Laws Act 626 (H.B. 1570). The Defendants asserts that Arkansas has a compelling government interest in protecting the health and safety of its citizens, particularly "vulnerable" children who are gender nonconforming or who experience distress at identifying with their biological sex. *Id.*

Plaintiffs are minors, Dylan Brandt, Sabrina Jennen, Brooke Dennis, Parker Saxton (the "Patient Plaintiffs"), their parents, Joanna Brandt, Lacey and Aaron Jennen, Amanda and Shayne Dennis, Donnie Saxton (the "Parent Plaintiffs") and their healthcare providers, Dr. Michele Hutchison, and Dr. Kathryn Stambough (the "Physician Plaintiffs"). Plaintiffs have filed suit claiming the Act violates the Equal Protection Clause, Due Process Clause, and the First Amendment. They seek a preliminary injunction to enjoin Defendants and their successors in office from enforcing Act 626 during the pendency of this litigation. Plaintiffs contend that Act 626 categorically prohibits transgender adolescents with gender dysphoria from treatment, that the patient, their parents, and their medical providers agree, is medically necessary and in the adolescent's best interest. They allege that the Act singles out individuals in need of medically necessary gender-affirming care solely because the individual's gender identity does not conform to their assigned sex at birth.

I.  Rule 12(b)(1) Motion to Dismiss

As stated on the record, the Court finds that the Patient and Parent Plaintiffs have standing under the Equal Protection Clause to challenge Act 626's prohibition of "gender transition procedures" as that term is defined in Ark. Code Ann. §§ 20-9-1501(6). They also have standing to challenge the Act's authorization of private rights of action. "Where an unconstitutional statute provides for enforcement both through official acts and private suits, Plaintiffs with standing to seek an injunction against the official acts may also challenge the

constitutionality of private suits." *See Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 887-88 (1992).

The Court finds that Physician Plaintiffs have standing in their own right to challenge the Act's unequal treatment between healthcare providers who provide gender-affirming care to transgender patients, which would be prohibited by Act 626, and other healthcare providers, who provide all other medically accepted care, including gender-affirming care to non-transgender patients, which is not prohibited. *See Am. Coll. of Obstetricians & Gynecologists v. U.S. Food & Drug Admin.*, 472 F. Supp. 3d 183, 206 (D. Md. 2020).

The Court finds that Physician Plaintiffs have third-party standing to challenge Act 626 on behalf of their patients based upon the Supreme Court's opinion in *June Med. Serv's. LLC v. Russo,* 140 S. Ct. 2103, 2118-2119 (2020) ("[W]e have generally permitted plaintiffs to assert third-party rights in cases where the 'enforcement of the challenged restriction against the litigant would result indirectly in the violation of third parties' rights.'") (quoting *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004)). Further, Physician Plaintiffs have alleged a close relationship with their patients and a hindrance to their patients' ability to protect their interests because of the risk of discrimination and their patients' desire to protect their privacy. *See Singleton v. Wulff,* 428 U.S. 106, 117 (1976) (patient may be "chilled" from asserting their rights "by a desire to protect the very privacy of [their] decision from the publicity of a court suit.").

II.     Preliminary Injunction

"The primary function of a preliminary injunction is to preserve the status quo until, upon final hearing, a court may grant full, effective relief." *Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589, 593 (8th Cir. 1984). The Court considers four factors in evaluating Plaintiffs' request for a preliminary injunction: (1) the likelihood of success on the merits; (2) the likelihood

3

of irreparable harm in the absence of an injunction; (3) the balance of equities; and (4) the public interest. *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co*., 997 F.2d 484, 485-86 (8th Cir. 1983). "When the government is a party, these last two factors merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

