IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

DYLAN BRANDT, *et al.*,

PLAINTIFFS,

v.        No. 4:21-CV-00450-JM

LESLIE RUTLEDGE, *et al.*,        DEFENDANTS.

### RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

Reading Plaintiffs' brief, one might be confused. First, after reading Plaintiffs' briefing, it'd be easy to forget this case is about the SAFE Act (which bars performing certain harmful, experimental procedures on children) and not the GIRLS Act (which bars discrimination against girls in sports). Indeed, on Plaintiffs' telling, legislation, like the GIRLS Act, that remedies the long history of discrimination against women's sports is strangely evidence of discrimination. And that's why, apparently, unsatisfied by the documents they received regarding the SAFE Act, Plaintiffs have instead decided to hunt for evidence regarding that separate, uncontroversial, and (unsurprisingly) totally unchallenged antidiscrimination legislation. This Court should reject Plaintiffs' frivolous fishing expedition.

Second, after reading Plaintiffs' briefing, one might also be confused about the discovery that has actually taken place in this case. Plaintiffs wrongly assert that the Attorney General is withholding over 4,000 responsive documents based on a relevance objection. The truth is that Plaintiffs' requested searches simply pulled in thousands of non-responsive documents (as they were aware would happen)—representing more than *one-third* of the total number of emails in the Attorney General's account during the relevant time period. Plaintiffs seem to believe that the Attorney General is withholding additional non-privileged documents related to the SAFE Act; she is not. The documents that Plaintiffs are currently seeking do not relate to the SAFE

Act. Plaintiffs came up empty in that respect, and as noted, they have decided to go fishing for information about other uncontroversial and unchallenged laws that protect women and girls from discrimination. As Plaintiffs have received everything to which they are entitled, this Court should deny their motion to compel.

## BACKGROUND

On October 18, 2021, Plaintiffs served Defendants with the requests for production at issue in this motion. (Doc. 100-1.) Some of those requests were at least relatively targeted at the issues in this case. (*See id.* at 6 (seeking "[a]ll documents and communications concerning the [SAFE Act]"); *id.* at 7 ("documents concerning the impact of the [SAFE Act] on the well-being of minors").) Others amounted to a fishing expedition. (*Id.* ("All documents and communications concerning gender dysphoria, gender transition, gender transition procedures, [and] transgender people . . . ."); *id.* (Documents sufficient to show all medical procedures or treatments that are or have been prohibited under Arkansas law or regulations since January 1, 2016.").)

Defendants timely responded and asserted appropriate objections, including that the requests seek irrelevant information, are disproportionate to the needs of the case given their startling breadth and the narrow legal issue presented, and are overbroad because they seek documents postdating the passage of the SAFE Act. (*See* Doc. 100-2.) Especially problematic was that the requests were directed to the State's chief legal officer, the custodian for much attorney-client privileged material for State agencies and officers. The parties met and conferred regarding Plaintiffs' requests for production, and on December 6, 2021, Plaintiffs provided a list of search terms, ostensibly to aid Defendants in locating responsive emails. Showing just how overbroad Plaintiffs' document requests are, that list contained 93 search terms for eight (largely overlapping) document requests. (Doc. 100-4 at 8-9.) Plaintiffs also specified during the meet-

2

and-confer process that their document requests specifically target the email account of the Attorney General herself.  (Doc. 100-8 at 4.)

Defendants ran an initial search using Plaintiffs' multitude of search terms, and it quickly became obvious that they would sweep in massive numbers of entirely non-responsive documents.  The searches on the Medical Board Defendants' email accounts returned 317,822 results, and the Attorney General's email returned approximately 4,500.  (Doc. 100-5 at 2.)  The most problematic search term, Defendants explained, was "trans*"[1]  Over a thousand words begin with "trans," a vanishingly small number having anything to do with the issues in this case.[2]  Nevertheless, that single term accounted for over 90% of the Medical Board results and approximately 75% of the Attorney General's results.  (*Id.*)

Recognizing the overbreadth of their search terms, Plaintiffs agreed to a number of modifications to their list that substantially reduced the Medical Board results, including substituting "trans OR transgender* OR transsexual*" for "trans*".  (Doc. 100-10 at 4.)  But Plaintiffs flatly *refused* to modify the search terms as to the Attorney General, despite the fact that the search term list returned 4,500 results for a single email account beginning in October 2020.  As a result, Defendants were left with search results filled with non-responsive documents.  Many of the search terms Plaintiffs specified are common in a public law-office email account.  These include "affirm!", "minor!", and "desist!"  Others return personnel-related results, such as "gender!" (a common question on personnel forms) and "reassign!".  That is to say nothing of "trans!", which is responsible for the vast majority of search results.  To give a few examples,

---

[1] The asterisk symbol operates as a wildcard, meaning "trans*" will return any word that begins with "trans."  An exclamation mark is often used instead of an asterisk.

