## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - x

DYLAN BRANDT, et al.,             :

                  :

        Plaintiff,        :

                  :

     v.             :   Case No. 4:21-CV-00450-JM

                  :

LESLIE RUTLEDGE, et al.,       :

                  :

        Defendant.    :

                  :

- - - - - - - - - - - - - - - - - - - - - - - - - x

## BRIEF IN SUPPORT OF MOTION
## TO COMPEL PRODUCTION OF DOCUMENTS

On February 28, 2022, the Court granted Plaintiffs' Motion for Order to Show Cause and to Compel Production of Documents from five Legislators[1] and ordered the Legislators to file a privilege log. The Legislators' privilege log lists 584 documents the Legislators have withheld from production purportedly pursuant to the legislative or deliberative process privilege.[3] The details of the log make clear however that the Legislators are improperly withholding 227 emails and documents that are not protected by the legislative or deliberative process privilege at all because they were made after the Health Care Ban was passed, contain purely factual

---

[1]     Mary Bentley, Alan Clark, Robin Lundstrum, Marcus Richmond, and Jim Wooten.

[3]     The privilege log also withholds 28 documents pursuant to the attorney client or attorney work product privileges; Plaintiffs do not challenge those privilege assertions in this motion.

information, or include correspondence with third parties. Moreover, even for documents over which the deliberative process privilege could apply, in this case each of the five factors used by courts in applying the qualified legislative privilege—relevance, availability of other evidence, seriousness of the litigation, role of the government in the litigation, and risk of chilling future governmental speech—weighs in favor of disclosure here. Plaintiffs respectfully request that the Court order the Legislators to produce all documents it has withheld on the basis of legislative privilege.

## BACKGROUND

On January 10, 2022, Plaintiffs filed a Motion for Order to Show Cause and to Compel Production of Documents to enforce compliance with their subpoenas duces tecum served on the Legislators.[4] The Legislators opposed this motion, arguing that "the documents . . . are irrelevant[,] . . . the requests are so overbroad as to render them disproportionate to the needs of the case" and "the core category of documents . . . would be protected from disclosure by legislative privilege."[5] On February 28, 2022, the Court granted Plaintiffs' motion, writing that "[t]he

---

[4]    ECF 84-85.

[5]    ECF 94.

Legislators' objections to Plaintiffs' subpoena duces tecum are overruled" and "[t]he Legislators are directed to file a privilege log with the Court."[6]

The Legislators' privilege log claims legislative or deliberative process privilege over 584 documents.   Of those, 36 documents reflect purely factual information,[7] including, for example, the "privileged article titled Biblical Principles for Human Sexuality from Family Research Council;"[8] 163 documents are communications with non-legislative third parties;[9] and 45 are documents and communications that were created after the April 6, 2021 passage of HB 1570, enacted as ACT 626 (the "Health Care Ban").[10]

These documents are highly relevant to Plaintiffs' allegation that the Legislature acted with a discriminatory intent in passing the Health Care Ban.   In particular, 94 of the documents withheld on the basis of legislative privilege are communications with or articles sent by the Family Council ("FC") and 29 of the documents withheld on the basis of legislative privilege are communications with or

---

[6]     ECF 98.

[7]     Appendix A Factual Documents.

[8]     GA-MEMBERS-PRIVILEGED-002179.

[9]     Appendix B Communications with Non-Legislative Third Parties.

[10]     Appendix C Communications Sent After Passage of the Health Care Ban.  Note there is some overlap between Appendices A, B and C—some documents are communications sent to non-legislative third parties after passage of the Health Care Ban that may or may not contain purely factual information.

articles sent by the Family Research Council ("FRC").[11]    FC's mission is "to promote, protect, and strengthen traditional family values found and reflected in the Bible by impacting public opinion and public policy."[12] FC has published statements denying transgender identities, including, for example, a blog entry on the organization's website describing Admiral Rachel Levine as "a man who identifies as a transgender woman" and stating there was "no female" in the accompanying photo.[13]   The Legislators' privilege log shows FC lobbied in favor of the bill,[14] discussed revisions to drafts of the bill,[15] and provided analysis and witness's supporting the bill to the legislature for consideration.[16] Dr. Roger Hiatt, a witness

---

[11]    In addition, the privilege log shows communications with individuals from the 1st Amendment Partnership (https://1stamendmentpartnership.org/), and An American Speaks (http://www.anamericanspeaks.com/), two other third party lobbyist organizations.

