**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAY 1 9 2022

TAMMY H. DOWNS, CLERK
By:_____
DEP CLERK

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

DYLAN BRANDT ET AL.

PLAINTIFFS

vs.                              NO. 4:21-CV-00450-JM

LESLIE RUTLEDGE ET AL.                              DEFENDANTS


**<u>BRIEF OF PRESIDENT PRO TEMPORE OF THE SENATE, ON BEHALF OF THE
ARKANSAS SENATE, AND SPEAKER OF THE HOUSE OF REPRESENTATIVES, ON
BEHALF OF THE ARKANSAS HOUSE OF REPRESENTATIVES, AS *AMICI CURIAE*
IN SUPPORT OF REPRESENTATIVE ROBIN LUNDSTRUM'S MOTION TO QUASH
AND FOR PROTECTIVE ORDER</u>**

## TABLE OF CONTENTS

Table of Authorities.............................................................................................................ii

Introduction........................................................................................................................1

Argument.............................................................................................................................3

I.     Legislative Privilege Shields Legislators from Disclosure of Information Related to
       Legitimate Legislative Activities, Protecting the Integrity of the Legislative
       Process.........................................................................................................................4

       A.     The Subpoena at Issue Seeks Information Related to Legitimate, Core
              Legislative Activity...........................................................................................5

       B.     Legislative Privilege Protects the Legislative Process by Removing
              Distractions from Legislative Duties and Preserving Legislators'
              Independence to Engage in Fact-Finding and Deliberation.........................8

II.    In the Alternative, Deliberative Process Privilege Exempts Information About the
       Legislative Decision-Making Process from Discovery.............................................11

       A.     Deliberative Process Privilege Prevents the Threat of Chilled Deliberation...12

       B.     The Deliberative Process Privilege Balancing Test Weighs in Favor of
              Granting the Motion to Quash and for Protective Order...........................13

Conclusion .........................................................................................................................19

i

## TABLE OF AUTHORITIES

**U.S. Constitutional Provisions**

U.S. Const. art. I, § 6, cl. 1………………………………………………………………...4

**U.S. Supreme Court Cases**

*Bogan v. Scott-Harris*, 523 U.S. 44 (1998)………………………..…………..………..…..10

*Hutchinson v. Proxmire*, 443 U.S. 111 (1979)……………………………….…….………5

*McGrain v. Daugherty*, 273 U.S. 135 (1927)………………………………………….…..6

*Spallone v. United States*, 493 U.S. 265 (1990)…………………………………………9, 10

*Soon Hing v. Crowley*, 113 U.S. 703 (1885)………………………………………………...14

*Tenney v. Brandhove*, 341 U.S. 367 (1951)……………………………………….........4, 7, 15

*United States v. Brewster*, 408 U.S. 501 (1972)…………………………………...…4, 5, 8

*United States v. Gillock*, 445 U.S. 360 (1980)………………………………………….……5

*United States v. O'Brien*, 391 U.S. 367 (1968)……………………………………….……14

**Federal Circuit Court Cases**

*Almonte v. City of Long Beach*, 478 F.3d 100 (2d Cir. 2007)……………………………...6

*Ausmus v. Perdue*, 908 F.3d 1248 (10th Cir. 2018)……………………………………14

*Carter v. U.S. Dep't of Commerce*, 307 F.3d 1084 (9th Cir. 2002)…………………………13

*EEOC v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174 (4th Cir. 2011)….1, 3, 4, 9, 10

*FTC v. Warner Communications*, 742 F.2d 1156 (9th Cir. 1984)………………...11, 12, 13

*Gov't of Virgin Islands v. Lee*, 775 F.2d 514 (3d Cir. 1985)……………………………5, 6

*In re Grand Jury*, 821 F.2d 946 (3d Cir. 1987)……………………………………………12

*In re Hubbard*, 803 F.3d 1298 (11th Cir. 2015)……………………………...4, 5, 6, 7, 8, 9

*Jeff D. v. Otter*, 643 F.3d 278 (9th Cir. 2011)……………………………………...12, 17

*Miller v. Transamerican Press, Inc.*, 709 F.2d 524 (9th Cir. 1983)…………………...5, 6, 7

*Mo. Coalition for Env't Found. v. U.S. Army Corps of Eng'rs*, 542 F.3d 1204 (8th Cir. 2008)……………………………………………………………………………....12, 13, 17

*N.C. State Conf. of the NAACP v. McCrory*, 831 F.3d 204 (4th Cir. 2016)………………7

*Veasey v. Abbott*, 830 F.3d 216 (5th Cir. 2016)………………………………………….…14

**Federal District Court Cases**

*Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323 (E.D. Va. 2015)…....*passim*

*Citizens Union of N.Y. v. Schneiderman*, 269 F. Supp. 3d 124 (S.D.N.Y. 2017)…………16

*Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, 2011 U.S. Dist. LEXIS 117656 (N.D. Ill. Oct. 12, 2011)…………..…………………………………...…3, 6, 7, 16, 17

*Corporacion Insular de Seguros v. Garcia*, 709 F. Supp. 288 (D.P.R. 1989)……..4, 12, 16

*Cunningham v. Chapel Hill, ISD*, 438 F. Supp. 2d 718 (E.D. Tex. 2006)………………….4

*Doe v. Nebraska*, 788 F. Supp. 2d 975 (D. Neb. 2011)……………………4, 12, 13, 14, 17

*Page v. Va. State Bd. of Elections*, 15 F. Supp. 3d 657 (E.D. Va. 2014)…………...………16

**State Constitutional Provisions**

Ark. Const. art. 5, § 15……………………………………………………………………..4

**State Statutes**

Ark. Code Ann. § 10-2-129(b)-(d)........………………………………………………….....17

Ark. Code Ann. § 25-19-105(b)(7)………………………………………………………17

## INTRODUCTION

Senator Jimmy Hickey, in his role as President Pro Tempore of the Senate and on behalf

of the Arkansas Senate ("Senate"), and Representative Matthew Shepherd, in his role as Speaker

of the House of Representatives and on behalf of the Arkansas House of Representatives

("House"), respectfully submit this amicus brief in support of Representative Robin Lundstrum's

Motion to Quash and for Protective Order.   Under federal common law,[1] members of the House

and Senate cannot be compelled to provide testimony regarding actions taken in the course of

their legislative duties or the motives for those actions.  Holding otherwise would threaten the

integrity of the entire legislative process, chill legislative deliberation, and impede members of

the House and Senate from properly carrying out their elected duties.

During the 2021 regular session of the General Assembly, forty-six members of the

House—including Representative Lundstrum—and nineteen members of the Senate co-

sponsored House Bill 1570, entitled the "Arkansas Save Adolescents from Experimentation

(SAFE) Act" ("SAFE Act"). The bill passed through both houses of the General Assembly and,

after Governor Hutchinson vetoed the bill, seventy-two members of the House and twenty-five

senators voted to override the governor's veto and enact the SAFE Act.  The bill—one of 1,116

bills passed during the session—became Act 626 of the 2021 Regular Session.

Plaintiffs challenge the SAFE Act's constitutionality and now seek to depose

Representative Lundstrum—a non-party to this litigation and one of many co-sponsors and

supporters of the SAFE Act—regarding the intent of the House and Senate in enacting this

---

[1] Because this case is a federal question case, federal common law governs the application of legislative privilege. *See* Fed. R. Evid. 501; *see also EEOC v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 180 (4th Cir. 2011) ("Legislative privilege clearly falls within the category of accepted evidentiary privileges.").

1

legislation.  Representative Lundstrum has moved to quash the subpoena seeking her deposition, asserting legislative privilege.  President Pro Tempore Hickey and Speaker Shepherd, in their respective roles and on behalf of the Senate and House, agree that Plaintiffs' demand for Representative Lundstrum's testimony violates the settled constitutional principle that a legislator "shall not be questioned in any other place" regarding performance of her legitimate legislative duties.  By seeking to compel testimony from a sitting member of the House regarding purely legislative actions and the motivations for those actions, Plaintiffs ask this Court to engage in an impermissible invasion of the legislative process, threatening not only individual legislators' ability to make well-researched, well-reasoned decisions, but the ability of the House and Senate as a whole to engage in the rigorous examination of evidence and discussion of ideas that forms a foundational part of the legislative process.

Compelling Representative Lundstrum's testimony in this case will significantly impact all 135 sitting members of the General Assembly and all future members, regardless of political affiliation.  It will negatively impact every legislative action taken by a member of the House or Senate, regardless of subject matter.  It is for these reasons that Senator Hickey, in his role as President Pro Tempore of the Senate and on behalf of the Senate, and Representative Shepherd, in his role as Speaker of the House and on behalf of the House, have taken the extraordinary step of filing this amicus brief in support of Representative Lundstrum's Motion to Quash and for Protective Order.

Accordingly, President Pro Tempore Hickey and Speaker Shepherd respectfully request that this Court grant Representative Lundstrum's motion to quash the subpoena compelling her attendance at a deposition noticed by Plaintiffs in this case.

2

## ARGUMENT

"As members of the most representative branch, legislators bear significant responsibility for many of our toughest decisions, [including] the content of the laws that will shape our society . . . ." *EEOC v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011). Compelling legislators to testify about the facts or opinions underlying their legislative decisions threatens the legislative process by "chill[ing] legislative debate," "discourag[ing] earnest discussion within governmental walls[,]" and ultimately hindering a legislator's ability to properly "synthesize competing interests of constituents, special interest groups[,] and lawmakers[.]" *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, 2011 U.S. Dist. LEXIS 117656, at *31 (N.D. Ill. Oct. 12, 2011).

