## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - x

DYLAN BRANDT, et al.,      :

     Plaintiff,    :

    v.        :

          :   Case No. 4:21-CV-00450-JM

LESLIE RUTLEDGE, et al.,    :

     Defendant.   :

          :

          :

          :

- - - - - - - - - - - - - - - - - - - - - - - - x

## RESPONSE IN OPPOSITION TO
## MOTION TO QUASH AND FOR PROTECTIVE ORDER

### INTRODUCTION

Representative Robin Lundstrum is the architect, author, and lead sponsor of the Health Care Ban, the law at the center of this case.  That she is the most knowledgeable person about *why* and *how* the Health Care Ban was passed is shown by her actions when the bill was presented to the General Assembly for consideration; after the Governor vetoed the bill and her efforts to override that veto; during her numerous, promotional speaking engagements touting the way in which the Health Care Ban was passed; and her efforts to get similar bans enacted throughout the nation, including Arkansas's neighboring state of Missouri.

Rep. Lundstrum's Motion to Quash is nothing more than an attempt to hide information that is highly relevant to this action.  Contrary to her argument, the

presence of an absolute legislative privilege is regularly rejected by Courts, and legislators are often called to testify in cases like this one where one of Plaintiffs' equal protection arguments is that the Health Care Ban was passed based on animus against transgender people.  Instead, courts use a five-factor balancing test to weigh the need for testimony against an interest in maintaining confidentiality.  Here, all factors involved in assessing the qualified legislative privilege weigh in favor of disclosure.

Lastly, and although not addressed in Rep. Lundstrum's brief, even if the legislative privilege applies to her work in the Arkansas legislature to pass the Health Care Ban (which it does not), that privilege does not apply to testimony concerning activities and communications outside "legitimate legislative activity," and there is no basis to shield Rep. Lundstrum from testifying about her dealings with lobbyists and legislators from other states to get similar laws passed there.  The depositions thus far in this action have revealed not only that Rep. Lundstrum, working with and through her liaison, Jerry Cox of Family Council, spearheaded the Health Care Ban and its passage,[1] but also that she has been in contact with Dr. Hiatt and Billy Burleigh (two of the Defendants' witnesses) during this litigation about

---

[1]     Exhibit 1 (GA-MEMBERS-001887 (email from Jerry Cox with draft language for Rep. Lundstrum)).

their testimony.[2]  These actions fall outside of the legislative deliberative process, and Plaintiffs should be allowed to explore them in a deposition.

In sum, the Motion to Quash should be denied because Rep. Lundstrum has highly relevant information about the passage of the Health Care Ban. Alternatively, should the Court be inclined to find that the legislative privilege *may* apply to some questions posed, Plaintiffs submit that the deposition should be allowed to proceed, at which time Rep. Lundstrum may raise legislative privilege, as warranted, but shall answer the questions posed so that the matter can be presented to the Court for *in camera* review at a later date.  *See Nashville Student Org. Comm.* v. *Hargett,* 123 F. Supp. 3d 967, 971-972 (M.D. Tenn. 2015) (adopting this approach).

Accordingly, the Motion to Quash should be denied and Plaintiffs should be permitted to depose Robin Lundstrum at a mutually agreed-upon date.

## BACKGROUND

Rep. Lundstrum, with the prominent and crucial support of several third-party lobbying groups, authored and shepherded the Health Care Ban through the Arkansas General Assembly.[3]  She has made numerous public statements about

---

[2]     *See* Exhibit 2 at 102:21-105:11 (excerpts from Burleigh deposition); Exhibit 3 at 32:9-33:6, 70:10-19 (excerpts from Hiatt deposition); Exhibit 4 (Hiatt Exhibit 22 (group text between Rep. Lundstrum, Sen. Clark, Dr. Hiatt, B. Burleigh, Q. Gonzalez, J. Cox, Dr. Conway, Dr. Crosland, C. Dean, and three others)); Exhibit 5 (Hiatt Exhibit 20).

[3]     *See* Exhibit 6 (HB1570 Legislative Information); Exhibit 7 (Act 626 (signed by Rep.

the Health Care Ban, including when the bill was presented to the General Assembly

for consideration;[4] after the Governor vetoed the bill;[5] during her numerous,

---

Lundstrum)); Exhibit 8 (Family Policy Foundation Statesmen Academy July 20-23, 2021 Agenda); Exhibit 9 (Family Policy Alliance Called Together Speaker Information); Exhibit 10 (EPPiC Broadcast, What's Next for the SAFE Act with Robin Lundstrum (August 17, 2021)), *also available at* https://podcast.app/whats-next-for-the-safe-act-with-robin-lundstrum-e145537661/ (audio of podcast no longer available on the internet).

