IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**DYLAN BRANDT ET AL.**                                                                 **PLAINTIFFS**

**vs.**                                         **NO. 4:21-CV-00450-JM**

**LESLIE RUTLEDGE ET AL.**                                                          **DEFENDANTS**

**RESPONSE IN OPPOSITION TO MOTION TO COMPEL**

Representative Mary Bentley, Senator Alan Clark, Representative Robin Lundstrum, Representative Marcus Richmond, and Representative Jim Wooten (collectively, the "Legislators") respectfully submit this response to the Motion to Compel, *see* ECF Nos. 122-123 (the "Motion) filed on behalf of Plaintiffs. The Court should deny the Motion summarily due to Plaintiffs' non-compliance with Rule 37(a)(1) of the Federal Rules of Civil Procedure, Local Rule 7.2(g), and the pre-trial scheduling directives entered by the Court. Should the Court reach the merits of the Motion, however, it should still meet the same fate—denial—because the materials Plaintiffs seek are protected by the legislative privilege.

**I.    INTRODUCTION**

For more than seventy years, federal courts have repeatedly recognized the existence of a common law legislative privilege. This privilege applies to state legislators. And it has been applied by courts throughout the United States to shield legislators from harassment and burdensome participation in legal matters that may distract from the discharge of official duties or, worse, chill the free and robust debate which makes our democracy work.

The Eighth Circuit has yet to define the precise contours of the common law legislative privilege. Plaintiffs believe this absence of precedent means that the Legislators enjoy no privilege at all, at least not in this case. To be clear, the position Plaintiffs take in the Motion is that the

legislative privilege does not apply to a single document withheld by the Legislators—not to communications between members of the General Assembly, not to draft legislation, not to discussions with legislative staff.  No federal court has adopted such a radical approach in a civil case involving a constitutional challenge.  And the present case is not one in which a new path should be blazed.  The Court should thus deny the Motion.

## II.  BACKGROUND

Given that Plaintiffs have initiated several disputes in the weeks immediately preceding the Court's discovery deadline, the Legislators see no need for a lengthy discussion of the relevant facts.[1]  Plaintiffs continue to fight with the Legislators over a series of subpoenas served in November 2021.  *See, e.g.*, ECF No. 84-3, at 4-5 (document requests served on Rep. Lundstrum).  After overruling preliminary relevance objections, the Court ordered the Legislators to file a privilege log.  ECF No. 98, at 1.  The Legislators complied.  *See See* ECF No. 109, at 1.

Plaintiffs' briefing reads as though the Legislators refused to produce any documents at all.  This is not true.  The Legislators produced 6,381 pages of documents in response to the subpoenas.  *See id.*  While Plaintiffs now complain that privilege does not apply to documents that "contain purely factual information," "documents post-dating the passage" of The Save Adolescents from Experimentation (SAFE) Act (the "Act"), or "communications between the Legislators and third parties," *see* ECF No. 123, at 7-8, the Legislators have not taken such a bright-line approach withheld any documents strictly on these bases.  Plaintiffs know this, as they are in possession of *non-privileged* documents involving purely factual matters, materials sent or received after the passage of the Act, and certain communications between the Legislators and third parties.  *See,*

---

[1] On this point, the Legislators incorporate the briefing on Rep. Lundstrum's request for a protective order.  *See* ECF No. 120, at 2-6 (addresses various factual issues).

*e.g.*, ECF No. 119-1 (communication with third party on matter unrelated to legislative activity); ECF No. 119-2 (communication sent after the passage of the Act on non-privileged matter).

Though they received the privilege log on March 24, 2022, Plaintiffs took no action for nearly two months on matters related to the subpoenas. Plaintiffs never inquired as to a single document withheld on the basis of any privilege, legislative or otherwise. Nor did Plaintiffs attempt to initiate a meet-and-confer on any specific document withheld. They instead filed the Motion, asking the Court to compel the production of "*all documents* . . . withheld on the basis of legislative privilege." ECF No. 123, at 2 (emphasis added).

