IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

```
- - - - - - - - - - - - - - - - - - - - - - - - - - x
DYLAN BRANDT, et al.,              :
                Plaintiff,         :
        v.                         :
                                   :   Case No. 4:21-CV-00450-JM
LESLIE RUTLEDGE, et al.,           :
                Defendant.         :
                                   :
                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - x
```

**<u>REPLY IN SUPPORT OF
MOTION TO COMPEL PRODUCTION OF DOCUMENTS</u>**

The Legislators have not met their burden of demonstrating that a privilege applies to the documents being withheld. They simply and erroneously contend Plaintiffs argue "no legislative privilege *at all* applies in this case."[1] To the contrary, Plaintiffs have demonstrated that the Legislators' reliance on legislative privilege to withhold hundreds of documents is improper. The Legislators have not refuted Plaintiffs' factual and legal arguments establishing that 227 documents were improperly withheld on the basis of legislative privilege because they were made after the Health Care Ban was passed, contain purely factual information, or include correspondence with third parties. The Legislators have also not refuted that 357 documents are being improperly withheld, even though they may be subject to a

---

[1] *Legislators' Response in Opposition,* ECF 138 at 5 (emphasis in original).

qualified legislative privilege, because all factors used by courts in applying the legislative privilege weigh in favor of disclosure.

Requiring disclosure of all withheld documents does not require this Court, as the Legislators infer, to apply a novel "bright line rule."[2]  Neither will it, as the Legislators contend, "pave the way for litigants in *civil* cases to forever seek, and acquire, the confidential communications of members of our General Assembly."[3]  Instead, the Court need only follow existing authority to grant Plaintiffs' *Motion* and order disclosure of documents.  *See, e.g., Doe* v. *Nebraska*, 788 F. Supp. 2d 975, 986 (D. Neb. 2011) (finding that only "documents that are pre-decisional, deliberative and contain matters of opinion . . . will be considered for protection under the deliberative process privilege"); *Veasey* v. *Perry*, No. 2:13-CV-193, 2014 WL 1340077, at *3 (S.D. Tex. Apr. 3, 2014) (ordering disclosure, finding that documents were important to determine legislative intent); *Newport Pacific Inc.* v. *County of San Diego*, 200 F.R.D. 628, 638–40 (S.D. Cal. 2001) (analyzing the qualified privilege and ordering disclosure); *accord Guillen, et al.* v. *Lulac, et al.*, No. 21A756, 2022 WL 1738936, at *1 (U.S. May 31, 2022) (denying Emergency Application for Stay filed by three members of the Texas House of Representatives, letting stand an order denying the lawmakers' Motion to Quash their depositions

---

[2]   ECF 138 at 5–6.

[3]   ECF 138 at 3 (emphasis in original).

based on an assertion of legislative privilege); *League of United Latin Am. Citizens v. Abbott*, No. EP-21-CV-00259-DCG-JES-JVB, 2022 WL 1570858, at *2 (W.D. Tex. May 18, 2022) ("[S]tate legislative privilege . . . is not coextensive with state legislative immunity.").

Accordingly, and because Plaintiffs are challenging the Health Care Ban in part on the basis that it was passed based on discriminatory intent, this Court should order disclosure of all 227 communications not covered by the legislative privilege, and should find that for the remaining documents the legislative privilege is overcome in this case.[4]

## ARGUMENT

**I.    The Court Should Apply a Qualified, Not an Absolute, Legislative Privilege.**

The Legislators implore this Court to go against the weight of contemporary authority and adopt an absolute legislative privilege extending to any documents "within the sphere of legitimate legislative activity."[5] As discussed in *Plaintiffs' Response in Opposition to Motion to Quash*,[6] though some courts have

---

[4]    The Legislators also repeat their argument that Plaintiffs' *Motion* should be dismissed for procedural errors. Plaintiffs refer the Court to their prior briefing on this issue. (*Plaintiffs' Reply in Support of Motion to Compel Production of Documents*, ECF 129.) Plaintiffs incorporate all arguments from that brief, including that "[t]here is no serious dispute that the parties met and conferred concerning the Legislators' reliance on the legislative privilege." (ECF 129 at 1.)

