IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

```
- - - - - - - - - - - - - - - - - - - - - - - - -  x
DYLAN BRANDT, et al.,                              :
                                                   :
                    Plaintiff,                     :
                                                   :
             v.                                    :   Case No. 4:21-CV-00450-JM
                                                   :
LESLIE RUTLEDGE, et al.,                           :
                                                   :
                    Defendant.                     :
- - - - - - - - - - - - - - - - - - - - - - - - -  x
```

## BRIEF IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. PATRICK W. LAPPERT

Plaintiffs challenge a law banning gender-affirming medical procedures to treat adolescents with gender dysphoria. They argue that the challenged law prohibits treatments that, based on scientific research and decades of clinical experience, are widely recognized in the medical community as safe and effective. Plaintiffs also allege that by cutting off patients' access to needed care, the challenged law would cause serious harms to the minor plaintiffs and transgender adolescents throughout Arkansas. *See, e.g.*, Mem. Supp. Pls.' Mot. Prelim. Inj. 40–43, 57–61, ECF No. 12. To defend the law, the State asserts an interest in protecting minors from what it contends are unnecessary, harmful, and experimental treatments that, they claim, lack evidence of effectiveness. *See, e.g.*, Defs.' Combined Br. Opp'n Pls.' Mot. Prelim. Inj. 1–2, 34, ECF No. 44. At trial, the Court will be tasked with resolving

factual disputes regarding medical treatments for adolescents with gender dysphoria, which will largely turn on expert testimony.

Defendants offer Dr. Patrick W. Lappert to provide expert testimony regarding the diagnosis and treatment of gender dysphoria. In his report and rebuttal report, he challenges the validity of the diagnosis of gender dysphoria and offers a range of opinions about the treatment of gender dysphoria, including his views about the proscribed hormonal treatments, assertions about the lack of psychological benefits of the prohibited hormonal and surgical treatments, and the claim that valid informed consent for such treatments cannot be obtained. But Dr. Lappert—a surgeon who has no training or experience related to the diagnosis or treatment of patients with gender dysphoria—lacks the qualifications necessary to offer opinions on these topics.[1]

Federal Rule of Evidence 702 requires that before a witness may offer expert testimony, they must be qualified as an expert in the subject matter of their testimony. Dr. Lappert fails to clear that hurdle, and his testimony regarding the diagnosis and treatment of gender dysphoria—apart from any opinions related to risks or complications from surgeries—should be excluded.

---

[1] Plaintiffs are not challenging Dr. Lappert's qualifications to offer testimony about risks and complications associated with surgical treatments for gender dysphoria.

Earlier this month, a court in a case involving gender-affirming medical care rejected Dr. Lappert's testimony on these very topics, holding that "[Dr.] Lappert is not qualified to render opinions about the diagnosis of gender dysphoria, . . . the efficacy of puberty blocking medication or hormone treatments, the appropriate standard of informed consent for mental health professionals or endocrinologists, or any opinion on the non-surgical treatments obtained by Plaintiffs." *Kadel* v. *Folwell*, 2022 WL 2106270, at *13 (M.D.N.C. June 10, 2022). That conclusion was correct. As discussed below, Dr. Lappert lacks training and experience in the diagnosis or provision of care to patients with gender dysphoria. Indeed, at his deposition, Dr. Lappert agreed that he does not "claim to be an expert" in the diagnosis or treatment of gender dysphoria (Exhibit 4, Deposition of Patrick W. Lappert (*Brandt*), at 29:10–12; 46:11–13, May 6, 2022), and expressed that "it's not [his] area of care." (Exhibit 4, at 150:19–151:2.)

## BACKGROUND

In his report and rebuttal report in this case, Dr. Lappert offers a number of opinions related to the diagnosis and treatment of gender dysphoria.

