**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - x

DYLAN BRANDT, et al.,         :

              Plaintiff,     :

      v.              :

                    :   Case No. 4:21-CV-00450-JM

LESLIE RUTLEDGE, et al.,     :

           Defendant.   :

                    :

                    :

- - - - - - - - - - - - - - - - - - - - - - - - x

## RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' EVIDENTIARY DEPOSITION DESIGNATIONS

Plaintiffs designated portions of the deposition of Amy Embry, the Federal Rule of Civil Procedure ("FRCP") 30(b)(6) designee of Defendant Arkansas State Medical Board ("the Board") for use at trial. Defendants' Motion to Exclude objects to all but one of Plaintiffs' designations based on four objections; none have merit.

*First*, Defendants mistakenly assert that because Ms. Embry will be available to testify at trial, use of her deposition "transcripts as evidence at trial is not permissible under Fed. R. Civ. P. 32(a)(4)."[1]  But Ms. Embry and the Board are

---

[1]    *Defendants' Motion to Exclude Plaintiffs' Evidentiary Deposition Designations and Incorporated Brief in Support* (ECF 158) at ¶ 5 ("Motion").

Defendants in this action,[2] and under FRCP 32(a)(3), "an adverse party may use for any purpose the deposition of a party[.]" Thus Ms. Embry's deposition may be used for any purpose consistent with the Federal Rules of Evidence ("FRE"), irrespective of her availability to testify at trial. *Second*, Defendants make relevance objections. But as discussed below and in the accompanying *Appendix A: Responses to Objections*, each of the designated portions of Ms. Embry's deposition is relevant to this action. *Third*, Defendants claim that Ms. Embry's 30(b)(6) testimony constitutes improper lay opinion or legal conclusions. But this objection is meritless given that Ms. Embry was testifying as the 30(b)(6) representative of the Board, one of the entities charged with enforcing Act 626 (the "Health Care Ban"). *Fourth*, Defendants assert that certain portions of Ms. Embry's testimony were speculative because she lacks knowledge of how the Board "may act in the future or in a hypothetical scenario."[3] Although this objection, too, is meritless, Defendants have waived these form objections under FRCP 32(d)(3)(B) by failing to timely object during Ms. Embry's deposition. Further, a review of the actual testimony that Defendants claim to be speculative reveals that most of this testimony concerns the actual knowledge or practices of the Board. Contrary to Defendants' arguments, Plaintiffs' designations pertain to relevant testimony that is admissible under the

---

[2]     *See Complaint for Declaratory and Injunctive Relief* (ECF 1) ("Complaint").

[3]     *Motion* at ¶ 9.

FRE.[4] As such, under FRCP 32(a), this Court should allow all of Plaintiffs' designations of Ms. Embry's deposition to be used at trial.

## I. Plaintiffs' Deposition Designations are Admissible Under the Federal Rules of Evidence

### A. Plaintiffs' Deposition Designations are Appropriate Whether or Not Ms. Embry is Available to Testify at Trial.

Citing FRCP 32(a)(4), Defendants argue that Plaintiffs may not designate portions of Ms. Embry's deposition because she will be available to testify at trial.[5] But Ms. Embry was the 30(b)(6) designee of the Arkansas State Medical Board and both Ms. Embry and the Board are Defendants in this action.[6] Under FRCP 32(a)(3), "an adverse party may use for any purpose the deposition of a party[.]" Thus Ms. Embry's deposition may be used for any purpose consistent with the FRE regardless of her availability to testify at trial.

### B. Plaintiffs' Deposition Designations are Relevant.

FRE 401 and 402 provide that "relevant evidence is admissible at trial," and that "evidence is relevant if it has a tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Defendants claim that nearly every topic about which Ms. Embry

---

[4]    Plaintiffs respond to each of Defendants' objections with particularity in the attached appendix. *See* Appendix A: Responses to Objections.

[5]    *Motion* at ¶ 5.

[6]    *See Complaint*.

testified and Plaintiffs designated is irrelevant.[7]  But evidence is relevant if it pertains to a claim in the action, and Ms. Embry's testimony—as the representative of the State entity charged with regulating the field of medicine and one of the entities charged with enforcing the Health Care Ban—relates to whether the Health Care Ban is sufficiently related to the government's asserted interests in the law and to the harms that would result should the law be enforced.

