Page 1

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION
----------------------------------------X
DYLAN BRANDT, by and through his
mother, JOANNA BRANDT, et al.,

     Plaintiffs,
           Case No:
   vs.       4:21-CV-00450-JM

LESLIE RUTLEDGE, in her official
capacity as the Arkansas
Attorney General, et al.,

     Defendants.
----------------------------------------X


  REMOTE/ORAL/WEB VIDEOCONFERENCE
  VIDEOTAPED DEPOSITION OF LAURA PERRY
  (Sitting in Little Rock, Arkansas)
    Tuesday, April 5, 2022
      9:40 a.m.




Reported by:
Jennifer Ocampo-Guzman, CRR, CLR
(Sitting in Middlesex County, NJ)

1
2
3
4
5
6
7
8
9           April 5, 2022
10            9:40 a.m.
11
12
13      Remote/Oral/Web Videoconference
14   Videotaped Deposition of LAURA PERRY,
15   held via Zoom Web Videoconference,
16   pursuant to notice, before Jennifer
17   Ocampo-Guzman, a Certified Realtime
18   Shorthand Reporter and Notary Public of
19   the State of New Jersey.
20
21
22
23
24
25

```
 1
 2   A P P E A R A N C E S:
 3
 4      SULLIVAN & CROMWELL LLP
 5      Attorneys for Plaintiffs
 6           125 Broad Street
 7           New York, New York 10004-2498
 8      BY:  ALEXANDER HOLLAND, ESQ.
 9           DUNCAN SIMPSON LAGOY, ESQ.
10           SOPHIA M. MATTHEW, ESQ.
11           BRANDYN RODGERSON, ESQ.
12
13      ACLU OF ARKANSAS
14      Attorneys for the Plaintiffs
15           904 W 2nd Street
16           Little Rock, Arkansas 72201
17      BY:  SARAH EVERETT, ESQ.
18           BARRY SULLIVAN, ESQ.
19           LESLIE COOPER, ESQ.
20
21
22
23
24
25
```

```
 1
 2   APPEARANCES (Continued):
 3
 4       OFFICE OF THE ARKANSAS ATTORNEY GENERAL
 5       Attorneys for the Defendants
 6            323 Center Street, Suite 200
 7            Little Rock, Arkansas 72201
 8       BY:   AMANDA LAND, ESQ.
 9             MICHAEL CANTRELL, ESQ.
10             KEATON BARNES
11
12
13   ALSO PRESENT:
14       MIKE TSCHEIMER, Videographer
15
16
17
18
19
20
21
22
23
24
25
```

```
                                            Page 59
 1                    Perry
 2      A.   Sometimes parental influence.  I've
 3  heard of instances where a family member
 4  cross-dressed their child at a very young
 5  age.
 6      Q.   What do you mean, they
 7  "cross-dressed their child at a young age"?
 8  How do you define that?
 9      A.   Walt Hyer, for example, his mother
10  put him in a dress and sort of fondled him
11  and told him he was cute as a girl.
12      Q.   Any other reasons why you think
13  people identify as transgender?
14      A.   I couldn't speak to all the
15  reasons.  That's what I can think of.
16      Q.   Okay.
17           Does Satan or the devil encourage
18  people to be transgender?
19      A.   I think people can believe lies,
20  which sometimes I believe are from Satan, but
21  they also can be from a number of other
22  sources.
23      Q.   What lies does Satan tell to
24  transgender people?
25      A.   Well, to anyone.  It's not
```

Page 60

1              Perry
2  necessarily just to transgender, but to --
3  that God is not good or that his design is
4  not good.
5            But whether you believe in that or
6  not, there are lies that we believe about
7  ourselves.
8       Q.   How does Satan view transgender
9  people, do you think?
10      A.   I can't speak to that.
11      Q.   Did Satan ever talk to you about
12 being transgender?
13      A.   I've never heard him talk to me.
14      Q.   Going back to your future speaking
15 engagements, are there any other new topics
16 that you want to discuss with your new
17 engagements?
18      A.   Not that I can recall offhand.
19      Q.   Are you paid for your speaking
20 engagements?
21      A.   Yes.
22      Q.   About how much?
23      A.   It really depends.  I have done
24 some free.  Up until, up until 1500.
25      Q.   What was the low end?

