**EXHIBIT C**

Page 1

1    THE UNITED STATES DISTRICT COURT

2    EASTERN DISTRICT OF ARKANSAS

3    CENTRAL DIVISION

4

5    -------------------------------x

6    DYLAN BRANDT, by and through his

7    Mother, JOANNA BRANDT, et al.,

8              Plaintiffs

9      V.          CASE NO. 4:21-CV-00450-JM

10   LESLIE RUTLEDGE, et al.,

11             Defendants.

12   -------------------------------x

13

14

15      REMOTE/ORAL/WEB VIDEOCONFERENCE

16         VIDEOTAPED DEPOSITION OF

17         PAUL W. HRUZ, M.D., Ph.D.

18            May 25, 2022

19            9:00 a.m. CT

20

21

22

23

24   Reported by:

25   Maureen Ratto, RPR, CCR

Page 2

1                         *  *  *

2

3            Videotape deposition of Paul W.

4       Hruz, M.D., Ph.D., held virtually via

5       Zoom Teleconference, hosted from

6       Veritext Legal Solutions, pursuant to

7       notice, before Maureen Ratto, Certified

8       Court Reporter, License No. XI01165,

9       Registered Professional Reporter,

10       License No. 817125, and Notary Public.

11

12                         *  *  *

13

14

15

16

17

18

19

20

21

22

23

24

25

1    A P P E A R A N C E S:

2

3    Counsel for the Plaintiffs:

4        SULLIVAN & CROMWELL, LLP

5        125 Broad Street

6        New York, New York 10004

7        BY:  BRANDYN RODGERSON, ESQ.

8             rodgersonb@sullcrom.com

9             SOPHIA M. MATTHEWS, ESQ.

10            matthewss@sullcrom.com

11

12       AMERICAN CIVIL LIBERTIES UNION

13       125 Broad Street

14       New York, New York 10004

15       BY:  CHASE STRANGIO, ESQ.

16            cstrangio@aclu.org

17            LESLIE COOPER, ESQ.

18            lcooper@aclu.org

19

20

21

22

23

24

25

```
                                         Page 4
1        A  P  P  E  A  R  A  N  C  E  S,  continued:

2

3        Co-counsel  for  Plaintiffs:

4           GILL RAGON OWEN,  PA

5           425 West Capitol Avenue

6           Little Rock,  Arkansas 72201

7           BY:  BETH ECHOLS,  ESQ.

8               echols@gill-law.com

9

10       Counsel  for  the Defendants:

11          SENIOR ASSISTANT ATTORNEY

12          GENERAL,  PUBLIC PROTECTION DIVISION

13          OFFICE OF ARKANSAS ATTORNEY GENERAL

14          323 Center Street

15          Little Rock,  Arkansas 72201

16          BY:   AMANDA LAND,  ESQ.

17              aland@arkansasag.gov

18              MICHAEL CANTRELL,  ESQ.

19              michael.cantrell@arkansasag.gov

20

21       ALSO PRESENT:

22       MICHAEL TSCHIEMER,  Legal Video

23       Specialist

24

25
```

```
 1              PAUL  W.  HRUZ,  M.D.,  Ph.D.
 2         Q.     What  does  it  mean  to  be
 3    "consonant  with  the  magisterium  of  the
 4    Catholic  Church?"
 5              MS.  LAND:   Object  to  form.
 6         A.     Again,  I  want  to  be  clear  in
 7    serving  as  an  expert  in  this  case  that  I
 8    am  a  physician-scientist  and  pediatric
 9    endocrinologist,  not  a  theologian.   But
10    what  it  means  is  that  there  are  teachings
11    of  the  church  that  --  that  the  teaching
12    authority  of  the  church  put  forward.
13         Q.     Is  your  article  consonant  with
14    the  magisterium  of  the  Catholic  church?
15              MS.  LAND:   Object  to  form.
16         A.     Again,  I'm  not  opining  as  a
17    theologian.   I  have  no  reason  to  doubt
18    that  it  is.  But  even  if  it  were  not,
19    based  upon  the  paragraph  that  you  read
20    and  the  publication  criteria,  it  would
21    have  still  allowed  it  to  be  for
22    publication  in  this  journal.
23         Q.     Going  back  to  your  article,
24    which  is  marked  as  Exhibit  3,  and  this  is
25    in  abstract.   So  I'm  reading  from  the
```

Page 261

1           PAUL W. HRUZ, M.D., Ph.D.
2     differ depending on the circumstance and
3     the group and all sorts of mitigating
4     factors but they certainly could apply to
5     both.
6           Q.    And are they all just
7     hypotheses?
8           A.    I would say that they're --
9     because they've not been rigorously
10    studied, until you do the studies they
11    remain hypotheses.
12               There is emerging evidence
13    that would support that.  That is -- but,
14    again, as I said repeatedly, this is an
15    area of medical interventions that is
16    based upon very limited quality evidence,
17    so it's still experimental.
18          Q.    And what is the emerging
19    evidence that you just referred to?
20          A.    The emerging evidence related
21    to the lack of long-term benefit of the
22    affirmation approach.
23          Q.    Do you have personal religious
24    views about gender transition?
25               MS. LAND:  Object to form and

1              PAUL W. HRUZ, M.D., Ph.D.

2        relevance.

