**EXHIBIT D**

Page 1

1   THE UNITED STATES DISTRICT COURT

    FOR THE EASTERN DISTRICT OF ARKANSAS

2   CENTRAL DIVISION

    _____

3

    DYLAN BRANDT, by and through his mother,

4   JOANNA BRANDT, et al.,

5                 Plaintiffs,

            vs.                    CASE NO.

6                                  4:21-CV-00450-JM

7   LESLIE RUTLEDGE, in her official

    capacity as the Arkansas

8   Attorney General, et al.,

9                 Defendants.

    _____

10

11

12          ORAL/VIDEOTAPED/VIDEO CONFERENCE

13         DEPOSITION OF MARK DANIEL REGNARUS

14          TAKEN ON BEHALF OF THE PLAINTIFFS

15              LITTLE ROCK, ARKANSAS

16                 ON MAY 5, 2022

17                   9:01 a.m.

18

19

20

21

22

23

24

25   REPORTED BY:  TRENA K. BLOYE, CSR

```
 1                  A P P E A R A N C E S
 2
 3

     For the Plaintiffs:
 4        SULLIVAN & CROMWELL, LLP
          DANIEL JAMES RICHARDSON
 5        BRANDYN RODGERSON    (Appearing via video conf.)
          125 Broad Street
 6        New York, New York  10004-2498
          212-558-4000
 7        richardsond@sullcrom.com
 8
          GILL RAGON OWEN
 9        BETH ECHOLS
          425 West Capitol Avenue
10        Suite 3800
          Little Rock, Arkansas 72201
11        501-376-3800
          echols@gill-law.com
12
          ACLU OF ARKANSAS
13        GARY SULLIVAN
          CHASE STRANGIO       (Appearing via video conf.)
14        LESLIE COOPER        (Appearing via video conf.)
          904 West 2nd Street
15        Little Rock, Arkansas 72201
16
     For the Defendants:
17        OFFICE OF THE ARKANSAS ATTORNEY GENERAL
          MICHAEL A. CANTRELL
18        323 Center Street
          Suite 200
19        Little Rock, Arkansas 72201
          501-682-2401
20        michael.cantrell@arkansasag.gov
21
     Video Operator:
22        Mike Tscheimer
23
24
25
```

Page 3

# C O N T E N T S

| | Page |
|---|---|
| Examination by Mr. Richardson | 7 |
| Certificate | 328 |
| Correction Sheet | 330 |
| Jurat Page | 331 |

1                PLAINTIFFS' INDEX OF EXHIBITS

2

3     Exhibit              Description              Page

4     Exhibit 1   Regnarus Expert Report              11

5     Exhibit 2   Regnarus Rebuttal Expert Report     12

6     Exhibit 3   Declaration of Dr. Regnarus         15

7     Exhibit 4   Supplemental Dec. of Dr. Regnarus   15

8     Exhibit 5   "Arkansas and the Politics of       77

9                 Experimenting on Children."

10    Exhibit 7   11/13/19 "New Data Show" article    81

11    Exhibit 8   "Does Conversion Therapy Hurt People" 207

12    Exhibit 9   Excerpt of bench trial testimony    115

13    Exhibit 14  Attitudes in the U.S., 2020 article  44

14    Exhibit 18  Findings of Facts and Conclusions of 138

15                Law (DeBoer v Snyder)

16

17

18                    *  *  *  *  *

19

20

21

22

23

24

25

1                S T I P U L A T I O N S

2

3

4        IT IS HEREBY STIPULATED AND AGREED BY and

5   between the parties hereto, through their respective

6   attorneys, that the videotaped deposition of MARK DANIEL

7   REGNARUS may be taken on behalf of the Plaintiffs on the

8   5th day of May, 2022, in Little Rock, Arkansas, by Trena

9   K. Bloye, Certified Shorthand Reporter for the State of

10  Oklahoma, by notice pursuant to the Federal Rules of

11  Civil Procedure.

12

13

14

15                      * * * * *

16

17

18

19

20

21

22

23

24

25

Page 86

```
 1      Q    Gotcha.  Okay.  And are there other essays

 2   related to transgender people or gender dysphoria beyond

 3   these two?

 4      A    There may be.  You would have to sort of scour

 5   Public Discourse.  I don't keep track.  I write three or

 6   four a year.  There is probably some mention of it

 7   somewhere.

 8      Q    Okay.  Have you ever written a piece called

 9   "Queering Science"?

10      A    I did.

11      Q    Did that appear in First Things?

12      A    It did.  It sounds like you know some of the

13   answers to these questions.

14      Q    I did my homework a little bit.  Is First

15   Things maintained by the Institute of Religion and

16   Public Life?

17      A    I do, but I don't really know what their

18   organizational aim is, so --

19      Q    Do you know the mission of that organization?

20      A    I don't.  I just know that, you know, First

21   Things is a journal I deal with occasionally.  I have

22   written occasional stuff in it.

23      Q    Okay.  Would you it surprise you to learn that

24   the mission is to oppose the, quote, ideology of

25   secularism?
```

Page 87

1      A    No.   Because, you know first things -- do you

2    know what the reference to "first things" are?   Like

3    first principles.   So I'm not surprised that opposition

4    to secularism would be, kind of, one of their first

5    things, first principle.

