```
 1   IN THE UNITED STATES DISTRICT COURT
 2   EASTERN DISTRICT OF ARKANSAS
 3   CENTRAL DIVISION
 4   CASE NO. 4:21-CV-00450-JM
 5   -------------------------------------X
 6   DYLAN BRANDT, by and through his
 7   Mother, JOANNA BRANDT, et al.,
 8          Plaintiffs,
 9      V.
10   LESLIE RUTLEDGE, et al.,
11          Defendants.
12   -------------------------------------X
13
14
15      REMOTE/ORAL/WEB VIDEOCONFERENCE
16    VIDEOTAPED DEPOSITION OF AMY E. EMBRY
17      (Sitting in Little Rock, Arkansas)
18              May 10, 2022
19               10:00 a.m.
20
21
22
23
24   Reported by:
25   Maureen Ratto, RPR, CCR
```

Page 2

```
 1                    * * *
 2
 3        Videotape deposition of Amy E.
 4   Embry, held virtually via Zoom
 5   Teleconference, hosted from Veritext
 6   Legal Solutions, pursuant to notice,
 7   before Maureen Ratto, Certified Court
 8   Reporter, License No. XI01165,
 9   Registered Professional Reporter,
10   License No. 817125, and Notary Public.
11
12                    * * *
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1   A P P E A R A N C E S:
 2
 3   Counsel for the Plaintiffs:
 4      SULLIVAN & CROMWELL, LLP
 5      125 Broad Street
 6      New York, New York 10004
 7      BY:   JONATHAN G. LESTER, ESQ.
 8            DANIEL RICHARDSON, ESQ.
 9
10      AMERICAN CIVIL LIBERTIES UNION
11      125 Broad Street
12      New York, New York 10004
13      BY:   LESLIE COOPER, ESQ.
14
15      AMERICAN CIVIL LIBERTIES UNION
16      OF ARKANSAS
17      904 West 2nd Street
18      Little Rock, Arkansas 72201
19      BY:   GARY SULLIVAN, ESQ.
20
21      GILL RAGON OWEN, PA
22      425 West Capitol Avenue
23      Little Rock, Arkansas 72201
24      BY: DRAKE MANN, ESQ.
25          BETH ECHOLS, ESQ.
```

Veritext Legal Solutions
212-279-9424    www.veritext.com    212-490-3430

1  A P P E A R A N C E S, continued:
2
3  Counsel for the Defendants:
4      SENIOR ASSISTANT ATTORNEY
5      GENERAL, PUBLIC PROTECTION DIVISION
6      OFFICE OF ARKANSAS ATTORNEY GENERAL
7      323 Center Street
8      Little Rock, Arkansas 72201
9      BY:  AMANDA LAND, ESQ.
10
11  ALSO PRESENT:
12  Randy Schoening, Legal Video Specialist
13
14
15
16
17
18
19
20
21
22
23
24
25

              AMY E. EMBRY

1              AMY E. EMBRY
2  treating adolescents with
3  gender-affirming hormones, would the
4  doctor be violating their ethical duty to
5  discontinue treatment for a patient
6  without referring them to an alternative
7  provider?
8       A.    According to this law, yes.
9       Q.    And by "this law" you mean
10  20-6-202?
11      A.    Yes.
12      Q.    Okay. So that would be
13  unprofessional conduct on the part of a
14  doctor to discontinue gender-affirming
15  hormones without providing a referral to
16  another doctor to continue that care; is
17  that correct?
18      A.    Yes, that is my understanding.
19      Q.    So what is the Board to do if
20  that situation arises and a complaint is
21  filed or the Board otherwise comes to
22  learn about a doctor who is providing
23  care to a patient, an adolescent patient,
24  specifically gender-affirming medical
25  care, and was providing that care before

1                  AMY E. EMBRY
2     Act 626 took effect and then after 626
3     takes effect feels the doctor cannot
4     discontinue that care because it would be
5     abandoning their patient?  So on the one
6     hand, there's the issue of abandonment
7     and on the other hand, Act 626 says the
8     doctor can't provide that care; how are
9     doctors supposed to navigate that
10    conflict?
11              MS. LAND:  Objection to form.
12       A.    If that were to occur, then
13    what would happen is the Board would let
14    their legal counsel know there is a
15    conflict of these two rules and we need
16    to know how to proceed. That attorney may
17    go further and it may require an AG
18    opinion. When two laws conflict they have
19    to ask for legal assistance.
20       Q.    Has the Board raised the
21    concern about Act 626 putting it in this
22    bind?
23       A.    No.  The Board has not
24    addressed Act 626 at all.
25       Q.    Okay. Does the Board have any

Page 243

1          AMY E. EMBRY
2  concerns about the law intruding into
3  this medical decision that families make
4  with their doctors?
5          MS. LAND:  Objection to form
6      and scope.
7      A.   I would say that the Board, it
8  is possible that they would have
9  concerns.  But, again, if it were in
10 effect and it's in conflict with another
11 law, they would not do anything until
12 they advised their legal counsel.
13     Q.   And in your view it's possible
14 the Board would have concerns even if
15 there's an individual minor who is not
16 currently receiving care but is --
17 parents and doctors believe care would be
18 in their best interest?
19     A.   It is possible, it is a
20 possibility that the Board would voice
21 concerns.
22     Q.   But you have not heard
23 specific concerns voiced by anybody at
24 this point?
25     A.   No.

