Page 1

1            IN THE UNITED SATES DISTRICT COURT

2              EASTERN DISTRICT OF ARKANSAS

3                  CENTRAL DIVISION

4

DYLAN BRANDT, et al.,                )

5                                     )   Case No.

          Plaintiffs,                )   4:21-cv-00450-JM

6                                     )

      vs.                             )

7                                     )

LESLIE RUTLEDGE, et al.,             )

8                                     )

          Defendants.                )

9    ---------------------------------X

10

11             VIDEOTAPED DEPOSITION OF

12               RHYS BRANMAN, M.D.

13

14             Friday, June 24, 2022

15                  1:58 p.m.

16

17

18       Office of the Arkansas Attorney General

19           323 Center Street - Suite 200

20           Little Rock, Arkansas 72201

21

22

23

24   Stenographically Remotely Reported By:

25   Mayleen Ahmed, RMR, CRR, CRC, CSR/CCR

```
 1              A P P E A R A N C E S
 2    Attorneys for Plaintiffs:
 3           SULLIVAN & CROMWELL LLP
 4           BY: DANIEL J. RICHARDSON, ESQ. [via Zoom]
 5           1700 New York Avenue NW
 6           Washington, D.C. 20006
 7           202.956.7500
 8           richardson@sullcrom.com
 9
10           GILL RAGON OWEN, P.A.
11           BY: BETH ECHOLS, ESQ.
12               DRAKE MANN, ESQ.
13           425 W. Capitol Avenue - Suite 3800
14           Little Rock, Arkansas 72201
15           501.376.3800
16           echols@gill-law.com
17           mann@gill-law.com
18
19           AMERICAN CIVIL LIBERTIES UNION FOUNDATION
20           BY: LESLIE COOPER, ESQ. [via Zoom]
21           125 Broad Street
22           New York, New York 10004
23           917.345.1742
24           lcooper@aclu.org
25
```

Page 3

1           A P P E A R A N C E S (cont'd)

2

3    Attorneys for Defendants:

4            ARKANSAS ATTORNEY GENERAL'S OFFICE

5            BY: AMANDA LAND, ESQ.

6            323 Center Street - Suite 200

7            Little Rock, Arkansas 72201

8            501.682.2007

9            amanda.land@arkansasag.gov

10

11

12   ALSO PRESENT:

13   MICHAEL TSCHIEMER, videographer, Notary Public

14

15                   ---o0o---

16

17

18

19

20

21

22

23

24

25

1                    I N D E X

2

3   WITNESS:  RHYS BRANMAN, M.D.

4   EXAMINATION                                  PAGE

5   BY MR. RICHARDSON ......................... 8

6

7

8   MOTIONS TO STRIKE:              None

9   INSTRUCTIONS NOT TO ANSWER:     None

10  DOCUMENT/INFORMATION REQUESTS:     None

11

12

13  -------------------- EXHIBITS ----------------------

14                  (Previously marked)

15  PLAINTIFFS'

16    EXHIBIT                                   PAGE

17  Exhibit 2     Regulation No. 27              92

18

19  Exhibit 3     Little Rock Cosmetic Surgery   44

20                Center web page

21

22  Exhibit 4     American Society of Plastic    57

23                Surgeons - Gender Affirmation

24                Surgeries

25

Page 5

1    ----------------- EXHIBITS (Cont'd) -----------------

2                       (Previously marked)

3    PLAINTIFFS'

4      EXHIBIT                                        PAGE

5    Exhibit 7     Guidance For the Use of            83

6                  Hydroxychloroquine and

7                  Chloroquine For the Treatment

8                  of COVID 19

9

10   Exhibit 8     Opinion piece, Governor            126

11                 Hutchison, Washington Post,

12                 April 8, 2021

13

14   Exhibit 9     H.B. 1570                          105

15

16                       ---o0o---

17

18

19

20

21

22

23

24

25

1        A.    No.  I've not been aware of any

2   conversations with Board staff.

3        Q.    Are you aware of doctors at Arkansas who

4   provide gender-affirming medical care?

5        A.    I'm not aware of any doctors that

6   provide that care.

7        Q.    Are you aware if that care is provided

8   in the state of Arkansas?

9        A.    I'm not aware of that.

10        Q.    Are you aware of a law called H.B. 1570?

11        A.    Please repeat that.  I'm sorry.

12        Q.    A law called H.B. 1570.

13        A.    I am not.

14        Q.    It's the law at issue in this case --

15        A.    Okay.

16        Q.    -- which bans gender transition

17   procedures for anybody under the age of 18.

