IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**DYLAN BRANDT**, *et al.*,                                                                          **PLAINTIFFS,**

v.                                      No. 4:21-CV-00450-JM

**LESLIE RUTLEDGE**, *et al.*,                                                         **DEFENDANTS.**

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION IN *LIMINE***

Defendants, through counsel, for their Brief in Support of their Motion in *Limine*, hereby state as follows:

**I.  Background**

The Arkansas General Assembly introduced the Save Adolescents from Experimentation (SAFE) Act during the 2021 session, which passed as HB 1570 and was later enacted as Act 626. *See* Ark. Code Ann. § 20-9-1501 *et seq*. Plaintiffs brought a lawsuit challenging the SAFE Act, which was filed on May 25, 2021.

Plaintiffs brings three claims against the Defendants: (1) the SAFE Act violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; (2) the SAFE Act violates the right to parental autonomy under the Due Process Clause of the Fourteenth Amendment; and (3) the SAFE Act violates the First Amendment's guarantee of freedom of speech. *See* Compl., pp. 41–47. On February 28, 2022, this Court entered an Amended Final Scheduling Order. (Doc. 99). This case is set for trial beginning October 17, 2022. Pursuant to the Court's Amended Final Scheduling Order, Defendants submit this Motion in *Limine* to request that the Court enter an Order excluding inadmissible evidence in the form of arguments, testimony, and exhibits, which Defendants will discuss in more detail below.

II.      **Argument**

      A.      **The Rules of Evidence require that any testimony or documents regarding religious beliefs be excluded from admission at trial.**

Defendants request that this Court exclude Plaintiffs' use at trial of any statements, testimony, evidence, or argument regarding the religious affiliations, practices, beliefs, or customs of any party or witness. Rule 610 of the Federal Rules of Evidence addresses the admissibility of religious beliefs, stating, "Evidence of a witness's religious beliefs or opinions is not admissible to attack or support the witness's credibility." Fed. R. Evid. 610.

The Eighth Circuit has noted that character evidence, including evidence of religious beliefs or opinions, is inadmissible under Rules 403, 404, and 610. *Jackson v. Allstate Ins. Co.*, 785 F.3d 1193, 1203 (8th Cir. 2015) (citing Fed R. Evid. 403, 404(a)(1), and 610); *see also Firemen's Fund Ins. Co. v. Thien*, 63 F.3d 754, 761 (8th Cir. 1995) (citing the Advisory Committee Notes of Rule 610, discussing the limitations on when religious views may be admissible when the inquiry is for the purpose of showing bias).

Throughout depositions, Plaintiffs inquired about the religious affiliations and views of a number of witnesses. For example, Defendants identified Laura Perry and Billy Burleigh as lay witnesses due to their individual experiences with transitioning, and then detransitioning, from one gender to another. During the deposition of Ms. Perry, Plaintiffs inquired at length regarding Ms. Perry's religious views, asking her several times about her conversations with God and Satan:

- "How did you hear God calling you, or how did you know God was calling you?" (Ex. A, Perry Dep. 196:8–9).

- "What did God tell you?" (Ex. A, Perry Dep. 196:11).

- "Did you say anything back to God?" (Ex. A, Perry Dep. 197:4).

- "Did God literally tell you directly why you couldn't – he couldn't call you Jake?" (Ex. A, Perry Dep. 199:16–18).

- "How does Satan view transgender people, do you think?" (Ex. A, Perry Dep. 60:8–9).

- "Does Satan or the devil encourage people to be transgender?" (Ex. A, Perry Dep. 59:17–18).

- "What lies does Satan tell to transgender people?" (Ex. A, Perry Dep. 59:23–24).

- "Did Satan ever talk to you about being transgender?" (Ex. A, Perry Dep. 60:11–12).

Plaintiffs made similar irrelevant and inadmissible inquiries during the deposition of Billy Burleigh, asking if "religion was a factor in that moment in [his] life when [he] decided to detransition" and whether he ever "had doubts that God was okay with [his] identity or [his] transition." Plaintiffs also asked if Mr. Burleigh felt that "God is ever okay with somebody transitioning." (Ex. B, Burleigh Dep. 173:20–177:6).

Ms. Perry's and Mr. Burleigh's religious views are irrelevant to their direct experiences undergoing medical procedures and the effects the transitioning and detransitioning processes have had on their lives. Plaintiffs' line of questioning of these witnesses as to their religious beliefs was irrelevant and solely for the purposes of harassment and undue embarrassment.

