# Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

------------------------- x
DYLAN BRANDT, et al., :
:
          Plaintiff, :
:
          v. : Case No. 4:21-CV-00450-JM
:
LESLIE RUTLEDGE, et al., :
:
          Defendant. :
------------------------- x

## REPLY IN SUPPORT OF MOTION TO EXCLUDE
## EXPERT TESTIMONY OF DR. PATRICK W. LAPPERT

Defendants offer Dr. Patrick W. Lappert, a plastic surgeon with no education, training, or experience diagnosing or treating gender dysphoria, to provide expert testimony regarding: The validity of the diagnosis of gender dysphoria; a range of opinions about the treatment of gender dysphoria, including his views about the proscribed hormonal treatments; assertions about the lack of psychological benefits of the prohibited hormonal and surgical treatments; and the claim that valid informed consent for such treatments cannot be obtained. But Dr. Lappert conceded at his deposition that he does not "claim to be an expert" in the diagnosis or treatment of gender dysphoria (Motion Ex. 4–Lappert Dep. Tr. at 29:10–12, 46:11–13) and that he has never diagnosed someone with gender

dysphoria because "it's not [his] area of care" (*see id.* at 150:19–151:5). The Court's inquiry should stop there.

Unable to refute the fact that Dr. Lappert lacks the requisite "training, education, or experience" with the diagnosis or treatment of gender dysphoria to testify as an expert on the subject, *Khoury* v. *Philips Med. Sys.*, 614 F.3d 888, 893 (8th Cir. 2010), Defendants rely on mischaracterizing the relevant legal standard and Dr. Lappert's experience.[1]

## ARGUMENT

The law in the Eighth Circuit is clear: When an expert witness lacks "training, education, or experience" on the subject of their expert testimony, the testimony should be excluded. *Khoury*, 614 F.3d at 893.

Defendants do not dispute that "Dr. Lappert lacks training related to the diagnosis and treatment of gender dysphoria." (*See Brief in Support of Motion to*

---

[1] Defendants also mischaracterize Plaintiffs' arguments for excluding Dr. Lappert's testimony. Plaintiffs do not argue, as Defendants assert, that Dr. Lappert is unqualified because he does not provide the treatments at issue in the case, to which he objects. (*Defendants' Response to Plaintiffs' Motion to Exclude Expert Testimony of Dr. Patrick W. Lappert*, ECF 162, ("Opp.") at 2.) As discussed in Plaintiffs' opening brief and below, Dr. Lappert's testimony should be excluded because he lacks the education, training or experience to offer the expert opinions he seeks to offer.

Likewise, Defendants devote much of their brief to arguing the merits of the case, where they offer numerous erroneous statements about the evidence and offer distortions of Plaintiffs' arguments. Plaintiffs strongly dispute Defendants' characterization of the record, but the merits of the case are not at issue on this motion.

*Exclude Expert Testimony of Dr. Patrick W. Lappert*, ECF 154, ("Brief in Support") at 6–7; Opp. at 6–11.)  Defendants have no answer for Dr. Lappert's concession that the only education or training he has ever received regarding gender dysphoria was a half-day weekend course.  (Motion Ex. 4 at 135:9–24.)  Nor do Defendants address Dr. Lappert's own admission that he lacks experience in the diagnosis and treatment of gender dysphoria:  He testified that he has never diagnosed someone with gender dysphoria because "it's not [his] area of care."  (Motion Ex. 4 at 150:19–151:2.)  Defendants ignore these crucial admissions.

Defendants claim that Dr. Lappert is, nevertheless, qualified as an expert on the diagnosis and treatment of gender dysphoria because "responsible plastic surgeons exercise diligence in seeking to identify the source and character of a patient's specific desire for a change to their physical appearance."  (Opp. at 6–7.)  But, as addressed above, Dr. Lappert lacks training in gender dysphoria, and Defendants fail to point to anything in the record that shows that Dr. Lappert has any experience diagnosing gender dysphoria or treating patients who have gender dysphoria.

