IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

------------------------- x
DYLAN BRANDT, et al.,                :
                                     :
                    Plaintiff,       :
                                     :
           v.                        :   Case No. 4:21-CV-00450-JM
                                     :
LESLIE RUTLEDGE, et al.,             :
                                     :
                    Defendant.       :
                                     :
------------------------- x

## REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF MARK REGNERUS

Prof. Mark Regnerus offers opinions on a host of medical issues concerning treatments for gender dysphoria, the practices of medical providers in this field, the ability of minors to consent to the medical interventions prohibited under the Health Care Ban, and the bases for the recommendations of medical organizations, providers, and researchers that support, provide, and research medical interventions for gender dysphoria.  Defendants concede that Prof. Regnerus—a sociologist whose work focuses on religion, family structure, and sexual relationships and who has no experience or training in medicine, mental health, and the treatment of gender dysphoria or transgender people—is unqualified to testify as a medical expert.  (*Defendants' Response to Plaintiffs' Motion to Exclude Expert Testimony of Mark Regnerus*, ECF 161, ("Opp.") at 2.)  Defendants argue that

Prof. Regnerus is qualified to offer the opinions he offers because he is "applying sociological and general scientific principles" and reframe the dispute as one about the substance of Prof. Regnerus's opinions, which is not at issue on this motion. (*See* Opp. at 3, 6, 13–14.)[1]  But Prof. Regnerus's opinions inescapably rest on medical opinions that he is not qualified to offer, in addition to anecdotes and unscientific commentary, and thus should be excluded for at least two reasons.

*First*, Prof. Regnerus lacks any relevant qualifications to opine on medical care, mental health, or gender dysphoria.  Defendants claim that "Dr. Regnerus is not testifying as a medical expert," but Prof. Regnerus's opinions in this case either speak directly to medical issues or depend on his assessment of medical issues. (Opp. at 2.)

Defendants argue that any trained sociologist—even one without any education, training, or experience involving medical treatments or gender dysphoria, like Prof. Regnerus—can "critique scientific methods and conclusions" in medical research and opine on a host of medical issues related to treatments for gender dysphoria. (Opp. at 7.)  That is flatly inconsistent with Eighth Circuit law, which requires that experts ground their opinions in "specialized knowledge" and "not

---

[1] Likewise, Defendants devote much of their brief to arguing the merits of the case, where they offer numerous erroneous statements about the evidence and distortions of Plaintiffs' arguments. Plaintiffs strongly dispute Defendants' characterization of the record, but the merits of the case are not at issue on this motion.

exceed the scope of [their] expertise." *Wheeling Pitt. Steel Corp.* v. *Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001).

Defendants further argue that Prof. Regnerus's views about alleged "ideological capture" among medical researchers, medical professional organizations, and medical clinicians working in the field of gender-affirming health care are not about medical issues. But Prof. Regnerus's views on this topic are inextricably intertwined with his judgment on medical topics, which he is not qualified to make because he has no education, training, or experience in medicine, mental health, or the treatment of gender dysphoria. Prof. Regnerus's testimony should thus be excluded based on lack of qualifications.

*Second*, Defendants offer no response to Plaintiffs' argument that Prof. Regnerus's claims of ideological capture are also *unreliable* because they rest "entirely on anecdotes and unadorned speculation." (*Brief in Support of Motion to Exclude Expert Testimony of Mark Regnerus*, ECF 156, ("Brief in Support") at 19.) The unreliability of Prof. Regnerus's opinions about ideological capture provides an independent ground for their exclusion.

