## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

```
- - - - - - - - - - - - - - - - - - - - - - - - x
DYLAN BRANDT, et al.,                    :
                                         :
                  Plaintiff,             :
                                         :
         v.                              :   Case No. 4:21-CV-00450-JM
                                         :
LESLIE RUTLEDGE, et al.,                 :
                                         :
                  Defendant.             :
- - - - - - - - - - - - - - - - - - - - - - - - x
```

## <u>OPPOSITION TO DEFENDANTS' MOTION IN LIMINE</u>

This case is a challenge to HB 1570 (the "Healthcare Ban" or "Ban"), which prohibits gender-affirming medical care for adolescents with gender dysphoria. In defending the Ban, Defendants claim that the Legislature passed it to protect minors against ineffective and dangerous medical care. Defendants have expert witnesses who offer opinions in support of their characterization of the banned medical care, and lay witnesses who say they were harmed by receiving gender-affirming medical care.

The evidence at trial will show, among other things, that the Ban does not further the State's claimed interest in protecting minors.  The medical care that the law proscribes is safe and effective treatment for adolescents with gender dysphoria, and, to the contrary, the Ban jeopardizes the health of transgender adolescents by denying them healthcare that they need.  In addition to establishing these facts at

trial, Plaintiffs' cross-examination of Defendants' expert witnesses will show that their opinions about gender-affirming medical care are based on something other than those experts' assessment of the scientific evidence—namely, their personal beliefs about gender transition and LGBT people.  Plaintiffs also intend to cross-examine Defendants' lay witnesses to show that the harm they attribute to receiving gender-affirming medical care is grounded in their personal disapproval of being transgender, which is based on their religious beliefs.  As an alternative basis to invalidate the Healthcare Ban, Plaintiffs' cross-examination of Defendants' witnesses will show that the Legislature enacted the law based on the impermissible purpose of disapproval of transgender people, which includes presenting testimony of the lead sponsor of the Ban about her own and other legislators' personal disapproval of being LGBT.  This is proper cross-examination intended to elicit material information relevant to the Court's determination of the important constitutional rights at stake here.

Defendants now seek to insulate their witnesses from cross-examination and deny the Court this critical information by moving to bar Plaintiffs from eliciting testimony showing that some of Defendants' experts' opinions in this case are inextricably intertwined with their personal beliefs about LGBT people and the propriety of gender transition.  Defendants also seek to conceal critical parts of their lay witnesses' stories—that the harms those witnesses perceived were not based on

the medical care they received—but rather that they came to believe that being transgender was at odds with their religious beliefs. Relatedly, Defendants seek to prevent Plaintiffs from presenting evidence that the Legislature, in passing the Ban, acted based on the impermissible purpose of disapproval of LGBT people. All of this testimony is highly relevant to and probative of the claims and defenses in this case, and is admissible as it is not being offered for any improper purpose.

In addition, Defendants seek to exclude the testimony of Defendants Amy Embry—Executive Director of the Arkansas Medical Board ("Board") and the Board's designated representative under Federal Rule of Civil Procedure 30(b)(6)— and Dr. Rhys Branman—a physician and Board member—claiming that their testimony constitutes impermissible lay opinion, is irrelevant, is speculative, and, with respect to Dr. Branman, is cumulative. Not so. Defendants point to nothing that would constitute impermissible lay opinion, and fail to justify their claims that Ms. Embry's and Dr. Branman's testimony is either irrelevant or speculative—an objection that, to the extent not raised in those witnesses' depositions, Defendants waived.

Finally, Defendants' request for a blanket exclusion of any evidence or witness not disclosed during discovery is premature and inconsistent with Eighth Circuit case law. *See Martinez* v. *Union Pac. R.R. Co.*, 82 F.3d 223, 227 (8th Cir. 1996).

**ARGUMENT**

I. **THE EVIDENCE OF DEFENDANTS' WITNESSES' AND LEGISLATORS' PERSONAL BELIEFS ABOUT LGBT PEOPLE, INCLUDING THOSE BASED ON RELIGIOUS BELIEFS, IS RELEVANT AND ADMISSIBLE.**

Defendants seek to exclude any testimony about legislators' and Defendants' expert and lay witnesses' personal disapproval of LGBT people, including transgender people, and gender transition. And they specifically seek to exclude any testimony about those topics that is based on witnesses' religious beliefs. Defendants' motion to bar relevant and admissible evidence should be denied.

