IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

```
- - - - - - - - - - - - - - - - - - - - - - - - - x
DYLAN BRANDT, et al.,                              :
                                                   :
                    Plaintiff,                     :
                                                   :
          v.                                       :   Case No. 4:21-CV-00450-JM
                                                   :
LESLIE RUTLEDGE, et al.,                           :
                                                   :
                    Defendant.                     :
                                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - x
```

**RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' EVIDENTIARY DEPOSITION DESIGNATIONS**

Plaintiffs designated portions of the deposition of Dr. Rhys Branman, a Defendant in this action and a member of Defendant Arkansas State Medical Board ("Board"), for use at trial. Defendants' Motion to Exclude objects to every line of Plaintiffs' designations based on three objections; none has merit.[1]

*First*, Defendants claim that all of Dr. Branman's testimony is irrelevant. As addressed below and in the accompanying *Appendix A: Responses to Objections*, each of the designated portions of Dr. Branman's deposition is relevant

---

[1] Many of Defendants' arguments in its Motion to Exclude Dr. Branman's testimony repeat arguments already made to exclude the deposition designations of Amy Embry, the Federal Rule of Civil Procedure 30(b)(6) designee of the Board. (*See Defendant's Motion to Exclude Plaintiffs' Evidentiary Deposition Designations and Incorporated Brief in Support*, ECF 158.) Plaintiffs' have already demonstrated why those objections are misplaced. (*See Response in Opposition to Defendants' Motion to Exclude Plaintiffs' Evidentiary Deposition Designations,* ECF 163.) The arguments made in Plaintiffs' earlier Response apply here as well.

-1-

to this action because it relates to the State's alleged interests in enacting the Healthcare Ban and the harms that the Healthcare Ban will inflict on transgender minors in Arkansas. *Second*, Defendants argue that many portions of Dr. Branman's deposition constitute improper lay opinions or legal conclusions. But Dr. Branman testified "about facts within his . . . range of generalized knowledge, experience, and perception." *United States* v. *Espino*, 317 F.3d 788, 797 (8th Cir. 2003). He did not offer legal conclusions or opinions that relied on scientific literature and studies. *Third*, Defendants assert that a few portions of Dr. Branman's deposition were speculative because he lacks knowledge of how the Board "may act in the future or in a hypothetical scenario."[2] This position is meritless. The testimony challenged by Defendants relates to Dr. Branman's own medical practice and experience treating patients, and therefore does not require speculation on his part.[3]

---

[2]   (*Defendant's Motion to Exclude Plaintiffs' Evidentiary Deposition Designations and Incorporated Brief in Support*, ECF 172 ("Motion"), ¶ 11.)

[3]   Defendants' Motion to Exclude identifies a number of objections based on Plaintiffs' supposedly "designating incomplete testimony under Rule 106." (Motion, ¶ 12.) "To sustain a Rule 106 objection, the party urging admission of an excluded conversation must specify the portion of the testimony that is relevant to the issue at trial and that qualifies or explains portions already admitted." *McCoy* v. *Augusta Fiberglass Coatings, Inc.*, 593 F.3d 737, 747 (8th Cir. 2010) (citation omitted). Plaintiffs did not object to any of Defendants' counter-designations and Defendants' Motion does not offer additional designations they believe are necessary to "qualif[y] or explain[]" a portion of the testimony designated by Plaintiffs. *Id.*

Plaintiffs' designations pertain to relevant testimony that is admissible under the Federal Rules of Evidence ("FRE").[4] As such, under Federal Rule of Civil Procedure ("FRCP") 32(a), this Court should allow all of Plaintiffs' designations of Dr. Branman's deposition to be used at trial.

## I. Plaintiffs' Deposition Designations are Admissible Under the Federal Rules of Evidence

### A. Plaintiffs' Deposition Designation are Relevant.

FRE 401 and 402 provide that "relevant evidence is admissible" at trial, and that "evidence is relevant if it has a tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Defendants claim that Dr. Branman's testimony is irrelevant in its entirety, and challenge the relevance of every one of Plaintiffs' deposition designations.[5] But evidence is relevant if it pertains to a claim in the action, and Dr. Branman's testimony—as a Defendant in this action, a member of the State entity charged with regulating the field of medicine and enforcing the Healthcare Ban, and a physician licensed to practice medicine in Arkansas—relates to whether the Healthcare Ban is sufficiently related to the government's asserted interests and to the harms that would result should the law be enforced.

