## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - x

DYLAN BRANDT, et al.,

                    Plaintiffs,

        v.

LESLIE RUTLEDGE et al.,

                  Defendants.

            Case No. 4:21-CV-00450-JM

- - - - - - - - - - - - - - - - - - - - - - - - - x

## PLAINTIFFS' PRETRIAL DISCLOSURE SHEET

In accordance with the Court's *Amended Scheduling Order* (ECF 99), Federal Rule of Civil Procedure 26(a)(3), and Local Rule 26.2, Plaintiffs Dylan Brandt, et al., hereby submit their *Pretrial Disclosure Sheet*:

**(1)    The identity of the party submitting the information.**

Plaintiffs Dylan Brandt, by and through his mother, Joanna Brandt; Joanna Brandt; Sabrina Jennen, by and through her parents, Lacey and Aaron Jennen; Lacey Jennen; Aaron Jennen; Brooke Dennis, by and through her parents, Amanda and Shayne Dennis; Amanda Dennis; Shayne Dennis; Parker Saxton, by and through his father, Donnie Saxton; Donnie Saxton; and Kathryn Stambough, on behalf of herself and her patients.

**(2)**     **The names, addresses, and telephone numbers of all counsel for the party.**

Leslie Cooper
American Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
Telephone:  (917) 498-4839

Chase Strangio
American Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
Telephone:  (917) 345-1742

James Esseks
American Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
Telephone:  (917) 495-5745

Breean Walas
Walas Law Firm, PLLC
Office: 711 W. 3rd Street,
Little Rock, AR 72201
Mailing Address: P.O. Box 459,
Bozeman, MT 59772
Telephone:  (501) 246-1067

Garrard R. Beeney
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Telephone:  (212) 558-4000

Laura Kabler Oswell
Sullivan & Cromwell LLP
1870 Embarcadero Rd.
Palo Alto, CA 94303
Telephone:  (650) 461-5600

Lauren M. Goldsmith
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Telephone:  (212) 558-4000

Arun Bodapati
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Telephone:  (212) 558-4000

Daniel J. Richardson
1700 New York Avenue NW, Suite 700
Washington, DC 20006
Telephone: 202-956-7500

Alexander Peacocke
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Telephone:  (212) 558-4000

Rebecca S. Kadosh
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Telephone:  (212) 558-4000

Aviv S. Halpern
Sullivan & Cromwell LLP
1870 Embarcadero Rd.
Palo Alto, CA 94303
Telephone:  (650) 461-5600

Alexander S. Holland
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Telephone:  (212) 558-4000

Beth Echols
Gill Ragon Owen, P.A.
425 W. Capitol Avenue, Suite 3800
Little Rock, AR 72201
Telephone:  (501) 376-3800

Christopher Travis
Gill Ragon Owen, P.A.
425 W. Capitol Avenue, Suite 3800
Little Rock, AR 72201
Telephone:  (501) 376-3800

Drake Mann
Gill Ragon Owen, P.A.
425 W. Capitol Avenue, Suite 3800
Little Rock, AR 72201
Telephone:  (501) 376-3800

Sarah Everett
Arkansas Civil Liberties Union Foundation, Inc.
904 W. 2nd Street
Little Rock, AR 72201
Telephone:  (501) 374-2842

Gary Sullivan
Arkansas Civil Liberties Union Foundation, Inc.
904 W. 2nd Street
Little Rock, AR 72201
Telephone:  (501) 374-2842

**(3)    A brief summary of claims and relief sought.**

Plaintiffs bring this action challenging Act 626 (hereafter "Health Care Ban" or "Ban"), which was enacted by the Arkansas General Assembly on April 6, 2021. The Health Care Ban prohibits the provision of all medical treatments to minors "related to gender transition," denying adolescents with gender dysphoria medical care that comports with widely accepted medical protocols for the treatment of this

condition.  The Health Care Ban violates the constitutional rights of transgender adolescents, their parents, and the doctors who treat such adolescents and threatens the health and well-being of transgender youth across Arkansas.

The Ban violates the Equal Protection Clause of the Fourteenth Amendment because it singles out for prohibition all medical treatments for minors "related to gender transition."  By targeting only medical treatments "related to gender transition"—and all such treatments—the Ban discriminates based on transgender status and sex, triggering at least intermediate equal protection scrutiny, which requires the State to demonstrate that the Ban is substantially related to an important government interest.  The evidence at trial will show that the State cannot meet that heavy burden and that the Ban fails any level of constitutional scrutiny.

The Health Care Ban also violates the Due Process Clause of the Fourteenth Amendment because it interferes with parents' fundamental right to seek medical care for their adolescent children in consultation with, and as recommended by, medical professionals.  The Ban prevents parents from seeking medical care for their children when the course of treatment is supported by the child and their doctor.  Because the evidence will show that the Ban does not satisfy intermediate scrutiny, it cannot satisfy the even more demanding strict scrutiny triggered by the burden on this fundamental right, which requires the government to demonstrate that the law is narrowly tailored to further a compelling state interest.

