IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

------------------------------- x
DYLAN BRANDT, et al., :
:
        Plaintiff, :
:
v. : Case No. 4:21-CV-00450-JM
:
LESLIE RUTLEDGE, et al., :
:
        Defendant. :
:
------------------------------- x

## RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' EVIDENTIARY DEPOSITION DESIGNATIONS

Defendants seek to exclude the deposition designations of Rep. Robin Lundstrum, architect and lead sponsor of HB 1570 (the "Health Care Ban" or "Ban"), a law that prohibits gender-affirming medical care for adolescents with gender dysphoria.[1] Defendants principally argue that *all* of her testimony is shielded by "legislative privilege," an argument Defendants should have included in their *Motion in Limine*[2] and that this Court rejected in ruling on Rep. Lundstrum's *Motion*

---

[1] *Defendants' Motion to Exclude Plaintiffs' Evidentiary Deposition Designations of Representative Robin Lundstrum and Incorporated Brief in Support*, ECF 184 ("Motion to Exclude" or "Mot."), ¶¶ 7-13; *Exhibit 1*, Deposition Transcript of Rep. Robin Lundstrum ("Lundstrum Dep. Tr.") at 253:25-254:1 ("[Q.] You were the architect of the SAFE Act, correct?/ A. Yes.").

[2] ECF 164, 165.

*to Quash*.³ Defendants also object to all but one of Plaintiffs' deposition designations based on six objections; none has merit.

*First*, Defendants claim that all of Rep. Lundstrum's testimony is irrelevant. As addressed below and in the accompanying *Appendix A: Responses to Objections*, each of the designated portions of Rep. Lundstrum's deposition is relevant because it relates to the actual purpose of the General Assembly in enacting the Health Care Ban and tends to show that the Ban was enacted with an improper purpose. *Second*, Defendants assert without any explanation that certain portions of Rep. Lundstrum's deposition are speculative. This position is meritless because her testimony relates solely to matters within her personal knowledge, including Rep. Lundstrum's personal beliefs as to LGBT people and the legislative context of the Health Care Ban. *Third*, Defendants claim that one of Plaintiffs' designations is inadmissible hearsay. But the testimony is not being offered for the truth of the matter asserted and plainly is not hearsay.⁴ *Finally*, Defendants raise a litany of

---

³ *See Brief in Support of Motion to Quash and for Protective Order*, ECF 120, at 6-12 (asserting legislative privilege arguments); Order, ECF 147 (rejecting absolute privilege argument and permitting deposition of Rep. Lundstrum). Further, it is noteworthy that although being served with Plaintiffs' deposition designations, Rep. Lundstrum has not filed her own motion objecting to the admissibility of the designated portions or renewing any assertion of legislative privilege.

⁴ Defendants' *Motion to Exclude* identifies a number of objections based on Plaintiffs supposedly "designating incomplete testimony under Rule 106." (Mot. ¶ 10.) "To sustain a Rule 106 objection, the party urging admission of an excluded conversation must specify the portion of the testimony that is relevant to the issue at trial and that qualifies or explains portions already admitted." *McCoy* v. *Augusta Fiberglass Coatings, Inc.*, 593 F.3d 737, 747 (8th Cir. 2010) (citation omitted). Plaintiffs did not object to any of Defendants' counter-designations and

other objections—asserting legislative privilege, claiming embarrassment and harassment, and asserting that testimony about religious beliefs is improper—relying on arguments that have either already been rejected by this Court or briefed extensively by the parties.  Those, too, are baseless.

## I.     PLAINTIFFS' DEPOSITION DESIGNATIONS ARE ADMISSIBLE.

### A.     Plaintiffs' Deposition Designations Are Relevant.

Defendants broadly assert that none of Rep. Lundstrum's testimony is relevant but fail to present any argument or authority in support of their position. The reason why is plain:  the testimony of the architect and lead sponsor of the Health Care Ban bears directly on the actual purpose of this legislation and any improper motive for passing the Health Care Ban.

