THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
DYLAN BRANDT, et al., :
                   Plaintiffs, :
            v. :  Case No. 4:21-CV-00450-JM
TIM GRIFFIN, et al., :
                   Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION
FOR ATTORNEYS' FEES AND COSTS**

Pursuant to Fed. R. Civ. P. 54(d) and Local Rule 54.1, Plaintiffs request an award of attorneys' fees and costs as authorized by 42 U.S.C. § 1988. The amounts requested are as follows:

For the ACLU of Arkansas, attorneys' fees in the amount of $10,123.75 and costs in the amount of $402, as supported by the Declaration of Sarah Everett ("Everett Decl.") attached as Exhibit 3;

For the law firm of Gill Ragon Owen, P.A., attorneys' fees in the amount of $158,620.00, as supported by the Declarations of Beth Echols ("Echols Decl."), Drake Mann ("Mann Decl."), and Christopher Travis ("Travis Decl.") attached as Exhibits 4-6;

For the Walas Law Firm, attorneys' fees in the amount of $78,711.00, as supported by the Declaration of Breean Walas ("Walas Decl.") attached as Exhibit 7;

For the ACLU Foundation Inc. ("ACLU National"), attorneys' fees in the amount of $1,133,987.50 and costs totaling $114,235.45, as supported by the Declaration of Leslie Cooper ("Cooper Decl.") attached as Exhibit 8;

For Sullivan & Cromwell LLP ("Sullivan & Cromwell" or "S&C"), attorneys' fees in the amount of $1,873,337.50 (and payable to the ACLU Foundation Inc. and the ACLU of Arkansas) and costs totaling $192,585.64, as supported by the Declaration of Laura Kabler Oswell ("Oswell Decl.") attached as Exhibit 9.[1]

## BACKGROUND AND PROCEDURAL HISTORY

On April 6, 2021, the Arkansas General Assembly passed, over the veto of Governor Asa Hutchinson, a law prohibiting doctors from providing "gender transition procedures" to minors. The law, which was codified at Ark. Code Ann. §§ 20-9-1501 to 20-9-1504 and 23-79-164 (the "Healthcare Ban"), was set to take effect on July 28, 2021.

Because of the imminent effective date of the law, Plaintiffs quickly mounted a lawsuit to challenge it and filed a complaint on May 25, 2021. Plaintiffs included three adolescents who were already receiving medical care prohibited by the law, a minor who anticipated needing care prohibited by the law, parents of all four Minor Plaintiffs, and a doctor who was providing care prohibited by the law. Plaintiffs brought federal constitutional claims under the Equal Protection Clause, the Due Process Clause, and the right to free speech protected by the First Amendment.

Plaintiffs moved for a preliminary injunction on June 15, 2021, asking the Court to enjoin the law before it was set to take effect. Plaintiffs' motion included declarations of two expert witnesses—a pediatric endocrinologist and a medical ethicist—in addition to Plaintiffs' declarations. Defendants responded to the motion with declarations from four expert witnesses that totaled nearly 300 pages, five fact declarations, and over 600 additional pages of exhibits. Plaintiffs filed a reply including rebuttal declarations from their original two experts and from an

---

[1] From the inception of this case, S&C agreed to donate all of its fees recovered to ACLU Foundation Inc. and the ACLU of Arkansas after it recovers its costs. Ex. 9 (Oswell Decl.) ¶ 5.

additional expert, a psychiatrist. Defendants then filed supplemental declarations from three of their expert witnesses.

On June 16, 2021, Defendants filed a motion to dismiss for lack of jurisdiction and failure to state a claim. Plaintiffs submitted a brief in response.

On June 21, 2021, after hearing oral argument on Plaintiffs' motion for a preliminary injunction and Defendants' motion to dismiss, the Court issued an order denying the motion to dismiss and granting the preliminary injunction, enjoining the enforcement of the Healthcare Ban.

Defendants appealed the order granting the preliminary injunction. The parties briefed the appeal and presented arguments to the Court of Appeals for the Eighth Circuit. The court affirmed the preliminary injunction on August 25, 2022.

On October 6, 2022, less than two weeks before trial on the merits was scheduled to begin, Defendants filed a petition for rehearing en banc with the Eighth Circuit. Plaintiffs filed a brief in opposition to the petition and, on November 16, 2022, the petition was denied.

