IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**DYLAN BRANDT**, *et al.*,                                                                                              **PLAINTIFFS**,

v.                                            No. 4:21-CV-00450-JM

**TIM GRIFFIN, in his official capacity as
the Arkansas Attorney General**, *et al.*,                                              **DEFENDANTS.**

**OPPOSITION TO PLAINTIFFS' COUNSELS' MOTION FOR ATTORNEY'S FEES AND COSTS**

Plaintiffs' counsel seek a $3.5 million payout in claimed fees and costs. *See* Doc. 298 at 1. Their fee motion should be denied because it is bloated by egregious overstaffing and excessive hourly billing rates. Further, Plaintiffs' billing entries are replete with fees and charges that are unreliable, unnecessary, duplicative, and otherwise unreasonable.

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). But Plaintiffs' counsel haven't done that here. Their billing records are inaccurate and unreliable. They ran up excessive hours by overstaffing this case with more than two dozen attorneys, and the rates they claim for those attorneys are egregiously inflated compared to any fee award that has been approved in this District. The Court should "deny a fee request altogether when," as here, "the amount requested is 'outrageously excessive.'" *Clemens v. New York Cent. Mut. Fire Ins. Co.*, 903 F.3d 396, 398 (3d Cir. 2018) (quoting *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980)). Plaintiffs' counsels' claims for costs are likewise deceptive, unreasonable, and in many cases, outrageous, and they should be denied. Alternatively, Plaintiffs' requested fees and costs should be drastically reduced as explained below.

But the Court need not even reach those issues. The final judgment in this case is on appeal, and the Eighth Circuit has granted initial en banc review of this matter. *See Brandt v. Griffin*, No.

21-2875, Entry ID No. 5323974 (8th Cir. Oct. 6, 2023).  Reversal of this Court's judgment would mean that Plaintiffs are not prevailing parties for purposes of Section 1988 and would not be entitled to fees in the first place.  Thus, the proper course is for the Court to hold the matter of fees and costs in abeyance pending the Eighth Circuit's review.

I.  **Plaintiffs will not be prevailing parties entitled to fees and costs.**

Despite the judgment for Plaintiffs in this case, their arguments have been rejected by two federal appellate courts.  *See Eknes-Tucker v. Governor of Ala.*, 80 F.4th 1205 (11th Cir. 2023); *L. W. by & through Williams v. Skrmetti*, 73 F.4th 408 (6th Cir. 2023), *petition for cert. filed*, (Nov. 1, 2023) (No. 23-466).  And this litigation itself has not yet concluded.  In fact, the Eighth Circuit has granted initial en banc review of this matter, signaling its intent to resolve the circuit split between the *Brandt* panel decision and the subsequent Sixth and Eleventh Circuit decisions.  *See Brandt v. Griffin*, No. 21-2875, Entry ID No. 5323974 (8th Cir. Oct. 6, 2023).  Should the en banc Eighth Circuit reverse this Court's judgment, Plaintiffs won't be prevailing parties.  *See Clark v. Kan. City Mo. Sch. Dist.*, 375 F.3d 698, 703 (8th Cir. 2004) (a party awarded attorney's fees is "no longer the prevailing party" after Eighth Circuit reversal).  Therefore, the Court should deny Plaintiffs' counsels' motion for fees and costs, or, alternatively, hold the matter in abeyance pending the Eighth Circuit's review.

II.  **Plaintiffs' counsels' billing records are unreliable.**

To begin, a glance at Plaintiffs' counsels' billing entries call into question their accuracy, reliability, and relevance.  Rather than create an ad nauseum list of individual dubious entries, the following categorical examples are illustrative.  Plaintiffs' counsel engage in double billing, *see, e.g.*, Doc. 298-10 at 137 (separately billing $226.81 and $225.00 for Holland's, Ossip's, and Mann's dinners at same restaurant on same day); Doc. 298-5 at 12 (billing twice for same work by same attorney on same day), bill dubiously large hours, *see* Doc. 298-8 at 9 (20.68 hours for a

single day's deposition prep), and inexplicably bill different rates ($295 and $325/hr).  *See* Doc. 298-6 at 2-3; Doc. 298-7 at 2-3; *see also* Doc 298-5 (omitting billing rates altogether).

