**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - -      x

DYLAN BRANDT, et al.,                                          :
                              Plaintiffs,                      :
                                                               :
           v.                                                  :       Case No. 4:21-CV-00450-JM
                                                               :
TIM GRIFFIN, et al.,                                           :
                              Defendants.                      :
                                                               :
- - - - - - - - - - - - - - - - - - - - - - - - - -      x

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR ATTORNEYS' FEES AND COSTS**

Plaintiffs' counsel have spent nearly three years litigating a challenge to the nation's first-of-its-kind ban on gender-affirming medical care for minors—a case of extraordinary consequence for the impacted youth and their families in Arkansas.  That litigation has involved a preliminary injunction hearing, extensive fact and expert discovery, numerous rounds of briefs and motions practice, and an eight-day bench trial that involved the testimony of more than a dozen witnesses. At each step of the way, Plaintiffs have prevailed—successfully securing a preliminary and permanent injunction against Arkansas's ban and beating back numerous attempts by Defendants to stonewall and delay litigation.

Given their success in this Court, Plaintiffs are entitled to reasonable attorneys' fees and costs.  Plaintiffs have provided voluminous records showing the considerable time spent litigating this case and have exercised considerable billing discretion in excluding thousands of time entries and numerous timekeepers.  Moreover, Plaintiffs have sought fees that are consistent with other awards granted by courts and well below Plaintiffs' out-of-state counsel's usual rates.  Because Plaintiffs are seeking a reasonable hourly rate for hours reasonably expended, the Motion should be granted in full.

Defendants' response ignores most of the documentation put forward by Plaintiffs.  They disregard Plaintiffs' decision to exclude many recoverable fees and costs from their request.  Nor do they attempt to justify their own litigation decisions that unnecessarily increased the burdens of litigation—such as Defendants' failure to prepare a 30(b)(6) witness and their refusal to turn over non-privileged documents.  Instead, they cherry-pick and mischaracterize a handful of billing entries to argue that Plaintiffs' request is unreliable and excessive, and ask this Court to disregard Plaintiffs' counsel's billing rates because counsel agreed to take on this representation pro bono. Defendants' arguments are meritless.

## I.   PLAINTIFFS' FEE AWARD SHOULD NOT BE REDUCED

### A.  Plaintiffs' Billed Time Is Reasonable.

Plaintiffs submitted detailed records showing the time spent litigating this case.  *See* Decl. Everett, Ex. A (ECF 298-4); Decl. Echols, Ex. A (ECF 298-5); Decl. Walas, Ex. A (ECF 298-8); Decl. Cooper, Exs. A–D (ECF 298-9); Decl. Kabler Oswell, Exs. A–B (ECF 298-10).  Although a "fee applicant bears the burden of documenting the appropriate hours expended," "[t]he party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits."  *Gates* v. *Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992) (citations omitted).  Defendants have not carried that burden here.  Because Plaintiffs have already discounted their fees substantially, no further reduction is warranted.

Defendants attack the number of attorneys included in Plaintiffs' fee request.  (Opposition to Plaintiffs' Motion for Attorneys' Fees and Costs (ECF 303) ("Opp.") at 5–6.)  That argument ignores Plaintiffs' declaration explaining that "lawyers did not work on the matter simultaneously," as several left the firm partway through litigation and others joined the team to replace them.  Decl. Kabler Oswell ¶¶ 8–9 (ECF 298-10); *see also* Decl. Cooper ¶¶ 47–48 (ECF