A. Equal Protection

To analyze Plaintiffs' facial challenge to Act 626, the Court must determine what level of scrutiny applies and whether Act 626 survives that scrutiny. The Court concludes that heightened scrutiny applies to Plaintiffs' Equal Protection claims because Act 626 rests on sex-based classifications and because "transgender people constitute at least a quasi-suspect class." *Grimm v. Gloucester Cty. Sch. Bd.,* 972 F.3d 586, 607 (8th Cir. 2020); *accord Bostock v. Clayton County*, 140 S. Ct. 1731, 1741 (2020) (discrimination for being transgender is discrimination "on the basis of sex"). Defendants argue that Act 626 does not specifically refer to transgender individuals. It does, however, refer to gender transition which is only sought by transgender individuals. *See Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 270 (1993) ("Some activities may be such an irrational object of disfavor that, if they are targeted, and if they also happen to be engaged in exclusively or predominantly by a particular class of people, an intent to disfavor that class can readily be presumed.").

Under heightened scrutiny, Act 626 must be substantially related to a sufficiently important governmental interest. A policy subject to intermediate scrutiny must be supported by an "exceedingly persuasive justification." *United States v. Virginia*, 518 U.S. 515, 531 (1996). The policy must serve important governmental objectives, and the government must show "that the discriminatory means employed are substantially related to the achievement of those objectives." *Id*. at 533 (citation omitted).

Defendants contend that Act 626 is substantially related to the State's important governmental objectives of protecting vulnerable children from experimental treatment and regulating the ethics of the medical profession.  Defendants contend that there is a lack of credible scientific evidence that gender-transition procedures improve children's health. They also contend that the consequences of performing these procedures on Arkansas children are too great to allow physicians and healthcare providers to continue performing them. Defendants state that the Arkansas General Assembly passed Act 626 in response to a recent judicial ruling of the U.K. High Court of Justice of England and Wales and an Arizona district court. *See Bell v. Tavistock and Portman Nat'l Health Serv. Found. Trust,* [2020] EWHC (Admin) 3274; *Hennessy-Waller v. Snyder*, 2021 WL 1192842, at *1 (D. Ariz. Mar. 30, 2021).

In *Tavistock*, the U.K. High Court considered the "narrow" issue of whether "a child or young person under the age of 16 [can] achieve *Gillick* [1] competence in respect of the decision to take PBs [puberty blockers] for GD [gender dysphoria]" *Id*. at ¶133. Although Defendants argue that this case is evidence that the U.K. Court is on the forefront of ethics by banning all gender transitioning procedures, *Tavistock* does not categorically prohibit individuals from all "gender transition procedures." The U.K. Court merely concluded that it is "unlikely" that a 13-year-old or under would be competent to give *Gillick* consent to puberty blockers and doubtful that a 14- or 15-year-old could give consent. However, a 16-year-old or older is presumed to have the ability to consent to these procedures. Act 626 prohibits anyone under the age of 18 from receiving treatment without regard to informed consent.

---

[1] *Gillick* refers to a U.K. High Court case where the House of Lords held by a majority that a doctor could lawfully give contraceptive advice and treatment to a girl aged under 16 if she had sufficient maturity and intelligence to understand the nature and implications of the proposed treatment and provided that certain conditions were satisfied. *See Gillick v. West Norfolk and Wisbech Health Authority* [1986] AC 112.

The Arizona district court case, *Hennessy-Waller v. Snyder*, which is on appeal to the Ninth Circuit Court of Appeals, denied plaintiffs' motion to enjoin the director of the Arizona Health Care Cost Containment System "from further enforcement of" a regulation that excludes gender reassignment surgery from Arizona's Medicaid coverage and to "order AHCCCS to cover male chest reconstruction surgery for D.H. and John." *Hennessy-Waller v. Snyder*, 2021 WL 1192842, at *1 (D. Ariz. Mar. 30, 2021). The *Hennessy-Waller* plaintiffs are not prohibited from all gender-transition treatments and their healthcare providers are not prohibited from providing gender-transition treatments to them. The Court does not find either "authority" to be persuasive or precedential.