[2] One popular online dictionary lists 1,025 words that begin with "trans."  *See* https://www.thefreedictionary.com/words-that-start-with-trans.

"transmission"—a common word included in confidentiality notices which are routinely appended to law-office emails—is responsible for approximately 649 of the 3,388 (about a fifth) of the results for "trans!" An additional 920 of the "trans!" results contain the word "employee," as one might expect given common personnel issues involving words such as "transfer," "transportation," or "transition." A similar 779 hits returned for both "trans!" and "position," for presumably similar reasons. And overall, the 4,500 emails returned by the search represent more than *one-third* of the emails in the Attorney General's email account during the relevant period.

Thus, it is simply not the case, as Plaintiffs wrongly assert, that the Attorney General has withheld "4000+ documents" on the basis of relevance. (Pls.' Br. at 4.) Rather, Plaintiffs refused to modify their list of search terms despite being on notice that they would produce a staggering number of non-responsive results. And Plaintiffs' refusal is particularly puzzling given their willingness to provide more targeted search terms for the Medical Board's documents when faced with the *same* issue. In the end, the number of responsive documents is not several thousand, as Plaintiffs claim, and most, if not nearly all, responsive documents would be privileged.

Defendants began reviewing both the Medical Board and Attorney General search results and provided supplemental responses. (Doc. 100-8.) This included producing a number of documents from the Attorney General, in addition to a privilege log for emails withheld on the basis of attorney-client and/or work-product privilege. (Doc. 100-7.) The Attorney General stated that she had no responsive documents as to Requests 1, 4, 5, and 7, and had a single document responsive to Request 6. (*See* Doc. 100-8 at 5-6.) Finally, she reiterated her relevance objection as to any remaining potentially responsive documents as to Request 2.

Plaintiffs then filed this motion.

4

To demonstrate the overbreadth of Plaintiffs' requested search terms, Defendants have produced to Plaintiffs a sampling of non-privileged email hits from the Attorney General's email account. *See* Ex. 1. As even a cursory review of those emails show, this discovery dispute is not due to the Attorney General's refusal to produce responsive documents, but Plaintiffs' pursuit of irrelevant emails that are not responsive to their requests for production.

## ARGUMENT

This case is about the SAFE Act. The Attorney General did not draft that Act. She did not vote on that Act. In short, it is not her legislation. *See* Ark. Const. Art. 5, Sec. 22 (providing that "no bill shall be come a law unless . . . a majority of each house be recorded . . . as voting in its favor"). She is a defendant in this lawsuit solely because the SAFE Act provides that the Attorney General may enforce it—an enforcement mechanism that she hasn't ever had occasion to actually employ. Ark. Code Ann. 20-9-1504(f)(1). Nonetheless, Plaintiffs seek to engage in a fishing expedition for documents about a different, uncontroversial, and unchallenged law that protects women and girls from long-existing, systematic, and tragic discrimination in sports. If Plaintiffs really believed that Arkansas's efforts to combat historic discrimination against women and girls were somehow discriminatory (as required to make it evidence of discrimination), they or someone else surely would have challenged those efforts. Ultimately, Plaintiffs have been given all of the documents to which they are entitled, and the Court should deny their motion for a fishing expedition.

Rule 26 limits discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). As explained in Arkansas's briefing, rational-basis review is the appropriate level of scrutiny to apply in this case. (Doc. 44 at 71.) Thus, none of the documents sought by Plaintiffs are relevant to the ultimate outcome of this case. But even under some form of heightened scrutiny, documents

5

relating to other, uncontroversial and unchallenged antidiscrimination laws are not relevant to Plaintiffs' lawsuit here.