[12]    Family Council, About FC, *available at* https://familycouncil.org/?page_id=13 (last accessed May 11, 2022).

[13]    Family Council, No Female is in This Picture, *available at* https://familycouncil.org/?p=23293 (last accessed May 13, 2022).

[14]    *See, e.g.*, Exhibit 1 (Legislators Privilege Log) (GA-MEMBERS-PRIVILEGED-000937; GA-MEMBERS-PRIVILEGED-001435).

[15]    *See, e.g.*, *id.* (GA-MEMBERS-PRIVILEGED-001749; GA-MEMBERS-PRIVILEGED-002320).

[16]    *See, e.g.*, *id.* (GA-MEMBERS-PRIVILEGED-002082; GA-MEMBERS-PRIVILEGED-002391).

deposed in this case, testified that he was contacted to testify before the Senate in favor of the SAFE Act by Robin Lundstrum's liaison, Jerry Cox of Family Council.[17]

FRC is a nonprofit research organization that "seeks to inform . . . about family issues that affect the nation from a biblical worldview."[18]  FRC's leaders have equated transgender identities to "saying that you're an animal[.]"[19]  The Legislators' privilege log shows that FRC lobbied heavily in favor of the bill,[20] and provided materials to the legislature for consideration.[21]

## LEGAL STANDARD

Where a matter is before the court on federal question jurisdiction, as here, the federal law of privilege governs.  *Doe* v. *Nebraska*, 788 F. Supp. 2d 975, 983 (D. Neb. 2011).  The legislative privilege derives from the Speech and Debate Clause of the United States Constitution.  When utilized by state legislators, "the

---

[17]    Exhibit 2 (Hiatt Deposition) at 32:4-33:6, 206:4-207:24.

[18]    Family Research Council, About FRC, *available at* https://www.frc.org/about-frc (last accessed May 10, 2022).

[19]    Tony Perkins, Washington Watch (May 14, 2018), at 49:39-50:38, *available at* https://www.tonyperkins.com/get.cfm?i=LR18E11.

[20]    *See, e.g.*, Exhibit 1 (GA-MEMBERS-PRIVILEGED-000994; GA-MEMBERS-PRIVILEGED-002395); *see also* House Public Health, Welfare and Labor Committee Hearing (March 9, 2021) at 4:14:48, available at https://sg001-harmony.sliq.net/00284/Harmony/en/PowerBrowser/PowerBrowserV2/20210309/-1/21303?viewMode=1 (testimony of Joseph Backholm, Senior Fellow for Biblical Worldview and Strategic Engagement at Family Research Council, in support of the Ban)

[21]    *See, e.g.*, *id.* (GA-MEMBERS-PRIVILEGED-002141; GA-MEMBERS-PRIVILEGED-002185).

only evidentiary legislative privilege regarding the production of documents . . . is very narrow and . . . sometimes referred to as a 'deliberative process privilege.'" *Id* at 984 (citing *In re Grand Jury*, 821 F.2d, 946, 959 (3d Cir. 1987). The privilege is additionally qualified "when a plaintiff proceeds against the State and seeks evidence to vindicate important public rights guaranteed by federal law." *Bethune-Hill* v. *Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 336 (E.D. Va. 2015) (citations omitted).

In assessing the applicability of the deliberative process privilege, courts engage in a two-step inquiry. *First*, the court must determine whether "the documents requested appear to fall under the auspices of the deliberative process privilege." *Doe*, 788 F. Supp. at 985. The deliberative process privilege only protects "documents which are pre-decisional, deliberative and reflect the subjective intent of the legislators." *Id. Second*, the court applies a five-factor balancing test to documents over which the deliberative process privilege could apply to determine whether disclosure is nonetheless warranted. The court considers:

> "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees[.]"

*Rodriguez* v. *Pataki*, 280 F. Supp. 2d 89, 101 (S.D.N.Y. 2003) aff'd, 293 F. Supp. 2d 302 (S.D.N.Y. 2003) (citations omitted); *see Cave* v. *Thurston*, No. 4:18-cv-

00342, 2021 WL 4936185, at *6 (E.D. Ark. Oct. 22, 2021).  When weighing these factors, "the courts have taken pains to insure that the privilege applies only 'to the very limited extent' that the 'public good' in confidentiality transcends the value of 'utilizing all rational means for ascertaining truth.'"  *In re Grand Jury*, 821 F.2d 946, 955 (3d Cir. 1987) (citations omitted).