Considering, drafting, and enacting legislation are responsibilities that require intense research, investigation, discussion, deliberation, and collaboration. The ability of the members of the General Assembly to conduct their official business free of the interference of litigation related to their legitimate legislative activities is essential to the integrity of the legislative process. Members of the General Assembly must be able to fully consider *all* aspects of the issues and legislation before them without the fear of having their actions and statements during the investigatory and deliberative process used to undermine the legislative process in litigation. Accordingly, this Court should find that legislative privilege protects a state legislator from compelled testimony and should grant Representative Lundstrum's Motion to Quash and for Protective Order. If this Court determines that legislative privilege does not preclude the testimony, it should nevertheless determine that deliberative process privilege prevents such an examination.

3

I.      **Legislative Privilege Shields Legislators from Disclosure of Information Related to Legitimate Legislative Activities, Protecting the Integrity of the Legislative Process.**

Legislative privilege stems from the concept of legislative immunity—such a foundational principle of our system of government that the Founders wrote it into the Constitution, ensuring that legislators "shall not be questioned in any other place" about their legitimate legislative actions. U.S. Const. art. I, § 6, cl. 1; *see also* Ark. Const. art. 5, § 15. Simply put, legislative *immunity* protects legislators from suit, while legislative *privilege* protects them from compulsory evidentiary process. *See Wash. Suburban Sanitary Comm'n*, 631 F.3d at 181; *Doe v. Nebraska*, 788 F. Supp. 2d 975, 983 (D. Neb. 2011) (comparing immunity from suit with privilege preventing compulsory production of testimony or other evidence). "The Supreme Court and several circuit courts have clearly recognized that the doctrine of legislative immunity protects legislative actors from being called to testify about their legislative activities," and multiple circuit courts have applied legislative privilege to state legislators in federal court. *Cunningham v. Chapel Hill, ISD*, 438 F. Supp. 2d 718, 721-22 (E.D. Tex. 2006).

Legislative privilege applies to both party and non-party lawmakers, *see United States v. Brewster*, 408 U.S. 501, 507 (1972), and it covers requests for depositions as well as document discovery. *Corporacion Insular de Seguros v. Garcia*, 709 F. Supp. 288, 297 (D.P.R. 1989); *see also id.* at 291 n.5 ("[I]t is important to keep in mind that what is at stake here is not only the production of those documents but any questions that may be made about them by way of depositions."). This privilege is meant not for the benefit of individual legislators but for the public good. *See Tenney v. Brandhove*, 341 U.S. 367, 377 (1951).

Legislative privilege shields legislators from disclosure of information related to legitimate legislative actions and the purposes underlying those actions. *In re Hubbard*, 803 F.3d 1298, 1310 (11th Cir. 2015). Its ultimate goal is to protect the integrity of the legislative

4

process by minimizing the distractions legislators face and upholding individual legislators' independence. *Brewster*, 408 U.S. at 507; *Hubbard*, 803 F.3d at 1310.

## A.     The Subpoena at Issue Seeks Information Related to Legitimate, Core Legislative Activity.

Legislative privilege covers all of a legislator's actions "that occur in the regular course of the legislative process[,]" as well as "the motivation for those acts." *Hubbard*, 803 F.3d at 1310 (quoting *Brewster*, 408 U.S. at 525); *see also Hutchinson v. Proxmire*, 443 U.S. 111, 131 (1979) (stating that legislative privilege covers "acts generally done in the course of the process of enacting legislation").[2] The legislative process is not limited to bill drafting and legislative votes. Rather, it includes every step in preparing legislation—fact-finding, information gathering, and investigative activities related to lawmaking; communication with legislative staff, fellow legislators, and others involved in the legislative process regarding legislation; bill drafting activities; debates over proposed legislation; legislative votes; and the preparation of committee reports. *See id.* at 133; *Gov't of Virgin Islands v. Lee*, 775 F.2d 514, 522 (3d Cir. 1985); *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 530 (9th Cir. 1983); *Bethune-Hill v.*

---

[2] Because of its importance to the integrity of the legislative process, legislative privilege may only be curtailed in "some extraordinary instances[,]" such as when a state legislator faces federal criminal charges or in civil cases where "the natural corrective mechanisms built into our republican system of government offer little check upon the very real threat of legislative self-entrenchment[.]" *Bethune-Hill*, 114 F. Supp. 3d at 337; *see also United States v. Gillock*, 445 U.S. 360, 373 (1980). In other words, legislative conduct in these specific situations threatens the legitimacy of the political process and, by extension, the legislative process. Applying legislative privilege in these "extraordinary instances" would not preserve legislators' independence or reduce distractions from legitimate legislative duties, it would instead damage the integrity of the legislative process. Thus, in such "extraordinary instances," courts may choose to withhold or curtail legislative privilege. *See Bethune-Hill*, 114 F. Supp. 3d at 337. No such "extraordinary instances" exist here. The legislation at issue here does not present a threat of legislative self-entrenchment. Rather, Plaintiffs seek to subject Representative Lundstrum—a non-party legislator—to compelled testimony regarding routine aspects of her legislative duties. It is exactly this scenario in which applying legislative privilege will most protect the integrity of the legislative process.