[4]   *See* March 9, 2021 House Public Health, Welfare and Labor Committee Hearing, at 4:14:48, *available at* https://sg001-harmony.sliq.net/00284/Harmony/en/PowerBrowser/PowerBrowserV2/20210309/-1/21303?viewMode=1 (last accessed May 24, 2022); March 10, 2021 House Floor Meeting, at 2:07:19, *available at* https://sg001-harmony.sliq.net/00284/Harmony/en/PowerBrowser/PowerBrowserV2/20210325/-1/21305 (last accessed May 24, 2022); March 22, 2021 Senate Public Health, Welfare and Labor Committee Hearing, at 4:02:48, *available at* https://sg001-harmony.sliq.net/00284/Harmony/en/PowerBrowser/PowerBrowserV2/20210322/-1/21395?viewMode=1 (last accessed May 24, 2022); Tony Perkins, Washington Watch: Ark. Rep. Robin Lundstrum Urges Governor to Sign the SAFE Act & Protect Kids from Experimentation (April 1, 2021), at 1:45, *available at* https://www.youtube.com/watch?reload=9&app=desktop&v=-kfb-j4atWo (last accessed May 24, 2022); Problematic Women, 'Goal Is to Protect Children,' Lead Sponsor of Arkansas' Transgender Bill Says (April 8, 2021), at 3:30, *available at* https://www.listennotes.com/podcasts/problematic-women/goal-is-to-protect-children-bUTO-JyR3_B/ (last accessed May 24, 2022).

[5]   *See* Exhibit 4; Exhibit 3 (Hiatt Deposition at 70:13-71:2 (discussing group text of 12 individuals and identities of the people on it); Exhibit 11 (GA-MEMBERS-004078 (FRC April 14, 2021 email request for Lundstrum to provide guidance on Governor's line of attack on SAFE Act)*; see also* April 6, 2021 House Meeting, at 1:16:26 *available at* https://sg001-harmony.sliq.net/00284/Harmony/en/PowerBrowser/PowerBrowserV2/20210406/-1/21479?viewMode=1#agenda_ (last accessed May 24, 2022); Tony Perkins, Washington Watch: Ark. Rep. Robin Lundstrum on Arkansas Governor Asa Hutchinson's Decision to Veto the SAFE Act (April 5, 2021), *available at* https://www.tonyperkins.com/get.cfm?i=LR21D03 (last accessed May 24, 2022); Tony Perkins, Washington Watch: Ark. Rep. Robin Lundstrum Talks About Next Steps After the SAFE Act Veto by Gov. Hutchinson (April 6, 2021), *available at* https://www.youtube.com/watch?app=desktop&v=A5YevN0zmNw (last accessed May 24, 2022); The First, Arkansas Rep. Lundstrum Talks Vetoed Trans Bill (April 16, 2021), *available at* https://www.youtube.com/watch?app=desktop&v=fhLw_tiJCrA (last accessed May 24, 2022).

promotional speaking engagements;[6] and in connection with her efforts to get similar

bans enacted throughout the nation, including Arkansas's neighboring state of

Missouri.[7]

---

[6]   *See* Exhibit 12 (GA-MEMBERS-003862 (Lundstrum July 13, 2021 email to Dr. Hiatt requesting attendance at Family Policy Alliance "Gender Policy Issues" panel)); Exhibit 27 (FPA Gender Issues Policy Panel July 17, 2021 Email, including "Gender Issues Policy Panel – Outline.docx")); Exhibit 8; Exhibit 9; Exhibit 5 at July 22, 2021 (picture of Jerry Cox, Rep. Lundstrum, and Dr. Hiatt (virtual) at FPA panel); Exhibit 3 at 58:21-60:2 (confirming identities of individuals in picture); Exhibit 14 (GA-MEMBERS-003834 (email regarding Legislative Summit on Protecting Children from Sterilization with Rep. Lundstrum, Family Research Council, AR AG attorney Drake Moudy, and others)); Exhibit 15 (Hiatt Exhibit 34 (FRC Virtual SAFE Act Summit Oct. 28, 2021 Outline)); Exhibit 10; *see also* Family Research Council Action, Pray Vote Stand Summit 2021 with Brenton Netz, Leslie Rutledge, Brandon Showalter, Joseph Backholm (Oct. 18, 2021), *available at* https://www.youtube.com/watch?v=yCadmVUoaGs; Family Research Council, Ark. State Rep. Robin Lundstrum Shares How the SAFE Act Prioritizes the Wellbeing of Children (April 1, 2021), *available at* https://www.youtube.com/watch?v=97-PD4QRlUc; Family Policy Alliance, Ending Experimentation on Children (April 13, 2021), *available at* https://www.youtube.com/watch?app=desktop&v=fMDOYFODmnI&t=23s; Exhibit 16 (Hiatt Exhibit 28 (email from Cox on Rep. Lundstrum's behalf)); Exhibit 3 at 32:9-33:6 (confirming Jerry Cox was acting as Rep. Lundstrum's liaison regarding the SAFE Act); Exhibit 1 (Cox and Rep. Lundstrum coordinating Family Council's HB1570 Expert Briefing for legislators); Exhibit 13 (Hiatt Exhibit 32 (Family Council email confirming attendees)); Exhibit 4.