### III.   ARGUMENT

By asking for the compulsory production of "all documents . . . withheld on the basis of legislative privilege," Plaintiffs in essence ask this Court to rule that there is no common law privilege for state legislators, at least not in Arkansas. While the scope of the privilege remains undefined in the Eighth Circuit, ample authority supports the application of robust privilege protection here. Forced disclosure of all 227 documents in dispute will pave the way for litigants in *civil* cases to forever seek, and acquire, the confidential communications of members of our General Assembly. The effect of such a ruling cannot be understated. As recognized by federal courts throughout the United States, the common law legislative privilege serves to facilitate the lawmaking process—it allows elected officials to candidly perform their legislative duties without fear of harassment or time-consuming entanglement in litigation filed by partisan groups. The leadership of the General Assembly recognized this very concern and has filed an *amicus* brief in support of the Legislators' position. *See generally* ECF No. 128 (*amicus* brief filed by President Pro Tempore of the Senate, on behalf of the Arkansas Senate, and Speaker of the House of Representatives, on behalf of the Arkansas House of Representatives).

The present circumstances dictate that the Motion be denied for three reasons:

- *First*, the Motion is untimely, having been filed after the Court's deadline to file discovery-related motions expired.

- *Second*, Plaintiffs filed the Motion without first conferring with the Legislators on the specific matters in dispute, a violation of (among others) Local Rule 7.2(g).

- *Third*, the materials sought by Plaintiffs are privileged.

    o The Court should employ an absolute legislative privilege consistent with the Supreme Court's decision in *Tenney v. Brandhove*, 341 U.S. 367 (1951), rather than a qualified privilege more appropriate for cases involving alleged violations of federal criminal law.

    o Alternatively, even if a qualified privilege is applied, the documents still receive protection under the four-factor test utilized by other courts within the Eighth Circuit. *See Doe v. Nebraska*, 788 F. Supp. 2d 975 (D. Neb. 2011).

In addition, prior to the production of any document listed on the Legislators' privilege log, the Court should conduct *in camera* review, as Plaintiffs' overbroad descriptions of the documents (*e.g.*, "purely factual," "post-dating" the passage of the act, or "communications with third parties") listed do not accurately reflect the actual bases of the Legislators' claims of privilege.

**A.      The Motion Is Untimely.**

The Amended Final Scheduling Order entered by the Court required that "[a]ll discovery requests and motions [] be filed sufficiently in advance of [the Court's May 26, 2022 discovery deadline] to allow for a timely response." ECF No. 99, at 1. The Legislators previously raised

this issue in their preliminary response to the Motion. *See* ECF No. 127, at 3 n.2.[2] And Plaintiffs concede that they missed the deadline, though they "regret this inadvertent error." *See* ECF No. 129, at 4 n.4. Non-compliance is thus undisputed. Plaintiffs should not be rewarded for their failure to file the Motion on a timely basis, especially after they failed to confer with the Legislators beforehand. The Court should deny the Motion on this basis alone.

**B.     The Motion Is Subject to Summary Dismissal Because Plaintiffs Failed to Satisfy Their Meet-and-Confer Obligations.**

Rule 37(a)(1) requires that a motion to compel "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Local Rule 7.2(g) includes a similar requirement as to "the specific issue or issues in dispute." Local R. 7.2(g). The Court may address non-compliance by summarily dismissing the discovery motion. *B&B Hardware, Inc. v. Fastenal Co.*, No. 4:10CV00317 BRW/JTR, 2011 WL 2115546, at *3-4 (E.D. Ark. May 25, 2011) (denying "an *anticipatory or preemptive* Motion to Compel").