[5]    ECF 138 at 7 (citations omitted).

[6]    Plaintiffs incorporate their arguments in that briefing on this issue. (ECF 134 at 8–11.)

found an evidentiary privilege arising from the doctrine of legislative immunity that is absolute, the weight of authority holds that there is only a qualified legislative privilege over state legislators' written and testimonial evidence. *See Doe*, 788 F. Supp. 2d at 984 ("[I]n most cases the only evidentiary legislative privilege regarding the production of documents available to state legislators (and other local government officials) is a very narrow and qualified one, sometimes referred to as a 'deliberative process privilege.'") (citations omitted); *Nashville Student Org. Comm.* v. *Hargett*, 123 F. Supp. 3d 967, 969 (M.D. Tenn. 2015) ("In cases involving constitutional challenges related to voting rights, the vast majority of federal courts have found that the federal common law also affords state legislators only a qualified (*i.e.*, not absolute) legislative privilege against having to provide records or testimony concerning their legislative activity."). The only Eastern District of Arkansas case on point also endorsed this approach. *Cave* v. *Thurston*, No. 4:18-cv-00342-KGB, 2021 WL 4936185, at *4, 6 (E.D. Ark. Oct. 22, 2021) ("This court agrees with the reasoning of many courts that have held any legislative privilege regarding the production of documents available to state legislators is a qualified 'deliberative process privilege.'").

        In arguing in favor of an absolute legislative privilege, the Legislators rely heavily on *Tenney* v. *Brandhove*, 341 U.S. 367 (1951). That reliance is misplaced because *Tenney* concerned legislative immunity, not legislative privilege

as applied to document requests to state legislators.[7] The court in *Tenney* held that state legislators are not subject to "civil liability for acts done within the sphere of legislative activity." *Tenney*, 341 U.S. at 376; *see Florida Assoc. of Rehabilitation Facilities* v. *State of Florida Dep't of Health & Rehabilitative Serv.*, 164 F.R.D. 257, 267 (N.D. Fla. 1995) ("[T]he last three cases . . . provide a basis to conclude that legislators and some of their staff members may be immune to civil process in a suit directly against them. But that is an immunity flowing from the absolute immunity from suit conferred by *Tenney*. It is not an evidentiary privilege.").[8]

---

[7] To the extent the Legislators rely on cases concerning legislative immunity, those cases should be distinguished. *See, e.g.*, *Gorman Towers, Inc.* v. *Bogoslavsky*, 626 F.2d 607 (8th Cir. 1980).

[8] The Legislators mischaracterize the other cases they cite as supporting an absolute legislative privilege in actions alleging discriminatory intent. The court in *Lee* v. *Virginia State Bd. of Elections* recognized that a qualified legislative privilege had been used not just in federal criminal cases, but also in redistricting cases, and excluded third-party communications from even an "absolute" legislative privilege. No. 3:15CV357 (HEH-RCY), 2015 WL 9461505 at *5, 7 (E.D. Va. Dec. 23, 2015). Similarly, in *Miles-Un-Ltd., Inc.* v. *Town of New Shoreham, R.I.*, the court recognized that "courts have noted critical differences between the principles underlying the constitutional immunity and the common law immunity, thereby warranting a more limited application in the protections afforded the latter" and that the legislative privilege may give way if "infringement of the immunity rises to a level of public need, *i.e.* whether disclosure is required in order to fully develop the relevant facts." 917 F. Supp. 91, 99–100 (D.N.H. 1996). Further, the court held that, "to the degree plaintiffs seek actual records or documentation pertaining to the ordinance at issue, they are so entitled." *Id.* at 102. The Legislators also cite to *Greater Birmingham Ministries, et al.* v. *Merrill*, No. 2:5-cv-02193-LSC, at 16 (N.D. Ala. Mar. 13, 2017), in which the District Court applied an absolute legislative privilege. This case, however, "relied on, and was controlled by, the Eleventh Circuit's decision in *In re Hubbard*, 803 F.3d 1298 (11th Cir. 2015), concluding that third-party communications were protected by the legislative privilege," which opinion "is inconsistent with the Fifth Circuit view (and apparent majority view) of the legislative privilege as a limited, qualified privilege." *La Union Del Pueblo Entero, et al.* v. *Abbott, et al.*, No. SA-21-CV-00844-XR, 2022 WL 1667687, at *4 (W.D. Tex. May 25, 2022) (quoting *Jackson Mun. Airport Auth.* v. *Bryant*, No. 3:16-cv-246-CWR-FKB, 2017 WL 6520967, at *9 (S.D. Miss. Dec. 19, 2017)).