Dr. Lappert challenges the validity of the diagnosis of gender dysphoria, which is the psychiatric condition the proscribed treatments are provided to address. He asserts that "[t]ransgender is a subjective diagnosis made by the patient, that is not accessible to objective clinical, laboratory, or radiologic

confirmation by the treating physician." (Exhibit 2, Expert Report of Patrick W. Lappert, M.D. ("Report") ¶ 47; *see also id.* ¶ 30 (asserting that there is "no objective diagnostic test for transgender").) At his deposition, Dr. Lappert testified that he does not believe that gender dysphoria is an actual diagnosis, but rather, believes it is a symptom of body dysmorphic disorder (Exhibit 4, at 133:5–134:8), and believes being transgender can be a "delusion." (Exhibit 4, at 120:17–121:4; 222:4–222:18; 252:11–252:14.)

Dr. Lappert also offers a range of opinions related to the treatment of gender dysphoria. *First*, he offers opinions about hormonal therapies—puberty blockers and cross-sex hormone therapy—as treatments for gender dysphoria. Specifically, he opines that scientific research fails to show benefits of such treatment (Exhibit 3, Rebuttal Expert Report of Patrick W. Lappert, M.D. ("Rebuttal Report") ¶¶ 4a–c, 11, 12, 15), and he offers opinions about the reversibility of these hormonal treatments. (Exhibit 3, ¶¶ 13, 14.)

*Second*, Dr. Lappert offers opinions about what he claims are the lack of psychological benefits of gender-affirming surgery. (Exhibit 2, ¶¶ 30, 34–35, 50; Exhibit 3, ¶¶ 16–27; *see* Exhibit 3, ¶ 16 ("The plaintiffs' experts make the claim that surgical procedures performed on adolescents have been shown to improve mental health. Evidence does not support this claim."))

*Third*, Dr. Lappert offers opinions about whether informed consent can

be validly obtained for gender-affirming medical care for adolescent patients. He asserts that it cannot, largely based on his opinions about the lack of validity of the gender dysphoria diagnosis and the lack of efficacy of the care. (Exhibit 2, ¶¶ 30, 35; Exhibit 3, ¶¶ 4b, 8–15.)

## LEGAL STANDARD

Federal Rule of Evidence 702 places a special "gatekeeping role" on district courts. *Daubert* v. *Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). To be admissible under Rule 702, expert testimony must satisfy three requirements: "First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact"; "Second, the proposed witness must be qualified to assist the finder of fact"; "Third, 'the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires." *Lauzon* v. *Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (citing *Daubert*, 509 U.S. at 591). "The proponent of the expert testimony must be able to prove its admissibility by a preponderance of the evidence." *Id.* (citing *Daubert*, 509 U.S. at 592).

One of *Daubert's* most important functions is ensuring that witnesses do not speak on matters that go "beyond the expert's expertise." *Am. Auto. Ins. Co.* v. *Omega Flex, Inc.*, 783 F.3d 720, 724 (8th Cir. 2015) (citing *Weisgram* v. *Marley*

*Co.*, 169 F.3d 514, 520–521 (8th Cir. 1999)).  When an expert "lack[s] the education, employment, or other practical personal experiences to testify as an expert" on a specific topic, their opinions should be excluded.  *Wheeling Pittsburgh Steel Corp.* v. *Beelman River Terminals, Inc.*, 254 F.3d 706, 716 (8th Cir. 2001); *see also Khoury* v. *Philips Med. Sys.*, 614 F.3d 888, 893 (8th Cir. 2010) (holding that an expert witness cannot opine on topics for which he or she lacks any "training, education, or experience").  "[T]he trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of the *relevant discipline*."  *Smith* v. *Rasmussen*, 249 F.3d 755, 759 (8th Cir. 2001) (emphasis added) (quoting *Kumho Tire Co., Ltd.* v. *Carmichael*, 526 U.S. 137, 149 (1999)).  Accordingly, courts must exclude testimony whenever the witness is "not well-versed in the particular discipline relevant to their testimony."  *Id.*

## ARGUMENT

Defendants seek to offer expert opinions from Dr. Lappert on the diagnosis and treatment of gender dysphoria, but Dr. Lappert is not qualified to opine on these topics because he lacks the necessary training or experience.