Plaintiffs allege violations of the Equal Protection Clause, the Due Process Clause, and the First Amendment of the United States Constitution.[8]  For each of these claims, one element is the relationship of the legislation to the government's stated interests.[9] Ms. Embry's testimony provides evidence that makes it less probable that the Health Care Ban is narrowly tailored to a compelling government interest, substantially related to an important government interest, or rationally related to a legitimate government interest. Her testimony also provides evidence that makes it difficult to credit the government's asserted interests in the Ban at all.

---

[7]        *See Motion* at 4-6.

[8]        *See Complaint*.

[9]        Heightened scrutiny on the Equal Protection claim requires that the statute be substantially related to an important government interest. *Sessions* v. *Morales-Santana*, 137 S. Ct. 1678, 1690 (2017). Heightened scrutiny on the Due Process and First Amendment claims requires that the statute be narrowly tailored to a compelling government interest. *Washington* v. *Glucksberg*, 521 U.S. 702, 721 (1997);  *Reed* v. *Town of Gilbert*, 576 U.S. 155, 163 (2015). The government bears the burden of proof on these points. Even under rational basis review, there has to be a rational relationship between the law and a legitimate government interest. *U.S. Dep't of Agric*. v. *Moreno*, 413 U.S. 528, 533 (1973).

*See*, *e.g.*, *Romer* v. *Evans*, 517 U.S. 620, 635 (1996) (invalidating state constitutional amendment under rational basis review when asserted interests were "impossible to credit" given the facts). This testimony is relevant.

Ms. Embry's testimony about other medical regulations—specifically, how and why certain regulations were drafted and passed—is relevant to the relationship between the Health Care Ban and the government's asserted interests in support of the law.[10] Ms. Embry testified that the Board has never enacted a regulation banning medical treatment, and she is not aware of any other statute that does so in Arkansas.[11] She additionally testified it is the Board's belief that "what is prescribed between a patient and the physician is between the physician and the patient"[12] even where a treatment is known to be harmful to patients and to be ineffective.[13] This

---

[10]     Ms. Embry's testimony about the Board's general regulatory and enforcement processes also lays a foundation for relevant testimony. *See*, *e.g.*, *Exhibit 1* (30(b)(6) Deposition of Defendant Arkansas State Medical Board, May 10, 2022) at 46:15-25; 61:9-18.

[11]     *Exhibit 1* at 116:13-21; *Exhibit 1* at 136:18-137:20 ("Does the Board prohibit any medical treatment across the Board?/ A. No./ Q. And has the Board ever considered, to your knowledge, a proposal to prohibit a particular medical treatment across the Board?/ A. Not to my knowledge, no. . . . Q. Okay. Are you aware of, as the Director of the Board, of any State statutes that prohibit a particular medical treatment?/ A. The only one that I am aware of is the one that we're here today to discuss, Act 626.")

[12]     *Exhibit 1* at 208:6-9.

[13]     Ms. Embry testified that the Board believes the decision whether to treat COVID with Ivermectin should be left to doctors and patients even though there are known risks of such treatment and no evidence of effectiveness. *See*, *e.g.*, *Exhibit 1* at 144:14-148:16 (providing an example of the Board's investigation into complaints about a physician prescribing Ivermectin to treat COVID-19 in prisons); *id*. at 208:10-21 ("Q. So even if there are known risks for using Ivermectin for COVID and no evidence of its effectiveness, the Board leaves that decision to patients and their physicians?/ A. It is left between physicians and patients, yes./ Q. And the Board

testimony that the Health Care Ban uniquely categorically prohibits particular medical treatments—taking the decision away from doctors and patients and departing from the way medicine is regulated—makes it difficult to credit the asserted state interests of protecting the health of minors and brings into question the relationship between the state's alleged interests and the Health Care Ban.

Relatedly, though Defendants object specifically to Ms. Embry's testimony on regulations pertaining to "gastric bypass surgery, or opioids" as "wholly irrelevant"[14] in fact this testimony is very relevant—particularly to the State's asserted concern that gender-affirming medical care is being provided without thorough patient evaluations and without adequate informed consent—as it shows that in each of these scenarios, the legislature identified harm to patients associated with the way healthcare was being provided and regulated that healthcare to address the specific concerns; it did not ban the care.[15]  In contrast to these examples, in this

---

is in agreement with that position, that that should be between the patients and their physicians?/ A. Yes.")