Page 196

1              Perry
2       Q.    Do you remember around what month?
3       A.    July, the end of July.
4       Q.    Why did you detransition?
5       A.    I felt that God was calling me to
6   be transitioned and to live as he created me
7   to be.
8       Q.    How did you hear God calling you,
9   or how did you know God was calling you?
10      A.    I heard God speak to me.
11      Q.    What did God tell you?
12      A.    He asked me, he said -- he stood
13  before me that night, what name would I call?
14  And I didn't -- I didn't exactly know how to
15  respond to that, but I -- he reminded me, in
16  John, Chapter 1, it says, Jesus Christ said,
17  you can't claim to love me and yet reject my
18  creation.
19            And I thought I was being amend
20  because I was -- you know, I didn't -- I was
21  not going to go back to being female, but
22  I'll never forget in the most loving voice
23  I've ever heard in all my life, God whispered
24  to me.  He said, let me tell you who you are.
25  That's when I realized that God had created

Page 197

1              Perry
2   us for his plan and his purposes. It wasn't
3   an identity.
4        Q.   Did you say anything back to God?
5        A.   I don't remember what I said. I
6   know that I said, I said, that's not fair, at
7   one point. I didn't understand what God
8   knew. I didn't understand that he knew
9   better.
10            Over the next few months I didn't
11  know -- I didn't know how to do that, but,
12  you know...
13       Q.   What else did you tell God?
14       A.   I can't recall -- I remember what
15  God said to me. I know I said, that's not
16  fair. I guess I said, I'm sorry, I knew this
17  wasn't your will. I've repented of this,
18  but -- that's all.
19       Q.   Anything else?
20       A.   I think that was all.
21       Q.   Who did God tell you, who you are?
22       A.   He didn't answer exactly at that
23  moment. Something he showed me over the next
24  few years.
25            I knew he was never going to call

Page 199

1               Perry
2    conversations.
3         Q.    So God never called you Jake?
4         A.    Uh-uh.
5         Q.    But he did call you Laura?
6         A.    Yes.
7         Q.    But he never told you why he would
8    not call you Jake?
9         A.    Not at that time.
10        Q.    Did he ever -- I'm sorry.
11        A.    I understand now.  But as he -- as
12   he brought healing, I realized it was for my
13   own good, because he wanted me to know who I
14   truly was.  And now you couldn't pay me
15   enough to go back.  I'm very grateful.
16        Q.    Did God literally tell you directly
17   why you couldn't -- he couldn't call you
18   Jake?
19        A.    Not directly.  I've seen in the
20   Bible various things.  For example, should
21   the pot said to the potter, why has he made
22   me this way?  Is it our -- do we have a right
23   to question God?
24              I believe that He has defined us
25   and He is our creator, and only He has the

Page 275

1   DYLAN BRANDT vs. LESLIE RUTLEDGE
2   4/5/2022 - LAURA PERRY
3            ACKNOWLEDGEMENT OF DEPONENT
4        I, LAURA PERRY, do hereby declare
5   that I have read the foregoing transcript, I
6   have made any corrections, additions, or
7   changes I deemed necessary as noted on the
8   Errata to be appended hereto, and that the same
9   is a true, correct and complete transcript of
10  the testimony given by me.
11
12  _____     _____
13  LAURA PERRY                          Date
14  *If notary is required
15
16       SUBSCRIBED AND SWORN TO BEFORE ME THIS
17  _____ DAY OF _____, 20____.
18
19
20       _____
21       NOTARY PUBLIC
22
23
24
25

Page 276

C E R T I F I C A T E

STATE OF NEW JERSEY   )
                     : ss.
COUNTY OF MIDDLESEX   )

I, Jennifer Ocampo-Guzman, a Certified Realtime Shorthand Reporter and Notary Public within and for the State of New Jersey, do hereby certify:

That LAURA PERRY, the witness whose deposition is hereinbefore set forth, was duly sworn, via remote/oral/web videoconference due to the COVID-19 Pandemic, and that such deposition is a true record of the testimony given by the witness.

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 18th day of April 2022.

*J. Ocampo-Guzman*

_____
JENNIFER OCAMPO-GUZMAN, CRR, CLR

Page 277

```
 1
 2        -------------- I N D E X -----------------
 3       WITNESS              EXAMINATION BY       PAGE
 4       LAURA PERRY          MR. HOLLAND             7
 5                            MS. LAND              268
 6        -------------- EXHIBITS ------------------
         PERRY                                   FOR I.D.
 7
           Exhibit 1, Writ of Certiorari            51
 8
           Exhibit 2, Declaration of Laura         101
 9         Perry
10         Exhibit 3, Blog article titled,         132
           "The Man's New Dress"
11
           Exhibit 4, Page titled,                 134
12         "Transgender to Transformed"
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 278

DYLAN BRANDT vs. LESLIE RUTLEDGE
4/5/2022 - LAURA PERRY
E R R A T A   S H E E T

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

_____   _____

LAURA PERRY                        Date

Veritext Legal Solutions
212-279-9424    www.veritext.com    212-490-3430

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.