3        A.    So you are asking what are the

4    bases of my scientific premises that I

5    use in formulating --

6        Q.    No. I'm not asking about the

7    basis of your scientific premise.  I'm

8    just asking about your personal religious

9    views.

10       A.    I have religious views.  I

11   think everyone does.  If one does not,

12   they are ignoring reality.

13       Q.    So what are your personal

14   religious views about gender transition?

15            MS. LAND:  Objection to form,

16       relevance and scope.

17       A.    I am a physician-scientist,

18   and I'm a pediatric endocrinologist. I

19   look at all of -- again, this gets back

20   to your question earlier about the

21   relationship between faith and reason.

22   And I have repeatedly stated in many

23   venues that there is no contradiction

24   between faith and reason.  Yet my focus

25   is on science, which would fall in the

```
 1            PAUL W. HRUZ, M.D., Ph.D.
 2      category of reason.
 3               So that I don't see any
 4      conflict between what I can know by
 5      science versus what others can understand
 6      on the basis of a faith understanding.
 7      But they're not mutually exclusive and
 8      everything that I have seen from a
 9      rigorous attempt at unbiased assessment
10      of the scientific evidence is in concert
11      with those statements that are made in
12      nonscientific rounds related to theology
13      or philosophy.
14         Q.    So let's say there were a
15      dozen studies, including randomized
16      trials that met the standards that you
17      believe for rigorous assessment and
18      institutional review board oversight that
19      demonstrated the effectiveness of
20      cross-sex hormone therapy to treat gender
21      dysphoria, would you support the
22      treatment even though it's still distorts
23      biological reality, as you describe it?
24               MS. LAND:  Objection to form.
25         A.    My understanding, I have never
```

Page 264

1                PAUL W. HRUZ, M.D., Ph.D.
2       in my entire life, in my professional
3       career, ever experienced that conflict
4       and I doubt very highly that that would
5       ever occur. But I, again, am a
6       physician-scientist and I follow the
7       facts where they lead.
8            Q.    So I just -- since we're
9       allowed to ask -- sorry -- I just want to
10      ask again because you didn't answer the
11      question; do you have personal religious
12      views about gender transition separate
13      from what you explained about your
14      medical views?
15                MS. LAND:  Objection to form,
16           asked and answered.
17           A.    It doesn't occur in a vacuum.
18      So my religious views cannot be
19      disassociated from my scientific views.
20      But I've already answered your question
21      that I do have religious views.
22           Q.    And what are they?
23                MS. LAND:  Objection to form,
24           asked and answered.
25           A.    They are in consonant from

Page 265

1              PAUL W. HRUZ, M.D., Ph.D.
2      what I've learned from science that I
3      described in very much detail within my
4      declaration and throughout this
5      deposition.
6          Q.    What are they with respect to
7      gender transition?
8                MS. LAND:  Objection to form,
9          asked and answered.
10         A.    I would say there is an
11     intrinsic teleologic relationship between
12     male and female for the purpose of
13     reproduction.  That's a basic scientific
14     fact.  It can also be understood from a
15     theological or philosophical perspective.
16     They are not in conflict with each other.
17                There are approaches to
18     medical care that seek to preserve the
19     integrity of the human person, and that
20     understanding of that teleologic
21     relationship again where the science that
22     I've seen thus far has been entirely in
23     concert with statements that are made
24     from a philosophical or theological
25     perspective.

1              PAUL W. HRUZ, M.D., Ph.D.

2                  All of the things that I put

3      forward are not in contradiction, yet --

4      and thus, in no way have felt any

5      conflict in putting forward my scientific

6      understanding based upon the scientific

7      premises for hypotheses that any

8      physician-scientist would attempt to do

9      to address a very complex and important

10     problem.

11          Q.    Okay. So are there any medical

12     treatments -- are there any

13     pharmacological treatments that you

14     support to treat adults with gender

15     dysphoria based on the current state of

16     the science?

17                  MS. LAND:  Objection, form.

18          A.    Well, again, my perspective --

19     are you asking in my clinical experience

20     or in my research that I have done in the

21     medical literature?