6          Q    And do you share that, that view?

7          A    Opposition to secularism?   I have to think what

8    that means.   Generally I don't, when I submit something,

9    scour the parent organization's mission statement and

10    see if I agree with everything.   Just it's an -- a

11    journal that I subscribe to, read occasionally, like

12    lots of things, you see an issue, eh, wait until the

13    next issue.   But I published in there on occasion.

14          Q    And so what do you understand "opposition to

15    secularism" to mean?

16                    MR. CANTRELL:   Object to form.

17          A    What do I understand opposition to secularism

18    to mean?   Probably that they seek to resist

19    understandings of the human person and social order and

20    maybe political order as -- a post -- things that would

21    neglect a perspective that entails sort of the divine

22    creation of persons and, you know, I suspect it's

23    another way of saying that it's Judeo-Christian in

24    intent.

25          Q    (By Mr. Richardson) Okay.   And do you broadly

Page 88

1    support that, that objective?

2                 MR. CANTRELL:  Object to form.

3       A    I confess I haven't really thought about that.

4       Q    (By Mr. Richardson) Okay.  I just want to

5    follow up on the piece "Queering Science."  Do you

6    remember roughly what that was about?

7       A    You know, I do, but, you know, if you have got

8    an example I'd sure love to see it.

9       Q    I'm just curious.  Did anything come to mind

10   about that piece, about what that -- what your argument

11   was in that piece?

12      A    I think I probably.  I think I probably should

13   take a look at it first before I make claims about it.

14   As I said earlier, one writes things and you move on and

15   I don't always remember what I've said.  But I seldom

16   retract my own words.  Do you have that copy of it?

17      Q    Well, do you just recall anything about it at

18   all or --

19      A    I do recall --

20      Q    -- about the argument?

21      A    -- little bits about it, yeah.

22      Q    Okay.  Do you mind sharing what you recall

23   about it?

24      A    I think it's sort of a criticism of what I

25   called in this here, ideological capture of professional

Page 258

1   objection about the lack of clinical trials.

2        A    Um-hum.

3        Q    There's the objection about research and

4   methodological concerns.  And these are separate

5   objections about the wisdom of care for people who have

6   not experienced puberty and informed consent.

7        A    Right, right, yeah.

8        Q    And those are different objections in your

9   mind?

10       A    Right.

11       Q    I just want to ask also, do you have religious

12  objections to gender-affirming care?

13       A    Religious objections to gender-affirming care?

14  Insofar as, you know, in the back of this interpretive

15  frame I already agreed that I'm kind of in the bodily

16  integrity camp.

17       Q    And just to clarify, that's Exhibit 14?

18       A    Is it?  Are you asking me?

19       Q    I'm sorry.

20       A    Okay.  Fine.  Are those religious?  I don't

21  know that those are religious.  I'm Catholic.  I know

22  the Pope isn't a big fan of gender ideology, but, uh --

23       Q    Do you share that view?

24       A    It depends on what he means by gender ideology.

25  The church hasn't made extensive statement on the

Page 259

1    matter.  These are -- these aren't necessarily

2    religious, but they do characterize largely how I

3    understand this to be.  Um, you know, I don't know that,

4    like, my Bishop in Austin, I don't know what his

5    thinking is on this, but he wouldn't be out of step, I

6    think, with the church.  So how much does that influence

7    me, I have no idea.  I couldn't pick apart these things.

8         Q    Okay.

9         A    But it's safe to say my church isn't --

10   wouldn't make it easy for me mentally, theologically, to

11   sort of endorse these things.  But all the things I've

12   told you really stand independently so far of that.

13        Q    Okay.  Just to come back, you said the church

14   has opposition to gender ideology.  What does that term

15   mean?

16        A    That's how they frame -- you know, I'm not a

17   good person to ask about that.

18        Q    Okay.

19        A    I do think, you know, they would not be fans

20   of, or even believers in the idea that one can change

21   one's sex.

22        Q    And is that a view you share?

23        A    I mean, I think one can pass extremely

24   effectively as a member of the opposite sex.  Do you

25   pass as non-binary?  That's a different kind of passing

Page 260

1    in the description.