Page 244

|   |   |   |
|---|---|---|
| 1 | | AMY E. EMBRY |
| 2 | Q. | Okay. Do you have concerns? |
| 3 | | MS. LAND: I'll object to the form of that question to the extent it's asking for any personal views that would be outside the scope of this notice. So I will object to any question that's going to elicit personal views of this witness. |
| 10 | | MS. COOPER: Okay. |
| 11 | | MS. LAND: And if we're going to continue to ask her personal views, that might need to be a discussion we need to have further. |
| 15 | | MS. COOPER: Yeah. I just have this question. |
| 17 | Q. | Do you remember the question? |
| 18 | | MS. LAND: You can answer. |
| 19 | A. | Okay. So I have concerns that the law that was passed, Act 626, is in violation of other laws. That is my concern. |
| 23 | Q. | And which other laws? |
| 24 | A. | The 20-6-202. |
| 25 | Q. | Any others? |

Page 245

1              AMY E. EMBRY
2      A.     Not that I'm aware of right
3  now.
4      Q.     Okay. So that's a concern
5  about people who are currently receiving
6  care not being able to have the doctor
7  continue to provide or refer them for
8  continuation of that care?
9      A.     Correct.
10     Q.     Okay. But not about the people
11 who haven't started care yet, there are
12 no concerns about that?
13     A.     I don't know -- at this point,
14 no. If the law were enacted, then more
15 research would need to be done.
16     Q.     And have you talked with any
17 families who will be directly affected by
18 Act 626 if it takes effect?
19     A.     Have I spoken to anyone? No.
20     Q.     Do you know any?
21     A.     No, I do not.
22     Q.     Okay. Do you know any
23 transgender adolescents who are receiving
24 gender-affirming medical care?
25     A.     The only ones that I am aware

Page 247

1      C E R T I F I C A T E
2           I, MAUREEN M. RATTO, a
3    Registered Professional Reporter, do
4    hereby certify that prior to the
5    commencement of the examination, AMY E.
6    EMBRY was sworn by me to testify the
7    truth, the whole truth and nothing but
8    the truth.
9           I DO FURTHER CERTIFY that the
10   foregoing is a true and accurate
11   transcript of the proceedings as taken
12   stenographically by and before me at
13   the time, place and on the date
14   hereinbefore set forth.
15          I DO FURTHER CERTIFY that I am
16   neither a relative nor employee nor
17   attorney nor counsel of any of the
18   parties to this action, and that I am
19   neither a relative nor employee of such
20   attorney or counsel, and that I am not
21   financially interested in this action.
22
23
24   _____
         MAUREEN M. RATTO, RPR
25       License No. 817125

```
 1                I N D E X
 2   WITNESS: AMY E. EMBRY                  6
 3   DIRECT EXAMINATION BY MS. COOPER       6
 4
 5             E X H I B I T S
 6   Exhibit 1, 30(b)(6) notice for        15
 7   Defendant Arkansas State Medical
 8   Board
 9   Exhibit 2, Arkansas Medical           24
10   Practices Act and Regulations,
11   revised as of December 2, 2020
12   Exhibit 3, printout of the            44
13   homepage of the Arkansas State
14   Medical Board website
15   Exhibit 4, printout from the          69
16   Medical Board re: Regulatory and
17   Discipline
18   Exhibit 5, Arkansas State House      105
19   Bill 1718
20   Exhibit 6, Guidance For the Use      138
21   of Hydroxychloroquine and
22   Chloroquine For the Treatment of
23   COVID 19
24   Exhibit 7, May 5, 2021 email re:     155
25   Public Health Grand Rounds
```

| # | | |
|---|---|---|
| 1 | Exhibit 8, email dated May 25, | 165 |
| 2 | 2021, re: CNN Inquiry | |
| 3 | Exhibit 9, copy of House Bill | 175 |
| 4 | 1570 | |
| 5 | Exhibit 10, Opinion article in | 217 |
| 6 | Washington Post dated April 8, | |
| 7 | 2021 | |
| 8 | Exhibit 11, email dated March | 229 |
| 9 | 22, 2021, from Sarah Vestal to | |
| 10 | ASMB | |

Page 250

1  AMANDA LAND, ESQ.
2  aland@arkansasag.gov
3                    May 24, 2022
4  RE: BRANDT, et al. vs. RUTLEDGE, et al.
5      5/10/2022, Amy E. Embry (#5219516)
6      The above-referenced transcript is available for
7  review.
8      Within the applicable timeframe, the witness should
9  read the testimony to verify its accuracy. If there are
10 any changes, the witness should note those with the
11 reason, on the attached Errata Sheet.
12     The witness should sign the Acknowledgment of
13 Deponent and Errata and return to the deposing attorney.
14 Copies should be sent to all counsel, and to Veritext at
15 erratas-cs@veritext.com.
16
17     Return completed errata within 30 days from
18 receipt of testimony.
19     If the witness fails to do so within the time
20 allotted, the transcript may be used as if signed.
21
22              Yours,
23              Veritext Legal Solutions
24
25

Page 251

BRANDT, et al. vs. RUTLEDGE, et al.
5/10/2022 - Amy E. Embry (#5219516)

E R R A T A   S H E E T

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

_____     _____

Amy E. Embry                                 Date

Page 252

1  BRANDT, et al. vs. RUTLEDGE, et al.
2  5/10/2022 - Amy E. Embry (#5219516)
3              ACKNOWLEDGEMENT OF DEPONENT
4     I, Amy E. Embry, do hereby declare that I
5  have read the foregoing transcript, I have made any
6  corrections, additions, or changes I deemed necessary as
7  noted above to be appended hereto, and that the same is
8  a true, correct and complete transcript of the testimony
9  given by me.
10
11  _____   _____
12  Amy E. Embry                       Date
13  *If notary is required
14                  SUBSCRIBED AND SWORN TO BEFORE ME THIS
15          _____ DAY OF _____, 20___.
16
17
18                  _____
19                  NOTARY PUBLIC
20
21
22
23
24
25

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.