18              Have you heard the term "Act 626"?

19        A.    I have not.

20        Q.    Okay.  That's another name for the same

21   law.  So when I say "Act 626" or "H.B. 1570," I'm

22   referring to the law at issue in the case.

23        A.    Okay.

24        Q.    Okay.  So what do you know about the law

25   at issue in this case?

```
                                        Page 105

 1        A.    I'm -- I don't know anything about the

 2   law.  Sorry.

 3        Q.    Okay.

 4              MR. RICHARDSON:  Beth, can we get

 5   Exhibit 9, please.

 6              THE WITNESS:  Thank you.

 7              (Exhibit 9 introduced)

 8   BY MR. RICHARDSON:

 9        Q.    This is a copy, and the relevant text is

10   on page 8, I believe.

11        A.    Page 8?

12        Q.    Page 8, yes, sir.

13        A.    Okay.

14        Q.    Okay.  Do you see maybe the second

15   paragraph there, "20-9-1502"?

16        A.    "20-9-1502."

17              Yes, I see it.

18        Q.    And then there's a subpart (a) right

19   below that.

20        A.    Yes.  I see that.

21        Q.    It says:

22              "A physician or other health care

23        professional shall not provide gender

24        transition procedures to any individual under

25        18 years of age."
```

1    A.    Okay.

2    Q.    Do you see that?  Okay.

3          So you were not aware of this law before

4    today?

5    A.    I have not been aware of this law until

6    today.

7    Q.    Did you -- were you aware of any of the

8    reporting around a ban on health care for

9    transgender adolescents?

10          MS. LAND:  Object to form.

11    A.    I was not privy to any -- like news

12    reporting?

13    Q.    Yes.  Just any news reporting at the

14    time.

15    A.    I really haven't seen anything on that.

16    I guess I've been working too much.

17    Q.    So you would not have heard about

18    anything to do with -- would the phrase "a safe act"

19    sound familiar to you?

20    A.    No.

21    Q.    Okay.  Do you recall at any point in

22    2021 or before that, anybody from the legislature

23    reaching out to you to talk about gender-affirming

24    medical care?

25    A.    Nope.  I never heard anything about

```
 1   that.
 2        Q.    Okay.  And nobody from the Governor's
 3   office on that topic?
 4        A.    Never received anything from the
 5   Governor's office.
 6        Q.    Are you aware that Governor Hutchison
 7   vetoed the law H.B. 1570?
 8        A.    I'm not aware of that.
 9        Q.    Okay.  Do you know why you're a
10   defendant in this lawsuit?
11        A.    I absolutely do not know why I'm a
12   defendant in this lawsuit.
13        Q.    Do you know why the Board is a
14   defendant?
15        A.    I don't.  I have no idea.  It's sort of
16   befuddling.
17        Q.    Okay.  Would the --
18        A.    I'm not sure what -- can you tell me?
19        Q.    Would -- does the Board have to enforce
20   the laws and regulations about the regulation of
21   medicine in Arkansas?
22        A.    Yes.  The Board is involved in -- so,
23   for example, a regulation like this, we would be
24   involved in enforcing that regulation.
25        Q.    All right.  So, in your view, the Board
```

Page 116

1   way.

2           Again, you said that you would have

3   enforce H.B. 1570 as a Board if it went into effect,

4   correct?

5           A.    That would be correct.  We would have to

6   develop rules that fell in line with the legislative

7   bill.

8           Q.    So, let's imagine a situation again

9   where a doctor -- you said that if you investigated

10  and found a violation of H.B. 1570, you would have

11  to take some kind of action?

12          A.    Correct.

13          Q.    So imagine a doctor asserts, in defense,

14  their ethical obligation to not abandon a patient,

15  would the Board have to take action against the

16  doctor in that situation?

17          MS. LAND:  Object to form, and calls for

18  speculation.

19          A.    Yeah.  I would have to -- you know, I

20  guess you would have to query the entire Board.  I

21  can't speak for all the Board members; there's a

22  large number of them.  And so I can't speculate to

23  what the Board would actually do.

24          Q.    Okay.  What do you think would be an

25  appropriate response?

1      A.    I don't know.  I can't speculate on

2  that.  I would just have to -- that I would have to

3  kind of think about.  I'm not -- I'm not sure if I

4  could really come up with an answer right now.