Plaintiffs' inquiry into religious beliefs was not limited to lay witnesses. Plaintiffs asked Dr. Paul Hruz whether he had "personal religious views about gender transitioning." (Ex. C, Hruz Dep. 261:23–266:10). Despite Dr. Hruz's insistence that his focus was on science, Plaintiffs continued to ask irrelevant questions regarding religion, including what it meant to be "consonant with the magisterium of the Catholic Church." (Ex. C, Hruz Dep. 228:2–22). When Dr. Hruz responded that he wanted to make it clear that he was serving as an expert physician-scientist, not a theologian, Plaintiffs continued to ask whether an article he published was "consonant with the

magisterium of the Catholic Church." (Ex. C, Hruz Dep. 228:6–14). Dr. Hruz responded, "Again, I'm not opining as a theologian." (Ex. C, Hruz Dep. 228:16–17).

Similarly, Plaintiffs asked Dr. Mark Regnerus if he had any "religious objections to gender affirming care," whether his church (the Catholic Church) had "opposition to gender ideology," and whether that was a view he shared. (Ex. D, Regnerus 258:11–260:7). Plaintiffs further inquired whether Dr. Regnerus "opposed secularism" and what he understood that to mean. (Ex. D, Regnerus Dep. 86:14–88:3).

The Eighth Circuit has identified mere membership in a religion as a narrow circumstance in which religious views may be admissible under Rule 610 to show bias, but disallowed testimony regarding religious tenets in order to undermine a witness's credibility. In *Thien*, a party challenged evidentiary rulings in favor of an insurance company at trial and argued, *inter alia*, that the insurance company's witnesses were under the control of, and biased toward, another party due to their membership in a particular church group. *Thien*, 63 F.3d at 756–57. That party sought to use the religious tenets of that church as evidence of why the witnesses did not join in the lawsuit. *Id*. The Eighth Circuit permitted the admission of mere membership in a religion, but drew the line for any further evidence of religious tenets, reasoning:

> The [appellants] proposed to introduce testimony regarding this specific tenet as the reason why [the witnesses] were not parties to the state court wrongful death action brought by the [appellants], and why [the appellee] delayed in joining that action . . . The reasons why [the witnesses] did not join the wrongful death action, and why [the appellee] was late in joining, do not add to a showing of bias, and appear to us to be an attempt to undermine [the witnesses's] credibility, and to prejudice the jury against them, by painting them as religious extremists.

*Id*. at 761.

The Eighth Circuit concluded that the district court did not abuse its discretion in excluding detailed examination of the witnesses' religious beliefs. *Id*.

Page 4 of 11

Like the party in *Thien*, Plaintiffs' inquiry into religion is an attempt to paint the witnesses as religious extremists and in no way falls under the limited admissibility standard of Rule 610. Any testimony or evidence concerning religion in this case is thus irrelevant under Rule 401. Fed. R. Evid. 401(a)–(b). Religion does not provide any necessary context to the acts of the Defendants involved in this case. Plaintiffs cannot predicate liability of any Defendant on another witnesses' religious beliefs, nor can they extract any relevant evidence as to any religious affiliations, practices, beliefs, or customs on the part of a party or witness. Any reference to religion is merely an attempt to embarrass, harass, and annoy parties and witnesses. As such, views about these witnesses' religious views are irrelevant under Rules 401, 402, 403, 404, 610, and 611 of the Federal Rules of Evidence. *See* Fed. R. Evid. 401(a)–(b), 402, 403, 404(a)(1), 610, and 611(a)(3). Therefore, this Court should exclude any testimony or other evidence of any religious views of any party or witness in this case.

**B.     This Court should exclude testimony or documents regarding personal beliefs on individuals who are gay, lesbian, bisexual, or transgender.**

Testimony and evidence of any personal beliefs of a party or witness regarding individuals who are gay, lesbian, bisexual, or transgender are irrelevant and should be excluded from trial. Only relevant evidence is admissible under the Federal Rules of Evidence. Fed. R. Evid. 402. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action. Fed. R. Evid. 401(a)–(b).