Defendants also argue that "[Dr.] Lappert's experience with patients with body dysmorphia qualifies him to testify regarding the diagnosis and treatment of people with gender dysphoria."  (Opp. at 10.)  Even assuming Dr. Lappert has

experience seeing patients who have body dysmorphia,[2] that has no bearing on whether he is qualified to testify about the diagnosis and treatment of *gender dysphoria*. *See, e.g.*, *O'Conner* v. *Commonwealth Edison Co.*, 807 F. Supp. 1376, 1390 (C.D. Ill. 1992), *aff'd*, 13 F.3d 1090 (7th Cir. 1994) (a "medical doctor" is not "automatically an expert in every medical issue merely because he or she has graduated from medical school or has achieved certification in a medical specialty"). Because Dr. Lappert says he believes that gender dysphoria is a subcategory of body dysmorphic disorder (Motion Ex. 4 at 22:13–20, 134:5–8)—a view that he recognizes is at odds with the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (Motion Ex. 4 at 23:1–11)—Defendants say that makes him an expert on gender dysphoria. Even if one accepts this surgeon's personal beliefs about these psychiatric disorders, Dr. Lappert still lacks experience with patients who have gender dysphoria.

Defendants attempt to establish Dr. Lappert's qualifications to offer expert opinions on the effectiveness of puberty blockers and hormone therapy in treating gender dysphoria by pointing to his need to "understand endocrinology" to perform surgeries to address endocrine disease such as thyroidectomies. (Opp. at 9.)

---

[2] Dr. Lappert testified that he "believe[d]" the patient he performed a rhinoplasty on in 2014 "had body dysmorphic disorder," but did not otherwise describe any experience diagnosing or treating patients with body dysmorphia. (Motion Ex. 4 at 27:7–9.)

But "understand[ing] endocrinology" does not qualify Dr. Lappert to opine on the psychological benefits of these hormonal treatments for gender dysphoria.

Finally, Defendants argue that the fact that Plaintiffs do not contest Dr. Lappert's qualifications to testify about risks and complications of gender-affirming surgical procedures means he must be qualified to testify about a range of issues related to the diagnosis and treatment of gender dysphoria. Defendants assert that "[i]f Dr. Lappert can testify to the surgical complications of treatments for gender dysphoria, he should be able to, and has the professional experience that enables him to, testify whether the surgery should occur in the first place." (Opp. at 7.)

There is no basis for this logical leap. Plaintiffs do not contest that, as a surgeon, Dr. Lappert may be qualified to testify about risks to the body and surgical complications that can result from surgical procedures, such as bleeding, infection, or effects on body function. That does not mean that Dr. Lappert is qualified to opine about: (i) the diagnosis of the psychiatric condition of gender dysphoria; (ii) the psychological benefits of gender-affirming surgeries; or (iii) the use of, psychological benefits of, or ability to give informed consent for puberty blockers or hormone therapy to treat gender dysphoria. As to his opinion that patients or their parents cannot validly give informed consent for surgical treatments for gender dysphoria, Plaintiffs would not object to testimony that is based on surgical risks or

complications, but Dr. Lappert's opinions rest on his personal opinions about the lack of validity of the gender dysphoria diagnosis and the lack of efficacy of gender-affirming surgeries to relieve that condition, which he is not qualified to offer.  (*See* Motion Ex. 2, ¶¶ 30, 35; Motion Ex. 3, ¶¶ 4b, 8–15.)

Defendants attempt to distinguish *Smith* v. *Rasmussen*, which affirmed the exclusion of an expert's "testimony about gender identity disorder and the potential treatment options" because it "was based on an indiscriminate literature review and was beyond the scope of [the expert's] expertise."  249 F.3d 755, 758 (8th Cir. 2001).  Defendants argue that *Smith* is distinguishable because "Dr. Lappert has personal experience and knowledge about gender dysphoria."  (Opp. at 7.)  As explained above, this claim is flatly contradicted by the record.  Rather, Dr. Lappert's conclusions in his report are based on his "review[ of] the medical literature." (Motion Ex. 2, ¶ 8.)  Because Dr. Lappert's alleged expertise is "based on an indiscriminate literature review," *Smith*, 249 F.3d at 758, and not on his training and experience, the Court should follow this Circuit's precedent and exclude his testimony.