## ARGUMENT

### I. PROF. REGNERUS IS NOT QUALIFIED TO OPINE ON <u>MEDICAL ISSUES</u> RELATED TO GENDER DYSPHORIA

Experts must be "well-versed in the particular discipline relevant to their testimony," *Smith* v. *Rasmussen*, 249 F.3d 755, 758 (8th Cir. 2001), and cannot

-3-

testify on matters that go "beyond [their] expertise." *Am. Auto. Ins. Co.* v. *Omega Flex, Inc.*, 783 F.3d 720, 724 (8th Cir. 2015) (citing *Weisgram* v. *Marley Co.*, 169 F.3d 514, 520–521 (8th Cir. 1999)). Prof. Regnerus's testimony violates that principle. Throughout his report, he opines on medical issues, such as the effectiveness of gender-affirming health care in treating gender dysphoria and the practices of medical clinics providing gender-affirming health care, and then he uses those conclusions as the basis for his broader allegations of bias and ideological capture. Because Prof. Regnerus lacks any qualifications in medical care, mental health, or gender dysphoria, this Court should exclude his testimony in its entirety.

Defendants claim that, as a trained sociologist, Prof. Regnerus is qualified to provide expert testimony on these medical issues because "the [research] methods are similar" in his field of expertise and the medical field, and he "can read a research paper, analyze its methods, and critique its conclusions." (Opp. at 8.) Accordingly, they say, Prof. Regnerus is qualified to opine on anything that might fall within the "sociology of science." (Opp. at 6.) The problem with Defendants' argument is threefold.

*First*, Prof. Regnerus has acknowledged that different academic fields use different research standards. For instance, he conceded during his deposition in this case that research standards may differ between sociology and medicine, the latter for which he has no relevant education, training, or experience. (Motion Ex.

-4-

4–Regnerus Dep. Tr. at 120:8–13; *see also id.* at 19:4-20:5.)  Likewise, he has previously testified about the different research standards applied in sociology and psychology, the latter for which he has no qualifications. (Motion Ex. 8–March 4, 2014 Trial Tr. at 14:2–6); *Deboer* v. *Snyder*, No. 12-10285 (E.D. Mich. Mar. 4, 2014).

*Second*, under Defendants' made-up standard, Prof. Regnerus could presumably testify about *any* field in which scientific research is conducted. Scientific research is not merely abstract numbers and statistical analysis divorced from the issues being studied. Medical research studies are assessing medical conditions and their treatment. Without experience related to the medical conditions and treatment at issue, one cannot speak to the significance of the data. A sociologist cannot interpret the results of scientific research in a foreign field such as medicine or chemistry or engineering without the training or experience to understand the meaning of the data or the types of research methodology that may be appropriate.

*Third*, not all of Prof. Regnerus's medical opinions are based on analysis of research methods. For example, he offers views about what constitutes "experimental" treatment and how gender-affirming medical care is provided to patients. The problem of offering opinions outside of one's field is illustrated by Prof. Regnerus's opinion that off-label use of drugs means the treatment is

experimental, which one of the State's experts flatly rejected.[2] (*See* Motion Ex. 6–Levine Dep. Tr. at 250:14–19.)

Defendants' extraordinarily capacious view of expert qualifications to permit anyone with experience in any type of scientific research to offer expert opinions about scientific research in *any* field on *any* subject—as well as opinions beyond mere analysis of scientific research—would eviscerate *Daubert*'s gatekeeping function and is rightly foreclosed by Eighth Circuit precedent. In *Khoury* v. *Philips Medical Systems*, the plaintiff sued the manufacturer of an allegedly defective medical device and offered the testimony of an expert qualified in ergonomics. 614 F.3d 888 (8th Cir. 2010). The district court held that the expert was qualified to testify as to the amount of force and biomechanical stress the plaintiff suffered, but not qualified to testify on whether there was a design defect.

---

[2] As explained in Plaintiffs' opening brief, multiple statements made by Prof. Regnerus during his deposition confirm his lack of knowledge about the medical field. (*See* Brief in Support at 9 (quoting statements).) Defendants' response both misses the point and mischaracterizes Prof. Regnerus's testimony. (*See* Opp. at 8.) For instance, Defendants claim that when Plaintiffs quoted Prof. Regnerus's statement that he "[wa]s not aware that off-label use of medications is common," his language was taken out of context. But when asked "[h]ow common [it is] in medicine for drugs to be used for off-label purposes," Prof. Regnerus responded, "I don't know, but I know that it does occur." (Motion Ex. 4 at 276:18–20.)