### A. The Evidence of Witnesses' Personal Beliefs About LGBT People Is Relevant and Admissible.

Federal Rules of Evidence ("FRE") 401 and 402 provide that "relevant evidence is admissible" at trial, and that "evidence is relevant if it has a tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Defendants' absurd claim that "[t]estimony and evidence of any personal beliefs of a party or witness regarding individuals who are gay, lesbian, bisexual, or transgender" (*Brief in Support of Motion* in Limine, ECF 165 ("Brief in Support") at 5) are irrelevant in this case challenging a law banning gender-affirming medical care for transgender minors should be denied.

Evidence showing that Defendants' experts' opinions are grounded in

personal beliefs about LGBT people rather than science is highly relevant to the Court's assessment of the reliability of that evidence. Plaintiffs intend to present evidence showing that for some of Defendants' experts, their scientific opinions are inextricably intertwined with their personal religious beliefs about LGBT people.

Similarly, evidence showing that Defendants' lay witnesses' asserted harms of undergoing gender-transition treatment—anecdotal evidence that would have no relevance to this case in the first instance—are based on their belief that being LGBT is wrong. Defendants' motion suggests that Defendants intend to call two lay witnesses who have detransitioned to support Defendants' assertion that medical transition results in serious harm, including "post-transition regret."[1] Plaintiffs must be able to present evidence that their experience of harm is based not on anything problematic about this medical care or how it was provided but, rather, their personal disapproval of being transgender, which is based on their religious beliefs. The evidence Plaintiffs seek to introduce will show that both of these witnesses detransitioned after religious experiences and coming to believe that living

---

[1]     (*E.g.*, *Defendants' Combined Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction; and Reply in Support of Defendants' Motion to Dismiss*, ECF 44 at 19–20 ("If adults like Mr. Burleigh . . . and Ms. Perry—all of whom could trace their gender dysphoria to a young age, and for whom their dysphoria persisted into adulthood—can find themselves regretting their gender-transition procedures and detransitioning years later, it seems all the more likely that adolescents, with their reduced capacity to consider long-term consequences, will often regret these procedures later in life.").)

as a transgender person is inconsistent with their religious beliefs.   Even if the anecdotal experience of two people could constitute evidence to support the harms Defendants claim, their experience of harm based on personal disapproval of being transgender does not.

Finally, evidence about legislators' personal disapproval of LGBT people is relevant to Plaintiffs' assertion that the Legislature acted based on disapproval of the class affected by the law, which violates any level of equal protection scrutiny.   *See U.S. Dep't of Agric.* v. *Moreno*, 413 U.S. 528, 533–34 (1973); *City of Cleburne, Tex.* v. *Cleburne Living Ctr.*, 473 U.S. 432, 441 (1985). Plaintiffs intend to present evidence that both chambers of the Legislature passed resolutions expressing their view that "gender reassignment medical treatments" are not "natural," as well as statements from individual legislators expressing their disapproval of transgender people.   (*Memorandum in Support of Plaintiffs' Motion for a Preliminary Injunction*, ECF 12 at 45 (citing HR 1018, 2021 Gen. Assemb., Reg. Sess. (Ark. 2021); SR 7, 2021 Gen. Assemb., Reg. Sess. (Ark. 2021)); *id* at 45 n.17 (citing S. Floor Debate, 2021 Gen. Assemb. 93rd Sess., Mar. 10, 2021 at 2:19:08,   https://sg001-harmony.sliq.net/00284/Harmony/en/PowerBrowser/Power BrowserV2/20210310/-1/21305; *id.* at 2:24:59.).)   Further, Plaintiffs intend to present testimony of the primary sponsor of the Healthcare Ban, Rep. Robin Lundstrum, showing that the Ban was part of a broader effort by the Legislature to

pass laws targeting transgender people and that she and other legislators were pursuing this legislative agenda based on personal religious beliefs about LGBT people and gender transition.  There is no basis to deny Plaintiffs the opportunity to present evidence demonstrating an impermissible legislative purpose.[2]

**B. Evidence of Religious Beliefs Is Admissible for Any Purpose Other Than Attacking or Supporting a Witness's Truthfulness.**

    *1.*    *The Court Should Deny Defendants' Request to Bar Relevant Evidence Under FRE 610.*

Defendants seek to exclude "any statements, testimony, evidence, or argument regarding the religious affiliations, practices, beliefs, or customs of any party or witness" based on FRE 610, which says that "[e]vidence of a witness's religious beliefs or opinions is not admissible to attack or support the witness's credibility."  (Brief in Support at 2.)  There is no legal basis for Defendants' sweeping request to exclude relevant evidence at trial.