---

[4]   Plaintiffs respond to each of Defendants' objections with particularity in the attached appendix. *See* Appendix A: Responses to Objections.

[5]   (*See* Motion, ¶¶ 7, 9.)

Plaintiffs allege violations of the Equal Protection Clause, the Due Process Clause, and the First Amendment of the United States Constitution.[6] For each of these claims, one element is the relationship of the law to the government's stated interests.[7] Dr. Branman's testimony provides evidence that makes it less probable that the Healthcare Ban is narrowly tailored to a compelling government interest, substantially related to an important government interest, or rationally related to a legitimate government interest. His testimony also provides evidence that makes it difficult to credit the government's asserted interests in the Healthcare Ban at all. *See, e.g.*, *Romer* v. *Evans*, 517 U.S. 620, 635 (1996) (invalidating state constitutional amendment under rational basis review when asserted interests were "impossible to credit" given the facts). This testimony is relevant.

*First*, the State has argued throughout this litigation that the Healthcare Ban is necessary to protect minors from medical treatments that are "experimental" or present serious risks. Yet Dr. Branman—a Defendant in this suit tasked with enforcing the Healthcare Ban—does not believe that the State's asserted

---

[6]   (*See Complaint for Declaratory and Injunctive Relief* (ECF 1), ¶¶ 171, 178, 187.)

[7]   Heightened scrutiny on the Equal Protection claim requires that the statute be substantially related to an important government interest. *Sessions* v. *Morales-Santana*, 137 S. Ct. 1678, 1690 (2017). Heightened scrutiny on the Due Process and First Amendment claims requires that the statute be narrowly tailored to a compelling government interest. *Washington* v. *Glucksberg*, 521 U.S. 702, 721 (1997); *Reed* v. *Town of Gilbert*, 576 U.S. 155, 163 (2015). The government bears the burden of proof under heightened scrutiny. Even under rational basis review, there has to be a rational relationship between the law and a legitimate government interest. *U.S. Dep't of Agric.* v. *Moreno*, 413 U.S. 528, 533 (1973).

justifications warrant banning the healthcare prohibited by the Healthcare Ban. The deposition designations challenged by Defendants include Dr. Branman's testimony that he performs procedures that pose "significant physical risks" and may cause irreversible consequences,[8] provides surgeries that present serious risks to adolescents to improve their well-being,[9] and does not believe that all of the treatments he offers are backed by "double-blind controlled trials."[10] In other words, Dr. Branman treats patients with procedures that share many of the features that the State believes justify a categorical ban on gender-affirming medical care. But contrary to the arguments asserted on his behalf in litigation, Dr. Branman testified that he does not believe that those features mean that the risks of the care he provides outweigh the benefits, nor does he support a ban on gender-affirming medical care.[11]

---

[8]      (Exhibit 1, *Deposition Transcript of Defendant Dr. Rhys Branman, M.D.* ("Branman Dep. Tr.") at 31:6-12 ("Would that be correct, then, that there are procedures for whom – or for which the benefit is improved well-being but there are significant physical risks? . . . / A. Yes. That may be true."); 31:24-32:3 ("[D]o some of the procedures that you offer have irreversible consequences for patients?/ A. Irreversible consequences?/ Q. Yes./ A. Yes.").)

[9]      (*Id.* at 42:7-42:9 ("Do you currently offer medical care to adolescents?/ A. Occasionally."); 47:11-21 ("But there would be some patients for whom the benefit of the cosmetic surgery is their—their well-being?/ A. Yes. . . . Q. Okay. And would it be true that surgical treatments have risks for adolescents just like they would for anyone else?/ A. Yes.").)

[10]     (*Id.* at 29:5-14 ("[H]as there been some kind of experimental trial for all of – all of the procedures you provide?/ . . . A. "Experimental trial," I am not sure that that terminology applies. I would say double-blind controlled studies for – to see if these procedures are effective? Yes. In many of the procedures, I did./ Q. Okay. But you wouldn't say all?/ A. I would not say all.").)