Lastly, the Health Care Ban violates the First Amendment because it prohibits healthcare providers from referring their adolescent patients for necessary medical treatments related to gender transition.  By singling out for prohibition only referrals for these treatments, the Ban establishes content- and viewpoint-based restrictions on speech, triggering strict scrutiny.  The State cannot show that this sweeping restriction on the free speech rights of Arkansas's doctors to speak and of Arkansas's patients and their parents to receive information is narrowly tailored to advance a compelling state interest.

For relief, Plaintiffs respectfully request that this Court:  (a) enter a judgment declaring that the Health Care Ban violates the Equal Protection Clause, the right to parental autonomy guaranteed by the Due Process Clause, and the right to freedom of speech protected by the First Amendment, (b) issue a permanent injunction barring Defendants from enforcing the Health Care Ban; (c) award Plaintiffs their costs and expenses, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988; and (d) grant such other relief as the Court deems just and proper.

**(4)    Prospects for settlement.**

The parties conferred about the prospect of settlement by e-mail on August 4, 2022.  The parties agreed that settlement before trial is unlikely.

**(5)    The basis for jurisdiction and objections to jurisdiction.**

This action arises under the United States Constitution, 42 U.S.C. § 1983. This Court has subject matter jurisdiction pursuant to Article III of the United States Constitution and 28 U.S.C. §§ 1331, 1343, and 1367.  The Court is authorized to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

**(6)    A list of pending motions.**

- Plaintiffs' Motion to Exclude Expert Testimony of Patrick Lappert (ECF 153)

- Plaintiffs' Motion to Exclude Expert Testimony of Mark Regnerus (ECF 155)

- Defendants' Motion to Exclude Plaintiffs' Evidentiary Deposition Designations of Amy Embry (ECF 158)

- Defendants' Motion *in Limine* (ECF 164)

- Defendants' Motion to Exclude Plaintiffs' Evidentiary Deposition Designations of Dr. Rhys Branman (ECF 172)

- Motion for Leave to Appear *Pro Hac Vice* by Alexander F.R. Peacocke (ECF 179)

- Motion for Leave to Appear *Pro Hac Vice* by Arun Bodapati (ECF 180)

**(7)      A concise summary of the facts.**

**A.      Treatment of Adolescents with Gender Dysphoria.**

"Gender identity" refers to a person's sense of belonging to a particular gender.  Everyone has a gender identity.  The term "cisgender" refers to people who have a gender identity that aligns with their sex assigned at birth, and the term "transgender" refers to people who have a gender identity that does not align with their sex assigned at birth.[1]

The lack of alignment between one's gender identity and sex assigned at birth can cause significant distress.  "Gender dysphoria" is the diagnostic term for the distress that can result from incongruence between a person's gender identity and sex assigned at birth.  To be diagnosed with Gender Dysphoria in Adolescents or Adults, a diagnosis in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, the incongruence must have persisted for at least six months and be accompanied by clinically significant distress or impairment in social, occupational, or other important areas of functioning.  Gender dysphoria is a serious medical condition that, if left untreated, can result in debilitating anxiety, severe depression, self-harm, and suicide.

---

[1]      "Sex assigned at birth" refers to a person's sex designated at birth, usually based on genital anatomy.

The Endocrine Society and the World Professional Association for Transgender Health ("WPATH") have published widely accepted guidelines for the treatment of gender dysphoria.  The guidelines are developed through a systematic review of available scientific evidence.  All major medical and mental health professional associations in the United States recognize these guidelines as authoritative, including the American Academy of Pediatrics, the American Medical Association, and the American Psychiatric Association.

Under the WPATH Standards of Care for the Health of Transsexual, Transgender, and Gender Nonconforming People, Version 7 ("WPATH SOC") and the Endocrine Society's Endocrine Treatment of Gender Dysphoric/Gender-Incongruent Persons:    An Endocrine Society Clinical Practice Guideline ("Endocrine Society Guideline"), treatment for gender dysphoria differs depending on whether the patient is a prepubertal child, an adolescent, or an adult.  Before puberty, no surgical or drug interventions are medically indicated to treat gender dysphoria.  For youth who experience distress after the onset of puberty (*i.e.*, during adolescence), medical interventions such as puberty-delaying treatment and hormone therapy may become medically necessary.[2]   Treatment decisions are individualized based on the needs of the patient.

---

[2]    When gender dysphoria persists to the onset of puberty, desistance of the condition is rare.