Under Federal Rule of Evidence ("FRE") 401, "evidence is relevant if it has a tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action."  Relevant evidence is admissible. FRE 402. Plaintiffs allege violations of the Equal Protection Clause, the Due Process Clause, and the First Amendment of the United States Constitution.  For each of these claims, one element is whether the legislation sufficiently furthers a government interest.  At a minimum, the State has the burden

---

Defendants' *Motion to Exclude* does not offer additional designations they believe are necessary to "qualif[y] or explain[]" a portion of the testimony designated by Plaintiffs.  *Id.*

of satisfying heightened scrutiny, which requires it to show that the law is substantially related to an important government interest.[5] And under heightened scrutiny, "[t]he justification must be genuine, not hypothesized or invented post-hoc in response to litigation." *United States* v. *Virginia*, 518 U.S. 515, 533 (1996). Thus, the actual purpose of the legislation is relevant to assessing its constitutionality.

Whether the Health Care Ban was passed for an improper purpose also is at issue. Although such a finding is not necessary to strike down the Health Care Ban, it is an additional basis for doing so, because, under any level of equal protection scrutiny, a law enacted for the impermissible purpose of disapproval of the class of people affected by the law is unconstitutional. *See Romer* v. *Evans*, 517 U.S. 620, 632 (1996) (invalidating state constitutional amendment barring non-discrimination protections for gay people under rational basis review after concluding it was motivated by "animus toward the class it affects"); *City of Cleburne* v. *Cleburne Living Ctr.*, 473 U.S. 432, 448 (1985) (finding that "negative attitudes" toward the developmentally disabled was not a legitimate basis for zoning ordinance singling out group homes for such individuals); *U.S. Dep't of Agric.* v.

---

[5] Heightened scrutiny under the Equal Protection claim requires that the statute be substantially related to an important government interest. *Sessions* v. *Morales-Santana*, 137 S. Ct. 1678, 1690 (2017). Infringements on the Due Process Clause and First Amendment require the State to show that the statute is narrowly tailored to further a compelling government interest. *Washington* v. *Glucksberg*, 521 U.S. 702, 721 (1997); *Reed* v. *Town of Gilbert*, 576 U.S. 155, 163 (2015).

*Moreno*, 413 U.S. 528, 534 (1973) ("[I]f the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot constitute a legitimate governmental interest.").

To discover the reasons behind legislation, "[c]ourts look to direct and indirect evidence to determine whether a state adopted a statute with a discriminatory purpose. This evidence includes [] statements by lawmakers." *Smithfield Foods, Inc.* v. *Miller*, 367 F.3d 1061, 1065 (8th Cir. 2004); *see also Cano* v. *Davis*, 193 F. Supp. 2d 1177, 1181-82 (C.D. Cal. 2002) ("the statements of legislators involved in the process, especially leaders and committee chairmen, as well as the authors of the legislation involved, may in some instances be the best available evidence as to legislative motive" and "[m]otive is often most easily discovered by examining the unguarded acts and statements of those who would otherwise attempt to conceal evidence of discriminatory intent"). Indirect evidence of discriminatory intent can also include "[t]he historical background of the decision" and "[t]he specific sequence of events leading up to the challenged decision. *Vill. of Arlington Heights* v. *Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977).

As principal sponsor of the Health Care Ban and the member of the General Assembly responsible for introducing and guiding this legislation to passage, Rep. Lundstrum's testimony regarding her own and other legislators' views

and statements about transgender people,[6] and the fact that the bill was part of a coordinated effort to enact a package of anti-transgender legislation,[7] are relevant to the actual purpose of the legislation and whether disapproval of transgender people was at play.