While the case on the merits proceeded in this Court, the parties engaged in substantial discovery. Plaintiffs deposed Defendants' four expert witnesses, three of Defendants' fact witnesses (two people who received gender-affirming medical care before later detransitioning and a psychiatrist who had treated transgender adolescent patients for conditions other than their gender dysphoria), a 30(b)(6) witness for Defendant Arkansas State Medical Board, Defendant Dr. Rhys Branman (a member of the Arkansas State Medical Board), and third-party witness Rep. Robin Lundstrum (a lead sponsor of the bill). Defendants deposed Plaintiffs' four experts and three third-party witnesses (two doctors and one therapist who treat adolescents with gender dysphoria in Arkansas).

The State and certain third-party witnesses resisted discovery sought by Plaintiffs. Plaintiffs filed motions to compel the production of documents requested from Defendant Attorney General Rutledge and subpoenaed documents from state legislators. After briefing the motions, the Court granted Plaintiffs' motions in part. Plaintiffs also had to oppose motions to quash their notice of deposition of Defendant Dr. Branman and their subpoena for deposition of Rep. Lundstrum. The Court denied both motions, and Plaintiffs took these depositions.

Additionally, Defendants filed a motion in limine seeking to preclude Plaintiffs from, among other things, submitting evidence of any Defendants' or witnesses' personal beliefs about transgender people. Plaintiffs filed a brief in opposition to the motion, and the Court denied that request.

Prior to trial, Plaintiffs moved to exclude the expert testimony of two of Defendants' expert witnesses—Dr. Patrick Lappert and Professor Mark Regnerus—on the ground that they lacked the qualifications to offer expert testimony about gender dysphoria or the efficacy of medical treatments for gender dysphoria. The Court denied the motions but ruled that "the Court will consider Dr. Lappert's qualification to testify as an expert on a question-by-question basis." (Order Denying Motions to Exclude, dated Aug. 30, 2022 (ECF 195, at 3)). While the Court denied Plaintiffs' motion to exclude regarding Professor Regnerus's testimony, it ultimately held that "he lacks the qualifications to offer his opinions and failed to support them." *Brandt* v. *Rutledge*, No. 4:21CV00450 JM, 2023 WL 4073727, at *28 (E.D. Ark. June 20, 2023).

The parties submitted pretrial briefs, and trial on the merits commenced on October 17, 2022. The trial spanned eight days and was completed on December 1, 2022. Plaintiffs presented the testimony of their four expert witnesses, the doctor plaintiff, another doctor who previously treated patients at Arkansas Children's Hospital Gender Clinic, four of the Parent Plaintiffs, and

one of the Minor Plaintiffs. Plaintiffs also submitted deposition designations for the 30(b)(6) deposition of the Arkansas State Medical Board, the deposition of Defendant Dr. Branman, and the deposition of Rep. Lundstrum.

At trial, Defendants presented the testimony of four expert witnesses, but after voir dire demonstrating their lack of experience related to the treatment of gender dysphoria, the Court limited the testimony of Dr. Lappert and Professor Regnerus on that basis, and in the case of Professor Regnerus, because his testimony was irrelevant. (Tr. 6 at 1013:7-18:4, 1058:4-61:9, 1067:10-14). Defendants also presented testimony from their fact witnesses—the two individuals who had detransitioned, the psychiatrist who had transgender adolescent patients, and the two doctors and one therapist who treat adolescents with gender dysphoria in Arkansas whom Defendants subpoenaed.

After trial, the parties submitted post-trial briefs and proposed findings of fact. Given the extensive factual record, Plaintiffs proposed over 400 findings of fact.

On June 20, 2023, after making over 300 findings of fact, the Court issued an 80-page opinion that held HB 1570 violated Plaintiffs' constitutional rights under the Equal Protection Clause, the Due Process Clause, and the First Amendment, and permanently enjoined the enforcement of the Healthcare Ban.