Multiple plaintiffs' attorneys also claim dozens of fees for work on amicus briefs filed by third parties.  *See, e.g.*, Doc. 298-10 at 39 (Ossip "revised draft amicus brief"); *id.* (Simpson-Legoy's "[e]mail correspondence with [three Plaintiffs' attorneys] regarding Brandt v. Rutledge Draft Amicus Outline"); *id.* at 46 (Rodgerson billing for "[a]micus working group meeting to discuss status").  Finally, Plaintiffs' counsel claim bizarre expenses.  *See, e.g.*, *id.* at 149 ("Wife on Plane during deposition").

These are just some of the dubious charges spread throughout Plaintiffs' counsels' billing entries.  Their representations concerning fees and costs can't be trusted, and the Court should deny their motion outright.

**III.    Plaintiffs' counsel ran up excessive hours by overstaffing this case.**

Other problems with Plaintiffs' counsels' fee claims are even more apparent.  Most obviously, Plaintiffs' counsel overstaffed this case out of all proportion to its need.  More than two dozen attorneys from five different law firms appeared in this case for Plaintiffs—many more than could find seats around counsel's table at trial.  Remarkably, that still doesn't account for the "[m]any other S&C lawyers, paralegals, and non-legal personnel" whom Plaintiffs' counsel say made "contributions to the matter."  Doc. 298-10 at 4.  Yet Plaintiffs' case would still have been overstaffed with less than half of the 25 attorneys who made an appearance for Plaintiffs.  "There is a difference between assistance of co-counsel which is merely comforting or helpful and that which is essential to proper representation."  *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1206 (10th Cir. 1986).  The Court should exclude from the outset the large majority of the attorneys claiming fees on Plaintiffs' behalf, if not deny fees altogether.

3

**A.     Plaintiffs bill for duplicative and unnecessary work.**

Overstaffing caused Plaintiffs' counsel to "run[] up the hours with the speed and momentum of an out of control freight train"—"the very definition of overreaching." *Dorr v. Weber*, 741 F. Supp. 2d 1022, 1036 (N.D. Iowa 2010). That overstaffing resulted in snowballing fees for "excessive, redundant, or otherwise unnecessary" time that counsel were "ethically [] obligated to exclude." *Hensley*, 461 U.S. at 434. But they didn't.

Plaintiffs' counsels' bloated billing records show that Sullivan & Cromwell and the other firms duplicated billing for nearly every significant task, including excessive email correspondence and meetings involving multiple attorneys throughout the litigation. *Compare e.g.*, Doc. 298-5 at 17 (Jan. 3, 2022 "weekly litigation team meeting"), *with* Doc. 298-10 at 53 (Jan. 3, 2022 "Call with S&C and ACLU teams"); *compare also, e.g.*, Doc. 298-5 at 22 (Aug. 22, 2022 "weekly litigation team meeting"), *with* Doc. 298-10 at 77 (Aug. 22, 2022 "Call with S&C and ACLU teams"). "Too much time was spent on conferences, meetings, calls, and emails between the lawyers." *Bryan v. Mississippi Cnty, Ark.*, No. 3:18-cv-00130-DPM, Doc. No. 68 (E.D. Ark. May 12, 2020); *Bates v. Network of Cmty. Options, Inc.*, No. 1:19-CV-00036-BRW, 2020 WL 13883279, at *8 (E.D. Ark. Mar. 11, 2020) ("Defendants should not have to pay for two lawyers having a strategy-session meeting."). "The time records are replete with instances of objectionable billing practices, including an excess of intraoffice communications, duplicate document reviews by multiple lawyers, billing at lawyers' rates for clerical work, etc." *Beasley v. Macuil's Tire & Serv. Ctr., LLC*, No. 4:19-CV-471-JMM, 2020 WL 3472556, at *2 (E.D. Ark. June 25, 2020).