298-9).  Moreover, it is well established in this Circuit that the reasonableness of Plaintiffs' fees is dictated by neither the number of attorneys involved in a case nor the hours Defendants themselves expended.  *See A.J. ex rel. L.B.* v. *Kierst*, 56 F.3d 849, 864 (8th Cir. 1995) (courts may not "reduce attorneys' fees solely on the basis that multiple attorneys helped to secure a prevailing party's success"); *Harkless* v. *Sweeny Indep. Sch. Dist.*, 608 F.2d 594, 598 (5th Cir. 1979) (whether "defense counsel spent significantly less time on this case than did counsel for the plaintiffs is irrelevant").  Instead, what matters is whether the work performed was reasonable in light of the needs of the particular case.  There was nothing unreasonable about Plaintiffs relying on multiple attorneys and multiple law firms for this complex, unprecedented litigation.  *See, e.g.*, *Brown* v. *Precythe*, 2020 WL 1527160, at *6 (W.D. Mo. Mar. 30, 2020); *S.C. ex rel. M.C.* v. *Rearview Gardens Sch. Dist.*, 2020 WL 5262267, at *15–16 (W.D. Mo. Sept. 3, 2020).

Defendants do not contest this case's complexity.  But they argue that the case was not novel and that Plaintiffs' counsel relied on filings in other cases when preparing their written briefs. (Opp. at 6.)  That argument is misplaced.  This litigation was the first in the country to challenge a ban on gender-affirming care for adolescents, and has been cited in subsequent cases involving similar facts.  *See, e.g.*, *Koe* v. *Noggle*, 2023 WL 5339281 (N.D. Ga. Aug. 20, 2023).[1]  To develop a novel litigation strategy, it was reasonable for Plaintiffs' counsel to expend time reviewing precedents and conducting a thorough factual investigation.[2]  Fees awarded here should thus

---

[1]    None of the cases cited by Defendants (Opp. at 6) involve bans on gender-affirming medical care.  While litigation was anticipated to challenge Alabama's H.B. 1 / S.B. 10 in 2021, that law died on the Senate floor.

[2]    Defendants also imply that it was improper for Plaintiffs' counsel to conduct investigative work prior to filing the Complaint, including, for instance, interviewing potential plaintiffs.  (Opp. at 12.)  Attorneys regularly bill for speaking with potential plaintiffs and witnesses, who might have relevant factual information and may provide important testimony.  Courts agree such time is compensable.  *See McDonald* v. *Armontrout*, 860 F.2d 1456, 1462 (8th Cir. 1988) (Section 1988 "allows recovery of fees for time spent [before the complaint is filed] investigating facts and

"reflect the efforts of all" to the extent that the time reported does not reflect "inefficiency or duplication of effort." *A.J.*, 56 F.3d at 864 (internal citations omitted).

Defendants also attack specific tasks and entries that were allegedly unnecessary and duplicative. (Opp. at 2–5, 7–8.)  This Court is in the best position to evaluate Plaintiffs' records, but it is worth noting some of the more egregious flaws in Defendants' arguments:

*First*, contrary to Defendants' objections (Opp. at 4), coordination and communication among participating attorneys is reasonable in complex cases such as this, as such interactions represent an appropriate division of labor among senior and junior lawyers necessary to keep the bill from being even higher.  *See Brown*, 2020 WL 1527160, at *6 ("In a case concerning constitutional issues affecting a class of plaintiffs, 'internal' communications between attorneys to delegate assignments, coordinate litigation strategy, and discuss legal theories is reasonable."); *see also S.C.*, 2020 WL 5262267, at *15–16 (same).

*Second*, Defendants cannot justify reducing Plaintiffs' fees by scrutinizing Plaintiffs' litigation strategy with the benefit of hindsight.  (Opp. at 7–8 (suggesting that "Plaintiffs claim fees for work that didn't materially contribute to this litigation's outcome").)  "The relevant issue … is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant* v. *Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) (citing *Wooldridge* v. *Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990)).  Here, all hours claimed for conducting document discovery and preparing expert testimony were reasonable "at the point in time the work was performed." *Wooldridge*, 898 F.2d at 1177; *see also Brandt* v. *Rutledge*, 2023 WL 4073727 (E.D. Ark. June 20, 2023) (relying extensively on all Plaintiffs' experts).

---

researching the viability of potential legal claims.").