Plaintiffs argue that Act 626 does not protect children. Instead, it bans potentially life-saving treatment to transgender adolescents given in accordance with widely accepted medical protocols for treatment of adolescent gender dysphoria.[2] The consensus recommendation of medical organizations is that the only effective treatment for individuals at risk of or suffering from gender dysphoria is to provide gender-affirming care.[3] According to the Medical Organizations, the goal of gender-affirming care is to provide patients who struggle with their gender identity the time and support they need to resolve that struggle and to mitigate the distress

---

[2] Wylie C. Hembree et al., *Endocrine Treatment of Gender-Dysphoric/Gender-Incongruent Persons: An Endocrine Soc'y Clinical Practice Guideline*, 1029110 J. Clinical Endocrinology & Metabolism, Vol. 103, Issue 11, pgs. 3869-3903 (Nov. 2017) [hereinafter "Endocrine Soc'y Clinical Guidelines"]; Eli Coleman et al., *The World Professional Association for Transgender Health. Standards of Care for the Health of Transsexual, Transgender, and Gender Nonconforming People* 13, 19 (7th ed. 2012),
https://www.wpath.org/media/cms/Documents/SOC%20v7/SOC%20V7_English2012.pdf?_t=1613669341 [hereinafter "WPATH Standards of Care"].

[3] *See* Brief for American Medical Association, American Pediatric Society, American Academy of Pediatrics, American Academy of Child and Adolescent Psychiatry, American Psychiatric Association, American Association of Physicians for Human Rights Inc, American College of Osteopathic Pediatricians, Arkansas Chapter of the American Academy of Pediatrics, Arkansas Council on Child and Adolescent Psychiatry, Arkansas Psychiatric Society, Association of Medical School Pediatric Department Chairs, Endocrine Society, National Association of Pediatric Nurse Practitioners, Pediatric Endocrine Society, Society for Adolescent Health and Medicine, Society for Pediatric Research, Society of Pediatric Nurses, and World Professional Association for Transgender Health (the "Medical Organizations") as Amici Curiae Supporting Plaintiffs at ECF No. 30, p.16.

that can be associated with that condition.[4] Gender-affirming care seeks to minimize the incongruence between a transgender person's gender identity and their sex assigned at birth, thereby minimizing or eliminating gender dysphoria. *Id.* In addition, Plaintiffs argue that the State's contention that gender transition treatments cause irreversible and dangerous consequences is belied by the fact that the same medical treatments banned for transgender adolescents for "gender transition" by Act 626 are permitted for non-transgender adolescents for any other purpose, including to bring their bodies into alignment with their gender.

At this point in the proceedings, the Court finds that Act 626 is not substantially related to protecting children in Arkansas from experimental treatment or regulating the ethics of Arkansas doctors and Defendant's purported health concerns regarding the risks of gender transition procedures are pretextual. The State's reliance on the U.K. High Court's ruling is not credible. If the State's health concerns were genuine, the State would prohibit these procedures for all patients under 18 regardless of gender identity. The State's goal in passing Act 626 was not to ban a treatment. It was to ban an outcome that the State deems undesirable. In other words, Defendants' rationale that the Act protects children from experimental treatment and the long-term, irreversible effects of the treatment, is counterintuitive to the fact that it allows the same treatment for cisgender minors as long as the desired results conform with the stereotype of their biological sex.

The Court finds the Act's ban of services and referrals by healthcare providers is not substantially related to the regulation of the ethics of the medical profession in Arkansas. Gender-affirming treatment is supported by medical evidence that has been subject to rigorous study. Every major expert medical association[5] recognizes that gender-affirming care for

---

[4] *See* Brief for Medical Organizations as Amici Curiae, *supra* note 3, ECF No. 30 at 16-17.
[5] *See* Brief for Medical Organizations as Amici Curiae, *supra* note 3. ECF No. 30 at 16.