Much of Plaintiffs' briefing is devoted to wrongly insinuating that the Attorney General is simply withholding documents related to the SAFE Act. But as explained above, the Attorney General has identified all responsive documents in her email account that pertain to the SAFE Act. Because she did *not* draft, lobby for, or vote on the SAFE Act, she predictably does *not* possess some hidden treasure trove of documents concerning the passage of that Act. Instead, such documents would be in the possession of the entity that did those things: the Arkansas General Assembly. Plaintiffs are aware of this; in fact, recognizing that, Plaintiffs have sought documents from members of the General Assembly. (*See* Docs. 84-1–84-5.) The documents in the Attorney General's possession relating to the SAFE Act, by contrast, stem from the Attorney General's duty to defend Arkansas law and, as such, are shielded from discovery by the attorney-client privilege and work product doctrine. (*See* Doc. 100-7.)

Unsatisfied with the facts, Plaintiffs now seek documents relating to the Gender Integrity Reinforcement Legislation for Sports (GIRLS) Act. 2021 Ark. Act 953, codified at Ark. Code Ann. 16-129-101 *et seq*. That law bars males from competing on women's teams in school sports. *Id.* It is ironic, to say the least, that Plaintiffs seek documents relating to the GIRLS Act on the puzzling theory that it is somehow discriminatory, when that uncontroversial and unchallenged law protects female participation in athletic events. *Cf., e.g.*, *Lia Thomas Wins an N.C.A.A. Swimming Title*, THE NEW YORK TIMES (Mar. 17, 2022), *available at* https://www.nytimes.com/2022/03/17/sports/lia-thomas-swimmer-wins.html. In any case, protecting women's sports and remedying a painful and unfortunate history of discrimination against women and girls in sports has nothing to do with the harmful, experimental procedures that the SAFE Act

prohibits, and documents relating to the GIRLS Act are thus irrelevant to this lawsuit and outside the scope of discovery.

In response to those facts, Plaintiffs raise three feeble objections. First, they argue that these documents would be relevant to the "State's intent to discriminate against transgender Arkansans." (Pls.' Br. at 8 (alteration omitted).) But the Attorney General is not a legislator; her intent isn't relevant to any claims regarding purposeful discrimination. Recognizing as much, Plaintiffs grudgingly fall back on an argument that their document requests may uncover the "intentions of the legislators who worked with the Office." Plaintiffs' requests, however, aren't limited to any such communications. Nor is their motion, and Plaintiffs' new limiting construction isn't a basis for granting their extremely broad motion. And in any event, as noted above, Plaintiffs wouldn't be entitled to any such (likely privileged) communications because a legislator's intent in supporting legislation protecting women and girls from discrimination doesn't—and cannot ever—show discrimination.

Second, Plaintiffs claim that documents relating to persons identifying as transgender generally, and the GIRLS Act in particular, could be relevant to whether individuals who identify as transgender have faced historical discrimination or are politically powerless. (Pls.' Br. at 8.) That claim makes no sense. As noted, the GIRLS Act combats historical discrimination against women and girls in sports, and it's hard to fathom how such antidiscrimination legislation—that neither Plaintiffs nor anyone else challenges—could demonstrate that another, unrelated piece of legislation is discriminatory. Moreover, to the extent Plaintiffs mean to focus on more recent incidents of males demanding the right to compete in women's sports, it's difficult to understand how that would demonstrate historical discrimination against anyone. To the contrary, at best, it

7

would merely illustrate Arkansas's current interest in combating the lingering and long-running effects of systematic discrimination against women and girls in sports.

Third, Plaintiffs argue that documents relating particularly to the GIRLS Act may be relevant to "whether the government's asserted justifications are genuine or are instead simply invented post hoc." (Pls.' Br. at 9 (quotations omitted).) But once again Plaintiffs fail to explain how legislation protecting women's sports could in any way relate to the legislative justification for banning harmful, experimental procedures on children. Nor could they.

At bottom, Plaintiffs' motion seeks nothing more than a fishing expedition into uncontroversial antidiscrimination legislation combating discrimination against women and girls in sports that *no one* has ever challenged and for privileged material. Plaintiffs sought information regarding the SAFE Act, and the Attorney General has complied with her obligations to provide non-privileged responsive documents. The Court should deny Plaintiffs' motion.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be denied.

Respectfully submitted,

LESLIE RUTLEDGE
  Arkansas Attorney General

DYLAN L. JACOBS (2016167)
  Deputy Solicitor General
MICHAEL A. CANTRELL (2012287)
  Assistant Solicitor General

OFFICE OF THE ARKANSAS
ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 682-8090
Dylan.Jacobs@arkansasag.gov

*Counsel for Defendants*