## ARGUMENT

## I.  APPLICABILITY OF THE DELIBERATIVE PROCESS PRIVILEGE

As an initial matter, the deliberative process privilege does not apply at all to 227 of the documents on the privilege log because they contain purely factual information, were sent after the Health Care Ban passed, or were communications with third parties.  *First*, the deliberative process privilege does not apply to the 36 documents in the privilege log that contain purely factual information from articles and books, listed on Appendix A.  The deliberative process privilege does not apply to strictly factual documents, regardless of their source.  *See Bethune-Hill*, 114 F. Supp. 3d at 343;  *see also Comm. for a Fair & Balanced Map* v. *Illinois State Bd. of Elections*, No. 11 C 5065, 2011 WL 4837508, at *10 (N.D. Ill. Oct. 12, 2011) ("[deliberative process privilege] does not protect facts or information available to lawmakers at the time of their decision").

*Second*, the legislative privilege also does not apply to the 45 documents post-dating the passage of the Health Care Ban on April 6, 2021.  *See*

Appendix C; *Bethune-Hill*, 114 F. Supp. 3d at 343 ("The privilege only protects 'integral steps' in the legislative process and does not extend to commentary or analysis following the legislation's enactment.").

*Third*, the deliberative process privilege does not apply to the communications between the Legislators and third parties, listed on Appendix B. The weight of authority holds that communications with third parties and outsiders to the legislative process fall outside the legislative privilege's protection. *See Rodriguez*, 280 F. Supp. 2d at ("[A] conversation between legislators and knowledgeable outsiders, such as lobbyists, to mark up legislation [is] a session for which no one could seriously claim privilege."); *Perez* v. *Perry*, No. SA-11-CV-360-OLG-JES-XR, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014) ("To the extent . . . that any legislator, legislative aide, or staff member had conversations or communications with any outsider (*e.g.* party representatives, non-legislators, or non-legislative staff), any privilege is waived as to the contents of those specific communications.").[22]   The Legislators' communications with FRC and FC

---

[22]     *See also Comm. for a Fair & Balanced* Map, 2011 WL 4837508 at *10 ("Although these groups [lobbyists] may have a heightened interest in the outcome of the redistricting process, they could not vote for or against the Redistricting Act, nor did they work for someone who could.  As such, the legislative privilege does not apply."); *Bethune-Hill*, 114 F. Supp. 3d at 343 (finding no legislative privilege for communications with "knowledgeable outsiders") (citing *Rodriguez*, 280 F. Supp. 2d at 101); *Michigan State A. Philip Randolph Inst.* v. *Johnson*, No. 16-CV-11844, 2018 WL 1465767, at *7 (E.D. Mich. Jan. 4, 2018) ("But communications between legislators or their staff and any third party are not protected by the legislative privilege.") (citations omitted); *League of Women Voters of Michigan* v. *Johnson*, No. 17-14148, 2018 WL 2335805, at *6 (E.D. Mich. May

demonstrate exactly why courts do not permit legislators to withhold communications with lobbyists under the deliberative process privilege—these communications potentially contain evidence of discriminatory intent which would be relevant to the question of the constitutionality of the Health Care Ban.[23]

The Legislators should produce the 227 documents on the privilege log that contain purely factual information, were sent after the Health Care Ban passed, or were communications with third parties.

## II.   **FIVE-FACTOR BALANCING TEST**

Even for the documents over which the deliberative process privilege could apply, in this case each of the five factors weighs in favor of disclosing the

---

23, 2018) ("For any relevant documents or information that were shared with third parties sought by Plaintiffs, that might have been protected by the legislative privilege, the privilege is waived.") (citations omitted).