5

*Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 338 (E.D. Va. 2015) (mem. op.); *Comm. for a Fair & Balanced Map*, 2011 U.S. Dist. LEXIS 117656, at \*31-33. It also includes "[m]eeting with persons outside the legislature - such as executive officers, partisans, political interest groups, or constituents - to discuss issues that bear on potential legislation[.]" *Almonte v. City of Long Beach*, 478 F.3d 100, 107 (2d Cir. 2007).

Because legislative privilege exists to protect the legislative process, it necessarily protects actions taken at every stage within the process, whether "in the proposal, formulation, [or] passage of legislation." *Hubbard*, 803 F.3d at 1308. Evidence covered by this privilege falls into two categories: "factual information relied upon in the legislative process[,]" *Bethune-Hill*, 114 F. Supp. 3d at 338, and opinion-based evidence. *Hubbard*, 803 F.3d at 1310.

Legislative fact-finding falls under legislative privilege because of its importance to the legislative process. *Id.*; *Lee*, 775 F.2d at 521. "Obtaining information pertinent to potential legislation or investigations is one of the things generally done in a session of the House[.]" *Miller*, 709 F.2d at 529. As such, "fact-finding, information gathering, and investigative activities are *essential prerequisites* to the drafting of bills and the enlightened debate over proposed legislation." *Lee*, 775 F.2d at 521 (emphasis added). As essential parts of the legislative process, these activities are protected by legislative privilege, and such privilege extends to any "factual information relied upon in the legislative process[.]" *Bethune-Hill*, 114 F. Supp. 3d at 338; *see also Lee*, 775 F.2d at 521.

Protection of factual evidence is a critical aspect of legislative privilege because a legislature "cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change." *Lee*, 775 F.2d at 521 (quoting *McGrain v. Daugherty*, 273 U.S. 135, 175 (1927)). Knowing that the factual bases for their

6

decisions are privileged allows legislators to thoroughly investigate the need for and potential consequences of proposed legislation without worrying about testifying at the behest of disgruntled constituents—or other parties—who disagree with their interpretation of the data.

Legislative privilege also protects legislators from testifying about subjective or opinion-based matters. *Hubbard*, 803 F.3d at 1310. Indeed, courts construe the protection for subjective or opinion-based evidence as even stronger than that for factual evidence. *Bethune-Hill*, 114 F. Supp. 3d at 338 (stating that while the production of factual documents enjoys some protection, "[t]he principle of 'legislative independence' may justify greater protection for 'opinion' documents under the overlapping rationale of preventing timidity in the formulation of public policy"). This includes communications between legislators. *See Comm. for a Fair & Balanced Map*, 2011 U.S. Dist. LEXIS 117656, at *30 (stating that, because legislators must balance the needs and demands of many different entities, "[t]hey must be able to confer with one another without fear of public disclosure").

Legislative privilege is at its strongest when applied to legislators' purposes or motivations behind their official actions. *See Tenney*, 341 U.S. at 377 (stating that it is "not consonant with our scheme of government for a court to inquire into the motives of legislators"); *N.C. State Conf. of the NAACP v. McCrory*, 831 F.3d 204, 229 (4th Cir. 2016) (stating that "testimony as to the purpose of challenged legislation 'frequently will be barred by [legislative] privilege'"); *Hubbard*, 803 F.3d at 1310; *Miller*, 709 F.2d at 530. This is true even if a plaintiff claims the legislator acted pursuant to an improper purpose. *Tenney*, 341 U.S. at 377; *see also Hubbard*, 803 F.3d at 1302, 1310 (finding a district court abused its discretion in denying a motion to quash subpoenas against non-party lawmakers when "[t]he subpoenas' only purpose

7

was to support the lawsuit's inquiry into the motivation behind [the challenged Act], an inquiry

that strikes at the heart of the legislative privilege").