[7]   *See* Exhibit 17 (GA-MEMBERS-003769 (email with DE Senator Richardson)); Exhibit 18 (GA-MEMBERS-003825 (email with Family Research Council regarding meeting with UT President of the Senate Stuart Adams)); Exhibit 19 (GA-MEMBERS-003829 (email from Family Research Council updating Rep. Lundstrum on co-sponsors for MO bill)); Exhibit 20 (GA-MEMBERS-003880 (email sending HB1570 to OH Rep. Click)); Exhibit 21 (GA-MEMBERS-002139 (email from OH Rep. Click's office requesting meeting regarding SAFE Act)); Exhibit 22 (GA-MEMBERS-003597 (email sending Ohio HB 454 to Rep. Lundstrum)); Exhibit 23 (GA-MEMBERS-002143 (email with NH Rep. Hough)); Exhibit 24 (GA-MEMBERS-002806 (email with UT Rep. Shipp)); Exhibit 25 (GA-MEMBERS-002811 (email with IN Senator Raatz's office)); Exhibit 26 (GA-MEMBERS-003581 (email with IA Rep. Salmon's office)); *see also* Washington Watch with Tony Perkins, Ark. Rep. Robin Lundstrum on Missouri's SAFE Act (April 25, 2022), *available at* https://www.youtube.com/watch?app=desktop&v=UxjhkTUDENY.

The evidence from publicly available information and discovery taken in the case so far indicates that the Health Care Ban was part of a campaign, referred to as the *Promise to America's Children* developed by advocacy groups including the Family Policy Alliance to oppose the federal Equality Act (which would prohibit discrimination on the basis of sexual orientation and gender identity in employment and other areas) and to pass a variety of anti-LGBTQ bills including its so-called *Help not Harm* model legislation.[8]  That campaign specifically encourages states to enact bills to ban transition-related healthcare for minors, prohibit government funding of transition-related healthcare for anyone, prohibit transgender students from participating in school sports consistently with their gender identity, and authorize foster care agencies to exclude prospective families based on their religious objection to those families.[9]  After this Court entered a preliminary injunction prohibiting the Health Care Ban from going into effect, Rep. Lundstrum, along with Jerry Cox, president of Family Council—a partner organization of Promise to American's Children — and Dr. Roger Hiatt, Jr., one of Defendants'

---

[8]     *See* Family Policy Alliance, Ending Experimentation on Children: Livestream *available at* https://www.youtube.com/watch?v=fMDOYFODmnI&t=3s;   Family Policy Alliance, Help Not Harm: A National Child Safety Campaign (August 31, 2021), *available at* https://familypolicyalliance.com/press-releases/help-not-harm-a-national-child-safety-campaign/ (last accessed May 23, 2022) (quoting Rep. Lundstrum); Family Policy Alliance, STOP Transgender Experiments on Our Children! (August 30, 2021) (quoting Rep. Lundstrum), *available at* https://familypolicyalliance.com/issues/2021/08/30/stop-transgender-experiments-on-our-children/ (last accessed May 23, 2022).

[9]     Promise to America's Children, For Policy Makers, *available at* https://promisetoamericaschildren.org/for-policy-makers/ (last accessed May 24, 2022).

witnesses in this case, spoke on a Gender Issues Policy Panel at the "Called Together: Statesmen Academy Reunion and FPC Conference" in her capacity as a "Statesmen Academy alumna and author of Arkansas S.A.F.E. Act and the Promise to Arkansas's Children."[10]  There, Rep. Lundstrum explained how the Health Care Ban was part of a plan to enact the *Promise to America's Children* drafted by the Alliance Defending Freedom and put it into law.[11]  She also talked about how the Health Care Ban was just one part of a plan to put that resolution into law, starting with passage of the SAFE Act, prohibiting participation in women's sports (the GIRLS Act), and goals for the next legislative session: to restrict or prohibit LGBTQ activities in schools; to restrict sex education and LGBTQ programs; to increase ways for students to opt out of "objectionable" instruction; to address "privacy" in school restrooms and locker rooms by forcing students who are transgender to use restrooms and locker rooms that do not align with their gender identity; and to require schools to involve parents in students' "life-changing personal decisions" by alerting parents to students' sexuality or gender identity.[12]  Even after this Court issued a preliminary injunction, Rep. Lundstrum played a prominent role in

---

[10]   *See* Exhibit 27; Exhibit 8; Exhibit 9; Exhibit 5 at July 22, 2021 (picture of Jerry Cox, Rep. Lundstrum, and Dr. Hiatt (virtual) at FPA panel); Exhibit 7 at 58:21-60:2 (confirming identities of individuals in picture).

[11]   *See* Exhibit 13.