As described in the Legislators' preliminary response, Plaintiffs made no effort whatsoever to confer about the 227 documents now at issue. The Legislators thus learned, for the first time in the Motion, (1) that Plaintiffs believe that no legislative privilege *at all* applies in this case; (2) that Plaintiffs maintain that no privilege attaches to any communications sent or received after the passage of the Act, regardless of whether such communications involve matters of legislative activity; (3) that Plaintiffs contend that the Legislators cannot assert privilege over draft legislation or communications with members of the Bureau of Legislative Research ("BLR"); (4) that Plaintiffs ask the Court to apply bright-line rule that forces the disclosure of any communications

---

[2] The Legislators hereby incorporate their preliminary response by reference. *See* Fed. R. Civ. P. 10(c) (permitting incorporation by reference).

with third parties; and (5) that Plaintiffs endorse a five-factor qualified privilege as to any documents withheld. Perhaps the parties could have worked out some specific issues on the privilege without burdening the Court. But Plaintiffs robbed the Legislators of any opportunity to do so.[3] The Court should deny the Motion on this basis.

C.   **Legislative Privilege Protects the Documents Plaintiffs Seek.**

The legislative privilege flows from the Constitution's speech or debate clause, which provides that "for any speech or debate in either house," members of the General Assembly "shall not be questioned in any other place." U.S. Const. art. I, § 6. The Supreme Court has held that the clause must be read "broadly" in order to protect legislative communications, draft legislation, and motivation evidence and ensure "that the legislative function . . . may be performed independently." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975). Plaintiffs seek to strip the Legislators of this right. The Court should not allow this and instead recognize an absolute privilege consistent with the Supreme Court's decision in *Tenney*. In the alternative, should the Court instead choose to apply a qualified privilege in the present case, the documents

---

[3] This is especially concerning in light of the inconsistent positions taken by Plaintiffs throughout the litigation. With respect to this instant matters of legislative privilege, Plaintiffs originally told the Court that it would be "purely academic to provide an in-depth analysis of th[e] [legislative] privilege[]" without the benefit of a privilege log. ECF No. 85, at 7 n.9. Of course, Plaintiffs engaged in no further "analysis" of the privilege after the Legislators filed their privilege log, instead choosing to file the Motion without conferring as required by Local Rule 7.2(g) and the Court's Amended Final Scheduling Order.

More recent filings by Plaintiffs further highlight this problem. In response to another non-party's motion for protective order, Plaintiffs chastised his counsel's failure "to speak with Plaintiffs at any point about this matter." ECF No. 135, at 2. Without citing Rule 7.2(g) or the Amended Filing Scheduling Order (a telling omission), Plaintiffs urged the Court to deny the request for a protective order because the non-party's "conduct f[ell] well short of the parties' obligation to meet and confer." *Id.* at 9. Meet-and-confer obligations run both ways. Plaintiffs apparently believe otherwise.

sought in the Motion still receive privileged protection under the four-factor test articulated by the District of Nebraska in *Doe*.

### 1. The Documents Listed on the Privilege Log Are Absolutely Shielded from Disclosure.

The United States Supreme Court has long recognized a broad right "of legislators to be free from arrest *or civil process* for what they do or say in legislative proceedings." *Tenney*, 341 U.S. 367, 372 (1951) (emphasis added). This protection applies to state legislators with respect to actions within the "sphere of legitimate legislative activity." *Id.* at 377. As the Fourth Circuit explained in the context of legislative immunity,

> [L]egislators bear significant responsibility for many of our toughest decisions, from the content of the laws that will shape our society to the size, structure, and staffing of the executive and administrative bodies carrying them out. Legislative immunity provides legislators with the breathing room necessary to make these choices in the public's interest, in a way uninhibited by judicial interference and undistorted by the fear of personal liability. It allows them to focus on their public duties by removing the costs and distractions attending lawsuits. It shields them from political wars of attrition in which their opponents try to defeat them through litigation rather than at the ballot box . . . . Legislative immunity thus reinforces representative democracy, fostering public decision making by public servants for the right reasons.

*E.E.O.C. v. Washington Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011). The Supreme Court's decision in *Tenney* emphasized these rationales in support of an absolute immunity. *See Tenney*, 341 U.S. at 377 ("The claim of an unworthy purpose does not destroy the privilege. Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good. . . . The privilege would be of little value if they could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader . . . ."). The Eighth Circuit has cited this very language from *Tenney* with approval. *See Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607, 612 (8th Cir. 1980).