The Legislators also incorrectly argue that Plaintiffs improperly invoked *Gillock* and its progeny for the proposition that the legislative privilege is qualified. *See United States* v. *Gillock*, 445 U.S. 360 (1980). The Legislators argue that *Gillock* is circumscribed to cases involving federal criminal issues, and that any legislative privilege is qualified only when invoked in such circumstances.[9] However, one of the Legislators' own cases, *League of Women Voters of Fla. Inc.* v. *Lee*, rejected this premise, finding instead that "some civil cases implicate federal interests that are at least as important—if not more important—than the enforcement of federal criminal statutes." 340 F.R.D. 446, 456 (N.D. Fla. 2021).[10]

## II. Communications Made After the Passage of the Bill, Containing Purely Factual Information, and Between Third Parties Are Not Protected Even If They Pertain to "Legislative Activity."

The Legislators concede that the qualified legislative privilege "protects only documents which are pre-decisional, deliberative and reflect the

---

[9] ECF 138 at 9. This argument is contrary to Plaintiffs' brief, which cited a number of civil cases that have applied a qualified legislative privilege. *See, e.g.*, *Bethune-Hill* v. *Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 334 (E.D. Va. 2015) ("The state legislative privilege . . . may become qualified based on the nature of the claim at issue."); *Comm. for a Fair & Balanced Map* v. *Illinois State Bd. of Elections*, No. 11 C 5065, 2011 WL 4837508, at *11 (N.D. Ill. Oct. 12, 2011) (ordering disclosure of "objective facts upon which lawmakers relied . . . [and] documents available to members of the General Assembly at the time the Redistricting Act was passed[.]"); *Favors* v. *Cuomo*, 285 F.R.D. 187 (E.D.N.Y. 2012).

[10] The court in *League of Women Voters of Fla. Inc.* specifically cautioned against reading *Gillock* as constraining application of a qualified legislative privilege to federal criminal cases. 340 F.R.D. at n.5.

subjective intent of the legislators."[11] Applying this standard, courts have maintained that documents post-dating passage of the bill are not protected because they are not "pre-decisional" or "deliberative." *Bethune-Hill*, 114 F. Supp. 3d at 343 ("The privilege only protects 'integral steps' in the legislative process and does not extend to commentary or analysis following the legislation's enactment."). The Legislators cite no authority for the proposition that this analysis is different if the post-dated communications relate to "legislative activity" and spend no time opposing Plaintiffs' assertion that documents containing purely factual information should be produced.

The Legislators further argue that their communications with third parties should be protected by the legislative privilege because they relate to the information-gathering process.[12] But as Plaintiffs argued in the *Motion*, the weight of authority holds that communications with third parties, even involving legislative issues, fall outside the scope of the legislative privilege.[13] The Legislators make no effort to distinguish these cases, and instead cite a number of cases they argue support their argument that communications with third parties are absolutely privileged. These cases, however, are distinguishable and do not overcome the

---

[11]   ECF 138 at 9 (citing *Doe*, 788 F. Supp. 2d at 985).

[12]   *Id.* at 13–14.