Dr. Lappert lacks training related to the diagnosis and treatment of gender dysphoria.  He is not a psychologist or psychiatrist, or a mental health provider of any kind.  (Exhibit 1, Deposition of Patrick W. Lappert (*Kadel*), at 65:22–68:20, 157:14–158:12, Sept. 30, 2021; Exhibit 4, at 133:25, 135:6–8 (Dr.

Lappert is "not testifying as a psychiatrist.").) Nor is he an endocrinologist. (Exhibit 4, at 62:15–17.) Dr. Lappert admitted that he is not qualified to provide care to patients seeking puberty blockers and hormone therapy to treat gender dysphoria. (Exhibit 4, at 300:7–9.) In fact, the only education or training he has ever received regarding gender dysphoria was a half-day weekend course. (Exhibit 4, at 135:9–24.) This is not sufficient training to qualify him as an expert on the diagnosis and treatment of gender dysphoria. *See Khoury*, 614 F.3d at 893.

Dr. Lappert also lacks experience in the diagnosis or treatment of gender dysphoria. He has never diagnosed someone with gender dysphoria because "it's not [his] area of care." (Exhibit 4, at 150:19–151:2.) And Dr. Lappert has never conducted or published research relating to gender dysphoria, the treatment of gender dysphoria, or any research about transgender people more generally. (Exhibit 4, at 138:3–10.) Of the six articles that he has published, none were about gender dysphoria. (*See generally* Exhibit 1, at 129–134.)

Dr. Lappert has no training or experience that would qualify him as an expert in the diagnosis or treatment of gender dysphoria, and he candidly admitted that he does not "claim to be an expert" on these subjects. (Exhibit 4, at 29:10–12; 46:11–13.)

The fact that Dr. Lappert is a physician does not qualify him to offer expert testimony on any medical question. In *Smith*, "an experienced, board-

certified general psychiatrist" was not deemed qualified to opine on "the effectiveness and necessity of sex reassignment surgery." 249 F.3d at 758. In excluding the expert's testimony on those topics, the district court cited the expert's lack of "expertise in the *specialized discipline of gender identity disorder*." *Id.* at 758–759 (emphasis added) (referring to a diagnosis that preceded gender dysphoria). The Eighth Circuit affirmed that ruling. *Id.*; *see also O'Conner* v. *Commonwealth Edison Co.*, 807 F. Supp. 1376, 1390 (C.D. Ill. 1992), *aff'd*, 13 F.3d 1090 (7th Cir. 1994) (noting that a "medical doctor" is not "automatically an expert in every medical issue merely because he or she has graduated from medical school or has achieved certification in a medical specialty").

      Plaintiffs do not contest Dr. Lappert's qualifications to opine on risks or complications associated with surgeries. But being a plastic surgeon does not qualify him to testify about the validity of a psychiatric diagnosis. Nor does it qualify him to testify about the psychological benefits of hormonal or surgical treatments for this gender dysphoria, or offer any testimony about hormonal treatments.

      In his report, Dr. Lappert lists as "credentials" the fact that he has "consulted with families with children who are experiencing gender discordance," and "given many presentations to professional meetings of educators and counselors on the subject of transgender medicine and the present state of the science and

-8-

treatment." (Exhibit 2, ¶ 7.)  But the "consultations with families" he referred in his report to turned out to be conversations with three families from his parish, two of which took place in the parish library, in his capacity as the deacon of the parish. (Exhibit 4, at 151:10–153:12; 250:13–250:22; 302:23–303:23.)  And his presentations on transgender medicine, which he titled "Transgender Christian Anthropology," were to religious audiences and included religious content. (Exhibit 4, at 32:16–34:9, 277:11–279:14.)  They were not given to scientific or medical professional audiences.  This is not experience in the diagnosis or treatment of gender dysphoria that satisfies the qualification requirements of Rule 702.[2]  *See Khoury*, 614 F.3d at 893.