Ms. Embry also testified that the Department of Health in Arkansas, in response to concerns about the use of hydroxycholorquine to treat COVID-19, provided guidance recommending against its off-label use, but not prohibiting it. *See Exhibit 1* at 138:2-143:24 ("Q. Yes. I understand from here the State is -- the Department of Health is allowing the off-label use of hydroxychloroquine to treat COVID despite the State's awareness of the lack of evidence of effectiveness for this purpose and the serious risks of using it; is that correct?/ A. According to this document, it says it's allowing the decision to be left to the individual clinicians and their patients.")

[14]     *Motion* at ¶ 7.

[15]     Ms. Embry testified that, in response to a problem with over-prescription of opioids in Arkansas causing addiction, the Board enacted a regulation providing sanctions that the Board

case the government has banned all gender-affirming medical care for transgender minors, though Ms. Embry testified that targeted regulations addressing specific issues could be enacted if there were concerns about the provision of gender-affirming medical care to minors.[16] That the Health Care Ban prohibits gender-affirming medical care for transgender minors across the board, regardless of how that care is being provided, rather than take targeted steps to address the specific concerns about care as the State's designated medical regulators do, shows a lack of sufficient relationship between the Ban and these purported government interests.

Ms. Embry's testimony about how the Board would enforce the Health Care Ban should it take effect, and concerns about the Ban conflicting with another regulation prohibiting patient abandonment, are relevant to understanding the scope of the Health Care Ban and its harm. This includes Ms. Embry's testimony on the

---

could impose on its licensees for over-prescription of pain medicine. *Exhibit 1* at 126:20-132:12. She additionally testified that no one proposed a ban on prescribing opioids. *Exhibit 1* at 131:23-132:8. Ms. Embry also testified that, in response to concerns about the substantial risks of gastric bypass surgery the Board passed a regulation laying out numerous requirements for informed consent for gastric bypass surgery. *Exhibit 1* at 132:13-136:17.

[16]     *See Exhibit 1* at 211:25-212:24 ("Q. If there were an issue with, say, some doctors in the State providing gender-affirming medical care to minors and specifically overprescribing hormone therapy, similar to the way opioids have been overprescribed, would it be possible for the Board to enact a regulation to address that problem?/ A. Yes. If they found it necessary, yes./ Q. And similarly, if the Board were to learn that some doctors in Arkansas who provide gender-affirming medical care to minors were not providing sufficient information in the informed consent process about the risks and benefits of these treatments, could the Board enact regulations to impose informed consent requirements?/ A. The Board can create a regulation on any subject they choose. Whether or not it passes the promulgation process is what determines if it goes into effect.")

Board's enforcement processes generally (*e.g.*, reviewing complaints, running investigations, holding licensing hearings, sanctioning licensees) and her testimony providing examples of how the Board enforces other regulations.[17] Ms. Embry's testimony on enforcement—including that if a doctor providing gender-affirming medical care to a minor was before the Board, the Board would need to make a finding of unprofessional conduct as directed by the Health Care Ban[18]—makes it more probable that the minor Plaintiffs, the doctor Plaintiffs, and other minor patients and healthcare providers in Arkansas will be harmed by the Health Care Ban. Ms. Embry's testimony that the Ban would require a doctor who has been providing gender-affirming medical care to abandon that patient during the course of treatment in violation of another regulation further shows the harm of the Ban.[19] That this conflict would concern the Board is also relevant to the lack of connection

---

[17]    *See*, *e.g.*, *Exhibit 1* at 72:6-72:18; 92:14-94:23.

[18]    *Exhibit 1* at 182:4-186:22; *see also id.* at 184:25-185:21 ("[Q] Would the Board have to make a finding of unprofessional conduct as directed by Act 626 if a doctor admitted to providing prohibited care under the statute?/ A. Yes./ Q. Okay. Would the doctor be subject to discipline by the Board?/ A. Yes.")

[19]    *Exhibit 1* at 223:25-224:18 ("Q. So if doctors are currently treating adolescents with gender-affirming hormones, would the doctor be violating their ethical duty to discontinue treatment for a patient without referring them to an alternative provider?/ A. According to this law, yes./ Q. And by "this law" you mean 20-6-202?/ A. Yes./ Q. Okay. So that would be unprofessional conduct on the part of a doctor to discontinue gender-affirming hormones without providing a referral to another doctor to continue that care; is that correct?/ A. Yes, that is my understanding."); *Exhibit 1* at 240:11-18 ("Q. And there is a possibility that you would have concerns or there is a possibility that if Act 626 takes effect that the government would be intruding on medical decisions families make with their doctors? I'm not sure I understood your answer./ A. I would say yes to both.")