22                  I would say that the same

23     objections that I have for the quality of

24     the evidence.  In fact, really the most

25     solid evidence that we have on long-term

Page 352

```
 1              C E R T I F I C A T E
 2              I, MAUREEN M. RATTO, a
 3    Registered Professional Reporter, do
 4    hereby certify that prior to the
 5    commencement of the examination, PAUL
 6    W. HRUZ, M.D., Ph.D. was sworn by me to
 7    testify the truth, the whole truth and
 8    nothing but the truth.
 9              I DO FURTHER CERTIFY that the
10    foregoing is a true and accurate
11    transcript of the proceedings as taken
12    stenographically by and before me at
13    the time, place and on the date
14    hereinbefore set forth.
15              I DO FURTHER CERTIFY that I am
16    neither a relative nor employee nor
17    attorney nor counsel of any of the
18    parties to this action, and that I am
19    neither a relative nor employee of such
20    attorney or counsel, and that I am not
21    financially interested in this action.
22
23
24    MAUREEN M. RATTO, RPR
25    License No. 817125
```

Page 353

```
 1                I N D E X
 2      WITNESS: PAUL W. HRUZ, M.D.,     7
 3      Ph.D.
 4      DIRECT EXAMINATION MR. STRANGIO  8
 5
 6               E X H I B I T S
 7      Exhibit Hruz 1, Expert Report of 18
 8      Paul Hruz, dated December 10,
 9      2021,
10      Exhibit Hruz 2, Expert Rebuttal  21
11      Report dated February 10th,
12      2022,
13      Exhibit Hruz 3, Abstract re: The 77
14      Use of Cross-Sex Steroids in the
15      Treatment of Gender Dysphoria by
16      Paul W. Hruz
17      Exhibit Hruz 4, article from New 78
18      Atlantis entitled Growing Pains,
19      Exhibit Hruz 5, article from     83
20      NCBC entitled Experimental
21      Approaches to Alleviating Gender
22      Dysphoria in Children by Paul W.
23      Hruz, MD
24      Exhibit Hruz 6, National         225
25      Catholic Bioethics Quarterly
```

Page 354

1       Submission Guidelines,

2       Exhibit Hruz 7, Amicus Brief re: 274

3       Nicholas Meriwether

4       Exhibit Hruz 8, amicus brief re: 299

5       Gloucester County School Board

6       v. Deirdre Grimm,

7       Exhibit Hruz 9, statement from    307

8       Florida Department of Health re:

9       Treatment of Gender Dysphoria

10      for Children and Adolescents

11      dated April 20, 2022

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 355

1    Amanda Land, Esq.,

2    aland@arkansasag.gov

3                           June 3, 2022

4    RE:    Brandt, Dylan Et Al v. Rutledge, Leslie Et Al.

5          5/25/2022, Paul Hruz , M.D. (#5163582)

6          The above-referenced transcript is available for

7    review.

8          Within the applicable timeframe, the witness should

9    read the testimony to verify its accuracy. If there are

10   any changes, the witness should note those with the

11   reason, on the attached Errata Sheet.

12         The witness should sign the Acknowledgment of

13   Deponent and Errata and return to the deposing attorney.

14   Copies should be sent to all counsel, and to Veritext at

15   erratas-cs@veritext.com.

16

17    Return completed errata within 30 days from

18   receipt of testimony.

19     If the witness fails to do so within the time

20   allotted, the transcript may be used as if signed.

21

22                 Yours,

23                 Veritext Legal Solutions

24

25

Page 356

1    Brandt, Dylan Et Al v. Rutledge, Leslie Et Al.

2    Paul Hruz , M.D. (#5163582)

3                    E R R A T A   S H E E T

4    PAGE_____ LINE_____ CHANGE_____

5    _____

6    REASON_____

7    PAGE_____ LINE_____ CHANGE_____

8    _____

9    REASON_____

10   PAGE_____ LINE_____ CHANGE_____

11   _____

12   REASON_____

13   PAGE_____ LINE_____ CHANGE_____

14   _____

15   REASON_____

16   PAGE_____ LINE_____ CHANGE_____

17   _____

18   REASON_____

19   PAGE_____ LINE_____ CHANGE_____

20   _____

21   REASON_____

22

23   _____        _____

24   Paul Hruz , M.D.                  Date

25

Page 357

1    Brandt, Dylan Et Al v. Rutledge, Leslie Et Al.

2    Paul Hruz , M.D. (#5163582)

3                    ACKNOWLEDGEMENT OF DEPONENT

4        I, Paul Hruz , M.D., do hereby declare that I

5    have read the foregoing transcript, I have made any

6    corrections, additions, or changes I deemed necessary as

7    noted above to be appended hereto, and that the same is

8    a true, correct and complete transcript of the testimony

9    given by me.

10

11   _____     _____

12   Paul Hruz , M.D.                  Date

13   *If notary is required

14                        SUBSCRIBED AND SWORN TO BEFORE ME THIS

15                        _____ DAY OF _____, 20___.

16

17

18                        _____

19                        NOTARY PUBLIC

20

21

22

23

24

25

Federal Rules of Civil Procedure

Rule 30


(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.


DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.