2           But, you know, I don't think people can

3    actually change their sex insofar as we understand sex,

4    sexual dimorphism of the human organism.

5      Q    When you say pass for the opposite sex --

6      A    Like be understood to be somebody of the

7    opposite sex.

8      Q    Okay.  And you see that as related to

9    transgender people in the sense that you think they are

10   attempting to pass --

11     A    Some transgender persons are attempting to pass

12   as the opposite sex, yeah.  I mean, Dr. Karasic -- is

13   that how you say his name?  I wrote in I think the

14   rebuttal where he describes this sort of -- the

15   normative goals of treatment, which are often to sort of

16   feel, appear, understand one's self as a member of the

17   opposite sex.  So we're talking about, like, the desire

18   to do so; right?

19     Q    Okay.  Do you think that anybody who presents

20   as the opposite sex is transgender or who wants to

21   present as the opposite sex is transgender?

22     A    Not necessarily, no.

23     Q    So what is the distinction there?

24     A    The distinction?  I mean, my understanding is

25   that there are lots of goals that people have when they

1                  C E R T I F I C A T E

2

3

4          I, Trena K. Bloye, Certified Shorthand Reporter

5     within and for the State of Oklahoma, certify that MARK

6     DANIEL REGNARUS was by me first duly sworn to testify

7     the truth, the whole truth, and nothing but the truth,

8     in the case aforesaid; that the witness chooses to read

9     and sign the deposition; that the above and foregoing

10    videotaped deposition was taken by me in shorthand and

11    thereafter transcribed; that the same was taken on May

12    5, 2022, at 9:01 a.m., at the Arkansas Attorney

13    General's Office, 323 Center Street, Suite 200, Little

14    Rock, Arkansas, that I am not an attorney for, nor a

15    relative of any of said parties or otherwise interested

16    in the event of said action.

17          IN WITNESS WHEREOF, I have hereunto set my hand

18    and official seal this 14th day of May, 2022.

19

20

21

22

23

24    _____

                    Trena K. Bloye, CSR

25                  State of Oklahoma CSR No. 1522

Page 329

1   MICHAEL A. CANTRELL

2   michael.cantrell@arkansasag.gov

3                        May 17, 2022

4   RE: BRANDT, et al. vs. RUTLEDGE, et al.

5       5/5/2022, Mark D. Regnarus (#5163547)

6       The above-referenced transcript is available for

7   review.

8       Within the applicable timeframe, the witness should

9   read the testimony to verify its accuracy. If there are

10  any changes, the witness should note those with the

11  reason, on the attached Errata Sheet.

12      The witness should sign the Acknowledgment of

13  Deponent and Errata and return to the deposing attorney.

14  Copies should be sent to all counsel, and to Veritext at

15  erratas-cs@veritext.com.

16

17      Return completed errata within 30 days from

18  receipt of testimony.

19      If the witness fails to do so within the time

20  allotted, the transcript may be used as if signed.

21

22                  Yours,

23                  Veritext Legal Solutions

24

25

Page 330

1    BRANDT, et al. vs. RUTLEDGE, et al.

2    5/5/2022 - Mark D. Regnarus (#5163547)

3              E R R A T A   S H E E T

4    PAGE_____ LINE_____ CHANGE_____

5    _____

6    REASON_____

7    PAGE_____ LINE_____ CHANGE_____

8    _____

9    REASON_____

10   PAGE_____ LINE_____ CHANGE_____

11   _____

12   REASON_____

13   PAGE_____ LINE_____ CHANGE_____

14   _____

15   REASON_____

16   PAGE_____ LINE_____ CHANGE_____

17   _____

18   REASON_____

19   PAGE_____ LINE_____ CHANGE_____

20   _____

21   REASON_____

22

23   _____  _____

24   Mark D. Regnarus                      Date

25

Page 331

1    BRANDT, et al. vs. RUTLEDGE, et al.

2    5/5/2022 - Mark D. Regnarus (#5163547)

3                   ACKNOWLEDGEMENT OF DEPONENT

4       I, Mark D. Regnarus, do hereby declare that I

5    have read the foregoing transcript, I have made any

6    corrections, additions, or changes I deemed necessary as

7    noted above to be appended hereto, and that the same is

8    a true, correct and complete transcript of the testimony

9    given by me.

10

11   _____    _____

12   Mark D. Regnarus                     Date

13   *If notary is required

14                         SUBSCRIBED AND SWORN TO BEFORE ME THIS

15                         _____ DAY OF _____, 20___.

16

17

18                         _____

19                         NOTARY PUBLIC

20

21

22

23

24

25

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.