5      Q.    Okay.  And now that you've read

6  sections (a) and (b) on page 8 that we had talked

7  about --

8            Do you see those sections?

9      A.    Yes.  I'm turning to them right now.

10     Q.    Okay.

11           -- do you read those sections to be in

12  conflict with the ethical obligations regarding

13  abandonment?

14           MS. LAND:  I'll object to the form on

15  that, and I'll also object to the questioning over

16  this Bill.

17           He's not an attorney, and he can't

18  testify as to the effect or the substance of the law

19  or the meaning of the law.  So it would be calling

20  for speculation and irrelevant testimony.

21           You can --

22           THE WITNESS:  So I --

23           MS. LAND:  -- answer.

24           You can answer.

25           THE WITNESS:  All right.  I'm just

Page 118

```
 1   rereading it.
 2              (Witness reviewing document.)
 3              THE WITNESS:  And the question was
 4   again?  I'm sorry.
 5   BY MR. RICHARDSON:
 6        Q.   Do you think that sections (a) and (b)
 7   conflict with the ethical obligations of doctors
 8   regarding not abandoning patients?
 9              MS. LAND:  Restate my objections.
10        A.   I guess it depends on how you read this.
11        Q.   If the law were --
12        A.   If --
13        Q.   -- interpreted as --
14        A.   If this -- yeah, if you're interpreting
15   the law as -- and I'm referring to section (b), as a
16   referral to any health care professional within the
17   state of Arkansas, then I guess they wouldn't be in
18   conflict.
19              I guess if it's all health care
20   professionals in general, I don't know if the state
21   of Arkansas has jurisdiction over all health care
22   individuals in Arkansas -- I mean, in the United
23   States.
24              So I think there are some legalistic
25   parts of this that I really can't speak to, and I
```

1    would probably have to consult our attorney, our

2    Board attorney for clarification.

3         Q.    Okay.  Let's leave the legal disputes to

4    the side and just say:  If the law did prevent a

5    doctor from referring a patient to any medical

6    provider to receive that care, would it conflict

7    with the ethical obligations to not abandon the

8    patient?

9              MS. LAND:  Object to form.

10        A.    Well, I think you're asking me to

11   speculate on something that doesn't exist.

12        Q.    Well, the question was if a doctor was

13   prevented from referring a patient for care during a

14   continuing course of treatment --

15        A.    I just --

16        Q.    -- wouldn't --

17        A.    I just -- I just don't see how any law

18   could actually do that.

19        Q.    Well, just imagine with me that -- that

20   one did, and that the doctor was -- a doctor is

21   prohibited from referring patients to receive care,

22   but that doctor's -- but that patient's course of

23   treatment is not complete.

24        A.    Well, I think that --

25              MS. LAND:  Object to form.

Page 126

1   was allowed.

2        Q.    And would you have concerns about a law

3   that banned physicians from providing treatments to

4   their patients?

5             MS. LAND:  Objection to form.  Asked and

6   answered.

7        A.    As a personal, or as a Medical Board

8   member or --

9        Q.    How about both?

10        A.    As a Medical Board member, I'm bound to

11   the rules and regulations that are set by the

12   legislature.

13             Personally, as long as there's no harm

14   being done, I think physicians and their patients

15   should be allowed to provide the procedures, you

16   know -- you know, allowed to participate in the

17   procedures that will help the patient.

18        Q.    Are you aware that Governor Hutchison

19   vetoed H.B. 1570?

20             MS. LAND:  Objection to form.  Asked and

21   answered.