As noted previously, this case is about the SAFE Act, which was enacted to prohibit gender transition procedures on children under the age of 18, due to the General Assembly's determination that irreversible, long-term consequences of those procedures were too great to all physicians to continue performing them. Defendants have been sued solely due to their statutory responsibilities

enumerated in the SAFE Act. *See* Compl., ¶¶ 15–17. At no point have Plaintiffs alleged that any Defendants are biased toward individuals who are gay, lesbian, bisexual, or transgender. There is no evidence that any Defendant had any role in passing the SAFE Act. There is also no evidence that any Defendant participated in, nor attended, any legislative meeting in the passage of the SAFE Act. Inquiries into the Defendants' personal beliefs about individuals who are gay, lesbian, bisexual, or transgender are irrelevant and would be solely for the purposes of harassment and undue embarrassment. Inquiries into the personal beliefs of witnesses Defendants may call at trial to defend themselves are also solely for the purpose of harassing and embarrassing those witnesses who may be compelled to testify at trial.

Plaintiffs made several inquiries into witnesses about whether they supported same-sex marriage, whether same-sex relationships should be criminalized, and whether people should act on same-sex attraction. Similar to Plaintiffs' irrelevant questioning regarding religion, there is absolutely no way in which the Defendants' liability can be predicated on any witness's views toward gay, lesbian, bisexual, or transgender individuals. Because there is absolutely no evidence that any Defendant was involved in the legislation at issue in this case, Plaintiffs' attempts to extract any views on same-sex individuals, and whether those individuals should marry, be in same-sex relationships, adopt children, or be subject to criminal liability is irrelevant. At a minimum, the Court should exclude testimony on gay, lesbian, bisexual, and transgender legal and social issues that are not at issue in this case, such as same-sex marriage, relationships, adoption, and criminality. Accordingly, this Court should enter an Order excluding testimony from party's or witnesses about their views on individuals who are gay, lesbian, bisexual, or transgender.

**C.     This Court should exclude testimony or documents regarding lay opinions on legal or scientific matters, as well as testimony regarding speculation and matters about which the witness has no personal knowledge.**

This Court should enter an Order excluding testimony from any fact witness to opine on legal, scientific, or other opinion that requires specialized knowledge. Defendants anticipate that Plaintiffs will seek to introduce testimony from Ms. Embry and Dr. Branman regarding their interpretation of the SAFE Act and other laws, as well as their opinions on the interpretation of state agency actions and regulations. Those opinions should be excluded because they do not meet the relevance and reliability standards under the Federal Rules of Evidence.

Rule 701 of the Federal Rules of Evidence bars fact witnesses from offering opinion testimony unless it is: (a) rationally based on the witness's perception; (b) helpful to a clear understanding of their testimony or the determination of a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Fed. R. Evid. 701(a)–(c). A party may not cloak impermissible legal conclusions in lay opinion testimony. *Hogan v. American Tel. & Tel. Co.*, 812 F.2d 409, 411 (8th Cir. 1987) (noting that the "helpfulness" requirement in Rule 701 "assures against admitting opinions which would in essence tell the factfinder what result to reach"). Where a party proffers lay witness testimony that necessarily encompasses a legal conclusion, a trial court may conclude that a response would not be helpful to the trier of fact. *U.S. v. Ness*, 665 F.2d 248, 250 (8th Cir. 1981) ("The only restriction placed upon counsel was that he could not, in effect, ask the witness to draw a legal conclusion from his own testimony").

Plaintiffs asked both Ms. Embry and Dr. Branman, both of whom were sued in their official capacities, about their interpretation of the SAFE Act and various statutes during their depositions, as well as Medical Board regulations. However, both Ms. Embry and Dr. Branman testified that,

with respect to any legal issues, they would consult the attorney for the Board. (Ex. E, Embry Dep. 224:19–225:19); (Ex. F, Branman Dep. 116:8–119–11). As a result, this Court should exclude any testimony or evidence from any party or lay witness about their legal opinion, or any other testimony or evidence that would compel the witness to opine on a matter requiring legal, scientific, or specialized knowledge. Such testimony and evidence are not admissible pursuant to Rules 401, 402, 701, and 702 of the Federal Rules of Evidence.

Additionally, Plaintiffs asked both Ms. Embry and Dr. Branman whether they had "personal" concerns with the SAFE Act. (Ex. E, Embry Dep. 243:13–245:15); (Ex. F, Branman Dep. 126:2–17). Plaintiffs should be equally prohibited into inquiring about the "personal" views of Defendants regarding the SAFE Act or their speculation about how it may be legally implemented in the future. There is no evidence that Defendants, all of whom have been sued in their official capacities, had any involvement in the SAFE Act, and therefore their personal views are irrelevant under Rules 401 and 402 of the Federal Rules of Evidence, and do not provide any admissible opinion testimony under Rules 701 and 702 of the Rules.