Nothing in *Robinson* v. *GEICO General Insurance Co.*, 447 F.3d 1096, 1101 (8th Cir. 2006), dictates a different outcome.  Defendants offer a quote taken out of context to suggest that, in the Eighth Circuit, "a physician with general knowledge may testify regarding medical issues" regardless of their education,

training, or experience related to those issues. (Opp. at 8.) That is not the law in this Circuit. In *Robinson*, the court merely recognized that an expert does not need to have a "medical specialty" in the topic at issue to be qualified, but reiterated that the expert must be "compet[ent]" in the topic based on "knowledge, skill, experience, training, or education." 447 F.3d at 1100-01. In that case, the court concluded that the expert was qualified to testify as an expert regarding medical issues that were "within his realm of expertise as a neurologist . . . [and] a physician," including "the usual onset of shoulder pain" and "the likely type of injury one would sustain by the impact of the arm into the shoulder joint." *Id.* at 1101. By contrast, Dr. Lappert's education, training, and experience in no way qualify him to testify about the diagnosis or psychological benefits of hormonal or surgical treatments of gender dysphoria. (*See* Motion Ex. 1 at 65:22–68:20, 157:14–158:12.)

Defendants argue that the Court should disregard *Kadel* v. *Folwell*, 2022 WL 2106270 (M.D.N.C. June 10, 2022) because the fact that Dr. Lappert "is not a psychiatrist, endocrinologist, statistician, or epidemiologist . . . is not dispositive in the Eighth Circuit." (Opp. at 10–11.) Even accepting Defendants' characterization of Eighth Circuit precedent, the *Kadel* court's analysis of Dr. Lappert's qualifications included much more than what Defendants suggest. For example, the court pointed to Dr. Lappert's own admissions that he has never diagnosed gender dysphoria and that he is not an expert in diagnosing or treating

mental health conditions in reaching the conclusion that he lacks the qualifications "to render opinions about the diagnosis of gender dysphoria" and "the efficacy of puberty blocking medication or hormone treatments." *Kadel*, 2022 WL 2106270, at *13.

## CONCLUSION

Because he lacks the qualifications required under Rule 702, Plaintiffs respectfully request that this Court exclude Dr. Lappert's testimony with the exception of any testimony related to surgical risks and complications.

Dated:  July 22, 2022

/s/ Leslie Cooper
Leslie Cooper
Chase Strangio*
American Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
Telephone:  (917) 345-1742
lcooper@aclu.org
cstrangio@aclu.org
*Attorneys for the Plaintiffs*

Beth Echols, Ark. Bar No. 2002203
Christopher Travis, Ark. Bar No. 97093
Drake Mann, Ark. Bar No. 87108
Gill Ragon Owen, P.A.
425 W. Capitol Avenue, Suite 3800
Little Rock, AR 72201
Telephone:  (501) 376-3800
echols@gill-law.com
travis@gill-law.com
mann@gill-law.com
*On behalf of the Arkansas Civil Liberties Union Foundation, Inc.*
*Attorneys for the Plaintiffs*

Breean Walas, Ark. Bar No. 2006077
Walas Law Firm, PLLC
P.O. Box 4591
Bozeman, MT 59772
Telephone:  (501) 246-1067

Sarah Everett, Ark. Bar No. 2017249
Gary Sullivan, Ark. Bar No. 92051
Arkansas Civil Liberties Union Foundation, Inc.
904 W. 2nd Street

breean@walaslawfirm.com
*On behalf of the Arkansas Civil
Liberties Union Foundation, Inc.*
*Attorneys for the Plaintiffs*

Little Rock, AR 72201
Telephone: (501) 374-2842
sarah@acluarkansas.org
gary@acluarkansas.org
*Attorneys for the Plaintiffs*

Garrard R. Beeney*
Brandyn J. Rodgerson*
Emily T.L. Armbruster*
Alexander S. Holland*
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
beeneyg@sullcrom.com
rodgersonb@sullcrom.com
armbrustere@sullcrom.com
hollanda@sullcrom.com
*Attorneys for the Plaintiffs*

Laura Kabler Oswell*
Sullivan & Cromwell LLP
1870 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 461-5600
oswell@sullcrom.com
*Attorneys for the Plaintiffs*

Daniel J. Richardson*
1700 New York Avenue NW
Suite 700
Washington, DC 20006
Telephone: 202-956-7500
richardsond@sullcrom.com
*Attorney for Plaintiffs*

*Admitted pro hac vice*