Defendants also wrongly claim that Plaintiffs mischaracterized Prof. Regnerus's testimony that he did not know how a randomized controlled trial would work in practice. When asked whether it is "possible" to design a randomized controlled trial, Prof. Regnerus responded, "I recognize and I think I even agree with Dr. Antommaria that it's tough to see it work in reality." (Motion Ex. 4 at 179:11–15.) While he apparently was persuaded by Dr. Antommaria's report, Prof. Regnerus stated in his report that the absence of such trials "is difficult to account for." (Motion Ex. 1–Regnerus Decl., ¶ 6.)

*Id*. at 891. In affirming the district court's decision, the Eighth Circuit explained that the expert "ha[d] no training, education, or experience in the design of medical laboratories or of monitor banks and radiation shields." *Id*. at 893.

The Eighth Circuit has repeatedly affirmed the principle that there must be a close fit between the subject of an expert's testimony and that expert's expertise. In *Wheeling Pitt. Steel Corp.* v. *Beelman River Terminals, Inc.*, the plaintiff put forward the testimony of a "hydrologist specializing in flood risk management," who opined about whether or not a warehouse was properly designed to withstand a flood. 254 F.3d 706 (8th Cir. 2001). The Eighth Circuit held that the district court erred in permitting the expert to testify, reasoning that the expert "sorely lacked the education, employment, or other practical personal experiences to testify as an expert *specifically regarding safe warehousing practices*." *Id*. at 715 (emphasis added). And, in *Smith* v. *Rasmussen*, the Eighth Circuit affirmed the exclusion of an expert who was "an experienced, board-certified general psychiatrist who has treated several patients with sexual disorders" but "had examined only one patient with gender identity disorder," and thus was "not well-versed in the particular discipline relevant to their testimony." 249 F.3d 755, 759 (8th Cir. 2001).[3]

---

[3] Defendants' attempt to distinguish *Smith* v. *Rasmussen* is unavailing. (Opp. at 11.) They say that *Smith* is inapplicable because Prof. Regnerus "has expertise in evaluating the research methods used to support the false claims that there are strong associations between gender dysphoria and suicide." *Id*. Defendants ignore that the court held that even "a board-certified general psychiatrist" was not qualified to offer views about the treatment for gender identity disorder because, like Prof. Regnerus, "he lacked expertise in the *specialized discipline* of gender

-7-

Defendants' position is incompatible with the settled law of the Eighth Circuit.[4] Because Prof. Regnerus lacks any relevant qualifications to opine on medical care, mental health, gender dysphoria, or his testimony should be excluded.

### A. Prof. Regnerus's opinions about medical research and the effectiveness of gender-affirming medical care should be excluded.

Defendants wrongly claim that Prof. Regnerus can opine on an entirely distinct field of scientific research anytime that field "uses research methods that share similarities with the research methods in which he received his training." (Opp. at 7.) *Khoury*, *Wheeling*, and *Smith* all require expertise in the "specialized discipline" relevant to the testimony, not mere "similarities" between academic fields.

---

identity disorder." *Smith*, 249 F.3d at 758 (emphasis added). Applying that standard, Prof. Regnerus's knowledge of "research methods" is not enough. Defendants also ignore that the court in *Smith* affirmed the district court's conclusion that the expert's "testimony about gender identity disorder and the potential treatment options was unreliable because his opinion was based on an indiscriminate literature review and was beyond the scope of his expertise." *Id*. at 758. The same is true here.

[4] Defendants mischaracterize *Johnson* v. *Mead Johnson & Co., LLC*, 754 F.3d 557 (8th Cir. 2014) to support the proposition that Rule 702 imposes a "liberal" standard for admissibility. *Id*. at 562. When stating that "*Daubert* and Rule 702 thus greatly liberalized" the admission standards for expert scientific testimony, the Eighth Circuit was comparing the approach under *Daubert* to the previous *Frye* test, which limited expert scientific evidence to that which was "generally accepted" in the relevant scientific community. *Id*. at 561-62. Moreover, in *Johnson*, whether the purported experts were qualified was "not seriously in dispute." *Id*. at 562-63. Rather, the issue was whether the district court had improperly relied on its own assessment of the correctness of the expert opinion in excluding expert testimony. *Id*. But here, the issue is not about the substance of Prof. Regnerus's opinions; it is about whether he is qualified to make those opinions (and he is not).