As Defendants acknowledge, FRE 610 only prohibits using evidence of

---

[2]    Defendants' claim that "there is absolutely no way in which the Defendants' liability can be predicated on any witness's views toward gay, lesbian, bisexual, or transgender individuals" (Brief in Support at 6), but that is not the relevant standard.  Witnesses' personal beliefs about LGBT people are highly relevant and probative of the claims and defenses in this case—specifically, whether the Defendants' defense is grounded in medical science as they say.

    Further, given the relevance of such evidence and testimony to Plaintiffs' claims, there is no basis whatsoever for Defendants' assertion that "[i]nquiries into the Defendants' personal beliefs about individuals who are gay, lesbian, bisexual, or transgender . . . would be solely for the purposes of harassment and undue embarrassment."  (Brief in Support at 6.)  This evidence has nothing to do with embarrassment and everything to do with Plaintiffs' ability to prosecute their claims.

a witness's religious beliefs for the narrow purpose of attacking a witness's credibility, not for all purposes.   (*See id.* at 2); Fed. R. Evid. 608 Advisory Committee's Notes to 1972 proposed rules.  And, here, the term "credibility" refers to a witness's character for truthfulness or untruthfulness.  Fed. R. Evid. 608 Advisory Committee's notes to 2003 amendments (FRE 610 "use[s] the term 'credibility' when the intent of [that] Rule[] is to regulate impeachment of a witness' character for truthfulness").  "[A]n inquiry for the purpose of showing interest or bias because of [religious beliefs] is not within the prohibition."  Fed. R. Evid. 608 Advisory Committee's notes to 1972 proposed rules.  Nor is an inquiry for the purpose of determining whether an expert witness's opinions are based on science, rather than his or her religious beliefs, contextualizing a lay witness's testimony, or assessing whether the legislature's stated purpose for enacting a law is pretextual.

Courts routinely admit evidence of a witness's religious beliefs when used for a purpose other than his or her character for truthfulness. *See, e.g.*, Wright & Miller, *Rule 610, Religious Beliefs or Opinions:  Scope*, 28 Fed. Prac. & Proc. Evid. § 6153 (collecting cases and noting that "Rule 610 is inapplicable when such evidence is offered for any other purpose, even if it impacts credibility in some other way").  For example, in *Firemen's Fund Insurance Co.* v. *Thien*, a decision on which Defendants purport to rely, the Eighth Circuit held that evidence of church membership and close relationships with religious leaders was "properly admitted

for the purpose of showing that [witnesses] may have been biased in favor of [the defendant] through their religious affiliation with him."  63 F.3d 754, 760–61 (8th Cir. 1995).  Likewise, in *United States* v. *Miller*, the Sixth Circuit held that testimony concerning the "Supreme Mathematics" system employed by a religious group affiliated with the Nation of Islam was admissible because it "explain[ed] the context of a code" used by the defendants to order drugs, "a relevant fact at trial."  562 F. App'x 272, 302–03 (6th Cir. 2014); *see also Scott* v. *Am. Baptist Seminary of the W.*, 902 F.2d 40, 40 (9th Cir. 1990) (evidence of religious beliefs admissible in sex discrimination case against seminary because evidence of "inflexibility in religious matters . . . was highly probative of [] reasons for finding [plaintiff] unfit for the ministry (in any denomination) and dismissing her from the Seminary").[3]

Here, Plaintiffs are entitled to explore fully, among other things, whether Defendants' expert witnesses' opinions are based on something other than an assessment of the science—*i.e.*, personal religious beliefs; whether Defendants' lay witnesses' experience of harm from gender transition treatment was due to their

---

[3]     *See also United States* v. *Beasley*, 72 F.3d 1518, 1527 (11th Cir. 1996) ("evidence [of religious teachings] admitted was highly relevant to the jury's understanding of the existence, motives, and objectives of the RICO conspiracy . . . .  The evidence regarding the religion was relevant, because religious teachings were used to justify, rationalize, and promote crime."); *United States* v. *Hoffman*, 806 F.2d 703, 708–10 (7th Cir. 1986) (admitting evidence of defendant's affiliation with Reverend Sun Yung Moon because "evidence as to Hoffman's religious affiliation established a possible motive for his sending the letter [threatening the life of President Reagan] which was probative of whether Hoffman intended the letter to constitute a 'true threat.'").

personal religious disapproval of being transgender; and whether the legislature's purpose in enacting the Healthcare Ban was improper.