[11]     (*Id.* at 33:18-23 ("So the procedures you perform, you think the benefits outweigh the risk, and those procedures should not be banned; is that correct?/ A. I believe the procedures that I do perform, the benefits outweigh the risks, that's correct."); 149:20-150:4 ("Would you support a law banning care when the doctor, the adolescent patient, and their parent all agree that the gender-

It is plainly relevant to the constitutionality of the Healthcare Ban that a state official tasked with enforcing that law does not believe the State's asserted interests support its action.[12]

*Second*, the State has defended its ban on gender-affirming medical care by pointing to its concerns about how that care is being provided, including its concern that minors are receiving treatments without informed consent. Dr. Branman's testimony shows that the Board did not recommend similar action, and did not even consider a ban on care, in response to known issues involving the improper use of other medical treatments.[13] As a Defendant in this action responsible for regulating the profession of medicine in Arkansas, Dr. Branman's

---

affirming medical care would be effective?/ . . . A. Would I support a ban? Would I personally agree with that? I would not agree with it.").) As Defendants note, there was a scrivener's error for this portion of testimony in the Plaintiffs' designation. The proper designation should start at 149:20 and end at 150:4.

[12] Dr. Branman also testified about whether he currently provides gender-affirming medical care or would be comfortable performing gender transition procedures. (Exhibit 1, Branman Dep. Tr. at 24:16-25:1.) That testimony is relevant, as the Board's FRCP 30(b)(6) witness, Amy Embry, testified that Board member's personal views inform their decision as Board members. (*See* Exhibit 2, *Deposition Transcript of Arkansas Medical Board: Amy Embry 30(b)(6) Representative* ("Embry Dep. Tr.") at 170:6-16.)

[13] Specifically, Dr. Branman testified that even though the Board was aware of complaints related to a jail doctor who was prescribing the drug Ivermectin to treat Covid-19, the Board never considered banning that care. (Exhibit 1, Branman Dep. Tr. at 82:14-18 ("During that process, after receiving that complaint, did the Board ever consider pursuing a regulation to ban the use of ivermectin to treat COVID?/ A. No.").) When asked if such a ban would be appropriate for "ivermectin or hydroxychloroquine to treat COVID-19," Dr. Branman replied "I believe that . . . could be against the Medical Practices Act." (*Id.* at 85:5-9.) Relatedly, Dr. Branman testified that the system of medical regulation in place for other treatments is effective. (*Id.* at 88:18-89:6.)

testimony that the Board did not consider banning care when faced with serious risks in the past is relevant to evaluating the State's asserted interests (and possible unstated motives) in banning care provided only to transgender minors. Moreover, it illustrates that the State is treating gender-affirming medical care differently than comparable treatments, which reinforces Plaintiffs' argument that the Healthcare Ban targets patients based on their transgender status and sex.

*Third*, the State asserts that the Healthcare Ban prevents the supposed harms of gender-affirming medical care. But Dr. Branman acknowledged during his deposition that the Healthcare Ban would itself cause serious harm to minors.[14] That testimony, provided by a state official who would have to discipline doctors for providing gender-affirming medical care if the Healthcare Ban goes into effect, undermines the State's asserted justification for its law and makes it more probable that the State's rationale is pretextual.[15]

*Fourth*, Dr. Branman testified about the ways that the Healthcare Ban departs from the ordinary practice of medicine in Arkansas and creates conflicts with

---

[14]   (Exhibit 1, Branman Dep. Tr. at 129:21-130:3 ("The last sentence there is: 'The young people who are currently under a doctor's care will be left without treatment when this law goes into effect.'/ A. Yes. I believe that's possible./ Q. Okay. And do you share the Governor's concern about that?/ A. Yes, I do.").)

[15]   Relatedly, Dr. Branman also testified that he was unaware of any complaints submitted to the Board concerning gender-affirming medical care, further undermining the State's interest in singling out this care. (*Id.* at 103:7-10.)

the professional obligations that Arkansas places on doctors. Specifically, Dr. Branman explained his understanding of a doctor's ethical obligation to not abandon a patient,[16] the broad authority typically afforded to doctors to determine appropriate medical care in consultation with their patients,[17] and the ways in which a total ban on healthcare conflicts with those principles.[18] The State's willingness to change its ordinary practices regarding the regulation of medicine to target transgender minors is relevant to whether the Healthcare Ban is motivated by animus rather than a genuine concern for the health and safety of children in Arkansas.

Taken together, Dr. Branman's testimony makes it more probable that the State's asserted justifications for its law are at best weak or at worst pretextual and that the Healthcare Ban imposes serious harms on Plaintiffs. As such, each portion of his testimony designated by Plaintiffs is relevant to the central question in this case: whether the Healthcare Ban can survive scrutiny under the Constitution.