Clinicians who follow these protocols for the treatment of gender dysphoria do not steer the minor in any particular direction with respect to the minor's gender identity but, rather, through a "non-judgmental partnership with youth and families," facilitate "exploration" of the minor's gender, recognizing that medical "interventions are appropriate for some adolescents, but not for others." (*See* American Academy of Pediatrics, Ensuring Comprehensive Care and Support for Transgender and Gender Diverse Children and Adolescents, ECF 45-23, at 4; WPATH SOC, ECF 45-19, at 16.) No minor is "actively encouraged to pursue a transgender identity," as Defendants have claimed. Instead, under the well-established protocols, medical interventions are not provided unless and until a thorough mental health evaluation determines that the diagnostic criteria for gender dysphoria are met and treatment is medically necessary for the patient.

Under these protocols, treatment recommendations for adolescents with gender dysphoria are not made lightly or hurriedly and there is a rigorous assessment process which involves the patients, their parents, and their doctors. Additionally, the WPATH SOC provides that "[b]efore any physical interventions are considered for adolescents, extensive exploration of psychological, family, and social issues should be undertaken." (ECF 45-19, at 18.) Parents must provide informed consent for all medical treatments for gender dysphoria for their minor children.

The Endocrine Society Guideline's criteria for eligibility for puberty-delaying treatment include that the adolescent's gender dysphoria has been "long-lasting and intense." (ECF 45-21, at 10.)  The criteria for eligibility for hormone therapy include that the "adolescent has sufficient mental capacity to estimate the consequences of this (partly) irreversible treatment, weigh the benefits and risks, and give informed consent to this (partly) irreversible treatment."  (*Id.*)

When medical interventions are deemed appropriate, they are pursued in a staged process, from fully reversible (puberty-delaying medication) to partially reversible (hormone therapy) to irreversible (surgery).   Puberty-delaying medication, which is also used to treat non-transgender children with precocious puberty, pauses puberty at the stage reached when treatment is commenced.  When used to treat gender dysphoria, puberty is not delayed beyond the typical age range for puberty, and if an adolescent discontinues treatment, endogenous puberty will resume.  This treatment gives an adolescent time to further understand their gender identity before initiating any irreversible treatment and, by preventing the permanent changes to the body that come with endogenous puberty, can drastically minimize dysphoria later in life and may eliminate the need for surgery.  For some adolescents, it may become medically necessary to initiate puberty consistent with a patient's gender identity through gender-affirming hormone therapy.  These patients are provided testosterone (for transgender boys) or estrogen and anti-androgens (for

transgender girls)—medications that are used for non-transgender youth for a variety of purposes.  Transgender young men who have lived in their affirmed gender for a significant period of time may also receive medically necessary chest reconstruction surgery before the age of majority.  Under current protocols, genital surgery is not recommended for minors.

Medical interventions to treat adolescents with gender dysphoria have been shown in studies and decades of clinical experience to be effective at minimizing distress in adolescent patients with gender dysphoria.[3]  For this reason, gender-affirming medical interventions to treat adolescents with gender dysphoria are widely recognized in the medical community, including by the major professional medical associations, as medically necessary for the health and well-being of some adolescents suffering from gender dysphoria.  Though Defendants refer to what they call an "international controversy" surrounding gender-affirming medical treatment for adolescents, none of the countries referenced by Defendants has banned gender-affirming medical care for adolescents with gender dysphoria.

---

[3]    These treatments are not "experimentation" on youth as suggested by the Ban's title, "Save our Children from Experimentation (SAFE) Act."  The evidence supporting this treatment is comparable to—or greater than—evidence supporting other treatments patients and their families are free to pursue.  Nor does the fact that the use of these medications to treat gender dysphoria is "off-label"—not FDA-approved for this specific indication—mean the drugs are experimental, untested, or unsafe for this use.  Off-label use is commonplace in medicine.

As with many medical treatments, pubertal suppression and hormone therapy can have potential risks, but, as with other medical care for minors, treatment is not provided without informed consent of the parents.  None of the potential risks identified by Defendants is unique to gender-affirming medical treatments.  The risks are present when these medications are used to treat other conditions.  And many other medical treatments that families are free to pursue for their minor children have significant risks.  The risks of adverse health impacts are rare when treatment is provided under the supervision of a clinician.[4]

Although psychotherapy can be important for adolescents with gender dysphoria, there is no evidence that psychotherapy alone can alleviate gender dysphoria.  Nor is there evidence that psychotherapy or any other treatments can cause a person's gender identity to become congruent with their sex assigned at birth.  Such efforts in the past have been attempted without success and with harmful effects and is now considered unethical.

---

[4]     Like many other interventions that are necessary to preserve a person's health, hormone therapy may have an impact on fertility, although many people are able to conceive children after receiving hormone therapy.  The WPATH SOC and Endocrine Society Guideline, therefore, provide that patients should be informed of this risk and provided information about fertility preservation before commencing treatment.  Puberty-delaying medication does not, by itself, affect fertility.