All of this testimony is relevant to the actual purpose of the Health Care Ban and whether the purpose was impermissible, and the testimony bolsters additional evidence from the legislative record supporting this conclusion. (*See Plaintiffs' Pretrial Disclosures*, ECF No. 183, at 14-15, discussing the fact that the Ban was one of at least twelve bills and resolutions that targeted transgender people during the 2021 Arkansas legislative session; that both chambers passed resolutions expressing their view that "gender reassignment medical treatments" are not "natural"; and that some members of the General Assembly further expressed during

---

[6] For example, Rep. Lundstrum testified that a purpose of the Act is to protect children from "the transgender movement," which she believes is "proselytiz[ing]" them. *Exhibit 1* at 98:10-99:9; *see also id.* at 158:5-9 (testifying that she believes "gender transition [is] always wrong"); *id.* at 154:11-22, 246:8-13 (testifying that she believes being transgender, lesbian, or gay is a choice and individuals can leave the "transgender lifestyle"). She also testified that another member of the General Assembly, Rep. Della Rosa, wrote her a text that "LGBTQABCXYZ people are always the worst[,]" to which Rep. Lundstrum responded "yep." *Id.* at 205:12-206:7.

[7] *See id.* at 22:19-23:20, 119:5-13, 136:23-137:16, 141:12-13, and 141:21-142:2, 142:19-143:5; *Exhibit 2*, Lundstrum Dep. Ex 29; *Exhibit 3*, Lundstrum Dep. Ex 30 (testimony and exhibits referenced efforts to enact the SAFE Act and the GIRLS Act (which prohibits transgender girls from playing on girls' athletic teams), as well as potential measures "restricting or prohibiting LGBT activities in schools"). Exhibits have been included for the Court's reference because the exhibits were not read into the record in their entirety.

the legislative debates their personal and religious opposition to people being transgender).

### B. Plaintiffs' Deposition Designations Did Not Call for Speculation.

Defendants assert, without any explanation, that large swaths of Plaintiffs' deposition designations sought speculation from Rep. Lundstrum and were therefore inadmissible under FRE 602.[8] Defendants waived any speculation objection.[9] But even if preserved, the Court should reject this argument. Rule 602 requires that witnesses testify only to those matters within their personal knowledge. Each of Plaintiffs' designations relates to Rep. Lundstrum's own efforts to enact the Health Care Ban and related legislation, organizations she worked closely with, the context in which the General Assembly enacted the Health Care Ban, and her own personal beliefs. Rep. Lundstrum has personal knowledge of—and does not have to

---

[8] *See e.g.*, Mot. ¶ 14, lines 33:20-33:22; 33:24-34:4; 46:7-47:4; 49:5-49:15; 49:20-49:22; 50:9-50:10; 50:16-50:20; 62:13-63:10; 70:8-70:14; 74:16-74:25; 107:11-107:18; 119:10-119:23; 122:25-123:3; 133:11-134:1; 135:24-137:16; 138:7-138:16; 142:14-142:18; 143:20-143:23; 143:23-144:2; 144:7-144:25; 146:4-148:8; 154:11-154:25; 156:4-158:9; 176:12-176:23; 177:18-177:24; 178:2-178:13; 203:11-208:6; 212:7-212:14; 214:13-216:10.

[9] Under FRCP 32(d)(3)(B), "[a]n objection to an error or irregularity at an oral examination is waived if: (i) it relates to . . . the form of a question or answer . . . or other matters that might have been corrected at that time; and (ii) it is not timely made during the deposition." Objections on the basis of speculation are form objections, which must be raised during the deposition so that the noticing attorney has the opportunity to cure the question, or else the objection is waived. *See Otis* v. *Demarasse*, 399 F. Supp. 3d 759, 765-66 (E.D. Wis. 2019). As such, Defendants have waived their speculation objections in every instance where they failed to make a form objection during Rep. Lundstrum's deposition. (*See Appendix A.*)

speculate on—her own actions, who she worked with, [10] what she sought to accomplish, and her own beliefs.[11]

### C. Plaintiffs' Deposition Designation Is Not Inadmissible Hearsay.

Defendants claim that Plaintiffs' deposition designation regarding Rep. Lundstrum's text messages with Arkansas legislators about LGBT people is inadmissible hearsay under FRE 801 and FRE 802.[12] Not so. Plaintiffs do not offer the testimony "to prove the truth of the matter asserted" in the text messages but to show the legislators' impermissible purpose in enacting the Health Care Ban. This is plainly permissible.