**APPLICABLE STANDARD**

The Civil Rights Attorneys Fees Awards Act of 1976, 42 U.S.C. § 1988(b), provides: "In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title . . . , the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ." Congress enacted section 1988 to encourage private litigation of civil rights claims. "When a plaintiff succeeds in remedying a civil rights violation . . . he serves 'as a 'private attorney general,' vindicating a policy that Congress considered of the

highest priority.'" *Fox* v. *Vice*, 563 U.S. 826, 833 (2011) (quoting *Newman* v. *Piggie Park Enter., Inc.*, 390 U.S. 400, 402 (1968) (*per curiam*)). Awarding attorneys' fees to prevailing civil rights plaintiffs "at once reimburses a plaintiff for 'what it cos[t] [him] to vindicate [civil] rights,' . . . and holds to account 'a violator of federal law.'" *Id.* (citations omitted). Because such litigation advances important civil rights, a prevailing plaintiff "'should ordinarily recover an attorney's fee' from the defendant." *Id.* (citation omitted). Fees should be awarded to a prevailing party "unless special circumstances would render such an award unjust." *Newman*, 390 U.S. at 402; *see also Williams* v. *Miller*, 620 F.2d 199, 202 (8th Cir. 1980).

## ARGUMENT

**I.      PLAINTIFFS ARE THE "PREVAILING PARTIES."**

A prevailing party is one that succeeds "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar* v. *Hobby*, 506 U.S. 103, 109 (1992) (citation omitted and internal quotations omitted). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley* v. *Eckerhart*, 461 U.S. 424, 435 (1983).

In this case, Plaintiffs prevailed on all of their claims and received the precise relief they sought—the Healthcare Ban has been permanently enjoined. Had the Healthcare Ban taken effect in July 2021, Plaintiffs Dylan Brandt, Parker Saxton, and Sabrina Jennen—and countless other transgender adolescents in Arkansas—would have been forced to discontinue medical care that they, their parents, and their doctors all agreed was medically necessary for them and has significantly benefitted their health and well-being, or leave the state to continue receiving that care. *See Brandt*, 2023 WL 4073727, at *3-5, *12-16, *18, *24-25, *32-33. And Plaintiff Brooke Dennis and other transgender youth who have not yet started puberty would have had the stress of knowing that gender-affirming medical care would not be available to them in their home state

6

when they need it. *Id.* at *16. Because of Plaintiffs' success in this litigation, Dylan, Parker, and Sabrina have been able to continue receiving care, Brooke knows care remains available, and these youth and their families have been able to remain in their homes and communities in Arkansas.

## II. THE FEES REQUESTED BY PLAINTIFFS ARE REASONABLE.

The starting point for determining an appropriate fee award is to multiply the number of hours reasonably expended on the case by a reasonable hourly rate. *Hensley*, 461 U.S. at 433; *Hanig* v. *Lee*, 415 F.3d 822, 825 (8th Cir. 2005) (citation omitted). A fee determined by this "lodestar" method is entitled to a "'strong presumption' that [it] represents the 'reasonable' fee." *City of Burlington* v. *Dague*, 505 U.S. 557, 562 (1992) (citation omitted); *see also Perdue* v. *Kenny A.*, 559 U.S. 542, 552 (2010). Degree of success is "[t]he most critical factor" in setting an appropriate fee award. *Fish* v. *St. Cloud State Univ.*, 295 F.3d 849, 852 (8th Cir. 2002); *Hensley*, 461 U.S. at 440. A reasonable hourly rate is usually the ordinary rate for similar work in the local community, but, as discussed in section II(B), in some circumstances, a national market rate is appropriate.

A summary of the hours reasonably expended for which reimbursement is sought, the rates, and the total reimbursement sought, by attorney, is represented in the table below.

| ATTORNEY | RATE | HOURS | TOTAL |
|---|---|---|---|
| Sarah Everett (ACLU of Arkansas) | $175 (Ark. rate) | 57.85 | $10,123.75 |
| Breean Walas (Walas Law Firm) | $300 (Ark. rate) | 262.37 | $78,711.00 |
| Beth Echols (Gill Ragon Owen) | $250 (Ark. rate) | 243.6 | $60,900.00 |
| Christopher Travis (Gill Ragon Owen) | $295 / $325 (Ark. rate) | 165.7 | $49,046.50 |
| Drake Mann (Gill Ragon Owen) | $295 / $325 (Ark. rate) | 164.7 | $48,673.50 |
| Leslie Cooper (ACLU National) | $750 (national rate) | 891.37 | $668,527.50 |