Similarly "the entries reveal duplicated hours for . . . reviewing and preparing documents." *Edwards v. Beck*, No. 4:13CV00224-SWW, 2016 WL 6915306, at *3 (E.D. Ark. Mar. 11, 2016). The billing records include dozens of entries involving multiple attorneys relating to drafting and

4

review of the complaint. *See* Doc. 298-10 at 32-36; Doc. 298-5 at 5-8; Doc. 298-9 at 21, 29; Doc. 298-9 at 29. The same is true, for example, for Plaintiffs' motion for preliminary injunction, their response to Defendants' motion to dismiss, and their expert declarations. *See, e.g.*, Doc. 298-10 at 36-51; Doc. 298-5 at 8-17; Doc. 298-9 at 21-22, 29. Plaintiffs continued these practices all the way through posttrial briefing. *See* Doc. 298-10 at 108-114; Doc 298-9 at 27, 32. "[T]he combined effort of five attorneys"—and more—"simply was not necessary" to create these documents. *Edwards*, 2016 WL 6915306, at *3.

Finally, "[d]uplicative work, such as several attorneys attending the same hearing, should generally not be part of a fee award." *Alexander S. By & Through Bowers v. Boyd*, 929 F. Supp. 925, 943 (D.S.C. 1995). "Courts will substantially reduce bills when unnecessary duplication is brought about by having an excessive number of attorneys involved in a case." *Id.* (citing *Sun Pub. Co. v. Mecklenburg News, Inc.,* 823 F.2d 818 (4th Cir. 1987); *Goodwin v. Metts,* 973 F.2d 378, 381 (4th Cir. 1992); *Singer v. Shannon & Luchs Co.,* 779 F.2d 69, 70-71 (D.C. Cir. 1985); *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 953 (1st Cir. 1984)). If ever there were a fee request warranting "substantial[] reduc[tion]" due to "an excessive number of attorneys," *id.*, this is surely it.

### B. Plaintiffs' counsels' excessive hours billed by dozens of attorneys are unjustified.

Plaintiffs' counsel claim that "a large team of attorneys was necessary to litigate this case," Doc. 298-1 at 11, but they cite no authority awarding fees to so many attorneys. *Id.* Indeed, the excessive number of Plaintiffs' attorneys claiming fees, *see* Doc. 298-1 at 7-8, dwarfs any comparable case. By contrast, Defendants litigated this case with only eight attorneys making an appearance throughout all stages of the case. But even that number is misleading because three of Defendants' counsel withdrew to take other employment early in these proceedings (Guest,

5

Wagner, Wu). In fact, only three defense attorneys handled the pre- and posttrial work, and only five were needed for trial. Plaintiffs' counsel could have staffed the case similarly. But they chose instead to pile them on and run up egregious fees.

Plaintiffs further seek to justify their excessive hours by claiming they "develop[ed] their case . . . from scratch without any other cases to draw from." Doc. 298-1 at 9. But that is also false because some of Plaintiffs' counsel and experts not only knew of relevant previous cases— they were also involved in some of them. *See, e.g.*, *Carcano v. McCrory*, No. 1:16-cv-00236 (M.D. N.C. 2016); *Adams v. Sch. Bd. Of St. Johns Cnty, Fla.*, No. 3:17-cv-00739 (M.D. Fla. 2017); *Hecox v. Little*, No. 1:20-cv-184 (D. Idaho 2020); *B.P.J. v. W. Va. St. Bd. Of Educ.,* No. 2:21-cv-00316 (S.D. W. Va. 2021). And, to be sure, Plaintiffs' counsel claim "extensive experience" litigating "access to gender-affirming medical care for individuals with gender dysphoria." Doc 298-1 at 14.

Even more telling, Plaintiffs' counsels' own billing records show how they developed their case with the help of precedent cases. *See, e.g.*, Doc. 298-10 at 34 (April 28, 2021 entry for "review[ing] complaint from precedent case for" drafting Plaintiffs' complaint); *id.* at 36 (May 20, 2021 entry for "review[ing] precedent PI motions" for drafting Plaintiffs' PI motion); *id.* (May 27, 2021 entry for "[r]eview[ing] Alabama PI motion precedent"); *id.* at 43 (September 11, 2021 entry for "[r]eview[ing] precedents re [potential legal issue in litigation]" (final alteration in original)).