*Third*, after combing through 4,700 entries spanning over 130 pages, Defendants point to only a handful of entries they say casts doubt over the entirety of Plaintiffs' records.  (Opp. at 2–3 (arguing that Plaintiffs' entries "can't be trusted" because, for instance, one entry said "Wife on Plane" instead of "Wifi on Plane").)  Plaintiffs made diligent efforts to reduce duplication in the time they submitted to the Court for reimbursement, even *entirely* excluding the time expended by several lawyers and paralegals who performed valuable work on the case.  *See* Decl. Kabler Oswell ¶ 21 (ECF 298-10).  And Plaintiffs have exercised rigorous billing judgment, choosing to omit over 7,400 hours from their requested recovery, representing a reduction of well over 45 percent. *See* Decl. Kabler Oswell ¶¶ 8–11, 41–43 (ECF 298-10) (excluding 7,324.5 hours); Decl. Everett ¶ 3 (ECF 298-4) (excluding 73 hours); Decl. Walas ¶ 3 (ECF 298-8) (excluding 80.05 hours); Decl. Cooper ¶¶ 49–55 (ECF 298-9) (detailing omitted hours for ACLU National lawyers).  To the extent there is overlap in hours expended by counsel for which they seek reimbursement, it was only as necessary.  *See* Decl. Cooper ¶¶ 44–55 (ECF 298-9); Decl. Kabler Oswell ¶ 67 (ECF 298-10).

Given the voluminous records submitted by Plaintiffs in support of this Motion, it is unsurprising that some inadvertent errors have occurred.  Plaintiffs' extensive voluntary reductions should sufficiently eliminate the impact of those few errors.  But to the extent there are such inadvertent mistakes identified—such as one mistaken entry at ECF 298-10 at 39 regarding an amicus brief, and one duplicative entry in ECF 298-5 (Opp. at 2–3)—the appropriate remedy is exclusion of those entries, not a wholesale denial of Plaintiffs' fees.  *See, e.g.*, *King* v. *Colvin*, 2016 WL 1048067, at *3 (W.D. Ark. Mar. 11, 2016) (deducting 1.5 hours for two erroneous time entries while granting plaintiffs' broader fees motion).[3]

---

[3]    Defendants' other arguments are also unavailing.  For instance, paralegal work should not automatically be discounted as "secretarial work."  *See Arkansas United* v. *Thurston*, 2023 WL 187507, at *4 n.3 (W.D. Ark. Jan. 13, 2023) ("Contrary to the State Defendants' assertions…,

**B.  The Hourly Rates Are Reasonable.**

Defendants argue that Plaintiffs seek rates of compensation that are unreasonably high and that counsel's rates should be reduced (or denied) because Plaintiffs' counsel provided services on a pro bono basis and any fee award will be paid with government funds.  (Opp. at 9–13.)  These claims are spurious.  Plaintiffs have sought reasonable rates of compensation for their counsel.

Defendants claim the rates charged by Halpern ($400), Richardson ($430), Bodapati ($450), Goldsmith ($550), Strangio ($600), Kabler Oswell ($650), Cooper ($750), Esseks ($800), and Beeney ($800) are unreasonably high and should be lowered to local rates.  (Opp. at 9–11.)  However, "[f]ee awards must be structured so that attorneys of quality and experience with other profitable demands upon their time will not need to sacrifice income available in alternative enterprises in order to effect a public policy intended to protect all citizens."  *Casey* v. *City of Cabool*, 12 F.3d 799, 805 (8th Cir. 1993).  To that end, "[a] national market or a market for a particular legal specialization may provide the appropriate market" for certain attorneys.  *Id*. (quoting *Hendrickson* v. *Branstad*, 740 F. Supp. 636, 642 (N.D. Iowa 1990)).  Arbitrarily reducing the rates for such experienced attorneys thus undermines the very purpose of Section 1988—*i.e.*, to "attract competent counsel."  *Blum* v. *Stenson*, 465 U.S. 886, 893–94 (1984).  This is why rates exceeding local standards are routinely approved in complex and novel cases like this.  *See, e.g.*, *Planned Parenthood* v. *Miller*, 70 F.3d 517, 519 (8th Cir. 1995) (affirming national rates where counsel were leaders in the field of law in question and routinely did the kind of work in question, even though local lawyers "could have handled this case, and handled it well").[4]