transgender minors may be medically appropriate and necessary to improve the physical and mental health of transgender people. Act 626 prohibits most of these treatments. Further, the State's goal of ensuring the ethics of Arkansas healthcare providers is not attained by interfering with the patient-physician relationship, unnecessarily regulating the evidence-based practice of medicine and subjecting physicians who deliver safe, legal, and medically necessary care to civil liability and loss of licensing.[6] If the Act is not enjoined, healthcare providers in this State will not be able to consider the recognized standard of care for adolescent gender dysphoria. Instead of ensuring that healthcare providers in the State of Arkansas abide by ethical standards, the State has ensured that its healthcare providers do not have the ability to abide by their ethical standards which may include medically necessary transition-related care for improving the physical and mental health of their transgender patients. The Court finds that Act 626 cannot withstand heightened scrutiny and based on the record would not even withstand rational basis scrutiny if it were the appropriate standard of review. Plaintiffs are, therefore, likely to succeed on the merits of their Equal Protection claim.

Next, the Court finds that Plaintiffs will suffer irreparable harm if Act 626 is not enjoined. The Act will cause irreparable physical and psychological harms to the Patient Plaintiffs by terminating their access to necessary medical treatment. Plaintiffs who have begun puberty blocking hormones will be forced to stop the treatments which will cause them to undergo endogenous puberty. Plaintiffs who will soon enter puberty will lose access to puberty blockers. In each case, Patient Plaintiffs will have to live with physical characteristics that do not

---

[6] *See* Statement, American Academy of Family Physicians, American Academy of Pediatrics, American College of Obstetricians and Gynecologists, American College of Physicians, American Osteopathic Association, and American Psychiatric Association, *Frontline Physicians Call on Politicians to End Political Interference in the Delivery of evidence Based Medicine*, (May 15, 2019), https://www.acog.org/news/news-releases/2019/05/frontline-physicians-call-on-politicians-to-end-political-interference-in-the-delivery-of-evidence-based-medicine.

8

conform to their gender identity, putting them at high risk of gender dysphoria and lifelong physical and emotional pain. Parent Plaintiffs face the irreparable harm of having to watch their children experience physical and emotional pain or of uprooting their families to move to another state where their children can receive medically necessary treatment. Physician Plaintiffs face the irreparable harm of choosing between breaking the law and providing appropriate guidance and interventions for their transgender patients.

The Court finds that the State's interest in enforcing Act 626 during the pendency of this litigation pales in comparison to the certain and severe harm faced by Plaintiffs. The "State has no interest in enforcing laws that are unconstitutional. . .." *Little Rock Fam. Plan. Servs. v. Rutledge*, 397 F. Supp. 3d 1213, 1322 (E.D. Ark. 2019), *aff'd in part, appeal dismissed in part and remanded*, 984 F.3d 682 (8th Cir. 2021). Because Plaintiffs have demonstrated at least at this preliminary stage that they are likely to prevail on the issue of Act 626's unconstitutionality, an injunction preventing the State from enforcing the Act does not irreparably harm the State.

B.  Due Process

The Due Process Clause of the Fourteenth Amendment forbids states to "deprive any person of life, liberty, or property, without due process of law...." U.S. Const. amend. XIV, § 1. The Clause also includes a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 719-20 (1997). "The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *see also Kanuszewski* v. *Mich. Dep't of Health and Human Serv's*, 927 F.3d 396, 419 (6th Cir. 2019) ("[P]arents' substantive due process right to make decisions concerning the care,

9

custody, and control of their children includes the right to direct their children's medical care."). Parents are presumed to be acting in the best interest of their children. *Parham v. J.R.*, 442 U.S. 584, 602 (1979).

The Court finds that the Parent Plaintiffs have a fundamental right to seek medical care for their children and, in conjunction with their adolescent child's consent and their doctor's recommendation, make a judgment that medical care is necessary. So long as a parent adequately cares for his or her children, "there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Troxel*, 530 U.S. at 68-69.