[23]   Representative Lundstrum's Brief in Support of Motion to Quash and For Protective Order cites *Almonte* v. *City of Long Beach* for the supposed proposition that "[d]espite the involvement of third parties, these communications also receive protection under the privilege." (ECF No. 120 at 5 (citing 478 F.3d 100, 107 (2d Cir. 2007).) But *Almonte* did not involve the legislative *privilege* that Representative Lundstrum purports to rely on to withhold production of relevant documents; instead it involved legislative *immunity* from a lawsuit alleging the improper firing of certain city officials. *Id.* Legislative immunity, which bars suits against legislators for legislative activity, is a distinct doctrine from that of deliberative process privilege, which is a qualified privilege governing the discoverability of certain documents. *See Jackson Mun. Airport Auth.* v. *Bryant*, No. 3:16-CV-246-CWR-FKB, 2017 WL 6520967, at *4–5 (S.D. Miss. Dec. 19, 2017) ("Legislative immunity entitles a state legislator, in an appropriate case, to the dismissal of all of the claims against him or her in the complaint. . . . Legislative privilege, on the other hand, is not absolute. Thus, courts have indicated that, notwithstanding their immunity from suit, legislators may, at times, be called upon to produce documents or testify at depositions."). *Almonte*, contrary to Representative Lundstrum's claims, only immunized legislators from suit on the basis of legislative immunity, saying nothing about qualified deliberative process privilege or a potential duty to disclose documents. *Id.* at fn. 9.

documents. *Newport Pacific Inc.* v. *County of San Diego*, 200 F.R.D. 628, 638 (S.D. Cal. 2001) (listing five factors and finding that they favor disclosure). *First*, these documents clearly are relevant to this case, as this Court implicitly held in overruling the Legislators' objection to Plaintiffs' subpoenas duces tecum. (ECF 98.) Where it is alleged that the legislature acted with discriminatory intent, documents pertaining to the legislature's deliberations are particularly relevant. *See S.D. Farm Bureau* v. *Hazeltine*, 340 F.3d 583, 593-96 (8th Cir. 2003) (relying on meeting notes, memorandum, and drafter statements, and the absence of studies or economic forecasts commissioned prior to passage of the statute, as evidence of legislative intent); *Doe*, 788 F. Supp. 2d at 984-985 (rejecting argument that "only the plain language of the statute and the official legislative history may be used to determine the express or implied intent of the legislature"); *Resolution Trust Corp.* v. *Diamond*, 773 F. Supp. 597, 605 (S.D.N.Y. Sept. 3, 1991) ("[T]he considerations that [the government agency] took into account in its deliberations are directly in issue in this case, making the contested evidence highly relevant by the very fact that it is deliberative.") (citations omitted).

  *Second*, the documents at issue here are not available from any other source. Plaintiffs have conducted extensive discovery and believe that the documents being withheld are relevant to the Legislators' intent and not available from other sources — including party witnesses — because it was the Legislature

that passed the Health Care Ban.  Plaintiffs have taken the 30(b)(6) deposition of the Arkansas Medical Board seeking, among other things, testimony regarding Arkansas' asserted government interests in passing the Health Care Ban.  However, at a meet and confer on April 27, 2022, Defendants stated that the Medical Board's 30(b)(6) witness would not be able to offer substantive testimony on this topic.[24] This makes the Legislators' withheld documents all the more important because they may be the only source of discerning legislative intent, especially given the "practical reality that officials 'seldom, if ever, announce on the record that they are pursuing a particular course of action because of their desire to discriminate[.]'" *Veasey* v. *Perry*, 2014 WL 1340077, at *3 (S.D. Tex. Apr. 3, 2014) (citations omitted).

*Third*, this is a particularly serious litigation involving constitutional rights with  significant implications for the health of the minor plaintiffs and other Arkansas adolescents with gender dysphoria.  Where "an action alleg[es] violations of federal constitutional magnitude . . . [t]he tendency is . . . to allow discovery." *Newport Pacific Inc.*, 200 F.R.D. at 640.  Similarly, the greater the impact a particular case will have the more this factor weighs in favor of disclosure.  *See Resolution Trust Corp.*, 773 F. Supp. at 605.

---

[24]    Exhibit 3 (Plaintiffs' May 3, 2022 letter memorializing the conference between counsel).

*Fourth*, the Arkansas Legislature has an important role in this litigation because it passed the Health Care Ban. Courts have found this factor to favor disclosure when the Government is a party to the litigation (*see Newport Pacific Inc.*, 200 F.R.D. at 640), and when the motive and intent of the legislature is in question (*see Bethune-Hill*, 114 F. Supp. 3d at 340).