The discovery sought in this case relates to factual and subjective information underlying

decisions Representative Lundstrum made in the course of the legislative process. As such,

Plaintiffs seek information at the heart of the legislative privilege—information that the law

clearly protects from disclosure and that must be kept confidential if members of the House and

Senate are to engage freely in the core legislative activities, such as information gathering,

deliberating, collaborating, drafting, and debating, that are necessary for them to attend to the

duties they were elected to fulfill. Such engagement is essential to the effective work of the

individual members of the General Assembly and the legislature as a whole. Therefore, to

protect the process of the General Assembly and the legitimate activities of its members, the

Court should find that legislative privilege applies to the information sought through the

deposition of Representative Lundstrum and should grant her Motion to Quash.

**B.      Legislative Privilege Protects the Legislative Process by Removing
Distractions from Legislative Duties and Preserving Legislators'
Independence to Engage in Fact-Finding and Deliberation.**

Legislative privilege protects the integrity of the legislative process in two ways: it allows

legislators to focus on their official duties by removing the distractions of burdensome discovery

requests, and it safeguards individual legislators' independence to deliberate more candidly and

creatively to address public issues. *Brewster*, 408 U.S. at 507; *Hubbard*, 803 F.3d at 1310.

Compelling Representative Lundstrum to provide testimony in a deposition that discloses

information regarding her legitimate legislative activities would threaten the very heart of the

legislative process. Such precedent would prevent current and future members of the House and

Senate from properly fulfilling their official duties by distracting them from those duties and

8

encouraging them "to avoid controversial issues or stances in order to protect themselves" from the threat of compelled testimony. *Spallone v. United States*, 493 U.S. 265, 300 (1990).

***Distraction from Legislative Duties.*** Legislative privilege rests on the idea that requiring lawmakers to respond to discovery requests "detracts from the performance of official duties." *Hubbard*, 803 F.3d at 1310 (quoting *Wash. Suburban Sanitary Comm'n*, 631 F.3d at 181). A legislator does not have to be named as a party in a lawsuit for the lawsuit and its related discovery to distract the legislator from his or her official duties. *Id.* (citing *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 859 (D.C. Cir. 1988). Time spent responding to discovery requests is time a legislator cannot spend on his or her official duties—the duties the legislator was elected to perform. Complying with burdensome discovery requests distracts legislators from focusing on performing their duties to the best of their abilities because their time and resources are directed elsewhere. This type of distraction threatens the integrity of the entire legislative process.

Moreover, allowing litigants to subject legislators to discovery requests regarding their legislative actions will open the floodgates for litigants in this case and future cases to depose any member of the House or Senate who supported certain legislation, which will create the potential for widespread disruption of the legislative process. Additionally, because each member of the General Assembly conducts his or her own official business in different ways and for various reasons, denying state legislators the protection of legislative privilege for their legitimate legislative activities would allow litigants to conduct a fishing expedition to look for any legislative information that supports their particular position in litigation. Such an outcome would threaten the integrity of the legislative process and only benefit disgruntled constituents

9

whose remedy for legislative activity with which they disagree is often at the polls rather than in the courtroom. *See Wash. Suburban Sanitary Comm'n*, 631 F.3d at 181.

Accordingly, Representative Lundstrum's Motion to Quash and for Protective Order should be granted to avoid setting a precedent in which a sitting member of the General Assembly is distracted from her elected duties and forced to prioritize the interests of a handful of litigants above those of her own constituents by burdensome discovery requests seeking information about legitimate legislative activities.

*Curtailment of Legislative Independence.* Compelling non-party legislators' compliance with discovery requests regarding their legitimate legislative activities also discourages legislators from independently "engag[ing] deeply in the legislative process and act[ing] boldly in the public interest[,]" an important factor in the reasoned enactment of governmental policy. *Bethune-Hill*, 114 F. Supp. 3d at 337. "[T]he exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability." *Bogan v. Scott-Harris*, 523 U.S. 44, 52 (1998) (citing *Spallone*, 493 U.S. at 279). Indeed, "any restriction on a legislator's freedom undermines the 'public good' by interfering with the rights of the people to representation in the democratic process." *Spallone*, 493 U.S. at 279.

Without the protection of legislative privilege, some legislators will undoubtedly shy away from potentially controversial legislation and will hesitate or refuse to fully investigate and discuss issues regarding legislation due to the threat of potential discovery requests, even if such discussions or investigations are in the best interest of their constituents. *See id.* at 300. It will also make it more difficult for members of the House and Senate to seek out the information and have the candid discussions necessary for them to make the difficult, complex decisions that form a regular part of their official duties. This chilling effect will not only affect dialogue

10

between legislators, but it will also extend to conversations with constituents, conversations with legislative staff, and even to information-gathering activities. These types of activities are essential parts of the duties the members of the House and Senate were elected to perform, and a legislator's inability to independently conduct such activities inhibits the legislator's ability to act on behalf of his or her constituents and undermines the public good. Being able to fully engage in fact-finding and deliberation enables legislators to approach all issues, especially difficult or controversial issues, with an open mind to seek out the best solution for their constituents.