[12]   *See id.*

promoting the Promise to America's Children, appearing as recently as April 22, 2022 on *Washington Watch with Tony Perkins* and encouraging Missouri legislators to pass a health care ban there.[13]

## ARGUMENT

## I.   THERE IS NO ABSOLUTE LEGISLATIVE PRIVILEGE PROHIBITING REPRESENTATIVE LUNDSTRUM'S DEPOSITION

Relying on inapplicable Arkansas law and a handful of out-of-Circuit, district court cases, Rep. Lundstrum claims an absolute privilege from testifying about anything within "the sphere of legitimate legislative activity." (Mot. at 8 (citing *Cunningham* v. *Chapel Hill, ISD*, 438 F. Supp. 2d 718, 722 (E.D. Tex. 2006)). Neither source establishes an absolute legislative privilege.

*First*, as the Motion concedes, the legislative privilege as applied to state legislators is a matter of federal common law.[14] *Doe* v. *Nebraska*, 788 F. Supp. 2d 975, 983 (D. Neb. 2011) ("Courts that have addressed the issue [of legislative privilege] in cases based on federal question jurisdiction have routinely applied federal privilege law.") (citations omitted); *Nashville Student Organizing Committee*, 123 F. Supp. 3d at 969 ("[W]hether the Legislators enjoy immunity or

---

[13]   Tony Perkins, Washington Watch (April 22, 2022), at 37:30-42:40, *available at* https://www.tonyperkins.com/get.cfm?i=LR22D16.

[14]   *See* Rep. Lundstrum's Motion to Quash and For Protective Order (ECF 120 at 7) ("Because this Court's jurisdiction rests with a federal question, federal common law privileges apply.").

privilege is a matter of federal common law, not a matter of federal or state constitutional law.") (citations omitted).  The text of the Arkansas Constitution, and cases interpreting the Arkansas Speech or Debate Clause,[15] are thus irrelevant to this legislative privilege inquiry.  *Nashville Student Organizing Committee,* 123 F. Supp. 3d at 969; *see also Favors* v. *Cuomo*, 285 F.R.D. 187, 208 (E.D.N.Y. 2012) ("By its terms, the Speech or Debate Clause applies only to federal legislators.  And while most states . . . have ratified similar provisions in their constitutions, federal courts are not bound by those state protections where, as here, the plaintiffs have asserted federal claims.").

  *Second*, while some courts have found an evidentiary privilege arising from the doctrine of legislative immunity that is absolute, the weight of authority holds that there is only a qualified legislative privilege over state legislators' written and testimonial evidence.[16]  *Nashville Student Organizing Committee*, 123 F. Supp.

---

[15] Rep. Lundstrum's reliance on *Protect Fayetteville* v. *City of Fayetteville*, which deals with the interpretation and application of the Speech or Debate clause of the Arkansas Constitution and which does not implicate federal common law, is therefore misplaced. 2019 Ark. 28, at 2, 566 S.W.3d 105, 107.

[16] Many of the cases cited by Rep. Lundstrum that support applying an absolute privilege are inapposite.  In some, the holding does not concern the legislative privilege over testimonial evidence at all.  *See*, *e.g.*, *Eastland* v. *U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975) (posing the question whether courts can provide injunctive relief to enforce a federal congressional subpoena); *Spallone* v. *United States*, 493 U.S. 265, 278 (1990) (concerning the imposition of contempt sanctions on the legislature for failure to vote in favor of a particular piece of legislation).  Other cases have been overruled or criticized.  *See Simpson* v. *City of Hampton, Va.*, 166 F.R.D. 16, 19 (E.D. Va. 1996) (criticized in *Bethune-Hill* v. *Virginia State Bd. of Elections*, 114 F. Supp. 3d, 323, 326 n.3 (E.D. Va. 2015)).  Still others have provided that the legislative privilege, even under the doctrine of legislative

3d at 969 ("In cases involving constitutional challenges related to voting rights, the vast majority of federal courts have found that the federal common law also affords state legislators only a qualified (*i.e.*, not absolute) legislative privilege against having to provide records or testimony concerning their legislative activity."); *S.C. State Conf. of the NAACP* v. *McMaster,* 2022 U.S. Dist. LEXIS 24094, *11 (D.S.C. Feb. 10, 2022) ("Applying the Supreme Court's guidance, district courts, including several in the Fourth Circuit, have held that '[w]hile legislative privilege is undoubtedly robust, the Supreme Court's decisions make clear that the privilege does not *absolutely* protect state legislative officials from discovery into communications made in their legislative capacity.'" (quoting *Benisek* v. *Lamone,* 241 F. Supp. 3d 566, 574 (D. Md. 2017)).  Indeed, in prior briefing on this issue, the Legislators' conceded that "[c]ourts have generally settled on a five-factor test when analyzing claims of legislative privilege."  (ECF No. 94 at 11.)