Relying on *Tenney*, federal courts have concluded that the legislative privilege, like legislative immunity, is absolute except in narrow circumstances such as federal criminal cases. *See Lee v. Virginia State Bd. of Elections*, No. 3:15CV357 (HEH-RCY), 2015 WL 9461505, at *5 (E.D. Va. Dec. 23, 2015) (applying an absolutist approach after concluding that "the Fourth Circuit and Supreme Court have consistently held that state legislators enjoy both legislative immunity and its supporting doctrine, legislative privilege"). Even in racial discrimination cases, courts are divided on whether the legislative privilege is a qualified privilege. *See, e.g.*, *Greater Birmingham Ministries v. Merrill*, No. 2:15-cv-02193-LSC, at 16 (N.D. Ala. Mar. 13, 2017) (holding in a racial discrimination case that the legislative privilege was absolute). In *Greater Birmingham Ministries v. v. Merrill*, for example, the court squarely rejected the use of a qualified privilege when a constitutional claim requiring proof of discriminatory motive was at issue. *Id.* at 3, 9. In so holding, the court emphasized the importance of the legislative privilege and the principles that compel its vigorous application, noting that "'[p]lacing a decisionmaker on the stand is . . . usually to be avoided.'" *Id.* at 10 (quoting *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 268 n.18 (1977)). Similarly, in *Miles-Un-Ltd., Inc. v. Town of New Shoreham, R.I.*, the court treated the legislative privilege as absolute even when the plaintiffs claimed a town ordinance had a discriminatory purpose. 917 F. Supp. 91, 98 (D.N.H. 1996). Describing the privilege as "absolute," the court explained that legislators acting within the realm of legitimate legislative activity should not be required to testify regarding their legislative activities. *Id.* Accordingly, the court afforded the local legislators in the case an absolute legislative privilege and prohibited the plaintiffs from questioning them on allegedly discriminatory motives. *Id.* at 102.

8

The Court should adopt the same approach here. Under the Supreme Court's reasoning in *Tenney*, the Legislators enjoy an absolute privilege and cannot be required to produce the documents withheld because they fall within the sphere of legislative activity. The absence of any federal criminal issues in the present case is an important distinguishing factor on this issue, as the cases upon which Plaintiffs rely in their brief lean heavily on *United States v. Gillock* and its progeny. *See* 445 U.S. 360 (1980). These cases, including *Rodriguez v. Pataki*, 293 F. Supp. 2d 302 (S.D.N.Y. 2003), and *In re Grand Jury*, 821 F.2d 946 (3rd Cir. 1987), considered legislative immunity or privilege as applied in the context of a federal criminal prosecution. While the scope of legislative immunity may or may not be "qualified" in the context of a criminal indictment or prosecution, nothing in *Tenney*, which was a civil case, is so limited. The same is true for the other cases cited by Plaintiffs. *Perez v. Perry*, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014) (relying on *Gillock*, rather than *Tenney*). Indeed, in one such case cited by Plaintiffs, the court acknowledged that, in *Gillock*, the Supreme Court "carved out an exception from *Tenney*" in cases involving "federal criminal liability." *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, 2011 WL 4837508, at * 6 (N.D. Ill. Oct. 12, 2011). The Supreme Court has never carved out any other exceptions from *Tenney*, and this Court should decline to do so here.

    **2.**    **Should the Court Decline to Recognize an Absolute Privilege, Qualified Privilege Still Shields the Documents from Discovery.**

The Legislators recognize that some federal courts have endorsed a qualified legislative privilege for state legislators in federal court. *Doe*, 788 F. Supp. 2d at 984 (applying a qualified privilege to a discovery request for "the production of documents"). "These cases generally hold that a deliberative process privilege is qualified and protects only documents which are pre-decisional, deliberative and reflect the subjective intent of the legislators." *Id.* at 985. The qualified privileged requires courts to apply a four-factor balancing test (though some courts have

9

employed a five- or even eight-factor test): "'(1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions.'" *Id.* (quoting *Qamhiyah v. Iowa State Univ. of Sci. & Tech.*, 245 F.R.D. 393, 396 (S.D. Iowa 2007))