[13]   ECF 123 at 8–9 (citing cases).

weight of case law in favor of disclosure.  *First*, while *League of Women Voters* held the legislative privilege was not broken by communications with third parties "so long as those communications were part of the formulation of legislation," that case is bound by 11th Circuit precedent that does not follow the majority view that communications with third parties waives the legislative privilege.  350 F.R.D. at 454; (*see supra*, n.8 (differentiating 11th Circ. Precedent).)  Moreover, the *League of Women Voters* court also held that such privilege was qualified and applied the five-factor balancing test to determine "whether the legislative privilege must give way to Plaintiffs' need for the evidence they seek."  340 F.R.D. at 456.  *Second*, while *Pulte Home* did not find a waiver of the legislative privilege, the court also stated that in cases where "a strong public interest is present, the interest of maintaining an absolute legislative privilege is questionable."  No. GJH-14-3955, 2017 WL 2361167, at *8 (D. Md. May 31, 2017) (distinguishing voter redistricting cases from a constitutional taking case).  The instant case, one in which the freedom of parents to make healthcare decisions for their children is at stake, is certainly an example of a case with a strong public interest.[14]

---

[14]   The Legislators also rely on *Almonte* and *Bruce*, but those cases are only about legislative immunity not legislative privilege, and are thus distinguishable.  *Almonte* v. *City of Long Beach*, 478 F.3d 100, 107–08 (2d Cir. 2007); *Bruce* v. *Riddle*, 631 F.2d 272, 280 (4th Cir. 1980); *see also Citizens Union of City of New York* v. *Attorney General of New York*, 269 F. Supp.3d 124, 152–55 (S.D.N.Y. 2017) (noting that, while there is a connection between the concepts, state legislators "are entitled to absolute immunity from liability for their legislative acts as a matter of federal common law" but "courts. . . have found that protection under the common law legislative privilege in civil cases is not absolute.")  (emphasis added).  Finally, *Brown & Williamson* is a

Other courts have found that, "to the extent otherwise-privileged documents or information has been shared with third parties, the legislative privilege has been waived." *LA Union Del Pueblo Entero*, 2022 WL 1667687, at *3. In fact, a case cited by the Legislators, *Citizens Union of City of New York*, explicitly distinguished between lobbyist groups and communications with legislative staff. 269 F. Supp. at 161–62 ("Intra-branch communications about contemplated legislation differ from the type of lobbyist-legislator communications that courts have found not to be privileged by virtue of the fact they are internal, not external, communications."). In another of the Legislators' cases, *Lee*, though the court found that an absolute privilege applied in that case, the court still excluded from the scope of the legislative privilege communications with third parties, including lobbyists. *Lee*, 2015 WL 9461505, at *7 ("The Nonparty Legislators and the Legislative Employees may not claim legislative privilege with regard to communications made to or from third parties because the involvement of third parties inherently destroyed any privilege that may or may not have existed.").

---

case about the legislative privilege of federal legislators which is governed by a separate analysis than the legislative privilege of state legislators.  62 F.3d 408, 415–16 (D.C. Cir. 1995); *LA Union Del Pueblo Entero*, 2022 WL 1667687 at *5 ("*Brown* concerns the application of the Speech and Debate Clause, which, as stated, does not apply in this context.").

The Legislators should produce the 227 documents on the privilege log that contain purely factual information, were sent after the Health Care Ban passed, or were communications with third parties.[15]

### III. Using a Qualified Legislative Privilege, the Multi-Factor Balancing Test Favors Disclosure in This Case.

Putting aside the 227 documents on the Legislators' privilege log that post-date passage of the Health Care Ban, were sent to third-parties, and contain purely factual information, there are 357 remaining documents on the privilege log, including communications amongst the legislature and the Bureau of Legislative Research ("BLR"). It is not true that Plaintiffs allege that "*no privilege whatsoever* applies to the communications solely between members of the General Assembly" or with the BLR.[16] Rather, Plaintiffs maintain that though these documents may be

---

[15]  The Legislators suggest that the Court conduct an *in camera* review because "Plaintiffs' overbroad descriptions of the documents (e.g., 'purely factual,' 'post-dating' the passage of the act, or 'communications with third parties') listed do not accurately reflect the actual bases of the Legislators' claims of privilege." (ECF 138 at 4.) It is not Plaintiffs' burden to disprove that the privilege should be recognized, but the Legislators, as the ones asserting the privilege as an objection to producing the discovery, that have the burden of proving a factual basis exists for the privilege as to all documents being withheld. *Anspach* v. *United of Omaha Life Ins. Co.*, 2011 WL 3862267 at *4 (D.S.D. Aug. 31, 2011); *PaineWebber Gr., Inc.* v. *Zinsmeyer Trusts Pshp.*, 187 F.3d 988, 992 (8th Cir. 1999). This is because a person does not have the unilateral right to determine which documents are protected or which documents to reveal exist, and failure to identify the document and adequately explain how privilege attaches precludes application of those theories to justify refusing to produce documents. *United States* v. *Reserve Mining Co.*, 412 F. Supp. 705, 711 (D. Minn. 1976).