Dr. Lappert stated in his report that in "formulat[ing] the opinions expressed in this report, [he has] reviewed the medical literature."  (Exhibit 2, ¶ 8.) His review of medical literature in a subject in which he has no training and in a field in which he has no experience is plainly insufficient to qualify him as an expert.  *See Smith*, 249 F.3d at 759 (limiting the testimony of a doctor to testify on gender identity issues "because [the doctor's] testimony was based neither on his personal

---

[2] Dr. Lappert's report also includes "perform[ing] breast reversal surgery for detransitioning patients" as a "credential. (Exhibit 2, ¶ 7.)  The fact that Dr. Lappert has provided such surgery—at his deposition, he testified that he only had one such patient (Exhibit 4, at 38:16–38:20)—does not constitute experience in the diagnosis or treatment of gender dysphoria.

experience nor on his knowledge of the relevant discipline," and thus was "not well-versed in the particular discipline relevant to [the doctor's] testimony"); *see also Kadel*, 2022 WL 2106270, at *9 ("Merely reading literature in a scientific field does not qualify a witness—even an educated witness."). Because Dr. Lappert's opinions regarding the diagnosis and treatment of gender dysphoria are well outside his training and experience, they should be found inadmissible under Rule 702.

## CONCLUSION

Dr. Lappert lacks qualifications to offer expert opinions about the validity of the diagnosis of gender dysphoria and the treatment of adolescents with gender dysphoria, including his opinions about hormonal therapies to treat gender dysphoria, his opinion that there is a lack of psychological benefits of hormonal and surgical treatments, and his opinion that valid informed consent for such treatments cannot be obtained.

Dr. Lappert seeks to offer opinions on the same topics that he was precluded from testifying about in *Kadel*. 2022 WL 2106270, at *13. Nothing about this case warrants a different outcome, and Dr. Lappert's testimony regarding the diagnosis and treatment of gender dysphoria—with the exception of any opinions about the risks or complications related to surgeries—should be excluded.

Dated:  June 22, 2022

/s/ Leslie Cooper
Leslie Cooper
Chase Strangio*
American Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
Telephone:  (917) 345-1742
lcooper@aclu.org
cstrangio@aclu.org
*Attorneys for the Plaintiffs*

Beth Echols, Ark. Bar No. 2002203
Christopher Travis, Ark. Bar No. 97093
Drake Mann, Ark. Bar No. 87108
Gill Ragon Owen, P.A.
425 W. Capitol Avenue, Suite 3800
Little Rock, AR 72201
Telephone:  (501) 376-3800
echols@gill-law.com
travis@gill-law.com
mann@gill-law.com
*On behalf of the Arkansas Civil Liberties Union Foundation, Inc.*
*Attorneys for the Plaintiffs*

Breean Walas, Ark. Bar No. 2006077
Walas Law Firm, PLLC
P.O. Box 4591
Bozeman, MT 59772
Telephone:  (501) 246-1067
breean@walaslawfirm.com
*On behalf of the Arkansas Civil Liberties Union Foundation, Inc.*
*Attorneys for the Plaintiffs*

Sarah Everett, Ark. Bar No. 2017249
Gary Sullivan, Ark. Bar No. 92051
Arkansas Civil Liberties Union Foundation, Inc.
904 W. 2nd Street
Little Rock, AR 72201
Telephone:  (501) 374-2842
sarah@acluarkansas.org
gary@acluarkansas.org
*Attorneys for the Plaintiffs*

Garrard R. Beeney*
Brandyn J. Rodgerson*
Emily T.L. Armbruster*
Alexander S. Holland*
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Telephone:  (212) 558-4000
beeneyg@sullcrom.com
rodgersonb@sullcrom.com

Laura Kabler Oswell*
Duncan C. Simpson LaGoy*
Sullivan & Cromwell LLP
1870 Embarcadero Road
Palo Alto, CA 94303
Telephone:  (650) 461-5600
oswell@sullcrom.com
simpsond@sullcrom.com
*Attorneys for the Plaintiffs*

armbrustere@sullcrom.com
hollanda@sullcrom.com
*Attorneys for the Plaintiffs*

Daniel J. Richardson*
1700 New York Avenue NW
Suite 700
Washington, DC 20006
Telephone: 202-956-7500
richardsond@sullcrom.com
*Attorney for Plaintiffs*  　　　　　*\*Admitted pro hac vice*