-8-

between the Ban and the government's asserted interests.

Ms. Embry also provided testimony that the Board has never received any complaints about the provision of gender-affirming medical care for adults or minors, and that the Board has not discussed a concern with gender-affirming medical care.[20]   Given the Board's role in licensing and regulating the medical profession, the fact that the Board has been previously unconcerned with gender-affirming medical care tends to make it more probable that gender-affirming medical care is not harmful, undermining the state's asserted interest in protecting minors from harmful medical treatment.

For the foregoing reasons, all of Ms. Embry's designated testimony is relevant and Defendants' objection based on relevancy should be overruled.

## C. Plaintiffs' Designations do not Constitute Improper Lay Opinion or Legal Conclusions.

Defendants object that "it is improper and inadmissible" to "draw a legal conclusion from the testimony of Ms. Embry" and that "because Ms. Embry is not an attorney, it renders any of her lay opinions on the meaning of a law irrelevant

---

[20]     *Exhibit 1* at 152:3-153:19; *see also id*. at 154:7-154:11 ("Q. Did the Board ever see a need for a regulation concerning gender-affirming medical care?/ A. It was not communicated to me if they did."); *id*. at 227:17-228:6 ("Q. Okay. Is the Board aware of any minors in Arkansas who have been harmed by gender-affirming medical care?/ A. The Board has not received any complaints and that's how they would learn about that. So, no.")

under Rules 401 and 402."[21]  It is of no matter that Ms. Embry "is not an attorney."[22]

Ms. Embry does not offer any legal conclusions, and to the extent that her testimony

pertains to the interpretation or meaning of any laws or regulations, that testimony

is within the scope of her capacity as a 30(b)(6) witness for the Board, which is

charged with enforcing laws and regulations governing medical providers.[23]

FRE 701 and 702 outline admissible opinion testimony by a lay witness and

an expert witness. FRE 602 requires that a witness have "personal knowledge" about

the matters to which they testify. The unique position of a 30(b)(6) witness as an

institutional representative expands the scope of permissible testimony. A 30(b)(6)

witness is not limited to the individual's own personal knowledge, but to the

corporate knowledge of the entity for which they are the designee. *See Brazos River

Auth*. v. *GE Ionics*, *Inc*., 469 F.3d 416, 433 (5th Cir. 2006) ("[A] rule 30(b)(6)

designee does not give his personal opinions, but presents the corporation's

"position" on the topic. . . . This extends not only to facts, but also to subjective

beliefs and opinions.") (citations omitted). Courts have allowed corporate

representatives to testify to the subjective beliefs of a corporation on legal issues if

---

[21]     *Motion* at ¶ 8.

[22]     *Motion* at ¶ 8.

[23]     Notably, Ms. Embry's testimony does not concern what the law is, but rather the Board's understanding of the law. She is not opining on the law itself, but on the ways the Board applies the law, which is clearly within the Board's collective knowledge.

the issues are within the corporate knowledge. *Id*. at 434 ("[B]ecause, under the rule 30(b)(6) framework, Grisby acts as the agent for the corporation, he should be able to present Cajun's subjective beliefs as to whether the products were in breach of warranty, as long as those beliefs are based on the collective knowledge of Cajun personnel.").[24] Anything reasonably within the Board's collective knowledge, including its understanding of the law it is charged with enforcing, is assumed to be known to Ms. Embry, and is within the scope of permissible lay opinion testimony for her.[25]

As Ms. Embry herself testified, the Board has knowledge of the sources of its authority and of its own processes, including its process for drafting and passing regulations, enforcing regulations, licensing physicians, and investigating and sanctioning its licensees.[26] That the Board's corporate knowledge extends to legal

---

[24]     These views are supported by courts in the 8th circuit. *See, e.g., ResCap Liquidating Exhibit 1* at v. *Primary Residential Mortg., Inc*., No. 0:13-cv-3451 (SRN/HB), 2020 WL 504661, at *29 (D. Minn. Jan. 31, 2020) ("'Federal Rule of Civil Procedure 30(b)(6) allows corporate representatives to testify to matters within the corporation's knowledge during deposition, and Rule 32(a)(3) permits an adverse party to use that deposition testimony during trial.'") (citing *Union Pump Co.* v. *Centrifugal Tech., Inc.*, 404 F. App'x 899, 907-08 (5th Cir. 2010)); *Wal-Mart Stores, Inc*. v. *Cuker Interactive, LLC*, No. 5:14-CV-5262, 2017 WL 1391457, at *4 (W.D. Ark. Apr. 6, 2017) (considering "that a corporate witness does not necessarily have to be expert-qualified in order to offer lay opinion under Fed. R. Evid. 701 about the amount of damages that corporation has allegedly suffered.") (citations omitted).