22        A.    I'm not aware of that.

23             MR. RICHARDSON:  Beth, can we get

24   Exhibit 8, please.

25             (Exhibit 8 introduced)

```
                                                    Page 152
 1                  REPORTER'S CERTIFICATE
 2
 3             I, MAYLEEN AHMED, the undersigned, a
     Registered Merit Reporter, Certified Realtime
 4   Shorthand Reporter and Notary Public, do hereby
     certify:
 5
               That the witness, RHYS BRANMAN, M.D.,
 6   before examination was duly sworn by a Notary Public
     in the State of Arkansas.
 7
               That the foregoing deposition was taken
 8   remotely stenographically by me on June 24, 2022,
     and thereafter was transcribed by me, and that the
 9   deposition is a full, true, and complete transcript.
10             That, in accordance with FRCP 30(e),
     before completion of the proceedings, review of the
11   transcript was requested and signature was reserved
     by the witness.
12
               I further certify that I am not a
13   relative or employee of any attorney or counsel or
     any party to this action, and that I am not
14   financially interested in the said action or the
     outcome thereof.
15
               In WITNESS WHEREOF, I have hereunto set
16   my hand this 30th day of June 2022.
17
18
19             _____
               MAYLEEN AHMED, RMR, CRR, CRC
20             Washington CCR No. 3402 - Exp 12/29/22
               Oregon CSR No: 17-0447 - Exp 12/31/23
21             Texas CSR No:  9428 - Exp 7/31/22
               California CSR No: 14380 - Exp 12/31/22
22             New York Notary Public
23
24
25
```

Page 153

1                      NOTARIAL CERTIFICATE
2    NAME OF CASE:          Brandt v Rutledge, et al.
     DATE OF DEPOSITION:    June 24, 2022
3    NAME OF WITNESS:       RHYS BRANMAN, M.D.
     LOCATION:              Little Rock, Arkansas
4
5
6              I, MICHAEL TSCHIEMER, a Notary Public
7    within and for the State of Arkansas, do hereby
8    certify that the witness, RHYS BRANMAN, M.D., before
9    examination was duly sworn by me, and that the
10   foregoing deposition transcript is the official
11   transcription of record.
12             I further certify that I am not a
13   relative or employee of any attorney or counsel or
14   any party to this action, and that I am not
15   financially interested in the said action or the
16   outcome thereof.
17             In WITNESS WHEREOF, I have hereunto set
18   my hand this 30th day of June, 2022.
19
20                        _Mike Tschiemer_
21             _____
22             MICHAEL TSCHIEMER
23             Notary Public,  State of Arkansas
24
25

Page 154

1    AMANDA LAND, ESQ.

2    amanda.land@arkansasag.gov

3                          July 8, 2022

4    RE: BRANDT, et al. vs. RUTLEDGE, et al.

5        6/24/2022, Rhys Branman (#5286217)

6        The above-referenced transcript is available for

7    review.

8        Within the applicable timeframe, the witness should

9    read the testimony to verify its accuracy. If there are

10   any changes, the witness should note those with the

11   reason, on the attached Errata Sheet.

12       The witness should sign the Acknowledgment of

13   Deponent and Errata and return to the deposing attorney.

14   Copies should be sent to all counsel, and to Veritext at

15   erratas-cs@veritext.com.

16

17       Return completed errata within 30 days from

18   receipt of testimony.

19       If the witness fails to do so within the time

20   allotted, the transcript may be used as if signed.

21

22                    Yours,

23                    Veritext Legal Solutions

24

25

Page 155

1   BRANDT, et al. vs. RUTLEDGE, et al.

2   6/24/2022 - Rhys Branman (#5286217)

3                  E R R A T A   S H E E T

4   PAGE_____ LINE_____ CHANGE_____

5   _____

6   REASON_____

7   PAGE_____ LINE_____ CHANGE_____

8   _____

9   REASON_____

10  PAGE_____ LINE_____ CHANGE_____

11  _____

12  REASON_____

13  PAGE_____ LINE_____ CHANGE_____

14  _____

15  REASON_____

16  PAGE_____ LINE_____ CHANGE_____

17  _____

18  REASON_____

19  PAGE_____ LINE_____ CHANGE_____

20  _____

21  REASON_____

22

23  _____   _____

24  Rhys Branman                          Date

25

```
                                                Page 156
 1    BRANDT, et al. vs. RUTLEDGE, et al.

 2    6/24/2022 - Rhys Branman (#5286217)

 3                ACKNOWLEDGEMENT OF DEPONENT

 4        I, Rhys Branman, do hereby declare that I

 5    have read the foregoing transcript, I have made any

 6    corrections, additions, or changes I deemed necessary as

 7    noted above to be appended hereto, and that the same is

 8    a true, correct and complete transcript of the testimony

 9    given by me.

10

11    _____    _____

12    Rhys Branman                        Date

13    *If notary is required

14                        SUBSCRIBED AND SWORN TO BEFORE ME THIS

15                        _____ DAY OF _____, 20___.

16

17

18                        _____

19                        NOTARY PUBLIC

20

21

22

23

24

25
```

Federal Rules of Civil Procedure

Rule 30


(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.


DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.