Defendants anticipate that Plaintiffs will seek to use Ms. Embry and Dr. Branman's testimony to opine on how the Board as a whole may act or rule in the future. However, Rule 602 requires that a witness have personal knowledge of a matter in order to provide evidentiary testimony. Fed. R. Evid. 602. Ms. Embry and Dr. Branman Defendants object to the use of any deposition testimony that seeks to elicit speculative testimony on how the Board as a whole, or another individual Board member, may act in the future or in a hypothetical scenario.

Accordingly, Defendants request that the Court enter an Order excluding lay opinion testimony on legal and scientific matters, and enter an Order excluding any testimony that would speculate on future matters before the Board and how it may rule on a particular case.

### D. This Court should exclude testimony and evidence that were not disclosed during the course of discovery.

Defendants will be unfairly prejudiced and surprised at trial if Plaintiffs are permitted to call witnesses and produce exhibits not identified to the Federal Rules of Civil Procedure and this Court's Scheduling Orders. Failure to provide Defendants with notice regarding the identity of potential witnesses and exhibits leaves Defendants without a fair opportunity to defend against Plaintiffs assertions to this Court. The Eighth Circuit Court of Appeals has stated that the district courts are permitted to exclude the submission of evidence and witness testimony when they have not been disclosed prior to trial in conformance with the district court's orders. *See Admiral Theatre Corp. v. Douglas Theatre Co.*, 585 F.2d 877, 895 (8th Cir. 1978). Thus, the late disclosure of witnesses is, in and of itself, a basis for excluding witnesses. To the extent Plaintiffs will seek to call or present any witnesses or evidence at trial that they did not previously disclose to Defendants, such witnesses and evidence should be excluded by this Court.

### E. This Court should exclude testimony of witnesses whose testimony is cumulative repetitive, unnecessary, and not admissible pursuant to Rule 403.

Testimony may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. "Evidence is cumulative when it adds very little to the probative force of the other evidence and its contribution to the truth "would be outweighed by its contribution to the length of the trial, with all the potential for confusion that a long trial creates." *United States v. Robertson*, 948 F.3d 912, 917 (8th Cir. 2020) (cleaned up).

Defendants identified Ms. Embry as the Board's 30(b)(6) witness for trial. This Court should exclude the testimony of Dr. Branman because his testimony is cumulative, repetitive,

unnecessary, and not admissible. Dr. Branman testified that he was not involved in the drafting of the SAFE Act, had no knowledge of the SAFE Act, and has not discussed the SAFE Act or its implementation before the Board. (Ex. F, Branman Dep. 104:10–107:18). At one point, Dr. Branman testified, "I absolutely do not know why I'm a defendant in this lawsuit." (Ex. F, Branman Dep. 107:11–12). In other words, Dr. Branman has no personal knowledge about the SAFE Act or can provide any necessary evidence for this Court. Therefore, any testimony from Dr. Branman would be a waste of this Court's, the parties', and Dr. Branman's time, and would only be an attempt to elicit irrelevant and speculative testimony about which Dr. Branman has no personal knowledge. Because the testimony of Dr. Branman will be cumulative, adding little to the probative evidence and the legal issues in this case, Defendants respectfully request that this Court exclude the testimony of this witness. *See Robertson*, 948 F.3d at 917.

### III. Conclusion

For the reasons stated herein, Defendants respectfully request that their Motion in *Limine* be granted in its entirety.

Respectfully Submitted,

LESLIE RUTLEDGE
Arkansas Attorney General

Dylan L. Jacobs (2016167)
ARKANSAS ATTORNEY GENERAL'S OFFICE
323 Center Street, Suite 200
Little Rock, AR 72201
Phone: (501) 682-2700
Email: dylan.jacobs@arkansasag.gov

Michael Cantrell (2012287)
ARKANSAS ATTORNEY GENERAL'S OFFICE
323 Center Street, Suite 200
Little Rock, AR 72201
Phone: (501) 682-2401
Email: michael.cantrell@arkansasag.gov

>Amanda D. Land (2012135)
>Assistant Attorney General
>ARKANSAS ATTORNEY GENERAL'S OFFICE
>323 Center Street, Suite 200
>Little Rock, AR 72201
>Phone: (501) 682-2029
>Fax: (501) 682-8118
>amanda.land@arkansasag.gov
>
>*Attorneys for Defendants*