Defendants argue that Plaintiffs' position presumes that "doctors alone can comprehend and critique [medical] research methods." (Opp. at 7.) But the standard for admissibility is not merely whether an offered expert can read, understand, or form opinions about the subject matter; it is whether that person is sufficiently trained, educated, or experienced in the relevant discipline to speak as an expert. Given Prof. Regnerus's lack of qualifications in the medical field and the treatment of gender dysphoria, the Court should exclude his testimony about medical research or the effectiveness of gender-affirming medical care.

**B.    Prof. Regnerus's opinions about whether gender dysphoria causes suicide or suicidality should be excluded.**

Prof. Regnerus's training and particular experience in the field of sociology does not qualify him to opine on whether gender dysphoria causes suicide or suicidality. Whether or not a particular mental health condition causes suicide is a psychological question. Sociology and psychology are distinct fields, as Prof. Regnerus has previously testified. (Brief in Support at 15 n.2.) Once again, Prof. Regnerus has no relevant training, scholarship, or experience qualifying him to opine on this subject. (*See* Motion Ex. 4 at 19:4-20:5.) Moreover, even if the study of suicide is something that is studied by some sociologists, Defendants fail to identify any specific qualification that would enable Prof. Regnerus to offer his view on the subject.

## C. Prof. Regnerus's opinions about how care is currently provided to adolescents with gender dysphoria should be excluded.

Prof. Regnerus has no training, experience, or education qualifying him to testify about how gender-affirming medical care is provided, much less provided to adolescents in Arkansas. Indeed, Prof. Regnerus conceded during his deposition that he had no idea how clinics actually provide care. (Motion Ex. 4 at 240:19–241:15.) Defendants argue that he is qualified to opine on "how care is currently provided to adolescents in Arkansas" because he cited in his expert report the practice of a single clinic. (Opp. at 9.) However, Prof. Regnerus confirmed at his deposition that he did not visit the clinic; he did not observe doctors provide such care; he did not interview doctors who provided, or patients who received, such care; nor did he review any other clinical data. (Motion Ex. 4 at 239:20-241:19.) In fact, the most he could say during his deposition was that "[i]t *sounds like* [the Planned Parenthood clinic] does not involve the documentation of psychological services." (Motion Ex. 4 at 245:21–23 (emphasis added).) When pressed for the basis of this opinion, he could only point to his review of a website and a publicly available article, although he "forg[o]t exactly where that appeared." (Motion Ex. 4 at 245:21–246:12.) Moreover, when asked whether he knew "how care is provided at

any clinic in Arkansas," he responded, "I don't." (Motion Ex. 4 at 244:23-245:1.) This testimony comes nowhere close to satisfying the standard under Rule 702.[5]

    **D.    Prof. Regnerus's opinions about how doctors obtain informed consent from patients prior to providing gender-affirming health care should be excluded.**

Defendants' argument that Prof. Regnerus is qualified to provide expert opinion on informed consent should also be rejected. When asked whether he knew about basic criteria for informed consent in the medical context, Prof. Regnerus replied, "I don't." (Motion Ex. 4 at 285:23–25.) Moreover, Prof. Regnerus admitted during his deposition that he does not have "first-hand experience with the way [medical] clinics obtain informed consent" before providing gender-affirming health care. (Motion Ex. 4 at 296:20–24.) Prof. Regnerus's experience in obtaining informed consent for the purposes of conducting sociological surveys cannot compensate for his lack of education, training, and experience in how informed consent is appropriately obtained by medical providers or what medical providers are actually doing to obtain informed consent to provide gender affirming medical care to adolescents.

---

[5] And, as discussed in Section III, *infra*, given his inability to explain the factual or evidentiary basis for his opinion on this topic, his testimony is also unreliable, reflecting nothing more than "subjective speculation that masquerades as scientific knowledge." *Glastetter* v. *Novartis Pharm. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001).