Defendants' reliance on *Jackson* v. *Allstate Insurance Co.*, 785 F.3d 1193, 1202–03 (8th Cir. 2015), and *Firemen's Fund Insurance Co.* v. *Thien*, 63 F.3d 754, 760–61 (8th Cir. 1995), is misplaced.  In *Jackson*, the Eighth Circuit considered whether "the district court erred by entering a pretrial order that excluded [the plaintiff's] character witnesses," not the admissibility of evidence of a witness's religious beliefs.  785 F.3d at 1202–03.  Nothing in *Jackson* supports Defendants' request to hamstring Plaintiffs at trial by barring any evidence of witnesses' religious beliefs regardless of the purpose for which it is offered.

Likewise, Defendants misstate the holding of *Thien* by claiming that it stands for the proposition that "[t]he Eighth Circuit has identified mere membership in a religion as a narrow circumstance in which religious views may be admissible under Rule 610 to show bias."  (Brief in Support at 4.)  Far from creating a narrow exception to FRE 610, the Eighth Circuit held that evidence of witnesses' religious beliefs was "properly admitted for the purpose of showing that [those witnesses] may have been biased in favor of [the defendant] through their religious affiliation with him."  63 F.3d at 761.  To the extent the Court excluded any evidence of the witnesses' religious beliefs, it did so based on the narrow exception in FRE 610, explaining that it "fail[ed] to see the relevance of this issue [of the religion's tenet

against participation in civil litigation] to the instant case," and that "[t]he reasons why [the witnesses] did not join the wrongful death action . . . do not add to a showing of bias, and appear to be an attempt to undermine [their] credibility." *Id.* at 761.

2. <u>*The Court Should Deny Defendants' Request to Bar Relevant Evidence Under FRE 403*</u>.

Defendants' objection to the admission of "any testimony or other evidence of any religious views" based on FRE 403 is similarly meritless. (Brief in Support at 5.) Under FRE 403, courts "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Here, contrary to Defendants' claim that "[r]eligion does not provide any necessary context to the acts of the Defendants," such evidence is probative of Plaintiffs' claims and Defendants' defenses, for the reasons described *supra*, Section I.B.1. Likewise, Plaintiffs do not seek to "predicate liability of any Defendant on another witnesses' [sic] religious beliefs," as Defendants claim. (Brief in Support at 5.) The issue is only whether the evidence is relevant, and it is. *See supra*, Section I.A.

Defendants do not even attempt to explain how the evidence they seek to keep the court from hearing could be unfairly prejudicial, as they must to justify its exclusion. The closest Defendants come is to suggest that inquiring into witnesses' religious beliefs at trial could "paint the witnesses as religious extremists." (Brief in Support at 5.) But that is not the purpose of Plaintiffs'

intended use of this evidence.  As the Eighth Circuit has recognized, "evidence is not unfairly prejudicial merely because it hurts a party's case."  *United States* v. *Emeron Taken Alive*, 262 F.3d 711, 714 (8th Cir. 2001) (citing *Cummings* v. *Malone*, 995 F.2d 817, 824 (8th Cir. 1993)).

Lastly, any risk of prejudice here is grossly overstated as the Court, not a jury, will consider the evidence and resolve Plaintiffs' claims at trial.  *See Gulf States Utils. Co.* v. *Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981) (noting that this provision of FRE 403 has "no logical application to bench trials"); *United States* v. *Kienlen*, 349 F. App'x 349, 351 (10th Cir. 2009) ("Other circuits have held, and we agree, that excluding evidence in a bench trial under 'Rule 403's weighing of probative value against prejudice [is] improper.'"); *United States* v. *Lim*, 57 F. App'x 701, 704 (7th Cir. 2003) ("Finally, we reject Lim's Rule 403 claims, which are inapposite in a bench trial, where there is no risk of jury prejudice."); *United States* v. *Hall*, 2000 WL 32010 (6th Cir. Jan. 4, 2000) ("In bench trials, the application of the unfair prejudice portion of Rule 403 has been seen as an unnecessary and 'useless procedure.'"); *Schultz* v. *Butcher*, 24 F.3d 626, 632 (4th Cir. 1994) (In bench trials, "evidence should not be excluded under 403 on the ground that it is unfairly prejudicial.").