---

[16] For instance, Dr. Branman testified that "[i]t would be unethical for [a patient in need of continuing care] not to have some type of care, whether it's me or another physician. For example, if they left the state and they needed to be seen by someone, I would try to refer them to somebody." (Exhibit 1, Branman Dep. Tr. at 41:18-22.)

[17] When asked if "the standard practice . . . is that doctors, in consultation with their patients, determine appropriate treatments in each case," Dr. Branman replied: "I believe the doctor-patient relationship allows for them to come to a mutually agreeable treatment." (*Id*. at 86:3-12.) He then confirmed that standard practice applies to "treatments that pose serious risks." (*Id.* at 86:13-14.)

[18] (*Id.* at 91:6-8 ("[I]s it your view that a ban on medical care would conflict with the Arkansas Medical Practices Act?/ A. I believe so. I think that, like I said, physicians do have broad prescriptive and treatment authority under their medical licenses.").)

### B. Plaintiffs' Deposition Designations do not Constitute Improper Lay Opinion or Legal Conclusions.

Defendants object that "it is improper and inadmissible" to "draw a legal conclusion from the testimony of Dr. Branman," and that "because Dr. Branman is not an attorney, it renders any of his lay opinions on the meaning of a law irrelevant under Rules 401 and 402."[19]  Defendants also assert that "Dr. Branman has not been identified as an expert witness for purposes of this case," and therefore cannot offer "testimony that would elicit opinions requiring scientific or specialized knowledge."[20]

Dr. Branman's testimony does not include any legal conclusions, nor does it reflect "scientific, technical, or other specialized" knowledge.  FRE 701 and 702 outline admissible opinion testimony by a lay witness and an expert witness. "Rule 701 permits . . . testimony if it is based on relevant historical or narrative facts that the witness has perceived."  *Espino*, 317 F.3d at 797 (internal citation and quotation marks omitted).  "The general application of Rule 701 indicates that a lay witness may testify about facts within his or her range of generalized knowledge, experience, and perception."  *Id*.

---

[19]   (Motion, ¶ 10.)  As with the State's relevance argument, this argument mirrors the State's Motion to Exclude the deposition designations of Amy Embry, and can be rejected for the same reason.

[20]   (*Id.*, ¶ 10.)

Here, Dr. Branman testified about matters well within his knowledge and experience. *First*, many of the designations challenged by Defendants relate to Dr. Branman's own medical practice. For instance, Dr. Branman testified about his personal assessment of the risks and benefits of the treatments he provides, and the evidence supporting those treatments.[21] At other points, he offered testimony as to whether harms would befall his patients if they were denied care,[22] and his views regarding his ethical obligations as a physician.[23] *Second*, Dr. Branman offered testimony based on his personal experience as a member of the Board. Specifically, he testified that the Board's regulation of doctors in the State was effective,[24] that he would not support a ban on healthcare simply because there were complaints associated with that care,[25] and that the Healthcare Ban could create conflicting

---

[21]     *See supra* notes 8-9.

[22]     (Exhibit 1, Branman Dep. Tr. at 132:6-14 ("Do you think there are any patients in your practice who would have been harmed by having to wait until adulthood to receive a treatment?/ A. That's up for opinion. I think in the opinion of the parents and the child, for example, with the otoplasty, that they could have been emotionally harmed./ Q. By having to wait?/ A. By having to wait, yes.").)

[23]     (*Id.* at 65:13-20 ("Can you just describe sort of what the ethical obligations are with respect to patient abandonment?/ A. It would involve seeing a patient when they needed to be seen. Let's say you performed a procedure and then the patient was having problems, and in what timely manner you went to see that patient.").)

[24]     *See supra* note 11.

[25]     *See supra* note 11.

obligations for physicians.[26] For both categories of statements, Dr. Branman relied solely on his own knowledge as a practicing physician and member of the Board.[27]

Contrary to Defendants' assertion, Dr. Branman's testimony did not include legal conclusions. In offering views about the ethical and professional obligations placed on doctors and the ways those obligations may be affected by the Healthcare Ban, Dr. Branman was relying on his own personal experience, both as doctor licensed to practice in the state and as a government official tasked with enforcing the state's professional obligations. As a practicing surgeon, he is constantly confronting ethical or professional questions as part of his work treating patients. And as a state official responsible for enforcing the Arkansas Medical Practices Act, he is required by law to determine what the Act means and how it should be enforced. Given that his testimony is entirely based on those personal experiences and offers no views on the ultimate legal questions in this case, he is able to speak to the ethical and professional obligations that apply to medical

---

[26] (Exhibit 1, Branman Dep. Tr. at 119:19-120:3 ("[I]magine with me that . . . a doctor is prohibited from referring patients to receive care . . . but that patient's course of treatment is not complete./ . . . A. I think that would be – the physician would feel like it's their duty to refer so that patient could have the treatment that they require.").)