### B.      Passage of the Health Care Ban.

On March 29, 2021, the Arkansas General Assembly passed HB 1570, prohibiting healthcare professionals from providing any medical treatments "performed for the purpose of assisting an individual with a gender transition" to anyone under eighteen or "refer[ring]" anyone under eighteen to any healthcare professional for such treatment.  HB 1570 § 3.

On April 5, 2021, Governor Hutchinson vetoed HB 1570.  In the statement accompanying his veto, Governor Hutchinson explained that the bill created "new standards of legislative interference with physicians and parents" and "puts the state as the definitive oracle of medical care, overriding parents, patients and healthcare experts," which "would be—and is—a vast government overreach."  (ECF 12, at 9 (citing Governor Asa Hutchinson, *Governor Asa Hutchinson Holds Pen and Pad Session with Local Media*, YOUTUBE, at 9:16–10:05 (April 5, 2021), https:// www.youtube.com/watch?v=9Jt7PxWkVbE).)  He further noted that "denying best practice medical care to transgender youth can lead to significant harm to the young person—from suicidal tendencies and social isolation to increased drug use."  *Id.* Within 24 hours, the General Assembly overrode the Governor's veto and enacted the law.

The Ban was one of at least twelve bills and resolutions that targeted transgender people during the 2021 Arkansas legislative session.  *See* SB 347; SB

354; SB 450; HB 1749; SB 389; HB 1882; HB 1905; HB 1951; HR 1018; SR 7; SR 16.  While the Ban was in the General Assembly, majorities in both chambers passed resolutions expressing their view that "gender reassignment medical treatments" are not "natural."  HR 1018, 2021 Gen. Assemb., Reg. Sess. (Ark. 2021); SR 7, 2021 Gen. Assemb., Reg. Sess. (Ark. 2021).  Some members of the General Assembly further expressed their personal and religious opposition to people being transgender.[5]

Arkansas does not categorically prohibit any other medical care based on concerns for patient well-being.  Rather, the State leaves it to patients (and for minors, their parents) and doctors to evaluate risks and benefits of treatment.  This is true even when the State is aware of risks associated with treatment and that a particular treatment is not supported by evidence of efficacy.

### C.   Plaintiffs.

#### i.   Dylan, Sabrina, Parker, Brooke, and their families

Plaintiffs Dylan Brandt, Sabrina Jennen, Parker Saxton, and Brooke Dennis (the "Minor Plaintiffs") are Arkansas minors who have been diagnosed with gender

---

[5]    *See, e.g.,* March 10, 2021 Hearing (Transcript) at 17:12-18:10 (Rep. Jim Wooten: "[W]hat if your child come to you and says, 'I want to be a cow?' . . . .  This is absolutely ridiculous.  Change from a man to a woman?  It'll never work."); *S. Floor Debate, 2021 Gen. Assemb. 93rd Sess.*, (Mar. 10, 2021) at 2:19:12 ("A woman shall not wear anything that pertains to a man, nor a man put on a woman's garments. For all who do so are an abomination to the Lord your God."), https://sg001-harmony.sliq.net/00284/Harmony/en/PowerBrowser/PowerBrowserV2/2021 0310/-1/21305?viewMode=1#agenda_.)

dysphoria and are currently receiving, or will imminently need, gender-affirming medical care that is prohibited by the Ban. Dylan's, Sabrina's, and Parker's lives have all been positively transformed by their treatment.

Dylan, who is 16, has been on hormone therapy for over two years and has developed secondary sex characteristics typical of teenage boys. The treatment has alleviated his depression and social anxiety and allowed him to become a confident, happy teenager. The thought of being forced to physically detransition and go back to how he felt before beginning treatment is unbearable to Dylan.

Likewise, since starting testosterone, Parker—now 17—is always smiling, laughing, and telling jokes. Before he was in constant distress over his body, and he had lost the joy his father had seen in him as a child. He has now been receiving treatment for over a year. Parker's father fears that ending that treatment would be a death sentence for Parker.

Prior to starting treatment, Sabrina, 16, saw no future for herself; she was depressed and engaged in self-harm. Since starting hormone therapy, Sabrina's confidence and happiness have been noticeably improved. Additionally, with this increased confidence, she has gained a large group of supportive friends, and has found her voice and a place for herself in her community. Sabrina's parents are fearful about what would happen to their daughter if she had to stop treatment. They believe the consequences of stopping care may be life-threatening. They cannot bear

to see Sabrina go back to how she was before beginning treatment, and to return to constant concern about her safety.