## II. DEFENDANTS' GENERAL OBJECTIONS ARE BASELESS.

### A. Defendants' Objections Based on Rep. Lundstrum's Personal Beliefs about LGBT People and Religion Lack Merit.

Defendants rehash many of the same arguments they raised in their *Motion in Limine*,[13] simply asserting that numerous "designated questions and answers . . . were intended to harass and unduly embarrass Rep. Lundstrum, in

---

[10] For example, when asked whether Family Council was involved with the Medical Conscience Act, Rep. Lundstrum responded, "I am sure they were involved in that." (*Exhibit 1* at 33:24-25.) And when asked about whether she "rel[ied] heavily on Jerry Cox and Family Council in relation to the SAFE Act," she replied, "I relied heavily on Family Council, and I relied heavily on Family Research Council, and I'm very thankful for their help." (*Exhibit 1* at 46:23-47:4.)

[11] *See* Section I.A, *supra*.

[12] Mot. ¶ 14, lines 203:11-208:6.

[13] ECF 164.

violation of Rule 610 and 611" and "therefore, do not comply with Rules 401, 402, 610, and 611."[14] None of these arguments has merit.[15]

*First*, there simply is no basis for Defendants' claim that Plaintiffs' designations are "intended to harass and unduly embarrass Rep. Lundstrum" and "are ultimately an attempt to illicit irrelevant testimony."[16] Given the clear relevance of each of Plaintiffs' deposition designations, as described in Section I.A, *supra*. and in *Appendix A*, the Court should reject Defendants' claim based on FRE 611 that any reference to Rep. Lundstrum's personal beliefs about LGBT people or religion is an improper attempt to "harass" and "embarrass" her.

*Second*, Defendants assert that unspecified portions of Rep. Lundstrum's testimony should be excluded under FRE 610, which says that "[e]vidence of a witness's religious beliefs or opinions is not admissible to attack or support the witness's credibility."[17] But as Defendants acknowledge, FRE 610 does not prohibit using evidence of a witness's religious beliefs for *all* purposes.[18] To the

---

[14] Mot. ¶ 11.

[15] Plaintiffs respectfully direct the Court to their *Opposition to Defendants' Motion in Limine* (ECF 171).

[16] Mot. ¶ 11.

[17] Mot. ¶ 12. The term "credibility" refers to a witness's character for truthfulness or untruthfulness. FED. R. EVID. 608 Advisory Committee's notes to 2003 amendments.

[18] *See* Mot. ¶ 12 (acknowledging "exception" to FRE 610).

contrary, "an inquiry for the purpose of showing interest or bias because of [religious beliefs] is not within the prohibition."  FED. R. EVID. 610 Advisory Committee's notes to 1972 proposed rules.  Nor is an inquiry for the purpose of assessing whether the General Assembly's stated purpose for enacting a law is pretextual.  Here, Plaintiffs are entitled to explore fully whether the General Assembly's stated purpose in enacting the Health Care Ban was pretextual and whether its actual purpose was improper.  As discussed above, Section I.A., *supra*, as architect and lead sponsor of the Health Care Ban, Rep. Lundstrum's personal beliefs about LGBT people, including those based on her religious beliefs, are directly relevant and admissible.  *See, e.g.*, Wright & Miller, *Rule 610, Religious Beliefs or Opinions: Scope*, 28 Fed. Prac. & Proc. Evid. § 6153 (collecting cases; noting that "[FRE] 610 is inapplicable when such evidence is offered for any other purpose [than attacking a witness's credibility], even if it impacts credibility in some other way"); *see also Firemen's Fund Ins. Co.* v. *Thien*, 63 F.3d 754, 760-61 (8th Cir. 1995) (holding that evidence of church membership and close relationships with religious leaders was "properly admitted for the purpose of showing that [witnesses] may have been biased in favor of [the defendant] through their religious affiliation with him").