| ATTORNEY | RATE | HOURS | TOTAL |
|---|---|---|---|
| Chase Strangio (ACLU National) | $600 (national rate) | 498 | $298,800.00 |
| Li Nowlin-Sohl (ACLU National) | $500 (national rate) | 121 | $60,500.00 |
| James Esseks (ACLU National) | $800 (national rate) | 132.7 | $106,160.00 |
| Garrard Beeney (S&C) | $800 (national rate) | 89.25 | $71,400.00 |
| Laura Kabler Oswell (S&C) | $650 (national rate) | 237.25 | $154,212.50 |
| Lauren Goldsmith (S&C) | $550 (national rate) | 488.75 | $268,812.50 |
| Arun Bodapati (S&C) | $450 (national rate) | 756.5 | $340,425.00 |
| Daniel Richardson (S&C) | $430 (national rate) | 453.75 | $195,112.50 |
| Aviv Halpern (S&C) | $400 (national rate) | 871.75 | $348,700.00 |
| Duncan Simpson LaGoy (S&C) | $225 (Ark. rate) | 473.5 | $106,537.50 |
| Jonathan Ossip (S&C) | $200 (Ark. rate) | 518.25 | $103,650.00 |
| Alexander Peacocke (S&C) | $200 (Ark. rate) | 259.5 | $51,900.00 |
| Brandyn Rodgerson (S&C) | $175 (Ark. rate) | 537.25 | $94,018.75 |
| Jonathan Lester (S&C) | $175 (Ark. rate) | 294.75 | $51,581.25 |
| Maxime Matthew (S&C) | $175 (Ark. rate) | 170.5 | $29,837.50 |
| Cate Llewellyn (S&C paralegal) | $100 (Ark. rate) | 268.25 | $26,825.00 |
| Kenza Nadifi (S&C paralegal) | $100 (Ark. rate) | 303.25 | $30,325.00 |
| **Grand Total** | | 8259.79 | $3,254,779.75 |

A.   **The Total Number of Hours Is Reasonable.**

The novelty and complexity of the case and the sheer amount of work required to properly litigate it necessitated multiple attorneys expending significant hours of their time. This case involved a constitutional challenge to a state law prohibiting gender-affirming medical care to

8

minors.  Because the Arkansas law being challenged was the first law of its kind in the United States, the case presented novel issues of first impression and required counsel to develop their case—both their legal arguments and the extensive factual record—from scratch without any other cases to draw from.

Counsel had to brief complex constitutional issues at multiple stages of the proceedings. And the case turned significantly on extensive expert testimony about medical issues, including the diagnosis and treatment of gender dysphoria in adolescents and the broader context of medical research and medical decision-making.

Because expert testimony was critical to the resolution of the case, Plaintiffs' counsel spent many hours identifying potential expert witnesses, working with those experts to submit expert declarations and reports explaining why the Healthcare Ban does not protect children—and actually does just the opposite—and refuting the numerous assertions offered by Defendants' four expert witnesses.  Preparation for the depositions of Defendants' four expert witnesses required numerous hours of work, including reviewing their experience, their publications, and their many prior statements about the issues involved in the case.

Plaintiffs also needed to engage in significant fact discovery, both through document requests and through depositions of the fact witnesses.

Several litigation decisions made by Defendants required Plaintiffs' counsel to spend many unnecessary hours.

- Two of Defendants' expert witnesses—Dr. Lappert and Professor Regnerus—had no experience relevant to the issues before the Court.  The Court ultimately prohibited them from offering the testimony that was outside of their expertise, and the testimony they did offer had no bearing on the case and was not relied on by the Court.  The Court ultimately

held that Professor Regnerus "lacks the qualifications to offer his opinions and failed to support them." *Brandt*, 2023 WL 4073727, at *28. Nevertheless, Plaintiffs' counsel were required to expend significant time reviewing these witnesses' expert declarations and reports, preparing for and taking their depositions, and preparing for and conducting their cross-examinations at trial.

- Defendants petitioned the Eighth Circuit for rehearing en banc in their appeal of the preliminary injunction even though the trial on the merits was set to begin within weeks and the appeal would be mooted by a decision on the merits. Plaintiffs were required to expend substantial time preparing a response to Defendants' petition, which was denied. *See Brandt* v. *Rutledge*, No. 21-2875, 2022 WL 16957734, at *1 (8th Cir. Nov. 16, 2022) (Colloton, J., concurring in the denial of rehearing en banc) (noting "this case is not appropriate for rehearing en banc in its current procedural posture" because it is "in the midst of a trial" and the appeal of the preliminary injunction will be moot).