Again, the Court should exclude altogether the fees claimed by at least the majority of Plaintiffs' attorneys due to their egregious overstaffing and overbilling. Defendants suggest a reduction in line with the comparatively reasonable number of attorneys who entered an appearance for Defendants in this matter. Given that Plaintiffs utilized over three times as many attorneys—25 to 8—a two-thirds reduction at the outset is warranted. And for any attorneys the

Court doesn't exclude altogether, the Court should drastically reduce their fees by thousands of "hours that were not 'reasonably expended'" in this matter. *Hensley*, 461 U.S. at 434 (quoting S. Rep. No. 94-1011, p. 6 (1976)).

### C. Other examples of fee padding, unnecessary duplication, and lack of billing judgment.

Plaintiffs' counsel pad their fees in other ways. For example, they claim over $57,000 for the time of two Sullivan & Cromwell paralegals. But those bills are for "[s]ecretarial work" that "should not be billed . . . to an opposing party in a fee-shifting case" because that "come[s] within a firm's overhead." *Beauford v. ActionLink, LLC*, No. 4:12CV00139-JLH, 2014 WL 183904, at *4 (E.D. Ark. Jan. 15, 2014). Further, those paralegals' billing entries are—just like the attorneys'—excessive. *See, e.g.*, Doc. 298-10 at 75 (billing 2.5 hours for "[r]eview[ing] list of supplies for trial"; *id.* at 76 (billing another 2.5 hours for "[r]evis[ing] list of supplies to purchase for trial."); *id.* at 89 (billing 2 more hours for "[r]evis[ing] list of supplies & tech for trial"); *id.* at 71 (billing 2.5 hours for "[c]ommunicating over the phone and over email with court reporting companies to obtain deposition videos); *id.* at 73 (billing 4.75 more hours for "[f]urther communications over the phone and over email with court reporting companies to obtain all deposition videos"). Fees for these individuals should be denied.

Another example of Plaintiffs' counsels' unnecessary duplication is their choice to engage not one but two psychiatrists as expert witnesses, unnecessarily driving up fees for the preparation of expert-witness reports and testimony. After already engaging one psychiatrist, Dr. Jack Turban, as an expert witness, Plaintiffs' counsel claim dozens of hours in phone conferences with co-counsel, beginning no later than October 21, 2021, discussing psychiatrist "Dr. Karasic's potential addition," Doc. 298-10 at 45, and preparing initial and rebuttal reports for him. Using Dr. Karasic as duplicate expert psychiatrist unnecessarily required that he be deposed as well, with all the

requisite preparations, and it also unduly lengthened trial. Although Plaintiffs' counsel no doubt felt they needed to do something to make up for Dr. Turban's relative lack of experience, fees stemming from their decision to engage a duplicate psychiatrist shouldn't be charged to Defendants.

Plaintiffs claim fees for work that didn't materially contribute to this litigation's outcome. For example, Plaintiffs' counsel blindly and unreasonably pursued discovery of thousands of emails from the State Medical Board and from Attorney General Leslie Rutledge's personal email account. That undertaking was founded on nothing more than Plaintiffs' obstinate belief that the fishing expedition would reveal something to contradict the reality that neither Defendant drafted the challenged law. Plaintiffs continued to bill for months on this goose chase despite defense counsel's repeated efforts to assure Plaintiffs' counsel that his was a waste of everyone's time and resources. *See* Doc. 298-10 at 50-61. As foretold, Plaintiffs' wasted efforts were in vain and contributed nothing material to this litigation's outcome.

Finally, several Plaintiffs' attorneys' submissions don't even make a perfunctory claim to exercise billing judgment, *see* Doc. 298-4 (Everett); Doc. 298-5 (Echols); Doc. 298-6 (Mann); Doc. 298-7 (Travis); Doc. 298-8 (Walas), which they are ethically obligated to do. *See Hensley*, 461 U.S. at 434 (ethical duty to exercise billing judgment). Although others do claim to have exercised billing judgment, they give few specifics about how this was purportedly done. But even assuming that billing judgment was exercised to some degree, it is no virtue that Plaintiffs' counsel excluded some fees that couldn't or shouldn't have been compensated anyway. *Hensley*, 461 U.S. at 434 ("Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary*."). And, regardless, the excessive fees Plaintiffs' counsel do seek show just how inefficient they were.