---

paralegal work is compensable, *Missouri* v. *Jenkins*, 491 U.S. 274, 284–89 (1989)).  And courts routinely allow recovery for time spent soliciting or coordinating with supporting amici.  *See, e.g.*, *EEOC* v. *Freeman*, 126 F. Supp. 3d 560, 577 (D. Md. 2015).

[4]    *See S.C.*, 2020 WL 5262267, at *9 (relying on attorney's expertise and experience brought to a civil rights suit in approving fees up to $600); *M.B.* v. *Tidball*, 2020 WL 1666159, at *10 (W.D. Mo. Apr. 3, 2020) (relying heavily on the experience that attorneys bring to a civil rights

Defendants attempt to skirt this well-established precedent by suggesting that it was unreasonable for Plaintiffs to retain out-of-state attorneys. (Opp. at 11–13.) As attested to by Holly Dickson, the complex nature of this case "required the significant staffing and other resources of a multinational firm as well as the specialized expertise of our ACLU National attorneys[.]" Decl. Dickson ¶ 7 (ECF 298-2). And, as declared by all attorneys from Gill Ragon Owen, P.A. in Arkansas, "[t]he success of this litigation depended on the expertise of attorneys with the national office of the ACLU as well as the resources and support of attorneys from Sullivan & Cromwell." Decl. Echols ¶ 1 (ECF 298-5); *see also* Decl. Mann ¶ 1 (ECF 298-6) (same); Decl. Travis ¶ 1 (ECF 298-7) (same). It was accordingly reasonable to involve out-of-state counsel. Plaintiffs have thus requested national rates for a subset of lawyers to reflect the expertise and experience they each brought to this litigation—rates that are *substantially* lower than their regular rates and are reasonable under the circumstances. *See* Decl. Cooper ¶¶ 56–59 and Ex. F (ECF 298-9); Decl. Kabler Oswell ¶¶ 7, 36, 50–57 (ECF 298-10).

Defendants also argue that Plaintiffs' proposed *local* rates should be "drastically reduce[d]" (Opp. at 10–11), but again ignore the extensive evidence as to the reasonableness of Plaintiffs' request, including declarations explaining that "the in-state rate for each attorney claiming an in-state rate, . . . is reasonable and consistent with rates awarded by federal courts in Arkansas." *See* Decl. Burnett ¶¶ 3–5 (ECF 298-3); *see also* Decl. Everett ¶ 4 (ECF 298-4); Decl. Echols ¶ 4 (ECF 298-5); Decl. Mann ¶ 4 (ECF 298-6); Decl. Travis ¶ 4 (ECF 298-7); Decl. Walas ¶ 4 (ECF 298-8); Decl. Kabler Oswell ¶¶ 7, 36 (ECF 298-10). And Defendants fail to mention that Arkansas courts have awarded rates comparable to those requested by Plaintiffs. *See*, *e.g.*, *Little Rock Sch.*

---

suit in determining fees up to $500); *see also Pollard* v. *Remington Arms Co.*, 320 F.R.D. 198, 222 (W.D. Mo. Mar. 14, 2017) (approving rates up to $897 to reflect "counsel's extensive national experience" in a complex class action that required experienced counsel).

*Dist.* v. *Arkansas*, 674 F.3d 990, 998 (8th Cir. 2012) (approving local rates up to $400); *Ark. United* v. *Thurston*, 2023 WL 187507, at *3 (W.D. Ark. Jan. 13, 2023) (same).