Strict scrutiny is the appropriate standard of review for infringement of a fundamental parental right. *Glucksberg*, 521 U.S. at 719-20. In applying strict scrutiny, the Court finds that Defendants have not met their burden of showing that Arkansas has a compelling state interest in infringing upon parents' fundamental right to seek medical care for their children, or that Act 626 is narrowly tailored to serve that interest. As stated, the State has not shown that Act 626 serves the stated goal of protecting Arkansas's children. The goal in this context is pretextual because Act 626 allows the same treatments for cisgender minors that are banned for transgender minors as long as the desired results conform with the stereotype of the minor's biological sex. Based on these findings, the State could not withstand either heightened scrutiny or rational basis review.

The Court finds that Plaintiffs have shown irreparable harm. The State suffers little harm from maintaining the status quo through the litigation of this case. The risk of irreparable harm to the Plaintiffs tips the balance of equities in favor of a preliminary injunction of Act 626.

C. First Amendment

Plaintiffs claim that Act 626 prevents healthcare professionals from speaking, and their patients and parents from hearing, about medically accepted treatments for gender dysphoria in violation of their First Amendment rights. Defendants argue that Act 626 is not a regulation of speech but rather a regulation of professional conduct. Further, they argue that the Act does not restrict any right to receive information.

The Court finds that Act 626's ban on referrals by healthcare providers is a regulation of speech. The Supreme Court has held that "the creation and dissemination of information are speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) (citing *Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) ("[I]f the acts of 'disclosing' and 'publishing' information do not constitute speech, it is hard to imagine what does fall within that category, as distinct from the category of expressive conduct")). "[A] State may not, under the guise of prohibiting professional misconduct, ignore constitutional rights." *Nat'l Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415, 439 (1963); *see also Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2371–72 (2018) ("[T]his Court has not recognized 'professional speech' as a separate category of speech. Speech is not unprotected merely because it is uttered by 'professionals.'").

The Court further finds that Act 626 is a content and viewpoint-based regulation because it restricts healthcare professionals only from making referrals for "gender transition procedures," not for other purposes. As such, it is "presumptively unconstitutional" and is subject to strict scrutiny. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). To meet the strict scrutiny standard, Defendants assert that Arkansas has a compelling interest in protecting children from experimental gender-transition procedures and safeguarding medical ethics.

11

However, the Supreme Court has held that the government does not have a legitimate interest in protecting against the "fear that people [will] make bad decisions if given truthful information." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 374 (2002); *see also Brown v. Entm't. Merch. Ass'n,* 564 U.S. 786, 794 (2011) (while states can protect children from harm, that "does not include a free-floating power to restrict the ideas to which children may be exposed"). In this case, the State believes that a transgender adolescent who, along with their parents and health care providers, decides to receive gender transition treatment is making a bad decision. The State believes it can keep these individuals from getting this treatment if healthcare providers are not allowed to refer their patients to providers in other states who can prescribe the treatment. Because the Court finds that Act 626 cannot survive strict scrutiny or even rational scrutiny, Plaintiffs are likely to succeed on the merits of their First Amendment claim.

      The Court also finds that Plaintiffs will suffer irreparable harm if Act 626 is not enjoined. "It is well-established that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Powell v. Noble*, 798 F.3d 690, 702 (8th Cir. 2015) (*Elrod v. Burns*, 427 U.S. 347, 373 (1976)). The balance of equities so favors the Plaintiffs that justice requires the Court to preserve the status quo until the merits of the case are determined.

      III.    <u>Rule 12(b)(6) Motion to Dismiss</u>

      As for the Defendants motion to dismiss for failure to state a claim, it is inherent in the Court's decision to grant the preliminary injunction that the Plaintiffs have stated claims for violations of their Equal Protection, Due Process, and First Amendment rights.

IV.     Conclusion

Defendants and successors in office are enjoined from enforcing any provision of House Bill 1570, Act 626 of the 93rd General Assembly of Arkansas, to be codified at Ark. Code Ann. §§ 20-9-1501 to 20-9-1504 and 23-79-164 during the pendency of the litigation of this case.

IT IS SO ORDERED this 2nd day of August, 2021.

_____
James M. Moody Jr.
United States District Judge