*Fifth*, in this case there is no valid concern that disclosure of the documents will hinder open and frank deliberations amongst the Legislature because the privilege log shows that the Legislature already has widely shared its deliberations with outside parties. Indeed, of the 584 emails on the privilege log withheld for deliberative process privilege, almost 28% are between the Legislators and third-party lobbyists, and, based on the descriptions provided in the log, the content of the emails shared with the lobbyists is largely the same as the content shared among the legislators' office and Bureau of Legislative research, including drafts and revisions of the Health Care Ban.[25]

Given the allegations that the Legislature passed the Health Care Ban with discriminatory intent and the fact that the documents at issue here relate in large

---

[25]   Compare the entry labeled GA-MEMBERS-PRIVILEGED-001257 in the Exhibit 1 (an e-mail from Representative Robin Lundstrum to Jessica Beel of the Bureau of Legislative Research ("BLR") containing "[p]rivileged discussion regarding changes to draft of HB 1570") and the entry labeled GA-MEMBERS-PRIVILEGED-001270 (an e-mail from Jerry Cox of the FC to Jessica Beel and Robin Lundstrum containing "[p]rivileged discussion regarding revisions to HB 1570").

part to communications with an organization that opposes LGBTQ equality, the risk of shielding statements revealing an impermissible discriminatory purpose for the law is high.  And there is no indication that requiring disclosure in this case will lead to a discernable change in future deliberations.  Weighing all five factors in the deliberative process balancing test, the weight of the factors favors disclosure.

## CONCLUSION

The documents withheld by Legislators Mary Bentley, Alan Clark, Robin Lundstrum, Marcus Richmond, and Jim Wooten under the deliberative process privilege include communications made after the Health Care Ban was passed, documents containing severable factual information, and communications with and documents from third parties.  These documents must be produced, as the deliberative process privilege does not apply to them.  The remaining documents should likewise be produced because they are highly relevant, there is no available alternative, the litigation is serious, the government plays a direct role in the litigation, and disclosure will not chill any of the Legislature's future deliberations.

Dated:  May 13, 2022

*/s/ Leslie Cooper*
Leslie Cooper
Chase Strangio*
American Civil Liberties Union
Foundation
125 Broad St.
New York, NY 10004
Telephone:  (917) 345-1742
lcooper@aclu.org
cstrangio@aclu.org
*Attorneys for the Plaintiffs*

Beth Echols, Ark. Bar No. 2002203
Christopher Travis, Ark. Bar No. 97093
Drake Mann, Ark. Bar No. 87108
Gill Ragon Owen, P.A.
425 W. Capitol Avenue, Suite 3800
Little Rock, AR 72201
Telephone:  (501) 376-3800
echols@gill-law.com
travis@gill-law.com
mann@gill-law.com
*On behalf of the Arkansas Civil Liberties*
*Union Foundation, Inc.*
*Attorneys for the Plaintiffs*

Breean Walas, Ark. Bar No. 2006077
Walas Law Firm, PLLC
P.O. Box 4591
Bozeman, MT 59772
Telephone:  (501) 246-1067
breean@walaslawfirm.com
*On behalf of the Arkansas Civil*
*Liberties Union Foundation, Inc.*
*Attorneys for the Plaintiffs*

Sarah Everett, Ark. Bar No. 2017249
Gary Sullivan, Ark. Bar No. 92051
Arkansas Civil Liberties Union
Foundation, Inc.
904 W. 2nd Street
Little Rock, AR 72201
Telephone:  (501) 374-2842
sarah@acluarkansas.org
*Attorneys for the Plaintiffs*

Garrard R. Beeney*
Jonathan J. Ossip*
Alexander S. Holland*
Brandyn Rodgerson*
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Telephone:  (212) 558-4000
beeneyg@sullcrom.com
ossipj@sullcrom.com
hollanda@sullcrom.com

Laura Kabler Oswell*
Duncan C. Simpson LaGoy*
Sullivan & Cromwell LLP
1870 Embarcadero Road
Palo Alto, CA 94303
Telephone:  (650) 461-5600
oswell@sullcrom.com
simpsond@sullcrom.com
*Attorneys for the Plaintiffs*

*Attorneys for the Plaintiffs*

Daniel J. Richardson*
1700 New York Avenue NW
Suite 700
Washington, DC 20006
Telephone: 202-956-7500
richardsond@sullcrom.com

*Attorney for Plaintiffs*          *\*Admitted pro hac vice*