Allowing Representative Lundstrum's deposition to proceed in this case would inhibit the independence of current and future members of the General Assembly to engage deeply in the legislative process and to act in the best interests of their constituents. With these perils in mind, the Court should find Representative Lundstrum's testimony protected by legislative privilege, and it should grant Representative Lundstrum's Motion to Quash and for Protective Order.

## II.     In the Alternative, Deliberative Process Privilege Exempts Information About the Legislative Decision-Making Process from Discovery.

Even if this Court finds that legislative privilege does not apply, it should still grant Representative Lundstrum's Motion to Quash and for Protective Order because deliberative process privilege protects the information Plaintiffs seek. "This privilege permits the government to withhold documents that reflect advisory opinions, recommendations, and deliberations comprising part of a process by which government decisions and policies are formulated." *FTC v. Warner Communications*, 742 F.2d 1156, 1161 (9th Cir. 1984). It is a qualified privilege subject to a four-factor balancing test. *Id.* at 1161. If this Court finds that legislative privilege does not apply, it should nevertheless apply the deliberative process privilege balancing test, find that deliberative process privilege protects the information Plaintiffs seek, and grant Representative Lundstrum's Motion to Quash and for Protective Order.

11

A.    **Deliberative Process Privilege Prevents the Threat of Chilled Deliberation.**

Deliberative process privilege "protects the uninhibited formation of [governmental] policies" by preventing "[t]he threat of chilled deliberation[.]" *Bethune-Hill*, 114 F. Supp. 3d at 338.  While deliberative process privilege traditionally applies to executive actors, courts apply it to legislators as well. *See Warner Communications*, 742 F.2d at 1161; *Doe*, 788 F. Supp. 2d at 984.  Deliberative process privilege is different in scope and purpose from legislative privilege, although the two concepts are often conflated. *See, e.g.*, *Doe*, 788 F. Supp. 2d at 984.  Deliberative process privilege exists to protect "confidential exchanges of opinions and advice[.]" *Garcia*, 709 F. Supp. at 295.  As such, it applies only to documents and testimony that are "pre-decisional, deliberative, and reflect the subjective intent of the legislators," *Doe*, 788 F. Supp. 2d at 985, although "[p]urely factual material may be exempted if that material would expose the deliberative process[.]" *Mo. Coalition for Env't Found. v. U.S. Army Corps of Eng'rs*, 542 F.3d 1204, 1211 (8th Cir. 2008).

In other words, the evidence at issue must predate the law's enactment, "must relate directly to the decision making process, and must contain opinion or subjective material." *Doe*, 788 F. Supp. 2d at 985 (citing *Mo. Coalition for Env't Found.*, 542 F.3d at 1211).  This includes "communications involving opinions, recommendations, or advice about legislative decisions." *Id.* at 984 (quoting *In re Grand Jury*, 821 F.2d 946, 959 (3d Cir. 1987)).  Deliberative process privilege is generally invoked regarding production of documents, but it may also apply to depositions. *See Jeff D. v. Otter*, 643 F.3d 278, 289 (9th Cir. 2011).

While deliberative process privilege, unlike legislative privilege, is designed to benefit individual legislators, it ultimately protects and benefits the legislature as a whole.  It was initially developed "to allow agencies freely to explore possibilities, engage in internal debates,

12

or play devil's advocate without fear of public scrutiny." *Carter v. U.S. Dep't of Commerce*, 307

F.3d 1084, 1089 (9th Cir. 2002). In the legislative context, it serves to prevent the chilling effect

on legislators' deliberation that might occur if every investigative question or comment could be

examined in court. *Bethune-Hill*, 114 F. Supp. 3d at 338.

Deliberative process privilege clearly applies here. The information Plaintiffs seek by

deposing Representative Lundstrum relates to the decision-making process accompanying the

enactment of the SAFE Act. This is exactly the information that deliberative process privilege is

designed to protect. *See Doe*, 788 F. Supp. 2d at 985; *see also Mo. Coalition for Env't Found.*,

542 F.3d at 1211. The members of the House and Senate must be free to seek out opinions,

recommendations, and advice about their legislative actions and the decisions they are required

to make to fulfill their duties without fear that litigants will use that deliberative process to

undermine their work or the work of the legislature as a body. Deliberative process privilege

provides that protection. Thus, this Court should apply the balancing test used to determine the

applicability of deliberative process privilege and conclude that deliberative process privilege

requires the Court to grant Representative Lundstrum's Motion to Quash and for Protective

Order.