In keeping with the contemporary weight of authority on this issue, this court should apply a qualified legislative privilege and use a balancing test to determine whether to allow the deposition of Rep. Lundstrum to proceed.  *See Cave*

---

immunity, is not absolute.  *See Vill. of Arlington Heights* v. *Metro. Hous. Dev. Corp.*, 429 U.S. 252, n. 20 (1977) (noting that "Respondents were allowed, both during the discovery phase and at trial, to question Board members fully about materials and information available to them at the time of decision."); *Doe*, 788 F. Supp. 2d at 984 ("That is, state and local officials *may be* protected from testifying, but are not necessarily exempted from producing documents.") (emphasis added).

v. *Thurston*, 2021 WL 4936185, at *5 (E.D. Ark. Oct. 22, 2021) (observing, in a challenge to legislative privilege claims, that "a number of cases, particularly those involving potential violations of constitutional rights, have allowed queries into legislators' motivations"); *Rodriguez* v. *Pataki*, 280 F. Supp. 2d 89, 100-01 (S.D.N.Y. 2003) (holding that state legislative privilege is "at best" qualified and applying a five-factor balancing test to determine "to what extent the privilege should be honored"); *Jackson Municipal Airport Authority* v. *Bryant*, 2017 WL 6520967, at *6 (S.D. Miss. Dec. 19, 2017) (applying the *Rodriguez* five-factor balancing test and holding "the legislative privilege for state lawmakers is, at best, one which is qualified") (*quoting Jefferson Community Health Care Centers, Inc.* v. *Jefferson Parish Government*, 849 F.3d 615, 624 (5th Cir. 2017)); *Angelicare, LLC* v. *St. Bernard Parish*, 2018 WL 1172947 at *8 (E.D. La. Mar. 6, 2018) (same); *Citizens Union of City of New York* v. *Att'y Gen. of New York*, 269 F. Supp. 3d 124, 155 (S.D.N.Y. 2017) ( "Case law makes clear the [state official legislative] privilege is not absolute."); *Nashville Student Organizing Committee*, 123 F. Supp. 3d at 969.

## II.   THE FIVE-FACTOR BALANCING TEST FAVORS ALLOWING DEPOSITION

In determining application of the qualified legislative privilege, the court considers: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the "seriousness" of the litigation and the issues

involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable."[17] *Nashville Student Organizing Committee*, 123 F. Supp. 3d at 970 (holding in favor of permitting depositions of legislators after weighing these five factors). When reviewed in light of the facts and circumstances presented here, it is clear that the Court should allow the deposition of Representative Lundstrum to proceed in this case.

*First*, it cannot be true that, as Rep. Lundstrum suggests, the text of the statute alone is the source for identifying legislative intent. Courts routinely reject this argument because rarely will a legislator openly claim discriminatory intent. *Veasey* v. *Perry*, 2014 WL 1340077, at *3 (S.D. Tex. Apr. 3, 2014) (noting the "practical reality that officials 'seldom, if ever, announce on the record that they are pursuing a particular course of action because of their desire to discriminate[.]'") (citations omitted); *Cano* v. *Davis,* 193 F. Supp. 2d 1177, 1181-82 (C.D. Cal. 2002) ("When a plaintiff must prove discriminatory intent on the part of a legislature, the statements of legislators involved in the process, especially leaders and committee chairmen, as well as the authors of the legislation involved, may in some instances

---

[17]    Rep. Lundstrum lays out a four-factor test in her Motion to Quash, citing *Doe* v. *Nebraska*. Though some courts, including *Doe*, utilize a four-factor test, the majority add a fifth factor—the seriousness of the litigation. The other four factors cited by Rep. Lundstrum are the same as detailed here.

be the best available evidence as to legislative motive" and "[m]otive is often most easily discovered by examining the unguarded acts and statements of those who would otherwise attempt to conceal evidence of discriminatory intent"). And if all the Court could rely on in discerning legislative intent was statutory text, Plaintiffs would be limited to challenging facially discriminatory laws. In fact, *Doe* directly rejects the argument that "only the plain language of the statute and the official legislative history may be used to determine the express or implied intent of the legislature." *Doe*, 788 F. Supp. 2d at 981. Rather, it is clear that legislators' intentions in passing the Health Care Ban are relevant to the question of whether the Health Care Ban violates the equal protection rights of transgender minors. *S.C. State Conf. of the NAACP,* 2022 WL 425011, at * 19 (permitting the depositions of state legislators and their staff because "the discovery sought is likely the only way to obtain direct evidence of discrimination."); *Citizens Union*, 269 F. Supp. 3d at 167 ("[C]ases involving allegations of discrimination . . . necessarily implicate the purpose and motives behind the challenged law" and for these cases "discovery into the legislative decision making process might be relevant because intent is an element of the claim or otherwise important to establishing the claim.").

Though Rep. Lundstrum may have been only one vote in favor of the Ban, she also was the lead sponsor and played an instrumental role in the passage of the Ban and in advocating for the passage of similar laws in other states. Rep.