Even if this Court concludes that the legislative privilege is qualified, Plaintiffs cannot demonstrate a sufficient need for disclosure that outweighs the Legislators' interest in confidentiality:

**Relevance.** The best evidence of legislative intent comes from the text of the statute, as it is the legislative text—and not what any particular legislator may have said about a law—that demonstrates legislative intent and purpose. *See S.C. Educ. Ass'n v. Campbell*, 883 F.2d 1251, 1262 (4th Cir. 1989) ("It is axiomatic that if motivation is pertinent, it is the motivation of the entire legislature, not the motivation of a handful of voluble members, that is relevant."). The Legislators here are but five of the Act's dozens of co-sponsors. And they represent but five of the nearly 100 votes in favor of the Act. Any subjective motivations on the part of the Legislators is thus of little or no import—all five could have voted against Act, and the legislation would have still passed by wide margins in both chambers of the General Assembly. This factor weighs in favor of protection.

**Other Evidence.** The plain language of the Act includes nearly four pages of detailed "legislative findings." *See* Act 626 of 2021, at 1-5. Moreover, Plaintiffs already have public comments of Rep. Lundstrum and other legislators who voted in favor of the Act, as well as thousands of e-mails and other communications produced many weeks ago. Plaintiffs have also taken the depositions of some private individuals who testified during committee hearings. *Cano v. Davis*, 193 F. Supp. 2d 1177, 1179 (C.D. Cal. 2002) ("The legislative privilege does not bar . .

10

. a third[-]party non-legislator, from testifying to conversations with legislators and their staffs."). They have taken the deposition of the State Medical Board. Given the existence of ample evidence from other sources, this factor, too, weighs in favor of protection.

***The Legislators' Roles.*** The Legislators are non-parties to the case. They co-sponsored the Act along with *dozens* of other legislators and were just five of nearly 100 votes in favor of the bill. *Citizens Union of City of New York v. Att'y Gen. of New York*, 269 F. Supp. 3d 124, 169 (S.D.N.Y. 2017) ("[M]erely voting for a law or signing a bill does not render a legislator's role 'direct.'"). The simple fact that the Legislators voted on the Act does not tip the scale toward invading the privileges and requiring the Legislators, all non-parties, to produce the requested documents. This factor, too, weighs in favor of protection.

***Policy.*** The final factor—"the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions"—weighs strongly in favor of quashing the subpoena. The purpose of the legislative privilege is to protect legislators from unwarranted interference with their legislative activity. And to compel the disclosure of communications involving legislators can all too easily be distorted to undermine the democratic process. *See United States v. Rayburn House Off. Bldg., Room 2113, Washington, D.C. 20515*, 497 F.3d 654, 661 (D.C. Cir. 2007) ("[T]he possibility of compelled disclosure may therefore chill the exchange of views with respect to legislative activity. This chill runs counter to the [speech or debate clause's] purpose of protecting against disruption of the legislative process."); *see also McCambridge v. City of Little Rock*, 298 Ark. 219, 228, 766 S.W.2d 909, 913 (1989) (recognizing that Arkansas law's exemption for legislators' unpublished memoranda, working papers, and correspondence "promotes and encourages free exchange of thought"). The Court should not facilitate such a result here. Forcing the production of all documents withheld on legislative

11

privilege grounds will embolden future litigants to demand the same documents in all future constitutional challenges filed in this Court, a concern highlighted by legislative leadership in their *amicus* brief. Such an end runs contrary to the plain language of constitutional speech or debate clauses, the purpose underlying the legislative privilege, and good common sense. So, on balance, this factor also weighs in favor of protection.

> **3. Regardless of the Court's Decision on the Precise Contours of the Privilege, Each Document Must Be Evaluated on a Case-by-Case Basis.**

Should the Court have some inclination to order the production of any specific document withheld by the Legislators, *in camera* review is first warranted, especially since Plaintiffs mischaracterize the bases of the Legislators' decisions to withhold certain documents.