[16]  ECF 138 at 12 (emphasis in original).

protected by the legislative privilege, the multi-factor balancing test[17] applied by courts favors disclosure of these documents.[18]

*Relevance*: In cases where it is alleged that the legislature acted with discriminatory intent, documents pertaining to the legislature's deliberations are particularly relevant. *Baldus* v. *Brennan*, No. 11-CV-562, 2011 WL 6122542, at *1 (E.D. Wis. Dec. 8, 2011) ("[P]roof of a legislative body's discriminatory intent is relevant and extremely important as direct evidence in [Equal Protection and Voting Rights Act] claims."). This is true of particular legislators, notwithstanding the fact that they may be only one of many votes for a bill. *Citizens Union of City of New York*, 269 F. Supp. 3d at 167 ("in discrimination cases . . . evidence needed to demonstrate invidious or discriminatory motives or self-dealing may not be available from sources other than individual legislators; indeed, the legislator may have actively attempted to hide evidence of self-dealing or unlawful motives."). And it is not true that the text of a statute provides the best evidence of legislative intent,

---

[17] Though the *Cave* and *Doe* courts apply a four-factor test, many other district courts have followed the *Rodriguez* five-factor test. *See e.g., Rodriguez* v. *Pataki*, 280 F. Supp. 2d 89, 101 (S.D.N.Y. 2003); *Nashville Student Organizing Committee*, 123 F. Supp. 3d at 970; *LA Union Del Pueblo Entero*, 2022 WL 1667687, at *6; *Bethune-Hill*, 114 F. Supp. 3d at 338. Plaintiffs encourage this Court to follow the *Rodriguez* test adopted by many other courts, and include an analysis of all five-factors for this Court's consideration. However, even if this Court does not consider the "seriousness of the litigation" as a factor in its inquiry, the other factors still weigh in favor of disclosure in this case.

[18] Plaintiffs incorporate their analyses of these five factors from their previous briefings on this issue. (ECF 123 at 9–13; ECF 134 at 11–18.)

especially given that the legislature is unlikely to include direct evidence of discriminatory intent in the text itself. *See Veasey*, 2014 WL 1340077, at *3; *see also Doe*, 788 F. Supp. 2d at 981–82 (rejecting argument that "only the plain language of the statute and the official legislative history may be used to determine the express or implied intent of the legislature").

*Other evidence*:  As with the text of the statute itself, the legislature is unlikely to include direct discriminatory language in the published legislative findings for a particular statute. *See League of Women Voters of Michigan* v. *Johnson*, 2018 WL 2335805, at *5 (E.D. Mich. May 23, 2018) ("Some courts . . . have held that the availability of other evidence does not render evidence regarding legislators' direct deliberations irrelevant[.]").  And regardless of Plaintiffs' access to other witnesses, it is the legislature that passed the Health Care Ban.  Plaintiffs believe the documents being withheld are relevant to the Legislators' intent and are not available from other sources.

*Seriousness of the litigation*:   This litigation involves substantial questions of constitutional rights and the outcome of the case will have broad impact on the health of the minor plaintiffs and other Arkansas adolescents with gender-dysphoria.

*Legislators' role*:   Where discriminatory intent is alleged, the legislators' intent plays a role in *the case* regardless of whether legislators are parties

to the action. *La Union Del Pueblo Entero,* 2022 WL 1667687, at *6 ("As the LULAC Plaintiffs have alleged that the Texas legislature intentionally discriminated against minority voters, 'the decisionmaking process . . . *is* the case.'") (citations omitted) (emphasis in original). And as the privilege log demonstrates, the Legislators here did more than simply vote in favor of the Health Care Ban—they were also involved in the drafting and lobbying in support of the Ban.