[25]     Ms. Embry has been a member of the Board since 2014 and is currently the Board's Executive Director. *Exhibit 1* at 18:13-19:7.

[26]     *Exhibit 1* at 46:2-6. The Board's knowledge also extends to its own regulations. *See, e.g., Exhibit 1* at 51:24-52:24.

areas is a function of the Board's role. As the entity tasked with enforcing the Health Care Ban,[27] the Board's opinions on the statute and its enforcement are within the scope of the Board's corporate knowledge.[28] This includes the Board's opinions on any conflict between the Health Care Ban and other regulations the Board is charged with enforcing.[29]

The court should overrule Defendants' objections as to improper lay opinion testimony and legal conclusion testimony.[30]

### D. Plaintiffs' Designations Are Not Speculative.

Defendants object that Ms. Embry offered "speculative testimony on how the Board as a whole, or an individual Board member, may act in the future or in a hypothetical scenario."[31] But Defendants have already waived their objection. Under FRCP 32(d)(3)(B), "[a]n objection on an error or irregularity at an oral examination is waived if: (i) it relates to . . . the form of a question or answer . . . or other matters that might have been corrected at that time; and (ii) it is not timely made during the

---

[27]    HB 1570 § 3, ARK. CODE ANN. § 20-9-1504 (a) ("Any referral for or provision of gender transition procedures to an individual under eighteen (18) year of age is unprofessional conduct and is subject to discipline by the appropriate licensing entity or disciplinary review board with competent jurisdiction in this state.").

[28]    *See*, *e.g.*, *Exhibit 1* at 180:15-186:22; *id.* at 240:11-243:21.

[29]    *See*, *e.g.*, *Exhibit 1* at 197:6- 201:9; *id.* at 224:19-227:16; *id.* at 236:12-241:21.

[30]    *See* Appendix A: Responses to Objections.

[31]    *Motion* at ¶ 9.

deposition." Objections on the basis of speculation are form objections, which must be raised during the deposition so that the noticing attorney has the opportunity to cure the question, or else the objection is waived. *See Otis* v. *Demarasse*, 399 F. Supp. 3d 759, 765–66 (E.D. Wis. 2019) ("'Form' objections is a category that includes objections to . . . lack of personal knowledge [and] speculative . . . questions.") (citations omitted). Defendants have waived their speculation objections in every instance where they failed to make a form objection during Ms. Embry's deposition.[32]

Defendants also object as speculative to questions that are clearly not speculative. Ms. Embry provides testimony on the Board's disciplinary capabilities and provides examples of the types of discipline the Board can impose in different scenarios.[33] This testimony is based on the Board's actual enforcement processes, and the testimony clarifies the scope of the Board's authority, which is not

---

[32]     *See* Appendix A: Responses to Objections.

[33]     *Exhibit 1* at 109:7-16 ("Q. I'm just trying to think of --for example, somebody says; I went to a surgeon and the surgeon did this treatment that left me disfigured, would that potentially be a basis to suspend a license?/ A. They would have to research, they would have to do an investigation, unless there was an immediate threat to the public."); *id.* at 113:15-22 ("Q. But even with, say, issues concerning, you know, prescription of drugs improperly there couldn't be a consent order that says you can continue practicing but you can't prescribe drugs? Could that be something?/ A. Sure. It could be in the consent order, yes."); *id.* at 115:16-22 ("Q. If the Board learned that a doctor were using a treatment that is unsafe, could the Board issue a rule prohibiting the use of that treatment?/ A. They could. They could draft a rule and put it through the promulgation process.")

speculative.[34]  And given that the Health Care Ban has already been passed by the legislature and the Board could be required to enforce it as soon as October 2022 (when this case is scheduled for trial on the merits), testimony about the Board's concerns regarding the Health Care Ban's enforcement are hardly speculative.[35]