## II. PROF. REGNERUS'S OPINIONS ABOUT IDEOLOGICAL CAPTURE REST ON MEDICAL CONCLUSIONS HE IS NOT QUALIFIED TO OFFER

Defendants argue that Prof. Regnerus should be permitted to opine on "ideological capture," including (i) his opinion on whether a person's gender identity is immutable, and (ii) the rationale and drafting process behind the WPATH Standards of Care. (Opp. at 12.) As Plaintiffs explained in their opening brief, Prof. Regnerus's allegations of widespread bias and ideological capture among medical organizations, medical researchers, and medical clinicians are inextricably intertwined with his judgments about the effectiveness of gender-affirming medical care and other medical topics.

Prof. Regnerus claims, for instance, that the professional consensus in favor of gender-affirming medical care is "suspicious" because it has formed in "the absence of obvious, consistent indicators of treatment efficacy" (Motion Ex. 1–Regnerus Decl., ¶ 86); that "the line between activists and academics is a rather thin one" because the "science [is] unsettled[]" (Motion Ex. 1, ¶ 60); and that "the entire gender medicine industry merits criticism for complicity in failing to conduct" randomized controlled trials because he believes those trials would comport with medical ethics (Motion Ex. 1, ¶ 72). The central claim of his report—that "science is being pushed to the side for the benefit of social or political interests," necessarily turns on his view of medical research. (Opp. at 2.) But given his lack of

qualifications to assess this evidence, his testimony regarding "ideological capture" must also be excluded.

Defendants make little attempt to argue otherwise. *First*, Defendants concede that the premise of Prof. Regnerus's opinion on "ideological capture" is his conclusion that "[c]urrent *medical* science does not show that drastic, irreversible treatments for gender dysphoria are beneficial." (Opp. at 13 (emphasis added).) But because Prof. Regnerus can only reach his conclusions regarding ideological capture by opining on disputed medical questions that he is unqualified to address—and that the parties in this litigation intend to answer through the testimony of medical and mental health experts at trial—his testimony should be excluded. *Second*, Defendants spend an entire page of their brief defending the substance of Prof. Regnerus's opinion, which is not at issue on this motion. (*See* Opp. at 12.) As explained above, the relevant legal standard on this motion is not whether "the research methods used in the field of gender medicine . . . [are] not all that sophisticated," (Opp. at 12), but whether Prof. Regnerus is "well-versed in the particular discipline relevant to [his] testimony," *Smith*, 249 F.3d at 759, which he is not.

### III. PROF. REGNERUS'S OPINIONS ABOUT IDEOLOGICAL CAPTURE ARE SPECULATIVE AND UNRELIABLE

Separately, Prof. Regnerus's opinion on "ideological capture" is based on mere conjecture, reflecting nothing more than "subjective speculation that

masquerades as scientific knowledge." *Glastetter*, 252 F.3d at 989. Prof. Regnerus's testimony on "ideological capture" is therefore unreliable, and it should be excluded on this independent basis.

Although Plaintiffs squarely presented this argument in their opening brief, Defendants offer no meaningful response. Defendants rest their argument on two conclusory sentences: "Here, Dr. Regnerus used his statistical, qualitative, and quantitative analyses [sic] experience to look at existing research to evaluate their methods. He then analyzed whether outside social pressure influenced scientific findings." (Opp. at 13.) By failing to defend the factual or evidentiary basis for Prof. Regnerus's claims, the Court is left with nothing but "a great deal of speculation[, which] involves inferences that approach leaps of faith." *Grp. Health Plan, Inc.* v. *Philip Morris USA, Inc.*, 344 F.3d 753, 760 (8th Cir. 2003) (rejecting expert testimony that "entail[ed] a great deal of speculation").