3.   *Defendants' Request Cannot Be Justified Under FRE 404(a) and 611.*

Defendants' request to bar relevant evidence of witnesses' religious

beliefs cannot be justified under FRE 404(a), which prohibits using "[e]vidence of a person's character or character trait . . . to prove that on a particular occasion the person acted in accordance with the character or trait," or under FRE 611, which counsels courts to "protect witnesses from harassment or undue embarrassment." FRE 404(a) does not apply because Plaintiffs seek to introduce evidence regarding witnesses' religious beliefs for proper purposes, such as showing that Defendants' experts' opinions are based on something other than science; that Defendants' lay witnesses' claims of harm tied to gender-affirming medical care are based on religious disapproval of being transgender; and that the legislature acted based on the impermissible purpose of disapproval of transgender people.  Thus, the Court should not credit Defendants' claim based on FRE 611 that "[a]ny reference to religion is merely an attempt to embarrass, harass, and annoy parties and witnesses." (Brief in Support at 5.)

## II.     THERE IS NO JUSTIFICATION FOR PRECLUDING TESTIMONY OF DEFENDANTS EMBRY AND BRANMAN.

Defendants seek to exclude the testimony of Defendants Amy Embry and Dr. Rhys Branman, claiming that their "interpretation of the [Healthcare Ban] and other laws, as well as their opinions on the interpretation of state agency actions and regulations" "do not meet the relevance and reliability standards under the Federal Rules of Evidence." (Brief in Support at 7.)  Defendants' argument is three-fold:  (1) Ms. Embry's and Dr. Branman's testimony is inadmissible because they

testified that "with respect to any legal issues, they would consult the attorney for the Board"; (2) "[t]here is no evidence [Ms. Embry or Dr. Branman] . . . had any involvement in the [Healthcare Ban], and therefore their personal views are irrelevant"; and (3) testimony about "how the Board as a whole, or another individual Board member, may act in the future" is "speculative." (*Id*. at 8.)  None of these arguments has merit.

      *First*, without identifying any specific testimony, Defendants claim that the testimony of Ms. Embry and Dr. Branman constitutes impermissible lay opinion testimony based on "scientific, technical, or otherwise specialized knowledge."  Fed. R. Evid. 701(c).  Statements that they would "consult the attorney for the Board" about any legal issues do not transform their testimony into impermissible legal opinion (*see* Brief in Support at 7–8), particularly given that ultimate decision-making authority rests with the Board.  *See* HB 1570 § 3, ARK. CODE ANN. § 20-9-1504(a).  Further, as Defendants with years of experience on the Board, both Ms. Embry and Dr. Branman have personal knowledge of the Board's processes. *See*, *e.g.*, *Burlington N. R.R. Co.* v. *Nebraska*, 802 F.2d 994, 1004–05 (8th Cir. 1986) ("Personal knowledge or perception acquired through review of records prepared in the ordinary course of business, or perceptions based on industry experience, is a sufficient foundation for lay opinion testimony.").  And as the Board's Executive Director and designated representative under Federal Rule of Civil

Procedure 30(b)(6), Ms. Embry was required "to give complete, knowledgeable, and binding answers on its behalf" about "information known or reasonably available to the organization," *Lee* v. *Nucor-Yamato Steel Co.*, 2008 WL 4014141, at *3 (E.D. Ark. Aug. 25, 2008) (quoting Fed. R. Civ. P. 30(b)(6)), including the Board's beliefs with respect to the Healthcare Ban and the Board's "understanding of its obligations and policies" if the Healthcare Ban goes into effect.  *Hopman* v. *Union Pacific R.R.*, 2021 WL 2694236, at *14 (E. D. Ark. Jun. 30, 2021) (overruling objection to 30(b)(6) testimony about legal issues because "designated Rule 30(b)(6) witness [] may testify about [entity's] understanding of its obligations and policies").  As Defendants are aware, "[a]n *adverse* party may use *for any purpose* the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)."  *Hopman*, 2021 WL 2694236, at *14 (quoting Fed. R. Civ. P. 32(a)(3)) (emphasis in original); *Wal-Mart Stores*, *Inc.* v. *Cuker Interactive, LLC*, 2017 WL 1391457, at *4 (W.D. Ark. Apr. 6, 2017) ("[A] corporate witness does not necessarily have to be expert-qualified in order to offer lay opinion under Fed. R. Evid. 701" to testify about legal matters.).