[27] Notably, during the depositions of the Physician Plaintiffs, Defendants asked a number of questions about the risks of treatments other than gender-affirming medical care, even though the Physician Plaintiffs are not expert witnesses in this action. For example, Defendants asked Dr. Kathryn Stambough to discuss the risks of using hormone therapy to treat endometriosis. (*See* Exhibit 3, *Deposition Transcript of Plaintiff Dr. Kathryn Stambough* ("Stambough Dep. Tr.") at 82:12-86:15.)

obligations for physicians.[26] For both categories of statements, Dr. Branman relied solely on his own knowledge as a practicing physician and member of the Board.[27]

Contrary to Defendants' assertion, Dr. Branman's testimony did not include legal conclusions. In offering views about the ethical and professional obligations placed on doctors and the ways those obligations may be affected by the Healthcare Ban, Dr. Branman was relying on his own personal experience, both as doctor licensed to practice in the state and as a government official tasked with enforcing the state's professional obligations. As a practicing surgeon, he is constantly confronting ethical or professional questions as part of his work treating patients. And as a state official responsible for enforcing the Arkansas Medical Practices Act, he is required by law to determine what the Act means and how it should be enforced. Given that his testimony is entirely based on those personal experiences and offers no views on the ultimate legal questions in this case, he is able to speak to the ethical and professional obligations that apply to medical

---

[26] (Exhibit 1, Branman Dep. Tr. at 119:19-120:3 ("[I]magine with me that . . . a doctor is prohibited from referring patients to receive care . . . but that patient's course of treatment is not complete./ . . . A. I think that would be – the physician would feel like it's their duty to refer so that patient could have the treatment that they require.").)

[27] Notably, during the depositions of the Physician Plaintiffs, Defendants asked a number of questions about the risks of treatments other than gender-affirming medical care, even though the Physician Plaintiffs are not expert witnesses in this action. For example, Defendants asked Dr. Kathryn Stambough to discuss the risks of using hormone therapy to treat endometriosis. (*See* Exhibit 3, *Deposition Transcript of Plaintiff Dr. Kathryn Stambough* ("Stambough Dep. Tr.") at 82:12-86:15.)

providers as a lay witness. *See United States* v. *Gilbertson*, 970 F.3d 939, 952 (8th Cir. 2020) (rejecting the argument that a witness offered legal conclusions by "testifying from personal experience about his interpretation" of whether the Defendant was engaged in wrongdoing).

Moreover, his testimony did not reflect impermissible expert testimony. Dr. Branman's medical opinions were based on his own professional experience, not "research and studies." *United States* v. *Smith*, 591 F.3d 974, 978 (8th Cir. 2010). As the Eighth Circuit has previously explained, "perceptions based on industry experience are a sufficient foundation for lay opinion testimony." *U.S. Salt, Inc.* v. *Broken Arrow, Inc.*, 563 F.3d 687, 690 (8th Cir. 2009). That is all that Dr. Branman offered here, and his testimony falls comfortably within the bounds of Rule 701. *See, e.g.*, *Smith*, 591 F.3d at 983 (allowing a lay witness to testify based on her "experience performing forensic interviews of allegedly abused children").

### C. Plaintiffs' Deposition Designations are not Speculative.

Defendants object that Dr. Branman offered "speculative testimony on how the Board as a whole, or an individual Board member, may act in the future or in a hypothetical scenario."[28] But for each designation challenged by Defendants, Dr. Branman's testimony was not speculative because it relates to his own medical practices and patients. For instance, Defendants object to testimony where

---

[28] (Motion, ¶ 11.)