Brooke Dennis is 10.  In 2020, she told her parents she is a girl, but her mother testified that "Brooke always knew who she was."  She was diagnosed with gender dysphoria, which has caused her distress, and she is increasingly anxious about puberty and what will happen to her body.  In consultation with Brooke's doctors, her parents intend to start puberty suppression after puberty begins, which could happen at any time.  Brooke is fearful about the uncertain future of this treatment.

All of the family plaintiffs have long-standing, close ties to their extended families, schools, jobs, and communities in Arkansas.  But if the Ban goes into effect, Joanna Brandt, Aaron and Lacey Jennen, Donnie Saxton, and Amanda and Shayne Dennis (the "Parent Plaintiffs") may have to uproot their families and leave Arkansas if that is what they need to do to ensure their children can get the medical care they need.  Regular travel to another state for necessary medical care for their children may not be logistically or financially feasible for all families.

ii.   *Dr. Kathryn Stambough and her patients*

Dr. Kathryn Stambough (the "Physician Plaintiff")[6] treats patients at the gender clinic at Arkansas Children's Hospital, which provides care, including

---

[6]     Dr. Michele Hutchinson, formerly a plaintiff in this action, has left her position at Arkansas Children's Hospital.

treatments prohibited by the Health Care Ban, to youth with gender dysphoria.[7]  The clinic currently serves about 300 patients.  The clinic's protocols for treatment include a thorough psychological evaluation prior to the initiation of pubertal suppression or hormone therapy to treat gender dysphoria and all patients who are receiving gender-affirming medical care are required to have a mental health provider.

Dr. Stambough knows from clinical experience that the Ban would significantly and severely compromise her patients' health.  Shortly after the Ban was introduced, the clinic received calls from numerous families, panicking because their children were expressing suicidal thoughts at the prospect of losing the healthcare they rely on for their well-being, and four of the clinic's patients—and three other transgender adolescents—were hospitalized after suicide attempts.

Given the penalties attached to the Ban, if it takes effect, Dr. Stambough would not be able to treat her patients with gender dysphoria in accordance with the accepted medical protocols.  Being forced to deny her patients medically necessary care that can be lifesaving for some patients violates the tenets of her profession by leaving her patients to suffer needless pain.

---

[7]     Because of the current legal uncertainty related to providing gender-affirming medical care to adolescents while this litigation is pending, and the risks of starting and then stopping hormone therapy, Arkansas Children's Hospital's gender clinic made the decision to discontinue initiating hormonal therapies for new patients at this time.  Patients who have already been started on treatment are continuing to receive care at the clinic.

**(8)   All proposed stipulations.**

- Authenticity and Admissibility of Legislative Hearing Videos/Transcripts (BrandtPlaintiffs-00001823–02957), including admissibility of legislative and public commentary.

- Plaintiffs' Proposed Stipulations of Fact. *See Appendix A.* In accordance with the *Amended Scheduling Order*, Plaintiffs provided these proposed stipulations to Defendants to facilitate the meet-and-confer process and submission of joint stipulations to the Court on August 10, 2022.

**(9)   The issues of fact expected to be contested.**

Plaintiffs anticipate the following fact issues to be contested at trial:

- Whether the Health Care Ban is narrowly tailored to further a compelling government interest.

- Whether the Health Care Ban is substantially related to an important government interest.

- Whether the Health Care Ban is rationally related to the furtherance of a legitimate government interest.

**(10)   The issues of law expected to be contested.**

Plaintiffs expect the following issues of law to be contested at trial:

- Whether the Ban violates the Equal Protection Clause of the Fourteenth Amendment.

- Whether the Ban violates parents' fundamental right to seek appropriate medical care for their adolescent children in consultation with and as recommended by medical professionals.

- Whether the Ban violates the First Amendment by prohibiting healthcare providers from referring their adolescent patients for necessary medical treatments related to gender transition.

- Whether Plaintiffs have standing to challenge the constitutionality of the Ban.

- Whether the Physician Plaintiff has third-party standing to assert the rights of her patients.

- Whether Plaintiffs are entitled to a permanent injunction barring enforcement of the Ban.

**(11)   A list and brief description of exhibits, documents, charts, graphs, models, schematic diagrams, summaries, and similar objects which may be used in opening statement, closing argument, or any other part of the trial, other than solely for impeachment purposes, whether or not they will be offered in evidence. Separately designate those documents and exhibits which the party expects to offer and those which the party may offer.**

Plaintiffs will use the following exhibits at trial:

- Photos of each of the Plaintiffs and their families, as found in Plaintiffs' complaint (ECF 1)

- Video Deposition of Rep. Robin Lundstrum, transcript as designated

- Video Deposition of Ms. Amy Embry, transcript as designated

- Printout of the homepage of the Arkansas State Medical Board website (Embry Depo Ex. 3)

- Printout from the Medical Board re:  Regulatory and Discipline (Embry Depo Ex. 4)