### B. "Legislative Privilege" Is Not a Basis for Exclusion of *All* of Rep. Lundstrum's Testimony.

Defendants' claim—without citation to a single authority[19]—that *all* of Rep. Lundstrum's testimony, "whether in a deposition or at trial," should be excluded based on her purported "legislative privilege."[20] The Court rejected this argument when it denied Rep. Lundstrum's *Motion to Quash*, directing her "to sit for a deposition regarding her non-legislative activity."[21] The Court should adhere to its original reasoning and reject the argument here too.

Should the Court wish to consider these arguments *de novo*, they are baseless. Legislative privilege is qualified, not absolute, and its applicability is governed by a five-factor balancing test. *See, e.g.*, *Nashville Student Org. Comm.* v.

---

[19] Defendants purport to "incorporate the arguments made by Rep. Lundstrum in her Motion to Quash and for Protective Order" pursuant to Federal Rule of Civil Procedure ("FRCP") 10(c) (Mot. ¶ 9 n.1), which says that "[a] statement in a *pleading* may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." (emphasis added.) FRCP 10(c) does not absolve Defendants of having to make arguments and provide authority in support of their *Motion to Exclude*. *See Express Scripts, Inc.* v. *Kincaid*, 2020 WL 3027200, at *2 n.3 (E.D. Tenn. June 5, 2020) ("[T]he Court notes Rule 10(c) only permits parties to adopt, by reference, statements made in *pleadings*, not other motions" (emphasis in original) (citations omitted).). If the Court is inclined to consider arguments and authority cited in other motions filed in this action, Plaintiffs respectfully direct the Court to their *Response in Opposition to Motion to Quash and for Protective Order*, ECF 134.

Further, Plaintiffs note that the proper party to raise the issue of legislative privilege is Rep. Lundstrum herself—not Defendants—and Rep. Lundstrum has not done so. Rep. Lundstrum, through her counsel, was served with Plaintiffs' deposition designations and has not sought to prevent the introduction of any of that testimony.

[20] Mot. ¶ 9.

[21] ECF 147.

*Hargett*, 123 F. Supp. 3d 967, 970 (M.D. Tenn. 2015) (the balancing test considers "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable").

Each of these factors weighs in favor of admitting Rep. Lundstrum's testimony by designation: (i) her statements about her sponsorship of and advocacy around the Health Care Ban are highly relevant to assessing whether the State's asserted interests in enacting the law are pretextual; (ii) Plaintiffs have no other avenue to obtain the information sought; (iii) the constitutional rights at issue, including whether transgender minors with gender dysphoria in Arkansas are able to obtain medically necessary gender-affirming medical care, are of great importance; (iv) the Health Care Ban was sponsored and shepherded through the Arkansas House of Representatives by Rep. Lundstrum, and it was enacted by the Arkansas General Assembly, which thus plays an important role in this litigation; and (v) Defendants have not provided any basis for some theoretical fear of "future timidity" by Rep. Lundstrum as a result of disclosure, and, in any event, such fear comes nowhere close to outweighing the other four factors. *See Newport Pac. Inc.* v. *Cty. of San Diego*, 200 F.R.D. 628, 640 (S.D. Cal. 2001) ("[I]f because of this case,

members of government agencies acting on behalf of the public at large are reminded that they are subject to scrutiny, a useful purpose will have been served.").[22]

Lastly, as the Court recognized in granting in part Plaintiffs' *Motion to Compel* the production of documents from Arkansas legislators, legislative privilege does not protect information that is "purely factual and/or dated after the passage of the [Health Care Ban]" or "communications between legislators and third parties."[23] *See Rodriguez* v. *Pataki*, 280 F. Supp. 2d 89, 101 (S.D.N.Y. 2003) ("[A] conversation between legislators and knowledgeable outsiders, such as lobbyists, to mark up legislation [is] a session for which no one could seriously claim privilege."); *Bethune-Hill* v. *Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 324 (E.D. Va. 2015) ("The privilege only protects 'integral steps' in the legislative process and does not extend to commentary or analysis following the legislation's enactment."). Thus, to the extent Defendants object to Rep. Lundstrum's testimony about such information or communications, those objections are meritless and should be rejected.