- Defendants needlessly compounded discovery by providing a 30(b)(6) witness, Amy Embry, who was unprepared to answer questions on certain noticed topics, necessitating motion practice, and ultimately the deposition of an additional 30(b)(6) witness, Dr. Branman.

- Defendants filed motions in limine to prohibit Plaintiffs from questioning certain witnesses regarding their personal beliefs about transgender people even though this case included an equal protection claim alleging unjustified unequal treatment of transgender people and, Plaintiffs argued, among other things, that the law was motivated by animus. Defendants' motions required Plaintiffs' counsel to expend time drafting responses to those motions. Those motions were denied by the Court.

- Defendants unreasonably refused to agree to *any* of Plaintiffs' proposed stipulations before trial, including stipulations as uncontroversial as the ages of Minor Plaintiffs. (*See* Tr. 3 at 507:5-09:25).

- After Plaintiffs rested on the afternoon of the third day of trial, Defendants were unprepared to proceed with their case, refusing to put on even three local witnesses who were available. If Defendants had not wasted nearly two full trial days, Plaintiffs believe that the trial could have concluded in fewer trial days, as the Court intended. (*See* Tr. 1 at 10:20-24).

The S&C attorneys did not all work on the case at the same time; several of them left the firm partway through the litigation and others joined the team to replace departing lawyers. Additionally, in an exercise of billing discretion, Sullivan & Cromwell is seeking reimbursement only for the work of a subset of attorneys and other non-attorney staff who worked on the case. They are not seeking reimbursement for any of the time of numerous attorneys and support staff who devoted time to the case. Ex. 9 (Oswell Decl.) ¶¶ 41-43.

Multiple attorneys in civil rights litigation is common. And as discussed above, a large team of attorneys was necessary to litigate this case given the complexity of the issues, the number of witnesses involved, the breadth of the expert testimony, and Defendants' litigation decisions. *See*, *e.g.*, *Bourke* v. *Beshear*, No. 13-CV-00750-CRS, 2016 WL 164626, at *1, *3 (W.D. Ky. Jan. 13, 2016) (ultimately awarding fees for nine attorneys); *Large* v. *Fremont Cnty.*, No. 05-CV-0270, 2013 WL 12342417, at *6-8 (D. Wyo. Sept. 20, 2013) (awarding fees to seven attorneys and four paralegals and rejecting objections that multiple attorneys reviewed documents and more than one attorney was present at depositions, reasoning that "[t]he complexity of this case justifies collaboration by all counsel on matters of great importance").

The time expended to achieve the results in this case was reasonable. Work was divided among the attorneys, each taking specific responsibilities for the tasks at hand. To the extent that there is overlap in the hours expended by counsel for which they are seeking reimbursement, it was only as necessary. Ex. 8 (Cooper Decl.) ¶¶ 44-55; Ex. 9 (Oswell Decl.) ¶ 67.

Counsel also removed many other hours of work from their request for reimbursement, including:

- Time onboarding new members of the Sullivan & Cromwell team;

- Non-productive travel time for out-of-state attorneys to come to Arkansas for court proceedings;

- The many hours Sullivan & Cromwell's attorneys spent on internal weekly associate team calls, which were critical for developing litigation strategy, coordinating the team's various workstreams, and delivering high-caliber work product;

- ACLU National attorneys and S&C attorneys' time on weekly calls with co-counsel and other calls with the full team, with the exception of certain senior Sullivan & Cromwell lawyers who generally did not work on the matter at the same time;

- Time related to media communications;

- Time assigning work to or reviewing the work of summer associates;

- Somewhat ministerial tasks performed by lawyers;

- Work driven by Sullivan & Cromwell lawyers' being barred in jurisdictions outside Arkansas (*e.g.*, *pro hac vice* admissions); and

- Work done by Sullivan & Cromwell after February 1, 2023, including work spent by attorneys pursuing Plaintiffs' fees claim, which are recoverable. *Jones* v. *MacMillan Bloedel Containers, Inc.*, 685 F.2d 236, 239 (8th Cir. 1982).