8

"The Court [should] not hold Defendants responsible for these billing practices." *Beasley*, 2020 WL 3472556, at *2. Rather, in light of Plaintiffs' counsels' excessive, unnecessary, and duplicative overbilling, the Court shouldn't do less than "subtract the hours charged prior to filing the complaint," dramatically "reduce the number of hours" billed, and drastically "reduce the requested fees to adjust for the duplication of efforts of counsel." *Townsend v. Bayer Healthcare Pharms., Inc.*, No. 5:11-cv-00055-JMM, 2012 WL 12874282, at *2 (E.D. Ark. Dec. 17, 2012), *aff'd sub nom. Townsend v. Bayer Corp.*, 774 F.3d 446 (8th Cir. 2014).

**IV.     Plaintiffs' counsel claim egregiously inflated rates.**

Besides the excessive number of hours, Plaintiffs' counsel also claim egregiously inflated rates. Attorney's fees aren't "a form of economic relief to improve the financial lot of attorneys." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). Therefore, the rates awarded shouldn't "replicate exactly the fee an attorney could earn through a private fee arrangement with his client." *Id.* "[F]ee-shifting statutes are designed to 'ensure effective access to the judicial process for persons with civil rights grievances, not to serve as a full employment or continuing education programs for lawyers and paralegals.'" *Dorr v. Weber*, 741 F. Supp. 2d 1022, 1035 (N.D. Iowa 2010) (quoting *Lipsett v. Blanco,* 975 F.2d 934, 938 (1st Cir. 1992)). A reasonable fee is one that is sufficient to induce a capable attorney in the Arkansas market to undertake the representation of a meritorious case while not producing a windfall to Plaintiffs' counsel. *See Purdue,* 559 U.S. at 552.

**A.     Plaintiffs' counsels' claimed rates are excessive and unjustified.**

Plaintiffs' counsel claim astronomically high rates. *See* Doc. 298-1 at 7-8. That includes $400/hr for Halpern's 2 years' experience, $430/hr for Richardson's three years' experience, $450/hr for Bodapati's four years' experience. *See id.* But that's just for starters. Nowlin-Sohl claims $500/hr, Goldsmith claims $550/hr, Strangio claims $600/hr, Kabler Oswell claims

$650/hr, Cooper claims $750/hr, and Esseks and Beeney claim $800/hr each. *See id.* Claims to such outlandish rates "ignore Eighth Circuit law and have been rejected by numerous Arkansas judges." *Francis v. Gamdan Servs. LLC*, No. 4:22-CV-00094-BRW, 2022 WL 2990705, at *2 (E.D. Ark. July 28, 2022) (footnotes omitted).

To be sure, "an experienced . . . attorney" might claim a higher rate "because he [does] not need to spend a lot of time researching" various issues. *Werb v. ReliaStar Life Ins. Co.*, No. 13-CV-0669 PJS/JSM, 2014 WL 5431585, at *4 (D. Minn. Oct. 27, 2014). But Plaintiffs' counsels' excessive billing shows that in fact they "did not display the excellence, or achieve the time savings, implied by [a] higher rate." *Miller v. Dugan*, 764 F.3d 826, 831 (8th Cir. 2014) (cleaned up). Here, the nine attorneys asking for (what they call) "national" rates alone claim an incredible 4,540.32 hours of collective work on this case—averaging over 500 hours each. *See* Doc. 298-1 at 7-8. "Attorneys should not claim a high hourly rate based on their alleged expertise, and then turn around and bill an excessive amount of hours." *Dorr*, 741 F. Supp. 2d at 1035.