Defendants further suggest that fees should be denied because Plaintiffs' counsel provided their services on a pro bono basis. (Opp. at 13.) This fact has no relevance to the appropriate measure of attorneys' fees in a civil rights case. Instead, "reasonable fees" are to be "calculated according to the prevailing market rates in the relevant community, *regardless of whether plaintiff is represented by private or nonprofit counsel.*" *Blum*, 465 U.S. at 895 (emphasis added); *see also Blanchard* v. *Bergeron*, 489 U.S. 87, 94–95 (1989) (explaining that "where there are lawyers or organizations that will take a plaintiff's case without compensation, that fact does not bar the award of a reasonable fee," which is to be "calculated in the usual way"); *Yankton Sch. Dist.* v. *Schramm*, 93 F.3d 1369, 1377 (8th Cir. 1996) ("The fact that [plaintiffs] were represented by publicly funded counsel does not affect their right to fees."). Likewise, the fact that attorneys' fees will be paid with government funds (Opp. at 13)—which is generally the case in cases involving a Section 1988 fee shift—is an "improper ground for denying or reducing an attorney's fee" under Section 1988. *See Willson* v. *City of Bel-Nor*, 2021 WL 2255003, at *8 (E.D. Mo. June 3, 2021) (collecting cases).

## II.   PLAINTIFFS ARE ENTITLED TO THEIR COSTS AND REASONABLE EXPENSES

Plaintiffs have provided dozens of pages detailing itemized expenses—all of which were incurred in order to effectively litigate this case—and have excluded more than $50,000 in costs from their request for reimbursement. *See* Decl. Kabler Oswell ¶¶ 44–47 (ECF 298-10).[5] Those

---

[5]   Since filing their Motion, Plaintiffs discovered an accounting error in the trial travel costs for ACLU National attorneys (*see* Decl. Cooper, Ex. E at 44 (ECF 298-9)), and are only seeking $5,163.22 for Leslie Cooper, $4,532.45 for Chase Strangio, $5,304.02 for Li Nowlin-Sohl, and $5,881.84 for James Esseks. The total expenses for which ACLU National seeks recovery is thus $105,573.47. Plaintiffs are unaware of further accounting errors.

costs were reasonable and recoverable, and Defendants' arguments to the contrary rely on conclusory assertions and inaccurate statements of law.

Defendants claim that several costs incurred by Plaintiffs are "dubious" and "patently unreasonable." (Opp. at 14–15.) Such conclusory assertions are wrong but, in any case, are no reason to deny Plaintiffs' costs. *See* Fed. R. Civ. Pro. 54(d) (costs other than attorneys' fees "should be allowed to the prevailing party"); *see also Gonzalez* v. *Shahin*, 77 F.4th 1183, 1192 (8th Cir. 2023) (rejecting party's "conclusory assertion" as a "basis to rebut the presumption in favor of awarding the [prevailing party] their costs" (internal citation omitted)). What's more, the few examples Defendants point to as "improper," including deposition costs (Opp. at 14), are plainly allowable. The Eighth Circuit has held that "even if a deposition is not introduced at trial, a district court has discretion to award costs if the deposition was necessarily obtained for use in [a] case and was not purely investigative." *Zotos* v. *Lindbergh Sch. Dist.*, 121 F.3d 356, 363 (8th Cir. 1997) (internal citation omitted); *see also Gonzalez*, 77 F.4th at 1192 (same). And 28 U.S.C. § 1920 expressly allows recovery for deposition transcription services. *See Craftsmen Limousine, Inc.* v. *Ford Motor Co.*, 579 F.3d 894, 897–98 (8th Cir. 2009).

Further, Defendants ignore that "reasonable out-of-pocket expenses of the kind normally charged to clients by attorneys … should [be] included as part of the reasonable attorney's fees awarded." *Pinkham* v. *Camex, Inc.*, 84 F.3d 292, 294–95 (8th Cir. 1996). As attested to by Laura Kabler Oswell, the expenses requested here are the type that would typically be billed to a paying client. *See* Decl. Kabler Oswell ¶ 44 (ECF 298-10). Plaintiffs are thus entitled to reimbursement for costs and out-of-pocket expenses as set forth in Plaintiffs' opening brief.