**B.      The Deliberative Process Privilege Balancing Test Weighs in Favor of
          Granting the Motion to Quash and for Protective Order.**

Because it is meant to protect the interests of individual legislators rather than protect the

legislative process, deliberative process privilege is a qualified privilege and may be overridden

upon a showing of sufficient need. *Warner Communications*, 742 F.2d at 1161. Courts use a

four-factor test to determine whether testimony is protected by deliberative process privilege:

"(1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's

role in the litigation; and (4) the extent to which disclosure would hinder frank and independent

13

discussion regarding contemplated policies and decisions." *Id.*; *Doe*, 788 F. Supp. 2d at 985. All four of these factors weigh in favor of granting Representative Lundstrum's Motion to Quash and for Protective Order.

*Relevance.* The relevance factor weighs in favor of applying deliberative process privilege. An individual legislator's motive in supporting legislation is of little relevance in determining the legislation's purpose. One lawmaker's opinion cannot be imputed to the rest of the legislative body, for there may be as many purposes behind votes supporting an act as there are legislators casting those votes. *See United States v. O'Brien*, 391 U.S. 367, 384 (1968) ("What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork."); *Soon Hing v. Crowley*, 113 U.S. 703, 711 (1885) (stating that the purpose for passing legislation "will vary with the different members of the legislative body"). And after-the-fact statements as to a legislator's purpose in supporting legislation are "routine[ly] regard[ed] as unreliable." *See Veasey v. Abbott*, 830 F.3d 216, 234 (5th Cir. 2016); *see also Ausmus v. Perdue*, 908 F.3d 1248, 1257 n.3 (10th Cir. 2018).

Plaintiffs seek information regarding Representative Lundstrum's purpose behind supporting the SAFE Act. But this purpose, whatever it might be, cannot be attributed to the entire House and Senate, and any statement regarding legislative purpose obtained in a deposition would necessarily be an after-the-fact statement. As such, it is impossible to argue that any motive for supporting the SAFE Act supplied by Representative Lundstrum in response to discovery in this case is relevant to the overarching purpose of the General Assembly in enacting the SAFE Act. Moreover, the SAFE Act itself contains a lengthy section detailing the General Assembly's findings and the reasons for the act. *See* Act 626 of 2021, § 2. The General

Assembly deliberately included these legislative findings in the SAFE Act, and the members of the House and Senate voted on the legislation with these findings included. Allowing any individual member's intent, as stated after the fact, to moot the language explicitly considered, voted on, and enacted by the General Assembly would be nonsensical and would undermine the entire legislative process. One member's intent related to an act of the General Assembly is simply irrelevant to the General Assembly's intent in enacting the law.

Finding that Representative Lundstrum's personal, subjective motive in supporting the SAFE Act is relevant to Plaintiffs' claims would allow future litigants to depose every member of the House and Senate when challenging legislation. As the Supreme Court explained in *Tenney*, "In times of political passion, dishonest or vindictive motives are readily attributed to legislative conduct and as readily believed. Courts are not the place for such controversies. Self-discipline and the voters must be the ultimate reliance for discouraging or correcting such abuses." *Tenney*, 341 U.S. at 378. Again, the motives of the individual members of the House and Senate are not relevant in this situation, and allowing Representative Lundstrum's deposition to proceed in this case would elevate one member's views over those explicitly stated by the General Assembly. Accordingly, this factor weighs in favor of applying deliberative process privilege.

*Availability of Other Evidence.* The amount of other evidence available to the Plaintiffs in this case is overwhelming. Plaintiffs have already sought—and received—thousands of pages of non-privileged documents from the non-party legislators in this case. As mentioned, the SAFE Act itself contains the General Assembly's findings and the reasons for the act. Plaintiffs also have available to them video footage of the legislative committee meetings and floor debates at which the SAFE Act was discussed, press conferences regarding the SAFE Act, and the votes

of all the members of the House and Senate on the SAFE Act. The abundance of other evidence in this case weighs against compelling testimony from Representative Lundstrum, and this factor therefore supports a finding that deliberative process privilege applies.

*Governmental Role in the Litigation.* This factor generally weighs in favor of disclosure when the legislature has a direct role in the litigation. *Bethune-Hill*, 114 F. Supp. 3d at 341. That is not the case here. "[M]erely voting for a law or signing a bill does not render a legislator's role 'direct.'" *Citizens Union of N.Y. v. Schneiderman*, 269 F. Supp. 3d 124, 169 (S.D.N.Y. 2017). In addition, the legislature's role "must be viewed vis-à-vis the [testimony] at issue and not on the basis of whether some other unrelated entity of the government is a party defendant in the main suit." *Garcia*, 709 F. Supp. at 300 (finding that this factor weighed in favor of applying deliberative process privilege when the subpoenaed government official was a non-party to a constitutional case). Plaintiffs seek disclosure of information from a non-party legislator whose only role is as one of many co-sponsors of a bill and one of nearly a hundred votes in its favor. Because the General Assembly and its members do not have a direct role in this litigation, this factor weighs in favor of holding that deliberative process privilege applies.