Lundstrum's intent is, therefore, particularly relevant.[18]  Further, though "it may be true that 'the individual motivations' of particular legislators may be neither necessary nor sufficient for Plaintiffs to prevail. . . . that does not mean the evidence cannot constitute an important part of the case presented against, or in favor of, the [legislation]."  *Bethune-Hill*, 114 F. Supp. 3d at 323; *see also Mich. State A. Philip Randolph Inst.* v. *Johnson,* 2018 WL 1180886, *10-11 (E.D. Mich. Mar. 7, 2018) (finding deposition testimony of individual legislators relevant and admissible for purposes of showing motive because even "'[a] racially tinged statement by one legislator' made during a committee meeting" is relevant) (quoting *Ne. Ohio Coal. for the Homeless* v. *Husted,* 837 F.3d 612, 637 (6th Cir. 2016)).  Additionally, given Rep. Lundstrum's prominent role in the enactment of the Health Care Ban, she likely has knowledge about other legislators who supported the law.

    *Second*, as detailed in Plaintiffs' Motion to Compel (ECF 123), Plaintiffs have already sought evidence of discriminatory intent from other sources.

---

[18]     Rep. Lundstrum cites two cases for the proposition that "what any particular legislator may have said about a law" is less relevant to legislative intent than the statutory text itself. Neither is persuasive here.  *Yamaha Motor Corp., U.S.A.* v. *Richard's Honda Yamaha* centers on an interpretation of Ark. Code Ann. § 23-112-311 (a) and (b), and does not concern federal common law at all, let alone the legislative privilege.  344 Ark. 44, 54, 38 S.W.3d 356, 362 (2001).  In that case, the court on appeal found that an administrative executive at the DMV should not have been allowed to testify regarding the legislative intent of an administrative regulation.  The premise of this holding was that under Arkansas law, statutory interpretation is limited to the text of an unambiguous statute.  Similarly, *S.W. Ark. Comm., Inc.* v. *Arrington* is an Arkansas Supreme Court case concerning the interpretation and application of an amendment to the Constitution of Arkansas, and does not implicate federal common law on legislative privilege.  296 Ark. 141, 146, 753 S.W.2d 267, 269 (1988).

However, "in discrimination cases . . . evidence needed to demonstrate invidious or discriminatory motives or self-dealing may not be available from sources other than individual legislators; indeed, the legislator may have actively attempted to hide evidence of self-dealing or unlawful motives." *Citizens Union*, 269 F. Supp. 3d at 167. And, "[w]hile [circumstantial] evidence is valuable, it is not a substitute for the ability to depose a witness and obtain direct evidence of motive and intent, thus avoiding the potential ambiguity of circumstantial evidence." *Benisek* v. *Lamone*, 241 F. Supp. 3d 566, 576 (D. Md. 2017); *see also S.C. State Conf. of the NAACP*, 2022 WL 425011, at *18-19.

*Third*, the allegations in Plaintiffs' complaint allege serious issues of constitutional law implicating the constitutional rights and the health of the minor patients and other Arkansas adolescents with gender dysphoria, parents of transgender children, and health care providers. Rep. Lundstrum does not dispute this; in fact, she does not even mention the seriousness of litigation as an important factor for this Court to consider.

*Fourth*, Rep. Lundstrum argues that her role in the litigation is not direct because she is a third party to the action and hers was one of "nearly 100 votes in favor of the bill." (ECF 120 at 11.) Even if Rep. Lundstrum's only role had been to vote in favor of the Health Care Ban—in fact Rep. Lundstrum played a direct role in the drafting, promotion, and passage of the Ban—because legislative intent is at

issue in this case, that role *is* direct.  *See Citizens Union*, 269 F. Supp. 3d at 169 (cited by Rep. Lundstrum) (distinguishing between cases where discriminatory intent is and is not alleged and finding that where "legislators are accused of intentional discrimination or self-dealing in connection with their legislative acts . . . their motivations and considerations 'to a large degree, are the case.'") (citations omitted).  Further, though Rep. Lundstrum was one of "nearly 100" legislators to vote in favor of the Health Care Ban, she was the lead sponsor of the Ban, was heavily involved in getting it passed, and has been advocating in favor of passing a similar bill in other states.  This makes her role particularly direct.