> **a. Communications Among Legislators Are Not Subject to Disclosure.**

Unaddressed in the Motion is an unprecedented ask by Plaintiffs—a request that this Court rule that *no privilege whatsoever* applies to communications solely between members of the General Assembly. Plaintiffs decline to address this issue, for good reason—the communications are plainly privileged. *See Plain Loc. Sch. Dist. Bd. of Educ. v. DeWine*, 464 F. Supp. 3d 915, 923 (S.D. Ohio 2020) ("Communications between the General Assembly members and their legislative aides, however, are protected."); *N. Carolina State Conf. v. McCrory*, No. 1:13CV658, 2015 WL 12683665, at *6 (M.D.N.C. Feb. 4, 2015) ("For the reasons enumerated by the Supreme Court, the Fourth Circuit, and numerous lower courts, this court concludes that, for Plaintiffs' requests for discovery of communications among legislators and between legislators and their staff, the potential intrusion into the legislative process outweighs the countervailing factors."). If a legislative privilege exists at all (and it does), communications solely between members of the General Assembly must receive protection.

### b. Communications Between Legislators, the Representatives of Legislators, and BLR Staff Are Privileged.

Plaintiffs similarly avoid any discussion of communications involving BLR personnel. These communications primarily involve the exchange of draft bills, and the Legislators validly withheld such drafting-related correspondence. Such communications with legislative staff are privileged. *Plain Loc. Sch. Dist. Bd. of Educ.*, 464 F. Supp. 3d at 923. Forced disclosure of communications with BLR employees leads to a predictable result—members of the General Assembly will no longer feel free to work candidly with the non-partisan BLR staffers responsible for bill drafting, revision, and other activities. Legislators could not share legal or practical concerns with BLR staff, who in turn provide the legal and fiscal research necessary to make the lawmaking process work. This would reduce BLR to little more than an administrative arm of the General Assembly. To avoid this, the General Assembly, by law, has protected communications with BLR. Ark. Code Ann § 10-2-129(b)(1) (affording protection to any "drafting request or information request made to a legislative employee by or on behalf of a legislator"). The Court should afford BLR the same protection under the legislative privilege.

### c. Communications Between Legislators and Third Parties Concerning Matters of Legislative Activity Should Be Afforded Protection.

In their briefing, Plaintiffs tacitly suggest that the Legislators withheld all communications involving third parties. Though this is not true, Plaintiffs completely ignore that the Supreme Court has included within the privilege anything that is legislative in nature, including all communications engaged in as preparation for and deliberation over legislative issues. Other courts have recognized that the privilege applies to efforts to gather and process information for possible legislative action. *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 416 (D.C. Cir. 1995) (protecting the information-gathering process, including lawmakers' sources of

13

information).  Accordingly, and contrary to Plaintiffs' suggestion, "the maintenance of confidentiality is not the fundamental concern of the legislative privilege." *Pulte Home Corp.*, 2017 WL 2361167, at *8. "Meeting with persons outside the legislature" is "a routine and legitimate part of the modern-day legislative process." *Almonte v. City of Long Beach*, 478 F.3d 100, 107 (2d Cir. 2007); *see also Bruce v. Riddle*, 631 F.2d 272, 280 (4th Cir. 1980) (observing that "[m]eeting with 'interest' groups, professional or amateur, regardless of their motivation, is a part and parcel of the modern legislative procedures").  Thus, as one court recently recognized in a similar case "communications with third parties are subject to legislative privilege so long as those communications were part of the formulation of legislation." *League of Women Voters of Fla., Inc. v. Lee*, 340 F.R.D. 446, 454 (N.D. Fla. 2021).  This is precisely what the Legislators withheld here.

## IV.   CONCLUSION

The Court should deny the Motion.

Respectfully submitted,

Anton L. Janik, Jr. (Ark. Bar No. 2007271)
Graham Talley (Ark. Bar No. 2015159)
**MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, PLLC**
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
Phone:  501-688-8800
Fax:  501-688-8807
ajanik@mwlaw.com
gtalley@mwlaw.com