*Policy*: Though the final factor tends to favor keeping the legislative privilege intact, even this factor weighs in favor of disclosure in this case, where the Legislators have already shared their deliberations with third parties, and where allowing the legislative privilege to prevail risks shielding statements revealing an impermissible discriminatory purpose for the law.[19]

As the weight of the factors favors disclosure, the Court should find that the legislative privilege yields in this case and should order production of the remaining 357 documents otherwise protected by the legislative privilege.[20]

---

[19]    The Legislators argue that "to compel the disclosure of communications involving legislators can all too easily be distorted to undermine the democratic process." (ECF 138 at 11.) Plaintiffs have already distinguished the cases relied on by the Legislators for this proposition. (ECF 134 at 17 n.19.)

[20]    As with the other 227 improperly withheld documents, the Legislators carry the burden of demonstrating the factual basis for the privilege and have not done so. If anything, should the Court be inclined to apply a privilege to any of these documents, an *in camera* review of the documents should be conducted prior to any ruling. *Anspach,* 2011 WL 3862267 at *4; *supra* n. 15.

## CONCLUSION

In keeping with the weight of current authority on this issue, this Court should adopt a qualified legislative privilege pertaining to discovery requests to state legislators. In so doing, the Court should order the Legislators to produce all communications made after the passage of the Health Care Ban, with third parties, and containing purely factual information. The Court should additionally find that the legislative privilege is outweighed by the need for disclosure in this case, and should order production of the additional documents on the privilege log that would otherwise be protected by the legislative privilege.

Dated: June 7, 2022

*/s/ Leslie Cooper*

| | |
|---|---|
| Leslie Cooper | Beth Echols, Ark. Bar No. 2002203 |
| Chase Strangio* | Christopher Travis, Ark. Bar No. 97093 |
| American Civil Liberties Union Foundation | Drake Mann, Ark. Bar No. 87108 |
| | Gill Ragon Owen, P.A. |
| 125 Broad St. | 425 W. Capitol Avenue, Suite 3800 |
| New York, NY 10004 | Little Rock, AR 72201 |
| Telephone: (917) 345-1742 | Telephone: (501) 376-3800 |
| lcooper@aclu.org | echols@gill-law.com |
| cstrangio@aclu.org | travis@gill-law.com |
| *Attorneys for the Plaintiffs* | mann@gill-law.com |
| | *On behalf of the Arkansas Civil Liberties Union Foundation, Inc.* |
| | *Attorneys for the Plaintiffs* |

| | |
|---|---|
| Breean Walas, Ark. Bar No. 2006077 | Sarah Everett, Ark. Bar No. 2017249 |
| Walas Law Firm, PLLC | Gary Sullivan, Ark. Bar No. 92051 |
| P.O. Box 4591 | Arkansas Civil Liberties Union |
| Bozeman, MT 59772 | Foundation, Inc. |

Telephone: (501) 246-1067
breean@walaslawfirm.com
*On behalf of the Arkansas Civil Liberties Union Foundation, Inc.*
*Attorneys for the Plaintiffs*

904 W. 2nd Street
Little Rock, AR 72201
Telephone: (501) 374-2842
sarah@acluarkansas.org
*Attorneys for the Plaintiffs*

Garrard R. Beeney*
Alexander S. Holland*
Brandyn Rodgerson*
Emily T. Armbruster*
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
beeneyg@sullcrom.com
hollanda@sullcrom.com
rodgersonb@sullcrom.com
armbrustere@sullcrom.com
*Attorneys for the Plaintiffs*

Laura Kabler Oswell*
Duncan C. Simpson LaGoy*
Sullivan & Cromwell LLP
1870 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 461-5600
oswell@sullcrom.com
simpsond@sullcrom.com
*Attorneys for the Plaintiffs*

Daniel J. Richardson*
1700 New York Avenue NW
Suite 700
Washington, DC 20006
Telephone: 202-956-7500
richardsond@sullcrom.com
*Attorney for Plaintiffs*

*\*Admitted pro hac vice*