Defendants' last effort to exclude their own 30(b)(6) witness's testimony relies on a personal knowledge objection. Defendants claim that "Ms. Embry does not have personal knowledge of any specific Board member's future thought processes."[36]  But Ms. Embry did not testify about any individual Board member's thought processes, or about how any individual Board member "may act in the future or in a hypothetical scenario."[37]  Rather, Ms. Embry testified to the Board's general contemplative process, including examples of when individual Board members' expertise is sought, and does not draw any conclusions about the decisions that the individual Board members might come to.[38] The Court should thus overrule

---

[34]     See, e.g., Exhibit 1 at 116:12-21 ("Q. So let me ask it differently. Has the Board ever promulgated a rule that prohibits anyone from performing a particular service or medical treatment?/ A. Not to my knowledge, no. Q. But it could if that came to its attention that there was a harmful treatment going around?/ A. Yes.")

[35]     See Exhibit 1 at 236:12-237:14. Ms. Embry's testimony about concerns about patient abandonment other Board members have raised during past Board meetings are not speculative. See Exhibit 1 at 237:10-239:4.

[36]     Motion at ¶ 9.

[37]     Motion at ¶ 9.

[38]     See, e.g., Exhibit 1 at 82:4-82:19 ("Q. But for the Board to determine whether this is something that should be investigated for failing to comply with accepted medical practices, how do they determine that?/ A. There are 14 Board members, so each one determines that individually.

Defendants' objections due to calling for speculation under Rule 602.[39]

## II.    Conclusion

Amy Embry's deposition testimony may be designated regardless of her availability to testify, is relevant, does not contain improper lay opinion or legal conclusions, and is not speculative. For the foregoing reasons, the Court should overrule Defendants' objections and allow Plaintiffs' designations of Ms. Embry's deposition to be used at trial.

Dated:  July 15, 2022

*/s/Leslie Cooper*
Leslie Cooper
Chase Strangio*
American Civil Liberties Union
Foundation
125 Broad St.
New York, NY 10004
Telephone:  (917) 345-1742
lcooper@aclu.org
cstrangio@aclu.org
*Attorneys for the Plaintiffs*

Beth Echols, Ark. Bar No. 2002203
Christopher Travis, Ark. Bar No. 97093
Drake Mann, Ark. Bar No. 87108
Gill Ragon Owen, P.A.
425 W. Capitol Avenue, Suite 3800
Little Rock, AR 72201
Telephone:  (501) 376-3800
echols@gill-law.com
travis@gill-law.com
mann@gill-law.com
*On behalf of the Arkansas Civil Liberties Union Foundation, Inc.*
*Attorneys for the Plaintiffs*

---

I think what I was trying to get to is that if they ask the surgeons their expertise and the surgeon says; this never should have happened, they would have been taught in medical school, or something like that. So it could be from medical education, it could be from continuing education, it could be from certifications.")

[39]    *See* Appendix A: Responses to Objections.

Breean Walas, Ark. Bar No. 2006077
Walas Law Firm, PLLC
P.O. Box 4591
Bozeman, MT 59772
Telephone: (501) 246-1067
breean@walaslawfirm.com
*On behalf of the Arkansas Civil
Liberties Union Foundation, Inc.*
*Attorneys for the Plaintiffs*

Garrard R. Beeney*
Brandyn J. Rodgerson*
Emily T.L. Armbruster*
Alexander S. Holland*
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
beeneyg@sullcrom.com
rodgersonb@sullcrom.com
armbrustere@sullcrom.com
hollanda@sullcrom.com
*Attorneys for the Plaintiffs*

Daniel J. Richardson*
1700 New York Avenue NW
Suite 700
Washington, DC 20006
Telephone: 202-956-7500
richardsond@sullcrom.com

*Attorney for Plaintiffs*

Sarah Everett, Ark. Bar No. 2017249
Gary Sullivan, Ark. Bar No. 92051
Arkansas Civil Liberties Union
Foundation, Inc.
904 W. 2nd Street
Little Rock, AR 72201
Telephone: (501) 374-2842
sarah@acluarkansas.org
gary@acluarkansas.org
*Attorneys for the Plaintiffs*

Laura Kabler Oswell*
Sullivan & Cromwell LLP
1870 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 461-5600
oswell@sullcrom.com
*Attorney for the Plaintiffs*

*Admitted pro hac vice