Accordingly, Prof. Regnerus's testimony falls well short of the reliability required by Rule 702. He has indicted nationwide professional organizations and an entire field of healthcare providers and researchers, accusing them of putting ideology above science and the needs of patients and of silencing opposing voices. But his attacks on doctors and researchers alike are based on cherry-picked examples, and his attacks on major medical organizations lack any explanation of how the work of those organizations differs from other medical

organizations. (Brief in Support at 18–20.) Although *Daubert* leaves much to the crucible of cross-examination, expert testimony should be excluded when, as here, "there is simply too great an analytical gap between the data and the opinion proffered." *Pro Serv. Auto.*, 469 F.3d at 1215. Given the paltry support that Prof. Regnerus musters for his claims, his testimony is not "reliable or trustworthy in an evidentiary sense." *Lauzon* v. *Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). This is an independent additional reason to exclude Prof. Regnerus's opinions about ideological capture.

## CONCLUSION

Prof. Regnerus has education, training, and experience in sociology, specifically related to religion, family structures, and sexual relationships. Although Defendants believe that training in sociology enables Prof. Regnerus to offer his views on a sweeping array of medical topics on which he has no education, training, or experience, the Eighth Circuit has consistently held that one must have the necessary qualifications in the "relevant discipline" to serve as an expert. Prof. Regnerus's qualifications do not come close to meeting this standard. Accordingly, Prof. Regnerus is not qualified to provide expert testimony on medical issues related to gender dysphoria, nor is he qualified to provide expert testimony about claims of ideological capture that are grounded in medical opinion.

Separately, experts must offer some reliable basis for their testimony. Prof. Regnerus's claims of ideological capture lack any indicia of reliability.

Accordingly, Plaintiffs respectfully submit that this Court should exclude Prof. Regnerus's testimony in full.

Dated:  July 25, 2022

<u>/s/ Leslie Cooper</u>
Leslie Cooper
Chase Strangio*
American Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
Telephone:  (917) 345-1742
lcooper@aclu.org
cstrangio@aclu.org
*Attorneys for the Plaintiffs*

Beth Echols, Ark. Bar No. 2002203
Christopher Travis, Ark. Bar No. 97093
Drake Mann, Ark. Bar No. 87108
Gill Ragon Owen, P.A.
425 W. Capitol Avenue, Suite 3800
Little Rock, AR 72201
Telephone:  (501) 376-3800
echols@gill-law.com
travis@gill-law.com
mann@gill-law.com
*On behalf of the Arkansas Civil Liberties Union Foundation, Inc.*
*Attorneys for the Plaintiffs*

Breean Walas, Ark. Bar No. 2006077
Walas Law Firm, PLLC
P.O. Box 4591
Bozeman, MT 59772
Telephone:  (501) 246-1067
breean@walaslawfirm.com
*On behalf of the Arkansas Civil Liberties Union Foundation, Inc.*
*Attorneys for the Plaintiffs*

Sarah Everett, Ark. Bar No. 2017249
Gary Sullivan, Ark. Bar No. 92051
Arkansas Civil Liberties Union Foundation, Inc.
904 W. 2nd Street
Little Rock, AR 72201
Telephone:  (501) 374-2842
sarah@acluarkansas.org
gary@acluarkansas.org
*Attorneys for the Plaintiffs*

Garrard R. Beeney*

Laura Kabler Oswell*

| | |
|---|---|
| Brandyn J. Rodgerson* <br> Emily T.L. Armbruster* <br> Alexander S. Holland* <br> Sullivan & Cromwell LLP <br> 125 Broad Street <br> New York, NY 10004 <br> Telephone:  (212) 558-4000 <br> beeneyg@sullcrom.com <br> rodgersonb@sullcrom.com <br> armbrustere@sullcrom.com <br> hollanda@sullcrom.com <br> *Attorneys for the Plaintiffs* | Sullivan & Cromwell LLP <br> 1870 Embarcadero Road <br> Palo Alto, CA 94303 <br> Telephone:  (650) 461-5600 <br> oswell@sullcrom.com <br> *Attorneys for the Plaintiffs* |
| Daniel J. Richardson* <br> 1700 New York Avenue NW <br> Suite 700 <br> Washington, DC 20006 <br> Telephone: 202-956-7500 <br> richardsond@sullcrom.com <br><br> *Attorney for Plaintiffs* | *\*Admitted pro hac vice* |