> *Second*, Ms. Embry's and Dr. Branman's personal views are relevant to understanding how the Board approaches enforcement, as well as the relationship between the legislature's stated interest and the Healthcare Ban.  As Ms. Embry testified, the Board members' personal views inform the Board's decisions, such as

whether to investigate complaints of "failing to comply with accepted medical practices." (*See* Exhibit 1, *Deposition Transcript of Arkansas Medical Board: Amy Embry 30(b)(6) Representative* ("Embry Dep. Tr.") at 82:4–10.)  Thus, as a member of the Board charged with enforcing the Healthcare Ban, Dr. Branman's personal views are highly relevant to assessing the harm that would result if the Healthcare Ban were to go into effect.  (*See, e.g.*, Exhibit 2, *Deposition Transcript of Dr. Rhys Branman* ("Branman Dep. Tr.") at 110:4–112:6 (testifying that it would "violate [a] doctor's ethical obligations to not seek an alternative provider for the treatment that has already been started").)  Likewise, Ms. Embry's and Dr. Branman's views on whether and how gender-affirming care is treated differently than other types of state-regulated medical care is highly relevant given that Plaintiffs assert an Equal Protection Claim.  (*See* Exhibit 1, Embry Dep. Tr. at 116:13–21, 136:18–137:20.)

*Third*, as the entity responsible for enforcing the Healthcare Ban, the Board's understanding of the statute, how it would approach enforcement, and whether there are any other policies, procedures, or regulations that would affect the Board's enforcement are highly relevant to Plaintiffs' claims.  *See* HB 1570 § 3, ARK. CODE ANN. § 20-9-1504 (a) ("Any referral for or provision of gender transition procedures to an individual under eighteen (18) year[s] of age is unprofessional conduct and is subject to discipline by the appropriate licensing entity or disciplinary review board with competent jurisdiction in this state.").  And to the

extent Defendants seek to exclude relevant testimony as "speculative" or not based on personal knowledge (Brief in Support at 8), such objections are waived to the extent Defendants did not raise them at Ms. Embry's or Dr. Branman's depositions. Fed. R. Civ. P. 32(d)(3)(B)(ii); *see Sec. Nat. Bank of Sioux City, Iowa* v. *Abbott Lab'ys*, 299 F.R.D. 595, 601 (N.D. Iowa 2014), *rev'd on other grounds sub nom. Sec. Nat. Bank of Sioux City, IA* v. *Day*, 800 F.3d 936 (8th Cir. 2015) ("'[F]orm objections refer to a category of objections, which includes objections to . . . lack of personal knowledge . . . [and] speculation . . . .").

## III.   THE PROBATIVE VALUE OF DEFENDANT DR. BRANMAN'S TESTIMONY IS NOT SUBSTANTIALLY OUTWEIGHED BY THE DANGER OF BEING NEEDLESSLY CUMULATIVE.

FRE 403 allows courts to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative evidence."  Defendants ask the Court to exclude the testimony of Dr. Branman because, they claim, "his testimony is cumulative, repetitive, unnecessary, and not admissible."  (Brief in Support at 9–10.)  Defendants do not even attempt to explain how the testimony of Dr. Branman, which Plaintiffs pursued after Ms. Embry repeatedly responded to Plaintiffs' questions at her deposition by directing Plaintiffs to the members of the Arkansas State Medical Board (*see, e.g.*, Exhibit 1, Embry Dep. Tr. at 82:4–10, 149:19–150:15, 152:17–153:14, 159:25–160:6, 162:25–163:12, 170:6–170:19, 173:16–173:25, 209:25–210:9), overlaps with

that of Ms. Embry, much less could be considered "needlessly cumulative." Fed. R. Evid. 403; (*see also* Brief in Support at 10). Instead, Defendants claim that "Dr. Branman has no personal knowledge of the [Healthcare Ban]" (Brief in Support at 10), an objection that has no bearing on whether the probative value of Dr. Branman's testimony, as a member of the entity responsible for enforcing the Healthcare Ban, is substantially outweighed by the danger of presenting cumulative evidence. Fed. R. Evid. 401, 402. Because Defendants come nowhere close to meeting the relevant standard under FRE 403, their motion to exclude Dr. Branman's testimony should be denied.