Dr. Branman noted that his procedures may present "significant physical risks" [29] and that some of his patients "benefit [from] cosmetic surgery" because of "the way they appear to themselves."[30] But there is nothing speculative about Dr. Branman's testimony regarding his own experience providing cosmetic surgery to patients. Defendants also object to Dr. Branman's testimony that, for minor patients, medical decisions are typically made by the patient, the patient's parents, and the patient's doctor.[31] That response is based on Dr. Branman's personal experience as a practicing physician. It does not turn at all on matters for which Dr. Branman lacks "personal knowledge."[32]

## II. Conclusion

Dr. Branman's deposition testimony is relevant, does not contain improper lay opinion or legal conclusions, and is not speculative. For the foregoing

---

[29] (Exhibit 1, Branman Dep. Tr. 30:22–23.)

[30] (*Id*. at 47:12–17.)

[31] (*Id.* at 87:24-88:6 ("So in Arkansas, or nationally, . . . is it true, that when the . . . patient is a minor, there's also broad prescriptive authority for doctors to make decisions about treatment with serious risks as long as they're consulting the parent and the child?/ . . . A. I believe that to be true.").)

[32] Under FRCP 32(d)(3)(B), "[a]n objection on an error or irregularity at an oral examination is waived if: (i) it relates to . . . the form of a question or answer . . , or other matters that might have been corrected at that time, and (ii) it is not timely made during the deposition." Objections on the basis of speculation are form objections, which must be raised during the deposition so that the noticing attorney has the opportunity to cure the question, or else the objection is waived. *See Otis* v. *Demarasse*, 399 F. Supp. 3d 759, 765–66 (E.D. Wis. 2019). Defendants waived several of their speculation objections by failing to make a form objection during Dr. Branman's deposition. Those waivers are noted in *Attachment A*.

reasons, the Court should overrule Defendants' objections and allow Plaintiffs' designations of Dr. Branman's deposition to be used at trial.

Dated: August 4, 2022

| | |
|---|---|
| *Leslie Cooper* | |
| Leslie Cooper | Beth Echols, Ark. Bar No. 2002203 |
| Chase Strangio* | Christopher Travis, Ark. Bar No. 97093 |
| American Civil Liberties Union Foundation | Drake Mann, Ark. Bar No. 87108 |
| 125 Broad St. | Gill Ragon Owen, P.A. |
| New York, NY 10004 | 425 W. Capitol Avenue, Suite 3800 |
| Telephone: (917) 345-1742 | Little Rock, AR 72201 |
| lcooper@aclu.org | Telephone: (501) 376-3800 |
| cstrangio@aclu.org | echols@gill-law.com |
| *Attorneys for the Plaintiffs* | travis@gill-law.com |
| | mann@gill-law.com |
| | *On behalf of the Arkansas Civil Liberties Union Foundation, Inc.* |
| | *Attorneys for the Plaintiffs* |
| | |
| Breean Walas, Ark. Bar No. 2006077 | Sarah Everett, Ark. Bar No. 2017249 |
| Walas Law Firm, PLLC | Gary Sullivan, Ark. Bar No. 92051 |
| P.O. Box 4591 | Arkansas Civil Liberties Union Foundation, Inc. |
| Bozeman, MT 59772 | 904 W. 2nd Street |
| Telephone: (501) 246-1067 | Little Rock, AR 72201 |
| breean@walaslawfirm.com | Telephone: (501) 374-2842 |
| *On behalf of the Arkansas Civil Liberties Union Foundation, Inc.* | sarah@acluarkansas.org |
| *Attorneys for the Plaintiffs* | gary@acluarkansas.org |
| | *Attorneys for the Plaintiffs* |
| | |
| Garrard R. Beeney* | Laura Kabler Oswell* |
| Lauren M. Goldsmith* | Aviv S. Halpern* |
| Rebecca S. Kadosh* | Sullivan & Cromwell LLP |
| Brandyn J. Rodgerson* | 1870 Embarcadero Road |
| Emily T.L. Armbruster* | Palo Alto, CA 94303 |

Alexander S. Holland*
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
beeneyg@sullcrom.com
rodgersonb@sullcrom.com
armbrustere@sullcrom.com
hollanda@sullcrom.com
*Attorneys for the Plaintiffs*

Daniel J. Richardson*
1700 New York Avenue NW
Suite 700
Washington, DC 20006
Telephone: 202-956-7500
richardsond@sullcrom.com
*Attorney for the Plaintiffs*

Telephone: (650) 461-5600
oswell@sullcrom.com
simpsond@sullcrom.com
*Attorneys for the Plaintiffs*

*\*Admitted pro hac vice*