- Arkansas State House Bill 1718 (Embry Depo Ex. 5)

- Video Deposition of Dr. Rhys Branman, transcript as designated

- Guidance for the Use of Hydroxychloroquine and Chloroquine For the Treatment of COVID 19 (Branman Depo Ex. 7; Embry Depo Ex. 6)

- Opinion article, Governor Hutchison, Washington Post, April 8, 2021 (Branman Depo Ex. 8; Embry Depo Ex. 10)

- H.B. 1570 (Branman Depo Ex. 9; Embry Depo Ex. 9)

- The Curriculum Vitae of the following individuals:

  - Dr. Deanna Adkins (Adkins Depo Ex. 7)

  - Dr. Armand Antommaria (Antommaria Depo Ex. 3)

  - Dr. Jack Turban (Turban Depo Ex. 2)

  - Dr. Dan Karasic (Karasic Depo Ex. 1)

- Videosz and transcripts of legislative hearings held during the passage of the Health Care Ban (BrandtPlaintiffs-00001823–02957)

- The Arkansas State Medical Practices Act & Regulations, revised as of December 2, 2020 (Embry Depo Ex. 2)

Plaintiffs may use the following exhibits at trial:

- Declaration of Dylan Brandt (ECF 11-1)

- Declaration of Joanna Brandt (ECF 11-2)

- Declaration of Sabrina Jennen (ECF 11-3)

- Declaration of Aaron and Lacey Jennen (ECF 11-4)

- Declaration of Brooke Dennis (ECF 11-5)

- Declaration of Shayne and Amanda Dennis (ECF 11-6)

- Declaration of Parker Saxton (ECF 11-7)

- Declaration of Donnie Saxton (ECF 11-8)

- Declaration of Dr. Kathryn Stambough (ECF 11-10)

- Declaration of Dr. Michele Hutchison (ECF 11-9)

- Medical Records of Dylan Brandt (BrandtPlaintiffs-00000001–00194 and BrandtPlaintiffs-00001356-01532)

- Medical Records of Sabrina Jennen (BrandtPlaintiffs-00000448–00748 and BrandtPlaintiffs-00001543–01545)

- Medical Records of Brooke Dennis (BrandtPlaintiffs-00000195–00447)

- Medical Records of Parker Saxton (BrandtPlaintiffs-00000479–01355 and BrandtPlaintiffs-00001549–01563)

- Defendants' Responses to Requests for Admissions

- Defendants' Responses to Interrogatories

- Gender Spectrum Clinic Informed Consent Form (Hutchison Depo Ex. C8)

- Expert Report of Dan H. Karasic, MD (Karasic Depo Ex. 1)

- Expert Rebuttal Report of Dan H. Karasic, MD (Karasic Depo Ex. 2)

- Expert Report of Jack Turban (Turban Depo Ex. 2)

- Expert Rebuttal Report of Jack Turban (Turban Depo Ex. 3)

- American Academy of Pediatrics Policy Statement: Off-Label Use of Drugs in Children (Turban Depo Ex. 14)

- Expert Report of Armand H. Antommaria (Antommaria Depo Ex. 3)

- Rebuttal Report of Armand H. Antommaria (Antommaria Depo Ex. 4)

- Expert Report of Deanna Adkins (Adkins Depo Ex. 9)

- Rebuttal Report of Deanna Adkins (Adkins Depo Ex. 11)

- Little Rock Cosmetic Surgery Center web page (Branman Depo Ex. 3)

- American Society of Plastic Surgeons – Gender Affirmation Surgeries (Branman Depo Ex. 4)

- 30(b)(6) Notice for Defendant Arkansas State Medical Board (Embry Depo Ex. 1)

- June 21, 2021 Email from Robin Lundstrum to Tom Lundstrum, re: Draft, Please Help (Lundstrum Depo Ex. 1)

- April 1, 2021 Email from Charisse Dean to Robin Lundstrum, re: Updated final SAFE Act Talking Points for Media and Interviews (Lundstrum Depo Ex. 2)

- April 5, 2021 Email from Jerry Cox to Robin Lundstrum, re: Representative Lundstrum's Comments (Lundstrum Depo Ex. 6)

- April 9, 2021 Email from Jerry Cox to Robin Lundstrum, re: Answers to Two main questions on HB 1570 Gender Transition (Lundstrum Depo Ex. 9)

- Text messages with Quena Gonzales (Lundstrum Depo Ex. 11)

- April 13, 2021 Email from Quena Gonzales to Robin Lundstrum, re: Save Adolescents from Experimentation for North Dakota (Lundstrum Depo Ex. 12)

- Family Research Council, The President's Cabinet, Tom and Robin Lundstrum Itinerary (Lundstrum Depo Ex. 14)