---

[22] Plaintiffs note that because they have not yet received the Legislators' documents the Court ordered to be produced on August 4, 2022, it may become necessary to call Rep. Lundstrum (or other Legislators) to testify live at trial and reserve their right to do so. The factors on legislative privilege weigh in favor of admitting Rep. Lundstrum's testimony regardless of whether she is called to testify in person or by video deposition. Any additional burden on Rep. Lundstrum from having to appear for testimony is heavily outweighed by her central role in passing the Health Care Ban, the lack of other sources for the evidence she can provide, and the gravity of the issues presented in this case.

[23] ECF 178, at 3.

## III. **CONCLUSION**.

Rep. Lundstrum's designated deposition testimony is relevant. It is not speculative. It is not hearsay. Simply put, Defendants' objections based on Rep. Lundstrum's personal beliefs and legislative privilege lack merit. For the foregoing reasons, the Court should overrule Defendants' objections and allow Plaintiffs' designations of Rep. Lundstrum's video deposition to be used at trial.

Dated: August 16, 2022

*Leslie Cooper*
Leslie Cooper
Chase Strangio*
American Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
Telephone: (917) 345-1742
lcooper@aclu.org
cstrangio@aclu.org
*Attorneys for the Plaintiffs*

Beth Echols, Ark. Bar No. 2002203
Christopher Travis, Ark. Bar No. 97093
Drake Mann, Ark. Bar No. 87108
Gill Ragon Owen, P.A.
425 W. Capitol Avenue, Suite 3800
Little Rock, AR 72201
Telephone: (501) 376-3800
echols@gill-law.com
travis@gill-law.com
mann@gill-law.com
*On behalf of the Arkansas Civil Liberties Union Foundation, Inc.*
*Attorneys for the Plaintiffs*

Breean Walas, Ark. Bar No. 2006077
Walas Law Firm, PLLC
P.O. Box 4591
Bozeman, MT 59772
Telephone: (501) 246-1067
breean@walaslawfirm.com
*On behalf of the Arkansas Civil Liberties Union Foundation, Inc.*
*Attorneys for the Plaintiffs*

Sarah Everett, Ark. Bar No. 2017249
Gary Sullivan, Ark. Bar No. 92051
Arkansas Civil Liberties Union Foundation, Inc.
904 W. 2nd Street
Little Rock, AR 72201
Telephone: (501) 374-2842
sarah@acluarkansas.org
gary@acluarkansas.org
*Attorneys for the Plaintiffs*

Garrard R. Beeney*
Lauren M. Goldsmith*
Arun Bodapati*
Rebecca S. Kadosh*
Alexander Peacocke*
Emily T.L. Armbruster*
Alexander S. Holland*
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Telephone:  (212) 558-4000
beeneyg@sullcrom.com
goldsmithl@sullcrom.com
bodapatia@sullcrom.com
kadoshr@sullcrom.com
peacockea@sullcrom.com
armbrustere@sullcrom.com
hollanda@sullcrom.com
*Attorneys for the Plaintiffs*

Daniel J. Richardson*
1700 New York Avenue NW
Suite 700
Washington, DC 20006
Telephone: (202) 956-7500
richardsond@sullcrom.com
*Attorney for the Plaintiffs*

Laura Kabler Oswell*
Aviv S. Halpern*
Sullivan & Cromwell LLP
1870 Embarcadero Road
Palo Alto, CA 94303
Telephone:  (650) 461-5600
oswell@sullcrom.com
halperna@sullcrom.com
*Attorneys for the Plaintiffs*

\**Admitted pro hac vice*