Between the exclusion of time spent by numerous Sullivan & Cromwell attorneys and other staff, the exclusion of the above categories of time, and billing discretion to remove additional time, Plaintiffs present this Court with a petition that excludes thousands of hours spent by attorneys and non-attorney support staff.  Ex. 3 (Everett Decl.) Decl. ¶ 3; Ex. 8 (Cooper Decl.) ¶¶ 53-55; Ex. 9 (Oswell Decl.) ¶¶ 8-12, 42.

The single most critical issue in determining the reasonableness of a fee award is the degree of success.  *Fish*, 295 F.3d at 852.  Here, Plaintiffs prevailed on the merits of all of their claims despite a strenuous challenge from Defendants and secured full and complete relief for Plaintiffs and all transgender youth in Arkansas who currently need or will need medical care that would have been prohibited by the Healthcare Ban.  This success should be taken into account in assessing the reasonableness of the number of hours for which Plaintiffs seek reimbursement.

### B.     The Requested Rates Are Reasonable.

The lodestar is normally calculated based on "prevailing market rates." *Blum* v. *Stenson*, 465 U.S. 886, 895 (1984); *see also Emery* v. *Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001) (finding that "[a] reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated").  While a reasonable hourly rate is usually the ordinary rate for similar work in the local community, in certain instances involving complex issues, a "national market or a market for a particular legal specialization may provide the appropriate market" and attorneys' out-of-state rates may be granted.  *Casey* v. *City of Cabool*, 12 F.3d 799, 805 (8th Cir. 1993).  *See also id.* ("To limit rates to those prevailing in a local community might have the effect of limiting civil rights enforcement to those communities where the rates are sufficient to attract experienced counsel.  Civil rights would be more meaningful, then, in those communities (large cities) where experienced attorneys can command their customary fees. This result would be in direct contravention of the purpose of diffuse enforcement through the 'private attorneys general'

13

concept.") (internal citations omitted); *Libertarian Party of S.D.* v. *Krebs*, No. CIV 15-4111, 2018 WL 4762966, at *3 (D.S.D. Oct. 2, 2018) (awarding out-of-state rates of $500 per hour for litigation from 2016).

Here, the litigation involved complex legal issues and scientific evidence and, thus, required out-of-state attorneys who have experience with these legal and scientific issues and the capacity to take on a case of this magnitude. Holly Dickson, Executive Director of the ACLU of Arkansas, stated in her declaration that, after 15 years building litigation teams at the ACLU of Arkansas and given her strong familiarity with the legal community in Arkansas, she knew she "would not be able find an Arkansas law firm that would have the capacity to shoulder on its own such a complex, labor-intensive case on the timetable under which we needed to proceed." Ex. 1 Declaration of Holly Dickson ("Dickson Decl.") ¶ 6. Moreover, she explained, "[t]he complex constitutional and factual issues involved in this case – the first of its kind to be tried in the United States – required the significant staffing and other resources of a multinational firm as well as the specialized expertise of our ACLU National attorneys who have experience litigating issues related to access to gender-affirming medical care." *Id.* at ¶ 7. Beth Echols of Gill Ragon Owen stated in her declaration that "[t]he success of this litigation depended on the expertise of attorneys with the national office of the ACLU as well as the resources and support of attorneys from Sullivan & Cromwell." Ex. 4 (Echols Decl.) ¶ 1.

ACLU National attorneys Leslie Cooper, Chase Strangio, Li Nowlin-Sohl, and James Esseks bring extensive experience in constitutional litigation concerning access to gender-affirming medical care for individuals with gender dysphoria. Ex. 8 (Cooper Decl.) ¶¶ 7, 19, 29, 36. Sullivan & Cromwell attorneys Garrard Beeney, Laura Kabler Oswell, Lauren Goldsmith, Arun Bodapati, Daniel Richardson, and Aviv Halpern all have complex commercial

litigation, appellate, and/or trial experience and serve a diverse range of clients, including pro bono clients. They each brought their respective backgrounds and expertise to the matter. Ex. 9 (Oswell Decl.) ¶¶ 18, 22-23, 27-29. While Sullivan & Cromwell's team included several additional lawyers, Plaintiffs are seeking national rates only for this subset of their team. *Id.* at ¶ 38.