Both Plaintiffs' counsels' purported "national" and "Arkansas rates" are "much higher than those requested and approved in recent, comparable cases that were litigated in this district." *Day v. Celadon Trucking Servs., Inc.*, No. 4:09CV00031-SWW, 2015 WL 11090626, at *2 (E.D. Ark. Nov. 2, 2015); *see, e.g.*, *Francis v. Gamdan Servs. LLC*, No. 4:22-CV-00094-BRW, 2022 WL 2990705 (E.D. Ark. July 28, 2022) (awarding $250/hr for attorney with 21 years' experience, $175/hr for attorneys with 18 and 11 years' experience, $125/hr for attorney with 3 years' experience, $100/hr for attorney with 2 years' experience, and $75/hr for paralegal); *Bailey v. Jefferson Cnty., Ark.*, No. 5:18-CV-222-DPM, 2021 WL 4849077, at *1 (E.D. Ark. Oct. 18, 2021) (awarding $250/hr for attorney with 20 years' experience and $200/hr for attorneys with 14 and 7 years' experience); *Rounds v. S. Heritage Health & Rehab., LLC*, No. 5:12-CV-

276-DPM, 2015 WL 1119955, at *1 (E.D. Ark. Mar. 6, 2015) (finding $300/hr unreasonable for attorney with 23 years' experience). The Court should drastically reduce the claimed rate of any attorney whose fees it doesn't exclude altogether.

Defendants suggest that if the Court awards fees, the following fee schedule, which is derived from recent decisions by courts in this District, would be more than sufficient based on the attorney's level of experience at the inception of this litigation:

- Garrard Beeney (30+ years exp.)         $275/hr
- Drake Mann (30+ years exp.)             $275/hr
- James Esseks (30 years exp.)            $275/hr
- Leslie Cooper (26 years exp.)           $250/hr
- Christopher Travis (24 years exp.)      $250/hr
- Beth Echols (19 years exp.)             $225/hr
- Laura Kabler Oswell (16 years exp.)     $225/hr
- Breean Walas (13 years exp.)            $200/hr
- Chase Strangio (11 years exp.)          $200/hr
- Li Nowlin-Sohl (10 years exp.)          $200/hr
- Lauren Goldsmith (8 years exp.)         $180/hr
- Duncan Simpson LaGoy (7 years exp.)     $170/hr
- Jonathan Ossip (6 years exp.)           $160/hr
- Alexander Peacocke (5 years exp.)       $150/hr
- Arun Bodapati (4 years exp.)            $140/hr
- Brandyn Rodgerson (4 years exp.)        $140/hr
- Sarah Everett (4 years exp.)            $140/hr
- Daniel Richardson (3 years exp.)        $130/hr
- Aviv Halpern (2 years exp.)             $120/hr
- Jonathan Lester (0 years exp.)          $100/hr
- Maxime Matthew (0 years exp.)           $100/hr
- Cate Llwelllyn (paralegal)              $75/hr
- Kenza Nadifi (paralegal)                $75/hr

**B.    Plaintiffs' counsel can't show that Plaintiffs couldn't have found suitable local counsel.**

Plaintiffs' counsels' excessive "national" rates are also patently unreasonable because Plaintiffs can't show that they were "unable to find local counsel able and willing to take the case." *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001). In fact, several local attorneys worked on

11

Plaintiffs' case.  No fewer than *six* Arkansas attorneys from three Little Rock law firms entered appearances for Plaintiffs, *see* Doc. 1 at 47 (Echols, Travis, Mann, Walas, Everett); Doc. 113 (Sullivan), not to mention that three more Arkansas attorneys appeared for Plaintiffs' amici.  *See* Docs. 39-41 (Quattlebaum, Tull, and Powell).  So "the plaintiffs could have and did in fact [have] . . . counsel inside the state to represent them during this action."  *Beauford v. ActionLink, LLC*, No. 4:12CV00139-JLH, 2014 WL 183904, at *3 (E.D. Ark. Jan. 15, 2014).  Indeed, Plaintiffs' counsels' "own affidavits belie any notion that local community rates were not sufficient to attract" appropriate counsel.  *Little Rock Sch. Dist. v. Arkansas*, 674 F.3d 990, 998 (8th Cir. 2012) (quotation and citation omitted); *see, e.g.*, Doc. 298-8 at 2 (Walas); Doc. 298-4 (Everett with ACLU); *see also* Doc. 113 (Sullivan with ACLU).