## III.   THE PENDENCY OF AN APPEAL IS IRRELEVANT

Defendants ask this Court to deny or delay resolving Plaintiffs' Motion because the case is pending on appeal. (Opp. at 2.) The mere act of filing a notice of appeal is no reason to deny

Plaintiffs' fees motion, and a district court may still award fees and costs after a notice of appeal has been filed. *See Moyer* v. *DVA Renal Healthcare, Inc.*, 2009 WL 826217, at *1 (E.D. Ark. Mar. 27, 2009) ("[T]he district court retains jurisdiction over collateral matters, such as attorney's fees, costs, and sanctions while the appeal is pending"); *see also Blakley* v. *Schlumberger Technology Corporation*, 648 F.3d 921, 930 (8th Cir. 2011) (same). Defendants have not cited a single case denying or deferring a fee request on that basis.

## IV.   CONCLUSION

For the above-stated reasons and the reasons stated in Plaintiffs' Motion for Attorneys' Fees and Costs (ECF 298) and Brief in Support (ECF 298-1), Plaintiffs respectfully request that this Court award their reasonable attorneys' fees and costs as requested in Plaintiffs' opening brief, with the appropriate reduction for ACLU National attorneys' trial travel costs as stated herein.

Dated:  December 22, 2023                    Respectfully submitted,

*Leslie Cooper*
Leslie Cooper                              Beth Echols, Ark. Bar No. 2002203
Chase Strangio*                            Christopher Travis, Ark. Bar No. 97093
James Esseks*                              Drake Mann, Ark. Bar No. 87108
Li Nowlin-Sohl*                            Gill Ragon Owen, P.A.
American Civil Liberties Union Foundation   425 W. Capitol Avenue, Suite 3800
125 Broad St.                              Little Rock, AR 72201
New York, NY 10004                         Telephone: (501) 376-3800
Telephone: (917) 345-1742                  echols@gill-law.com
lcooper@aclu.org                           travis@gill-law.com
cstrangio@aclu.org                         mann@gill-law.com
jesseks@aclu.org                           *On behalf of the Arkansas Civil Liberties*
lnowlin-sohl@aclu.org                      *Union Foundation, Inc.*
*Attorneys for the Plaintiffs*             *Attorneys for the Plaintiffs*

Garrard R. Beeney*                         Sarah Everett, Ark. Bar No. 2017249
Lauren M. Goldsmith*                       Arkansas Civil Liberties Union
Alexander S. Holland*                      Foundation, Inc.
Maxime D. Matthew*                         904 W. 2nd Street
Sullivan & Cromwell LLP                    Little Rock, AR  72201
125 Broad Street                           Telephone: (501) 374-2842

New York, NY 10004
Telephone:  (212) 558-4000
beeneyg@sullcrom.com
goldsmithl@sullcrom.com
hollanda@sullcrom.com
matthewm@sullcrom.com
*Attorneys for the Plaintiffs*

Daniel J. Richardson*
Sullivan & Cromwell LLP
Suite 700, 1700 New York Avenue, N.W.
Washington, D.C.  20006
Telephone: (202) 956-7500
richardsond@sullcrom.com
*Attorney for the Plaintiffs*

sarah@acluarkansas.org
*Attorney for the Plaintiffs*

Laura Kabler Oswell*
Aviv S. Halpern*
Sullivan & Cromwell LLP
550 Hamilton Avenue
Palo Alto, CA  94301
Telephone: (650) 461-5600
oswelll@sullcrom.com
halperna@sullcrom.com
*Attorneys for the Plaintiffs*

*Admitted pro hac vice*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and exact copy of the foregoing was filed electronically with the Clerk of the Court on December 22, 2023 using the CM/ECF system. The participants in this case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

 /s/ *Leslie Cooper*
Leslie Cooper

-12-