*Hindrance to Frank and Independent Discussion.* This factor examines the policy that underlies deliberative process privilege—whether disclosing the information at issue would chill legislative deliberation and discourage "frank and honest discussion among lawmakers." *Comm. for a Fair & Balanced Map*, 2011 U.S. Dist. LEXIS 117656, at *29; *see also Citizens Union*, 269 F. Supp. 3d at 170; *Bethune-Hill*, 114 F. Supp. at 342 (stating that a request for testimony is more burdensome than a request for documents). Courts "have taken this threat quite seriously[.]" *Page v. Va. State Bd. of Elections*, 15 F. Supp. 3d 657, 667 (E.D. Va. 2014).

16

When the information at issue is "confidential" or "concern[s] intimate legislative activities[,]" disclosure "should be avoided." *Comm. for a Fair & Balanced Map*, 2011 U.S. Dist. LEXIS 117656, at *32. Such information is at issue here. Plaintiffs seek information related to the drafting and enactment of legislation—core legislative activities that require the utmost "frank and honest discussion among lawmakers." Under Arkansas law, this information is confidential. Ark. Code Ann. § 10-2-129(b)-(d). Ark. Code Ann. § 10-2-129 provides that a legislative drafting request or information request, supporting documents for such a request, and the drafts and work product for the request are confidential. Under Ark. Code Ann. § 25-19-105(b)(7), unpublished memoranda, working papers, and correspondence of members of the General Assembly are exempt from disclosure under the Freedom of Information Act of 1967, Ark. Code Ann. §§ 25-19-101 to -112. Because this information is explicitly confidential under Arkansas law, it should be protected from disclosure here.

Compelling disclosure of this information in this case will lead to countless similar requests in the future. This will force members of the House and Senate to curtail their "frank and honest discussion" for fear that future litigants will call them to testify about their pre-decisional, deliberative, subjective thoughts on a legislative matter. Such a result would cause irreparable harm to the legislative process, which will impair the House and Senate's abilities to fulfill their duties to the residents of Arkansas. Thus, this factor weighs in favor of finding that deliberative process privilege applies.

The discovery Plaintiffs request seeks "pre-decisional, deliberative" evidence that "reflect[s] the subjective intent of" Representative Lundstrum. *Doe*, 788 F. Supp. 2d at 985; *see also Mo. Coalition for Env't Found*, 542 F.3d at 1211. Deliberative process privilege protects this information from discovery, *see Jeff D.*, 643 F.3d at 289, and all four factors of the balancing

17

test weigh in favor of applying the privilege. Thus, the Court should hold that deliberative

process privilege applies, and it should grant Representative Lundstrum's Motion to Quash.

## CONCLUSION

The information Plaintiffs seek to obtain by deposing Representative Lundstrum is related to core legislative functions, is pre-decisional and deliberative, and reflects her subjective intent. Compelling disclosure of this information will distract Representative Lundstrum from performing her legislative duties and threaten the integrity of the legislative process by curtailing her independence as a legislator. It will also open the door to a flood of similar requests by future litigants seeking to depose members of the General Assembly. Compelling disclosure of information related to Representative Lundstrum's decision-making process will cause a chilling effect, inhibiting honest communication between members of the House and Senate regarding legislative matters, and ultimately resulting in less sound governmental policy. All of these effects will threaten the ability of the House and Senate to serve Arkansans in the manner intended by those who elected the General Assembly's members.

If Representative Lundstrum's Motion to Quash and for Protective Order is denied, that outcome will impact not only Representative Lundstrum but all current and prospective members of the General Assembly, regardless of their political affiliation or the subject matter of the legislation they pursue. Such a decision could impact the legislative institution for years to come by chilling legislative deliberation and limiting the ability of Senators and Representatives to freely and frankly participate in legislative discussions. Legislative privilege and deliberative process privilege operate to prevent that precise outcome, and the relevant facts of this matter indicate that either principle should be invoked to quash the subpoena and prevent Representative Lundstrum's deposition. For those reasons, this Court should grant Representative Lundstrum's Motion to Quash and for Protective Order.

19

Respectfully submitted,

Matthew B. Miller (Ark. Bar No. 2002063)
**Bureau of Legislative Research**
One Capitol Mall, Fifth Floor
Little Rock, Arkansas  72201
Phone:  501-537-9122
Fax: 501-683-1140
millerm@blr.arkansas.gov

## CERTIFICATE OF SERVICE

I hereby certify that on _____May 19_____, 2022, I filed the foregoing document

with the Clerk of the Court for the Eastern District of Arkansas.  Participants in this case who are

registered CM/ECF users will be served by the CM/ECF system.

Matthew B. Miller