*Fifth*, Rep. Lundstrum exaggerates when she claims that allowing her deposition to proceed in this case would be "tantamount to a judicial endorsement of requests to depose members of the General Assembly in all cases" and would subject legislators to depositions on a "never-ending basis."  (Mot. at 6.)  There is nothing new in holding that state legislators are entitled to a qualified legislative privilege.  Many courts have made clear that the legislative privilege is qualified, and disclosure may be warranted, when it is asserted in cases challenging the constitutionality of a law, and specifically where discriminatory intent is alleged. *Newport Pacific Inc.* v. *County of San Diego*, 200 F.R.D. 628, 640 (S.D. Cal. 2001) ("However, if because of this case, members of government agencies acting on

behalf of the public at large are reminded that they are subject to scrutiny, a useful purpose will have been served.").[19]

In sum, because this important constitutional case revolves around the actions of Rep. Lundstrum in passing the Health Care Ban, Plaintiffs' need for testimony from Rep. Lundstrum outweighs the protection offered by the qualified legislative privilege. *See Benisek*, 241 F. Supp. 3d at 577 (finding that the legislative privilege is not absolute and, applying the five-factor balancing test, allowing legislators' depositions); *S.C. State Conf. of NAACP*, 2022 U.S. Dist. LEXIS 24094, at *24 ("Plaintiffs, at a minimum, are entitled to the following discovery: . . . 1. Depositions of all legislators, staff (including Map Room staff) and consultants involved in the development, design and/or revisions of H. 4493."); *Whitford* v. *Gill*, 331 F.R.D. 375, 380 (W.D. Wis. 2019), *order vacated on other grounds, appeal dismissed sub nom. Whitford* v. *Vos*, No. 19-2066, 2019 WL 4571109 (7th Cir. July

---

[19]   Rep. Lundstrum argues that "to compel the disclosure of communications involving legislators can all too easily be distorted to undermine the democratic process." (ECF 120 at 12.) But the two cases she cites to support this claim are far removed from requiring the deposition of a legislator to uncover evidence of discriminatory intent in the passage of legislation. *United States* v. *Rayburn House Off. Bldg., Room 2113, Washington, D.C. 20515* involved the search of a federal congressional office and the seizure of documents therein. 497 F.3d 654, 661 (D.C. Cir. 2007). The question on appeal was "whether the procedures under which the search was conducted were sufficiently protective of the legislative privilege" as delineated in the Speech or Debate Clause. *McCambridge* v. *City of Little Rock* is an Arkansas Supreme Court case regarding a conflict between an individual's right to privacy and the public's right to disclosure under the Arkansas Freedom of Information Act. 766 S.W. 2d 909, 911 (1989). The case dealt with whether to disclose to the public evidence obtained in a murder investigation, and did not implicate the legislative privilege at all.

11, 2019) ("So we will grant the motion to compel Vos's deposition"); *see also Latin Am. Citizens* v. *Abbott*, 2022 WL 1570858 (W.D. Tex. May 18, 2022)("[T]he Court does not think the burden of having to sit for a deposition outweighs the relevant information the United States and private Plaintiffs may obtain.").[20]

## III.   THE LEGISLATIVE PRIVILEGE DOES NOT APPLY TO NON-LEGISLATIVE ACTS

Even if an absolute legislative privilege applied, this would not prevent Plaintiffs from deposing Rep. Lundstrum concerning topics outside "the sphere of legitimate legislative activity." (*See* Mot. at 8 (citing *Cunningham*, 438 F. Supp. 2d 718).)   The legislative privilege, whether absolute or qualified, only protects legislative acts.   *See Latin Am. Citizens,* 2022 WL 1570858 at *8-9 (recognizing "there are other purposes for deposing the Legislators.   They may have relevant, non-privileged information about topics 'such as political behavior, the history of discrimination, and socioeconomic disparities.'"); *Favors*, 285 F.R.D. at 209 ("State legislative privilege in federal question cases protects state legislators and

---

[20]   Notably, in *Latin Am. Citizens*, the court found that "the privilege is not so broad as to compel the Court to quash the deposition subpoenas, modify them, or enter a protective order prohibiting questions about topics that are not strictly within the public record." 2022 WL 1570858 *6-7.   Rather, the Court allowed the deposition to proceed with the caveat that the legislator could assert the privilege in response to a question, answer the question in full, and then, if the response was intended to be used at trial, the Court would review *in camera* along with a motion to compel.   *Id*. at *9-10.

their staffs from compelled disclosure of documentary and testimonial evidence with respect to actions within the scope of legitimate legislative activity.").

The "scope of legitimate legislative activity" encompasses "legislative work product and confidential deliberations (including communications even as between political adversaries)" and extends "to staffs (and retained experts)." *Favors*, 285 F.R.D. at 210. However, legislative activity *does not* include conversations between outside lobbyists or others outside the legislature. *See Rodriguez*, 280 F. Supp. 2d at 101, aff'd, 293 F. Supp. 2d 302 ("[A] conversation between legislators and knowledgeable outsiders, such as lobbyists, to mark up legislation [is] a session for which no one could seriously claim privilege."); *Michigan State A. Philip Randolph Inst.*, 2018 WL 1465767, at *7 ("But communications between legislators or their staff and any third party are not protected by the legislative privilege.") (citations omitted).