## IV.   DEFENDANTS' MOTION TO BAR TESTIMONY AND EVIDENCE NOT DISCLOSED DURING DISCOVERY IS PREMATURE.

Defendants' request to exclude "witnesses and evidence at trial that [Plaintiffs] did not previously disclose to Defendants" (Brief in Support at 9) is premature. Defendants claim that they "will be unfairly prejudiced and surprised at trial if Plaintiffs are permitted to call witnesses and produce exhibits not identified" (Brief in Support at 9), but Defendants do not (and cannot) point to any specific witnesses or evidence that they seek to exclude on this basis.

Defendants cite *Admiral Theatre Corp.* v. *Douglas Theatre Co.*, 585 F.2d 877 (8th Cir. 1978), a factually distinguishable case, where the Eighth Circuit affirmed the district court's evidentiary rulings in light of "the procedural history and factual setting of the case." *Id.* at 896. Specifically, the Eighth Circuit noted

that "the district court excluded the exhibits because of noncompliance with its pretrial orders only after repeated[] warning[s]" and "modifying its orders to accommodate the plaintiffs' requests for more time," and refused to let a previously undisclosed witness testify, in part, "because he refused to let the defendants examine documents in his possession" before the day of his testimony. *Id.* at 897. *Admiral Theatre* in no way justifies Defendants' premature request to exclude relevant evidence, and such a blanket exclusion is inconsistent with Eighth Circuit law. *See Martinez* v. *Union Pacific R.R. Co.*, 82 F.3d 223 (8th Cir. 1996) (explaining that "[t]he trial court traditionally has broad discretionary power to decide whether to allow the testimony of witnesses not listed prior to trial" and describing four-factor test for determining whether to exclude at trial previously undisclosed witnesses).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion *in limine* in its entirety.

Dated:  July 27, 2022

*Leslie Cooper*

| | |
|---|---|
| Leslie Cooper | Beth Echols, Ark. Bar No. 2002203 |
| Chase Strangio* | Christopher Travis, Ark. Bar No. 97093 |
| American Civil Liberties Union | Drake Mann, Ark. Bar No. 87108 |
| Foundation | Gill Ragon Owen, P.A. |
| 125 Broad St. | 425 W. Capitol Avenue, Suite 3800 |
| New York, NY 10004 | Little Rock, AR 72201 |
| Telephone:  (917) 345-1742 | Telephone:  (501) 376-3800 |

lcooper@aclu.org
cstrangio@aclu.org
*Attorneys for the Plaintiffs*

echols@gill-law.com
travis@gill-law.com
mann@gill-law.com
*On behalf of the Arkansas Civil Liberties
Union Foundation, Inc.
Attorneys for the Plaintiffs*


Breean Walas, Ark. Bar No. 2006077
Walas Law Firm, PLLC
P.O. Box 4591
Bozeman, MT 59772
Telephone:  (501) 246-1067
breean@walaslawfirm.com
*On behalf of the Arkansas Civil
Liberties Union Foundation, Inc.
Attorneys for the Plaintiffs*

Sarah Everett, Ark. Bar No. 2017249
Gary Sullivan, Ark. Bar No. 92051
Arkansas Civil Liberties Union
Foundation, Inc.
904 W. 2nd Street
Little Rock, AR 72201
Telephone:  (501) 374-2842
sarah@acluarkansas.org
gary@acluarkansas.org
*Attorneys for the Plaintiffs*


Garrard R. Beeney*
Brandyn J. Rodgerson*
Emily T.L. Armbruster*
Alexander S. Holland*
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Telephone:  (212) 558-4000
beeneyg@sullcrom.com
rodgersonb@sullcrom.com
armbrustere@sullcrom.com
hollanda@sullcrom.com
*Attorneys for the Plaintiffs*

Laura Kabler Oswell*
Sullivan & Cromwell LLP
1870 Embarcadero Road
Palo Alto, CA 94303
Telephone:  (650) 461-5600
oswell@sullcrom.com
*Attorney for the Plaintiffs*


Daniel J. Richardson*
1700 New York Avenue NW
Suite 700
Washington, DC 20006
Telephone: 202-956-7500
richardsond@sullcrom.com
*Attorney for Plaintiffs*

*\*Admitted pro hac vice*