- July 29, 2021 Email from Nicolas Reynolds to Robin Lundstrum, re: Dinner Tonight: Gender Clinics Don't Help Kids (Lundstrum Depo Ex. 17)

- July 27, 2021 Email from Nicolas Reynolds to Robin Lundstrum, re: Dinner with a Dad Fighting to Protect His Son from the Transgender Movement (Lundstrum Depo Ex. 18)

- May 28, 2021 Email from Amanda Banks, Subject: Statesman Academy Alumni Newsletter, April-May 2021 (Lundstrum Depo Ex. 24)

- August 27, 2021 Email from Amanda Banks, Subject: Statements Academy Alumni Newsletter: August 2021 (Lundstrum Depo Ex. 28)

- Family Policy Alliance – More detailed version of the Gender Issues Policy Panel Outline (Lundstrum Depo Ex. 30)

- July 30, 2021 Email from Amanda Banks, Subject: Follow-up Infor and Resources: Called Together (Lundstrum Depo Ex. 31)

- Social Media Engagement Packet – Help Not Harm, Family Policy Alliance (Lundstrum Depo Ex. 33)

- Screen Shot: The Born Identity (Lundstrum Depo Ex. 42)

- Text Messages with Leslie Rutledge (Lundstrum Depo Ex. 45)

- Any documents produced pursuant to the Court's Order dated August 4, 2022 (ECF 178)[8]

- Other bills introduced during the 2021 Arkansas legislative session, including SB 347, SB 354, SB 450, HB 1749, SB 389, HB 1882, HB 1905, HB 1951, HR 1018, SR 7, and SR 16

- Public statements made by members of the Arkansas General Assembly regarding the Health Care Ban

- Any stipulations of fact entered into by the parties

Plaintiffs reserve the right to use any exhibit identified by Defendants; any document, information, materials, or other tangible matter produced or used by any party or a third-party during discovery, including deposition exhibits not listed above; and any materials necessary for impeachment or rebuttal purposes.

With respect to demonstrative aides, Plaintiffs may use a PowerPoint presentation during opening statement and/or closing argument; legislative hearing video clips and/or transcripts; deposition video clips and/or transcripts; enlarged versions of exhibits; and charts comparing diagnoses and treatments for gender dysphoria for children, adolescents, and adults.

---

[8]    Plaintiffs reserve the right to offer and/or use any documents that the Court orders to be produced following the *in camera* review referred to in the Court's August 4, 2022 Order.

**(12)** **The names, addresses, and telephone numbers of witnesses for the party. Separately identify witnesses whom the party expects to present and those whom the party may call. Designate witnesses whose testimony is expected to be presented via deposition and, if not taken stenographically, a transcript of the pertinent portion of the deposition testimony.**

Plaintiffs will call the following witnesses:

| Witness | Contact Information | Live/Deposition |
|---|---|---|
| Representative Robin Lundstrum | 500 Woodlane St. Little Rock, Arkansas 72201 [hereinafter "Capitol Building"] 479-957-1959 | Via video deposition. *See Appendix B* (Plaintiffs' Deposition Designations) |
| Amy Embry, Corporate Representative of Defendant Arkansas State Medical Board and Executive Director of the Arkansas State Medical Board | C/O Dylan L. Jacobs ARKANSAS ATTORNEY GENERAL'S OFFICE 323 Center Street, Suite 200 Little Rock, AR 72201 Phone: (501) 682-2700 [hereinafter, "C/O Defendants' Counsel"] | Via video deposition. *See Appendix C* (Plaintiffs' Deposition Designations) |
| Dr. Rhys Branman | C/O Defendants' Counsel | Via video deposition. *See Appendix D* (Plaintiffs' Deposition Designations) |
| Armand H. Matheny Antommaria, MD, PhD, FAAP, HEC-C | C/O Laura Kabler Oswell Sullivan & Cromwell LLP 1870 Embarcadero Road Palo Alto, California 94303 (650) 461-5600 [hereinafter, "Plaintiffs' Counsel"] | Live |

| Witness | Contact Information | Live/Deposition |
|---------|--------------------|-----------------|
| Dan H. Karasic, M.D. | C/O Plaintiffs' Counsel | Live |
| Deanna Adkins, M.D. | C/O Plaintiffs' Counsel | Live |
| Jack Turban, M.D., MHS | C/O Plaintiffs' Counsel | Live |
| Dr. Katherine Stambough | C/O Plaintiffs' Counsel | Live |
| Dr. Michele Hutchison | C/O Plaintiffs' Counsel | Live |