      **C.**      **Plaintiffs Are Entitled to Their Counsel's Claimed Hourly Rates.**

The ACLU of Arkansas's Sarah Everett's requested rate of $175, Breean Walas's requested rate of $300, Beth Echols's requested rate of $250, Christopher Travis's requested rates of $295 and $325, and Drake Mann's requested rates of $295 and $325 are reasonable for their level of experience in Arkansas. Ex. 2 Declaration of John Burnett ("Burnett Decl.") ¶ 3-5; Ex. 3 (Everett Decl.) ¶ 4; Ex. 4 (Echols Decl.) ¶ 4; Ex. 5 (Mann Decl.) ¶ 4; Ex. 6 (Travis Decl.) ¶ 4; Ex. 7 (Walas Decl.) ¶ 4. The ACLU National attorneys Leslie Cooper, Chase Strangio, and James Esseks seek compensation at rates at which civil rights lawyers in their home jurisdictions have been awarded attorneys' fees by federal courts. The rate of $750 requested by Ms. Cooper, the rate of $600 requested by Mr. Strangio, and the rate of $800 requested by Mr. Esseks are equal to, if not lower than, rates charged by—and awarded to—attorneys possessing comparable years of experience in New York where they work. Declaration of Anne Clark ("Clark Decl.") ¶¶ 7-11. Seven years ago, a federal district court in Kentucky awarded a rate of $700 for Mr. Esseks and $325 for Mr. Strangio. *Bourke*, 2016 WL 164626, at *6. Ex. 8 (Cooper Decl.) ¶¶ 57, 59. The rate of $500 requested by ACLU National's Ms. Nowlin-Sohl is reasonable in the Seattle market where she practices. Two years ago, a federal district court in Washington State found her then-hourly rate of $400 to be reasonable when awarding attorneys' fees. *See Black Lives Matter Seattle-King Cnty.* v. *City of Seattle*, 516 F. Supp. 3d 1202, 1213 (W.D. Wash. 2021). Last year, the Federal Bureau of Prisons agreed to a rate of $500 for Ms. Nowlin-Sohl in calculating attorneys' fees as part of a settlement. Ex. 8 (Cooper Decl.) ¶ 58.

15

S&C attorneys Garrard Beeney, Laura Kabler Oswell, Lauren Goldsmith, Arun Bodapati, Daniel Richardson, and Aviv Halpern are seeking rates that are consistent with reasonable rates for civil rights litigators in New York, which are substantially lower than the rates they charge to commercial clients and the rates that have been awarded to S&C attorneys by courts. Oswell Decl. ¶¶ 7-12; Clark Decl. ¶¶ 6-11. Mr. Beeney is seeking a rate of $800; Ms. Oswell is seeking a rate of $650; Ms. Goldsmith is seeking a rate of $550; Mr. Bodapati is seeking a rate of $450; Mr. Richardson is seeking a rate of $430; and Mr. Halpern is seeking a rate of $400. The remaining S&C attorneys are requesting rates that would be considered reasonable for attorneys of their levels of experience in Arkansas. Ex. 2 (Burnett Decl.) ¶¶3-5; Ex. 3 (Everett Decl.) ¶ 4; Ex. 4 (Echols Decl.) ¶ 4; Ex. 5 (Mann Decl.) Decl. ¶ 4; Ex. 6 (Travis Decl.) ¶ 4; Ex. 9 (Oswell Decl.) ¶ 38.

### III.  PLAINTIFFS ARE ENTITLED TO RECOVER THEIR EXPENSES.

Pursuant to Rule 54(d) and § 1988, Plaintiffs seek to recover their expenses totaling $307,223.09. 28 U.S.C. § 1920 specifically enumerates that the following costs, among others, may be recovered by the prevailing party: the filing fee, fees for transcripts necessary for use in the case, and fees for making copies when the copies are necessary for use in the case. 28 U.S.C. § 1821 provides that witnesses are provided a fee of $40 per day and reimbursement of their travel expenses as well as subsistence expenses up to the maximum per diem allowance prescribed by the Administrator of General Service.[2] Federal Rule of Civil Procedure 54(d) has been interpreted as creating a presumption that costs are to be awarded to the prevailing party. *Delta Airlines, Inc.* v. *August*, 450 U.S. 346, 352 (1981); *Martin* v. *DaimlerChrysler Corp.*, 251 F.3d 691, 696 (8th Cir. 2001).