To be sure, Plaintiffs did not *try* to find local counsel.  That's because this case began not with Plaintiffs but with out-of-state attorneys who began drafting the Complaint and *only then* recruited potential plaintiffs for the lawsuit.  *See* Doc. 298-10 at 32-36.  The law firms' billing entries bear this out.  On April 6, 2021, counsel began working on the Complaint.  Doc. 298-10 at 32.  Subsequently, Plaintiffs' counsel spent three weeks "review[ing] potential plaintiff biographies and interview notes," "revis[ing] interview notes of potential plaintiffs," "request[ing]" and "review[ing] background checks of potential plaintiffs," and further "review[ing] and edit[ing] draft plaintiff interview questions."  Doc. 298-10 at 32-34; Doc. 298-9 at 21.  Plaintiffs' counsel then interviewed "potential plaintiffs" from April 28 to May 7 and spent two more weeks discussing "plaintiff selection" before engaging some of them as clients on or about May 19.  Doc. 298-10 at 35-36; Doc. 298-5 at 6-7; Doc. 298-9 at 21.

So Plaintiffs' counsel's motion not only seeks to recover fees for work performed *before* they found their Plaintiffs—it also unashamedly seeks fees for work *to find* their eventual

12

Plaintiffs. That is improper and unethical. *See* 42 U.S.C. 1988(b) ("[T]he court, in its discretion, may allow the prevailing *party*"—not their counsel—a reasonable fee (emphasis added)). In any case, this cart-before-the-horse handling of this litigation means there weren't any "diligent, good faith efforts" by Plaintiffs to "find local counsel able and willing to take the case," *Emery,* 272 F.3d at 1048. Again, Plaintiffs' exorbitant rates are entirely unfounded and this Court should reject Plaintiffs' requested windfall.

### C. Plaintiffs' counsels' claimed fees are merely aspirational and unsupported by policy rationales.

Finally, the record contains no contract or any representations concerning Plaintiffs' counsels' fee arrangement with their hand-picked clients. "[C]ounsel cannot haphazardly [choose] a rate they want when they know the opposition is paying the bill." *Bates v. Network of Cmty. Options, Inc.*, No. 1:19-CV-00036-BRW, 2020 WL 13883279, at *3 (E.D. Ark. Mar. 11, 2020). "Plaintiffs' counsel provide[] no evidence of what they have ever charged an actual fee-paying client." *Id.* Further, "prior awards are not direct evidence of market behavior; the court is not a legal souk." *Id.* (cleaned up). Plaintiffs' counsels' claimed fees are not actual but merely aspirational.

Further, because Plaintiffs' counsel provided their services to Plaintiffs on a pro bono basis, there is no need to restore Plaintiffs to a financial position they would be in if they hadn't been involved in this litigation. *Cf. Smedley v. Smedley*, No. 7:14-CV-66-F, 2015 WL 5139286, at *3 (E.D.N.C. Sept. 1, 2015). Complementarily, "attorney's fees awarded under § 1988" are paid "by state and local taxpayers, and . . . money that is used to pay attorney's fees is money that cannot be used for programs that provide vital public services." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 559 (2010); *cf. Horne v. Flores*, 557 U.S. 433, 448 (2009) (payment of money pursuant to a

federal-court order diverts funds from important state and local programs). Therefore, important policy rationales weigh against awarding Plaintiffs' counsels' claimed fees.

**V.     Plaintiffs' counsels' deceptive and unreasonable claims for costs should be denied.**

Plaintiffs' counsel claim numerous outrageous costs that should be denied. Allowable costs "are limited to the categories set forth in 28 U.S.C. § 1920. Expenses not on the statutory list must be borne by the party incurring them." *Despain v. Nw. Mut. Life Ins. Co.*, No. 3:12CV00105-KGB, 2013 WL 1947551, at *2 (E.D. Ark. May 10, 2013); *see Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 441 (1987). Again, rather than create an ad nauseum list of individual dubious charges, the following examples are illustrative: Among numerous other charges for "office supplies," Sullivan & Cromwell claims $307.73 for, simply, "Erasers." Doc. 298-10 at 144. Plaintiffs' counsel claim $1,044.22 in costs for "laser labels, Steno Pads, notebooks, sticky notes, writing instruments." *Id.* More astounding, they claim charges totaling well over $30,000.00 for a "meeting room" and $15,645.60 in lunch catering during trial. *Id.* at 145. Many other unreasonable charges could be listed. *See* Doc. 298-10 at 116-77.