As discussed above, in addition to deposing Rep. Lundstrum about her legislative activity, Plaintiffs seek to question Rep. Lundstrum about three non-legislative topics which the privilege cannot cover. *First*, the Plaintiffs seek information regarding meetings with advocacy groups and lobbyists related to the Health Care Ban. As discussed above, such acts are generally not considered within the sphere of "legitimate legislative activity" which the privilege protects. *Second*, the Plaintiffs seek to ask Rep. Lundstrum about statements she has made outside of

the legislative arena regarding the Health Care Ban and its purpose, including documents she has produced in this litigation.

*Third,* Plaintiffs seek to question Rep. Lundstrum about her activism around gender-affirming medical care and the *Promise to America* in other states. The majority of this activism occurred after the passage of the Health Care Ban, and it is not protected by legislative privilege. *See Bethune-Hill*, 114 F. Supp. 3d at 343 ("The privilege only protects 'integral steps' in the legislative process and does not extend to commentary or analysis following the legislation's enactment."). Moreover, even if such activism predates the passage of the Health Care Ban, it is not protected by legislative privilege because communications with interested outsiders constitutes communication with a "third party" not covered by the privilege. *See Michigan State A. Philip Randolph Inst.*, 2018 WL 1465767, at *7; *League of Women Voters of Michigan* v. *Johnson*, 2018 WL 2335805, at *6 (E.D. Mich. May 23, 2018) ("For any relevant documents or information that were shared with third parties sought by Plaintiffs, that might have been protected by the legislative privilege, the privilege is waived.") (citations omitted). Thus, even if a legislative privilege applied to Rep. Lundstrum's activities and motivation in passing the Health Care Ban (it does not), Plaintiffs should still be permitted to depose Rep. Lundstrum on these relevant, non-privileged topics.

## CONCLUSION

Rep. Lundstrum played a pivotal role in drafting, sponsoring, and passing the Health Care Ban in Arkansas. She met and corresponded with lobbying groups associated with a nationwide campaign to restrict transgender healthcare and since the Ban passed she has been working to pass similar legislation in other states. This work is not protected by the legislative privilege and does not serve as a reason to bar Rep. Lundstrum's deposition. For those topics over which the legislative privilege could apply, this court should adopt a qualified privilege and should allow the deposition to proceed in full because Rep. Lundstrum's testimony is highly relevant, there is no available alternative, the litigation is serious, Rep. Lundstrum played a direct role in creating and passing the law at issue in the litigation, and disclosure will not chill any of the Legislature's future deliberations.

Dated: May 24, 2022

*Leslie Cooper*
Leslie Cooper                            Beth Echols, Ark. Bar No. 2002203
Chase Strangio*                          Christopher Travis, Ark. Bar No. 97093
American Civil Liberties Union           Drake Mann, Ark. Bar No. 87108
Foundation                               Gill Ragon Owen, P.A.
125 Broad St.                            425 W. Capitol Avenue, Suite 3800
New York, NY 10004                       Little Rock, AR 72201
Telephone: (917) 345-1742                Telephone: (501) 376-3800
lcooper@aclu.org                         echols@gill-law.com
cstrangio@aclu.org                       travis@gill-law.com
*Attorneys for the Plaintiffs*           mann@gill-law.com
                                         *On behalf of the Arkansas Civil Liberties*
                                         *Union Foundation, Inc.*
                                         *Attorneys for the Plaintiffs*

Breean Walas, Ark. Bar No. 2006077
Walas Law Firm, PLLC
P.O. Box 4591
Bozeman, MT 59772
Telephone:  (501) 246-1067
breean@walaslawfirm.com
*On behalf of the Arkansas Civil
Liberties Union Foundation, Inc.*
*Attorneys for the Plaintiffs*

Sarah Everett, Ark. Bar No. 2017249
Gary Sullivan, Ark. Bar No. 92051
Arkansas Civil Liberties Union
Foundation, Inc.
904 W. 2nd Street
Little Rock, AR 72201
Telephone:  (501) 374-2842
sarah@acluarkansas.org
*Attorneys for the Plaintiffs*


Garrard R. Beeney*
Jonathan J. Ossip*
Alexander S. Holland*
Brandyn Rodgerson*
Emily T. Armbruster*
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Telephone:  (212) 558-4000
beeneyg@sullcrom.com
ossipj@sullcrom.com
hollanda@sullcrom.com
rodgersonb@sullcrom.com
armbrustere@sullcrom.com
*Attorneys for the Plaintiffs*

Laura Kabler Oswell*
Duncan C. Simpson LaGoy*
Sullivan & Cromwell LLP
1870 Embarcadero Road
Palo Alto, CA 94303
Telephone:  (650) 461-5600
oswell@sullcrom.com
simpsond@sullcrom.com
*Attorneys for the Plaintiffs*


Daniel J. Richardson*
1700 New York Avenue NW
Suite 700
Washington, DC 20006
Telephone: 202-956-7500
richardsond@sullcrom.com

*Attorney for Plaintiffs*

*Admitted pro hac vice