Plaintiffs may call the following witnesses:

| Witness | Contact Information | Live/Deposition |
|---------|--------------------|-----------------|
| Attorney General Leslie Rutledge | C/O Defendants' Counsel | Live |
| Senator Alan Clark | Capitol Building (501) 844-6800 | Live |
| Representative Mary Bentley | Capitol Building (501) 889-3556 | Live |
| Representative Marcus Richmond | Capitol Building (479) 299-4416 | Live |
| Representative Jim Wooten | Capitol Building (501) 858-7403 | Live |
| Dylan Brandt | C/O Plaintiffs' Counsel | Live |
| Joanna Brandt | C/O Plaintiffs' Counsel | Live |
| Sabrina Jennen | C/O Plaintiffs' Counsel | Live |
| Lacey Jennen | C/O Plaintiffs' Counsel | Live |
| Aaron Jennen | C/O Plaintiffs' Counsel | Live |
| Brooke Dennis | C/O Plaintiffs' Counsel | Live |
| Amanda Dennis | C/O Plaintiffs' Counsel | Live |
| Shayne Dennis | C/O Plaintiffs' Counsel | Live |
| Parker Saxton | C/O Plaintiffs' Counsel | Live |
| Donnie Saxton | C/O Plaintiffs' Counsel | Live |

Plaintiffs reserve the right to call any witness identified by Defendants and any witness necessary for rebuttal or impeachment purposes.

**(13)   The current status of discovery, a precise statement of the remaining discovery and an estimate of the time required to complete discovery.**

With the exception of documents subject to *Plaintiffs' Motion to Compel* (ECF 122), which either have not yet been produced to Plaintiffs, or which have not yet been produced to the Court for *in camera* review, (*see Order Granting in Part and Denying in Part Plaintiffs' Motion to Compel,* ECF 178), discovery is complete.

**(14)   An estimate of the length of trial and suggestions for expediting disposition of the action.**

It is estimated that trial will take ten (10) days.  To streamline the trial, Plaintiffs propose that the parties:  (1) stipulate to any undisputed facts; (2) stipulate to the authenticity and admissibility of certain testimony and debate from legislative proceedings; and (3) identify for the Court any public statements that are properly the subject of judicial notice.

Dated:  August 8, 2022

*Leslie Cooper*

Leslie Cooper
Chase Strangio*
James Esseks
American Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
Telephone:  (917) 345-1742
lcooper@aclu.org
cstrangio@aclu.org
jesseks@aclu.org
*Attorneys for the Plaintiffs*

Beth Echols, Ark. Bar No. 2002203
Christopher Travis, Ark. Bar No. 97093
Drake Mann, Ark. Bar No. 87108
Gill Ragon Owen, P.A.
425 W. Capitol Avenue, Suite 3800
Little Rock, AR 72201
Telephone:  (501) 376-3800
echols@gill-law.com
travis@gill-law.com
mann@gill-law.com
*On behalf of the Arkansas Civil Liberties Union Foundation, Inc.*
*Attorneys for the Plaintiffs*

Breean Walas, Ark. Bar No. 2006077
Walas Law Firm, PLLC
P.O. Box 4591
Bozeman, MT 59772
Telephone:  (501) 246-1067
breean@walaslawfirm.com
*On behalf of the Arkansas Civil
Liberties Union Foundation, Inc.*
*Attorneys for the Plaintiffs*

Garrard R. Beeney*
Lauren M. Goldsmith*
Arun Bodapati**
Alexander Peacocke**
Rebecca Kadosh*
Brandyn J. Rodgerson*
Emily T.L. Armbruster*
Alexander S. Holland*
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Telephone:  (212) 558-4000
beeneyg@sullcrom.com
rodgersonb@sullcrom.com
armbrustere@sullcrom.com
hollanda@sullcrom.com
*Attorneys for the Plaintiffs*

Daniel J. Richardson*
1700 New York Avenue NW
Suite 700
Washington, DC 20006
Telephone: 202-956-7500
richardsond@sullcrom.com

*Attorney for Plaintiffs*

Sarah Everett, Ark. Bar No. 2017249
Gary Sullivan, Ark. Bar No. 92051
Arkansas Civil Liberties Union
Foundation, Inc.
904 W. 2nd Street
Little Rock, AR 72201
Telephone:  (501) 374-2842
sarah@aclurarkansas.org
gary@aclurarkansas.org
*Attorneys for the Plaintiffs*

Laura Kabler Oswell*
Aviv S. Halpern*
Sullivan & Cromwell LLP
1870 Embarcadero Road
Palo Alto, CA 94303
Telephone:  (650) 461-5600
oswell@sullcrom.com
*Attorneys for the Plaintiffs*

*Admitted pro hac vice
**Pro hac vice motions pending*

## <u>CERTIFICATE OF SERVICE</u>

I, Breean Walas, hereby certify that the foregoing was electronically filed with the Clerk on August 8, 2022, and by nature of that filing all parties were served via their counsel of record.

*Breean Walas*