---

[2] The per diem allowance in Little Rock is $96 per night for hotels and $59 per day for meals. *FY 2022 Per Diem Rates for Little Rock, Arkansas*, U.S. GEN. SERVS. ADMIN. (Oct. 14, 2022), https://www.gsa.gov/travel/plan-book/per-diem-rates/per-diem-rates-results?action=perdiems_report&fiscal_year=2022&city=little%20rock&state=AR&zip=.

Attached as Exhibit C to the Oswell Declaration (Ex. 9) is an itemized list of Sullivan & Cromwell's expenses.  They include filing fees, fees for court reporters, fees for court transcripts, and travel expenses for attorneys to attend depositions and hearings.  It does not include various expenses incurred by the Firm in connection with the Action.  For example, the Motion does not seek costs for any transportation to or from S&C's offices or any meals (*i.e.*, weekend or evening transportation or meals) other than in connection with travel to Arkansas relating to the Action.  The total expenses for which S&C seeks recovery is $192,585.64.

Attached as Exhibit E to the Cooper Declaration (Ex. 8) is an itemized list of ACLU National's expenses.  They include costs for court reporters, travel expenses for attorneys to attend depositions and court hearings, travel expenses for trial witnesses, and copying and mailing.  The total expenses for which ACLU National seeks recovery is $114,235.45.

All expenses claimed by Plaintiffs are the types of expenses typically billed to a fee-paying client and are therefore recoverable.  *See Pinkham* v. *Camex, Inc.*, 84 F.3d 292, 294-95 (8th Cir. 1996) ("[R]easonable out-of-pocket expenses of the kind normally charged to clients by attorneys . . . [should be] included as part of the reasonable attorney's fees awarded.").

## CONCLUSION

For the reasons explained above, Plaintiffs respectfully request an award of their attorneys' fees and expenses.

| | |
|---|---|
| Dated:  September 20, 2023 | Respectfully submitted, |

*Leslie Cooper*
_____

| | |
|---|---|
| Leslie Cooper | Beth Echols, Ark. Bar No. 2002203 |
| Chase Strangio* | Christopher Travis, Ark. Bar No. 97093 |
| James Esseks* | Drake Mann, Ark. Bar No. 87108 |
| Li Nowlin-Sohl* | Gill Ragon Owen, P.A. |
| American Civil Liberties Union Foundation | 425 W. Capitol Avenue, Suite 3800 |
| 125 Broad St. | Little Rock, AR  72201 |
| New York, NY  10004 | Telephone: (501) 376-3800 |
| Telephone: (917) 345-1742 | echols@gill-law.com |

lcooper@aclu.org
cstrangio@aclu.org
jesseks@aclu.org
lnowlin-sohl@aclu.org
*Attorneys for the Plaintiffs*

Garrard R. Beeney*
Lauren M. Goldsmith*
Alexander S. Holland*
Maxime D. Matthew*
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
beeneyg@sullcrom.com
goldsmithl@sullcrom.com
hollanda@sullcrom.com
matthewm@sullcrom.com
*Attorneys for the Plaintiffs*

Daniel J. Richardson*
Sullivan & Cromwell LLP
1700 New York Avenue, N.W.
Suite 700
Washington, D.C. 20006
Telephone: 202-956-7500
richardsond@sullcrom.com
*Attorney for the Plaintiffs*

travis@gill-law.com
mann@gill-law.com
*On behalf of the Arkansas Civil Liberties Union Foundation, Inc.*
*Attorneys for the Plaintiffs*

Sarah Everett, Ark. Bar No. 2017249
Arkansas Civil Liberties Union Foundation, Inc.
904 W. 2nd Street
Little Rock, AR 72201
Telephone: (501) 374-2842
sarah@acluarkansas.org
*Attorney for the Plaintiffs*

Laura Kabler Oswell*
Aviv S. Halpern*
Sullivan & Cromwell LLP
550 Hamilton Avenue
Palo Alto, CA 94301
Telephone: (650) 461-5600
oswelll@sullcrom.com
halperna@sullcrom.com
*Attorneys for the Plaintiffs*

*\*Admitted pro hac vice*