Plaintiffs' counsel further claim "charges relating to travel expenses for attending and taking depositions, copy expenses and postage." *Townsend v. Bayer Healthcare Pharms., Inc.*, No. 5:11CV00055 JMM, 2012 WL 12874282, at *2 (E.D. Ark. Dec. 17, 2012). *See, e.g.*, Doc. 298-10 at 119-20. But "these are incidental to normal preparation for trial," and they should be denied. *Id.*; *see Curtis Lumber Co. v. Louisiana Pac. Corp.*, No. 2:08CV00107-JMM, 2011 WL 3203722, at *2 (E.D. Ark. July 27, 2011) (disallowing "costs for taking depositions and fees associated therewith for discovery purposes," including deposition transcripts and service of subpoenas).

Sullivan & Cromwell improperly claims over 100 deposition-related charges that should be disallowed. Doc. 298-10 at 119-49. For its part, the ACLU disguises its deposition-related

costs by, among other things, declining to provide more than a mere four-page "itemiz[ation]." Doc. 298-9 at 41-44.  That largely unscrutable document has 36 different undated charges using the generic label of "Veritext - transcription services," *see id.* at 42 (totaling $56,472.10), along with more undated charges for "[e]xpert witness travel." *Id.* at 44 (totaling $9,070.05).  Charges for other fees, like mailing and copy expenses and attorney travel for depositions are similarly undated and opaque, and in any case should be disallowed.  *See id.* at 41-44.  For ACLU attorneys, that leaves case fees and nearly $30,0000.00 in non-itemized charges for four attorneys' travel to trial, which—based on the amounts—appears inflated.  *See id.* at 44 (Nowlin-Sohl claiming $5,316.02, Cooper claiming more than $5,078.03, and Esseks claiming $6,829.25 and $6,810.46).  Those inscrutable expenses are patently unreasonable and should be denied.  In fact, all claims for travel expenses should be denied because, as explained above, those were incurred as a result of out-of-state counsels' decision to find Arkansas Plaintiffs and for themselves to handle the litigation here.

The Court should deny Plaintiffs' counsels' claim for costs as excessive.

## CONCLUSION

A motion for attorney's fees should "in the first instance, be in 'good faith' and above reproach.  Fee applications should not be opening bids in a game in which the applicant starts off high in the hope that the end result, after the Court's discount, will be favorable." *U.S. Bank Nat. Ass'n v. First Am. Title Ins. Co.*, No. CIV. 11-1979 PJS/JJK, 2014 WL 793730, at *2 (D. Minn. Feb. 27, 2014).

Plaintiffs' counsel had a "duty" to "make a good faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434.  But Plaintiffs' counsel haven't done that, and the Court should "deny a fee request altogether when,"

as here, "the amount requested is 'outrageously excessive.'" *Clemens*, 903 F.3d at 398 (quoting *Brown*, 612 F.2d at 1059); *see Dorr*, 741 F. Supp. 2d at 1036 (assessing an additional "penalty" for "submitting a wildly over-inflated fee request").

For all the reasons set forth above, the Court should deny Plaintiffs' counsels' motion for fees and costs. In the alternative, the matter should be held in abeyance pending the Eighth Circuit's resolution of the appeal of this Court's judgment.

Dated: December 15, 2023                    Respectfully submitted,

                                            TIM GRIFFIN
                                              Attorney General
                                            NICHOLAS J. BRONNI (2016097)
                                              Solicitor General
                                            DYLAN L. JACOBS (2016167)
                                              Deputy Solicitor General
                                            MICHAEL A. CANTRELL (2012287)
                                              Assistant Solicitor General
                                            OFFICE OF THE ARKANSAS
                                              ATTORNEY GENERAL
                                            323 Center Street, Suite 200
                                            Little Rock, Arkansas 72201
                                            (501) 682-2007 (main)
                                            Michael.Cantrell@ArkansasAG.gov

                                            *Counsel for Defendants*